UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND


UNITED STATES OF AMERICA,

                    Plaintiff,

vs.                        Case No. 1:10-CR-0744-RDB


ANTONIO HALL,

                    Defendant.

------------------------------------------------------

**AUGUST 10, 2011**
**Transcript of Trial Proceedings**

**Before The Honorable RICHARD D. BENNETT**
**United States District Judge, and a Jury**

APPEARANCES:

For the Plaintiff:      John F. Purcell, Jr.
                        Clinton J. Fuchs
                        Assistant U.S. Attorney


For the Defendant:      Gary E. Proctor
                        Timothy J. Sullivan


Proceedings recorded by mechanical stenography,
transcript produced with computer-aided
transcription.

```
 1                      P R O C E E D I N G S

 2                 (JURY OUT.)

 3                 THE COURT:  Is Mr. Fuchs going to be with

 4     us, Mr. Purcell?

 5                 MR. PURCELL:  Your Honor, if you would

 6     allow, I've asked him to do the opening; I've asked

 7     him to sort of work on that, if you don't mind.

 8                 THE COURT:  That's fine.  That's fine.

 9                 MR. PURCELL:  Thank you.

10                 THE COURT:  That's fine.  I want to make

11     sure he's not going to be with us before we start.

12                 Good morning, Mr. Proctor and Mr.

13     Sullivan; and good morning, Mr. Hall.

14                 MR. PROCTOR:  Good morning, Your Honor.

15                 THE COURT:  We are ready to proceed with

16     the charge conference here with respect to

17     instructions.  You are -- they have a revised draft

18     that we have looked at before.  Why don't we go

19     through the boilerplate first.  And I think there's

20     one main issue that's been raised by the defense with

21     respect to a request for a multiple conspiracy

22     instruction.  And we'll deal with that in a moment

23     here.

24                 First of all, as to Court's Instruction

25     No. 1, introduction and jury attentiveness; No. 2,
```

3

1    role of the Court; No. 3, role of the jury; No. 4,

2    government as party; No. 5, improper considerations;

3    and No. 6, indictment is not evidence.  All from *Sand*

4    *and Siffert* pattern jury instructions, although I've

5    redacted them down a little bit because I'm trying to

6    keep these from being too wordy.

7                Is there any objection from the point of

8    view of the government, Mr. Purcell, Instruction No.

9    6?

10               MR. PURCELL:  None at all.

11               THE COURT:  Any objection from the

12   defense?

13               MR. PROCTOR:  Absolutely not.

14               THE COURT:  Okay.  All right.  They're a

15   little bit shorter than normal, because I'm just

16   trying -- my view, as I mentioned yesterday, Counsel,

17   is to have instructions that are -- very, very

18   important to have the jury have time to focus on

19   those and not get so lost in all the verbiage of some

20   of these four-point instructions.

21               Then, Instruction No. 7, the indictment

22   contains a total of -- it will be four counts.  And

23   then what I propose to put in is just Count 2 is no

24   longer in the case.

25               What is the government's -- is that fine

1       from the point of view of the government?  Just Count

2       2 is no longer in the case?  How do you want it to be

3       worded?  I'll hear from the defense in a moment.

4                   I want to explain to them, because I

5       originally told them there was five counts, and I'm

6       going to be explaining to them that there are four

7       counts.  We're going to keep them numbered 1, 2, 3,

8       4, and 5.  How do you want to address that?

9                   MR. PURCELL:  Your Honor, just say there

10      as a Count 2 that the parties have agreed to remove

11      from your consideration.

12                  THE COURT:  All right.  So Count 2, "By

13      agreement of the parties, Count 2 is no longer in the

14      case".

15                  MR. PROCTOR:  Something like that.  And

16      you should not concern yourself with why that

17      occurred.

18                  THE COURT:  "By agreement of the parties,

19      Count 2 is no longer in the case and you need not

20      concern yourself with Count 2".

21                  MR. PURCELL:  That's fine, Your Honor.

22      Thank you.

23                  THE COURT:  "And you need not concern

24      yourself with Count 2".

25                  Then I'll have, "Each of the four counts

1    charges the defendant with a different crime,"

2    etcetera, etcetera.  Just the basic -- any objection

3    from the government?

4              MR. PURCELL:  No, Your Honor.

5              THE COURT:  From the defense?

6              MR. PROCTOR:  No, sir.

7              THE COURT:  Okay.  Did you get that, No.

8    7?  All right.  Then, No. 8, variance, dates; No. 9,

9    presumption of innocence and burden of proof; No. 10,

10   number of witnesses; and --

11             MR. PROCTOR:  Judge, I always request,

12   and I'm always flatly denied, a reasonable doubt

13   instruction.  So let me do that again.

14             THE COURT:  I understand.  Obviously,

15   under Fourth Circuit case law, Mr. Proctor, the

16   Fourth Circuit has specifically instructed on

17   numerous occasions that a reasonable doubt

18   instruction is not to be given.  In the case of

19   *United States v. Oriakhi,* O-r-i-a-k-h-i, 57 F.3d

20   1290, Fourth Circuit opinion, 1995, "A district court

21   should not attempt to define the term reasonable

22   double in a jury instruction absent a specific

23   request for such a definition from the jury".  And in

24   *United States v. Patterson*, 150 F.3d 382, Fourth

25   Circuit 1998, "A district court may indeed restrict

```
 1    counsel from defining reasonable doubt in closing
 2    argument".
 3              I mean, it's well established under
 4    Fourth Circuit case laws that we don't define
 5    reasonable doubt; we leave it to the determination of
 6    the jury.  So that will be denied, but it's preserved
 7    on the record that you've requested a reasonable
 8    doubt instruction.
 9              All right.  Court's Instruction 8,
10    variance; 9, presumption of innocence; 10, number of
11    witnesses and uncontradicted testimony; 11, specific
12    investigative techniques not required; 12, direct and
13    circumstantial evidence.
14              MR. PROCTOR:  I'm sorry, Judge.  As to
15    the specific investigative techniques --
16              THE COURT:  All right.  We'll stop.  I'll
17    go back.  You're fine through 10.  And, with respect
18    to Court's proposed Instruction No. 11 --
19              MR. PROCTOR:  I have no objection.  I
20    just want to make sure.  The government had some CSI
21    instruction in there; I just wanted to make sure you
22    had taken it out.
23              THE COURT:  It's -- it is what it is.
24    It's right here.  "Specific investigative techniques
25    are not required".  I'm not making any reference to
```

1        CSI in here.

2                    MR. PROCTOR:  Works for me.

3                    THE COURT:  Okay.  Are there objections

4        from the government as to these?

5                    MR. PURCELL:  No, Your Honor.

6                    Your Honor, no objection to any of the

7        instructions except some we wish to omit.

8                    THE COURT:  I know.  Just through an

9        abundance of caution.  Mr. Hall here, make sure he is

10       with us.  Make sure he's able to go over them with

11       us.

12                   12, circumstantial evidence; 13,

13       questions are not evidence; 14, testimony, exhibits,

14       and stipulations.

15                   Any objection through those 14 from the

16       point of view of the government?

17                   MR. PURCELL:  No, Your Honor.

18                   THE COURT:  From the defense?

19                   MR. PROCTOR:  No, sir.

20                   THE COURT:  All right.  Now, Court's

21       Instruction 15, there has been evidence -- basically

22       admission of defendant.  One, I think I will take out

23       the caption of that being called, "admission of

24       defendant".  And the instruction reads -- but it

25       won't be captioned, Defense Counsel, "admission of

1    the defendant".  It will just read as follows:

2    "There has been evidence that the defendant made

3    certain statements in which the government claims he

4    admitted certain facts charged in the indictment.  In

5    deciding what weight to give the defendant's

6    statements, you should first examine with great care

7    whether each statement was made and whether, in fact,

8    it was voluntary and understandingly made.  I

9    instruct you that you are to give the statements such

10   weight as you feel they deserve in light of all the

11   evidence".

12                  Any objection by the government as to

13   that?

14                  MR. PURCELL:  No.

15                  THE COURT:  By the defense?

16                  MR. SULLIVAN:  Yes, sir.  I don't object

17   to that.  I would just -- in.  Before the second

18   paragraph, "in deciding," begins, we don't concede

19   that Mr. Hall made any of those statements.  Sergeant

20   Williams' statements in particular I don't concede

21   that he remembers a year later.  So I would ask that

22   you say, "If you find Mr. Hall made the statements

23   alleged, then in deciding what weight" --

24                  THE COURT:  Well, maybe what we'll do on

25   that, Mr. Proctor -- I understand what you're

1   saying -- is the first paragraph says, "There has

2   been evidence that the defendant made certain

3   statements".  What you're contending is, is that --

4   that -- maybe what I say is, "There has been evidence

5   that the defendant allegedly made certain

6   statements".

7               MR. PROCTOR:  That's -- I'm fine with

8   that.

9               THE COURT:  How about this?  "There has

10  been evidence that the defendant allegedly made

11  certain statements in which the government claims he

12  admitted certain facts charged in the indictment.  In

13  deciding what weight to give" -- well, I do deal with

14  that, Mr. Proctor.  Because I say, "In deciding what

15  weight to give the defendant's statement, you should

16  first determine whether each statement was made and

17  whether, in fact, it was voluntarily and

18  understandingly made".

19              MR. PROCTOR:  I just like it spelled out

20  in terms of --

21              THE COURT:  I think I know what you're

22  saying.  Let me do it this way.  "There has been

23  evidence that the defendant allegedly made certain

24  statements in which the government claims he admitted

25  certain facts charged in the indictment".  And then

1        what I'll do is I'll say -- I'll advise them, "You

2        should first examine with great care whether each

3        statement was made and, if so, whether, in fact, it

4        was voluntarily and understandingly made".  And then

5        I can just say, "I instruct you that you are to give

6        the statements such weight as you feel they deserve

7        in light of all the evidence".

8                    So, I'll take out that first phrase, "In

9        deciding what weight"; so it will read as follows:

10       "There has been evidence that the defendant allegedly

11       made certain statements in which the government

12       claims he admitted certain facts charged in the

13       indictment.  You should first examine with great care

14       whether each statement was made, and, if so, whether,

15       in fact, it was voluntarily and understandingly made.

16       I instruct you that are to give the statements such

17       weight as you feel they deserve in light of all of

18       the evidence".

19                    Any objection by the defense?

20                    Go ahead and talk to your client for a

21       second.

22                    Go ahead, Mr. Hall.

23                    MR. PROCTOR:  No objection.

24                    THE COURT:  Mr. Hall, just so you

25       understand this process, the Court is not making any

```
 1    finding on the facts.  I'm just instructing the jury

 2    on the law.  The jury has to make the determination

 3    of the facts.  That's why they're drafted in this

 4    fashion.

 5              Now, then, the next one is, No. 16,

 6    improper consideration of defendant's right not to

 7    testify.  Any objection by the government?

 8              MR. PURCELL:  No, Your Honor.

 9              THE COURT:  By the defense?

10              MR. PROCTOR:  No, sir.

11              THE COURT:  And then inference defined,

12    No. 17.

13              Any objection by the government?

14              MR. PURCELL:  No, Your Honor.

15              THE COURT:  By the defense?

16              MR. PROCTOR:  Absolutely not.

17              THE COURT:  Now, the next one I have --

18    and I'm not sure it's absolutely necessary.  I'll

19    hear from both sides here.  I'm trying to keep these

20    workable for the jury.  In terms of knowledge,

21    willfulness, and intent, this is very often given.

22    But I'm not sure on the facts of this case this is

23    really necessary.  I mean, as to three of these four

24    counts it's just a question as to whether or not the

25    jury believes that Mr. Hall is the person who
```

1    perpetrated the crimes, and the issue of whether or

2    not he was involved in a drug conspiracy.  This

3    isn't -- this isn't some confusion over the intent of

4    doing an act and what occurred.  There's an absolute

5    question of whether he is or is not the person that

6    committed the act.

7                 MR. PURCELL:  Your Honor, I understand

8    what you're saying, but my only suggestion is that,

9    in light of the fact that Count 3 has an element that

10   the killing was done with intent to retaliate; that

11   the issue of intent in the act of the killing, it's

12   something the jury has to consider.  It might be

13   better to leave it.

14                THE COURT:  All right.  I will leave it

15   in.

16                Any objection by the defense?

17                MR. PROCTOR:  I don't have a strong

18   feeling either way, Judge.

19                THE COURT:  All right.  Okay.  It will

20   stay in.  All right.  Thank you, Mr. Purcell.  All

21   right.  18 will stay in.

22                Then No. 19 is witness credibility.  I've

23   managed to find a shorter instruction on that from

24   *Sand and Siffert* which I think suffices.  Any

25   objection by the government?

1          MR. PURCELL:  No, Your Honor.

2          THE COURT:  By the defense?

3          MR. PROCTOR:  No, sir.

4          THE COURT:  All right.  And then 20,

5    interest in outcome.  Any objection as to No. 20 from

6    the government?

7          MR. PURCELL:  No, Your Honor.

8          THE COURT:  From the defense?

9          MR. PROCTOR:  No, sir.

10         THE COURT:  And then accomplice called by

11   the government.  Any objection by the government?

12         MR. PURCELL:  No, Your Honor.

13         THE COURT:  By the defense?

14         MR. PROCTOR:  No, sir.

15         THE COURT:  And then immunity agreement

16   and plea agreement letter.  Any objection -- I'm

17   sorry?

18         MR. PROCTOR:  Judge, if there are

19   additional instructions, we would wanted and this

20   would be the place to insert them, would you like to

21   cross that as we go along.

22         THE COURT:  Fine.  Sure.

23         MR. PROCTOR:  After that -- after

24   Instruction 21 but before Instruction 22, we would

25   request *Sand's* unindicted co-conspirator instruction.

```
 1                    THE COURT:  All right.  And that's in
 2      reference, basically, to Mr. Kevin Duckett.
 3                    MR. PROCTOR:  Well, you know, the
 4      indictment says, "those known and unknown".  So I
 5      don't think it's specifically Mr. Duckett.  But he
 6      certainly --
 7                    THE COURT:  All right.  We'll find that
 8      boilerplate instruction, unindicted co-conspirator.
 9                    Any objection by the government as to
10      that?
11                    MR. PURCELL:  No, Your Honor.
12                    THE COURT:  Okay.  So we'll fit that in.
13      That's fine, Mr. Proctor.  That will be granted.
14      Unindicted co-conspirator will be inserted there
15      after accomplice called by the government and before
16      immunity provision and plea agreement letter.
17                    MR. PROCTOR:  Well, Judge, and after that
18      there is a separate 7-8 Sand instruction for
19      statutory immunity, of a government witness.  And
20      that would be Mr. Carithers, who had statutory
21      immunity.  So I don't care if you want to combine
22      that with Instruction 22 or whether you want to give
23      a separate instruction.
24                    THE COURT:  Let's see here.  Can you get
25      Sand and Siffert and just retrieve that right now?  I
```

15

1          think I'll just do one instruction on immunity.

2                    MR. PROCTOR:  Sure.

3                    THE COURT:  And we'll just -- we'll

4          entitle it, "immunity".

5                    MR. PURCELL:  Your Honor, in that

6          regard -- and, Counsel, I know you're listening -- if

7          everyone looks at Page 28, Instruction 22 as it's

8          proposed.

9                    THE COURT:  Yes.

10                   MR. PURCELL:  I think we could -- if we

11         want to do it in one, you could just say -- in the

12         sentence beginning, "This promise was," I think you

13         could say, Your Honor, that it was either a formal

14         order of immunity by the Court or was arranged

15         directly between the witness and the government.

16                   THE COURT:  Yeah, that's what I was

17         thinking.  I'm going to get the boilerplate right now

18         and just merge the two together.  We'll have one

19         instruction.  And we won't have it be entitled,

20         "immunity provision and plea agreement letter".

21         We'll just have it entitled, "immunity"; is that

22         satisfactory to the government?

23                   MR. PURCELL:  Yes.

24                   THE COURT:  To the defense?

25                   MR. PROCTOR:  Yes, sir.

```
 1                    THE COURT:  I think what we will have is,

 2      "You have heard the testimony of some witnesses who

 3      have been promised that, in exchange for testifying

 4      truthfully, completely, and fully, they will not be

 5      prosecuted for any crimes which they may have

 6      admitted either here in court or in interviews with

 7      the prosecution.  These grants of immunity have

 8      either been by formal order of immunity by the Court

 9      or arranged directly between the witness and

10      government by letter agreement".

11                    Is that agreeable to the government so

12      far?

13                    MR. PURCELL:  Yes, Your Honor.

14                    THE COURT:  Is that agreeable to the

15      defense?

16                    MR. PROCTOR:  Yes, sir.

17                    THE COURT:  All right.  Okay.  And then I

18      think the rest of the instruction can stay as it is.

19                    MR. PURCELL:  I agree.

20                    MR. PROCTOR:  I agree.

21                    THE COURT:  Do you agree with that, Mr.

22      Proctor?

23                    MR. PROCTOR:  Yes, sir.

24                    THE COURT:  Okay.  Thank you.

25                    MR. PROCTOR:  Judge, after this
```

1      instruction -- you might as well hold onto that.  We

2      would request 7-9.1, which is a witness using or

3      addicted to drugs instruction.  It should be right

4      over the page.

5                    THE COURT:  7-9.

6                    MR. PROCTOR:  Period 1.

7                    THE COURT:  I will grant that

8      instruction.

9                    All right.  That will be the instruction

10     that will follow.  It will be labelled, "witness

11     using or addicted to drugs"; and I'll give that form

12     instruction there, 7-9.1.

13                   Actually, I think we have to -- correct

14     me if I'm wrong -- Robert Jones indicated drug

15     issues, as well.

16                   MR. PROCTOR:  I don't think so.

17                   THE COURT:  Did he not testify as to use

18     of crack cocaine?

19                   MR. PROCTOR:  No.

20                   THE COURT:  Mr. Purcell?

21                   MR. PURCELL:  I don't recall him being

22     asked that or saying that.

23                   Selling it, Your Honor, is what he

24     admitted to doing; and using marijuana, as I recall.

25                   THE COURT:  No, I don't think he did.

18

 1      That's correct, Mr. Proctor.  So I'll just word this
 2      as follows:  "There has been evidence introduced at
 3      trial that the government called as a witness a
 4      person who was using" -- I don't know if there's
 5      any -- I don't know, particularly in terms of events
 6      of September 20, 2009, that anyone said they were
 7      addicted.  But I think clearly there's evidence that
 8      people say they were using drugs when the events they
 9      observed took place.  I don't know that anybody said
10      they were addicted.

11              MR. PROCTOR:  When we get to the first
12      charge on the indictment, we have Jocelyn Hamlet, who
13      was a bad addict; Tracy Brandenburg, the nurse, who
14      was a bad addict.  When we talk about the killing of
15      Mr. Guest, we have someone who was physically rolling
16      marijuana.

17              THE COURT:  She didn't indicate she was
18      addicted, though.  I think here's the way to word
19      this.  I think part of the problem is with respect to
20      observing certain events.  I think we keep the
21      language, "addicted," in here.  But let me just word
22      it, I think, to fit the facts of this case.

23              "There has been evidence introduced at
24      the trial that the government called".

25              MR. PROCTOR:  I think it should be,

1      "witnesses".

2                  THE COURT:  "Called witnesses who were

3      using or addicted to drugs when the events about

4      which they testified took place".

5                  MR. PROCTOR:  "Or who are now using

6      drugs"?

7                  THE COURT:  "Or who are now using drugs,"

8      period.

9                  MR. PROCTOR:  Yes, sir.

10                 THE COURT:  So it doesn't just limit it

11     to the matter of observing.  Observing it would just

12     limit it to the events of September 20th.  I think

13     that covers your purpose there, Mr. Proctor.  Did you

14     get all that, Dan?

15                 And then we'll follow-up with the

16     boilerplate.  "I instruct you that there is nothing

17     improper by calling such witnesses to testify about

18     events within their personal knowledge".

19                 Again, "I instruct you that there is

20     nothing improper about calling such witnesses to

21     testify about events within their personal

22     knowledge," period.  And then the boilerplate would

23     continue, Dan, on this.  "On the other hand, their

24     testimony must be examined with greater scrutiny than

25     the testimony of any other witness.  The testimony of

1    witnesses who were using drugs at the time of the

2    events about which they testified or who may be using

3    drugs at the time of their testimony may be less

4    believable because of the effect the drugs may have

5    on their ability to perceive or relate to the events

6    in question," period.  "If you decide to accept their

7    testimony after considering it in the light of all of

8    the evidence in this case, then you may give that

9    testimony whatever weight, if any, you find it

10   deserves".  And that just follows along the basic

11   7-9.1.

12                Any objection from the government?

13                MR. PURCELL:  No, Your Honor.

14                THE COURT:  From the defense?

15                MR. PROCTOR:  No, sir.

16                THE COURT:  Okay.  And that satisfies

17   your purpose in that, Mr. Proctor?

18                MR. PROCTOR:  It does, thank you.

19                THE COURT:  All right.  Okay.  I think

20   we're now ready to move on to -- the next one I have

21   in my boilerplate is government witness not proper to

22   consider guilty pleas.  "You have heard testimony

23   from a government witness who pled guilty to charges

24   arising out of the same facts as this case".  I don't

25   know that that's applicable.  Did anybody testify --

1      did anybody testify who pled guilty as to the facts

2      as to this case?

3                   MR. PURCELL:  The only one who could be

4      construed that way, Your Honor, is Miss Curtis.  Who

5      is ostensibly part of the drug conspiracy and

6      ostensibly -- not ostensibly -- but, in fact, a

7      person who concealed the commission of the main

8      subject offense, which is Count 3, by her perjury in

9      the grand jury.  And then she pled guilty.  So I

10     don't think that's reaching on the part of the

11     instruction in her case.

12                  THE COURT:  In other words, basically

13     it's that she pled guilty to drug conspiracy charges?

14                  MR. PURCELL:  No.  She pled only to

15     perjury, Your Honor.  But it was in relation to this

16     entire investigation of this case.

17                  THE COURT:  All right.  It's a short

18     instruction.  I'll give it.

19                  MR. PURCELL:  Yes.

20                  THE COURT:  Any objection by the defense?

21                  MR. PROCTOR:  I don't have strong

22     feelings either way.

23                  THE COURT:  I'll give it --

24                  MR. PURCELL:  It benefits the defense,

25     actually.

```
 1                    THE COURT:  We'll keep it in.  All right.
 2        Then we have No. 24, impeachment by felony
 3        conviction, which will stay in.
 4                    Any objection by the government.
 5                    MR. PURCELL:  No, Your Honor.
 6                    THE COURT:  By the defense?
 7                    MR. PROCTOR:  No, sir.  But before we get
 8        to the next instruction, there is an additional one I
 9        would request.
10                    THE COURT:  All right.  The next
11        instruction being impeachment by prior inconsistent
12        statement.
13                    MR. PROCTOR:  Yes.
14                    THE COURT:  Okay.
15                    MR. PROCTOR:  The next instruction I
16        would request, I took it from Sand but I had to
17        modify it because it's different.  The Sand
18        instruction would be 7-15, Your Honor.
19                    THE COURT:  Okay.  One second.
20                    MR. PROCTOR:  But obviously we don't have
21        anybody in this case in witness protection.  So the
22        way I modified it is, "You have heard reference in
23        this trial that witnesses have been relocated.  Let
24        me explain it to you and how you may consider that
25        fact in evaluating credibility of the witness for
```

1    whom this was arranged.  If a witness' or his

2    family's safety is jeopardized by his willingness to

3    testify, the government is quite within its rights to

4    move the witness and his family to a new place to

5    live, provided the witness with a new identity, or

6    help secure a job in the new location.  The witness

7    may also receive money to get him or her get started

8    after he or she has moved.  These things are all done

9    to protect the witness in exchange for the risk the

10   witness has been willing to take by cooperating with

11   authorities.  You are instructed that you may

12   consider whether the fact that a witness has been

13   relocated creates a motive for the witness to testify

14   falsely against the accused.  You may ask yourself

15   whether the relocation is regarded by the witness as

16   a benefit, whether it creates an interest, and

17   whether the interest is more likely than not to

18   create a bias against the defendant.

19            "You are, however, cautioned that you may

20   not consider the reasons for the witness being

21   relocated in determining the guilt of the defendant

22   on trial.  There is no evidence that the witness'

23   relocation has anything to do with the defendant on

24   trial in this case, and it may not be considered in

25   any way by you except in helping you decide whether

1      to believe the witness and what weight, if any, to

2      give his testimony".

3              THE COURT:  That essentially is just

4      taken almost verbatim from 7-15.  You just modified

5      it to fit the facts of this case.

6              MR. PROCTOR:  Correct.  Because no one's

7      in witness protection.

8              THE COURT:  Any objection by the

9      government, Mr. Purcell?

10             MR. PURCELL:  Only the part where there's

11     a reference, Your Honor, to new identity and a job.

12     That's part of witness protection work.  That hasn't

13     happened here; hasn't happened here; hasn't been

14     generated.

15             THE COURT:  All right.  Please take out

16     the reference to new identify and help secure a job.

17     Because there's no evidence of any new identity or

18     jobs, Mr. Proctor.

19             MR. PROCTOR:  Agreed.

20             MR. PURCELL:  The part -- I don't have

21     the instruction.  I was sort of hoping we'd get the

22     benefit of these before we came in here.

23             MR. PROCTOR:  Would you like to look over

24     my shoulder?

25             MR. PURCELL:  I'd love to.  But there's a

1      part there --

2                  THE COURT:  Actually, Mr. Proctor, let me

3      continue.  All of that is fine.  But when I say

4      there's no evidence -- that there's no evidence that

5      his participation in the court has any bearing on the

6      defendant, that's not the case.  There's clear

7      testimony from the witnesses who thought that they

8      were afraid of Mr. Hall and that's why they were

9      relocated.

10                 MR. PURCELL:  I would just ask that that

11     statement be stricken.

12                 THE COURT:  I can't look at the jury and

13     say there is no evidence that the participation in

14     the relocation program has anything to do with the

15     defendant on trial.  Witnesses have specifically

16     testified of their fear of Mr. Hall and that's why

17     they wanted to be relocated.

18                 MR. PROCTOR:  Well, then, can't we say

19     words to the effect of, "The reason for their

20     relocation is not to be considered by you except in

21     helping you decide whether to believe the witness and

22     what weight if any"?

23                 MR. PURCELL:  I would object to that,

24     Your Honor.  Because the reason for the relocation,

25     it goes to their motive either way.  These people

 1    relocated, as the Court's noted.  They asked to be

 2    relocated to get away from the defendant.

 3              THE COURT:  I'm going to give what you

 4    have, Mr. Proctor.  I'm not giving that last

 5    sentence.  It will finish with, "You are, however,

 6    cautioned, that you may not consider the reasons for

 7    the witness being relocated in determining the guilt

 8    of the defendant on trial," and leave it at that.

 9    I'm not going to comment on the evidence up or down

10    on that.

11              Is that agreeable to the government?

12              MR. PURCELL:  That's fine.

13              THE COURT:  And your objection is noted

14    as to that, Mr. Proctor.  But that last sentence that

15    comes out of *Sand and Siffert* 7-15, you've correctly

16    modified it so it doesn't apply to the witness

17    protection program.  But to say there's no evidence

18    that his participation has nothing to do with the

19    defendant on trial, is simply not the case.  It's up

20    to the jury to judge the case.  We'll just leave it

21    alone and not go there one way or the other.  We'll

22    just end it with, "in determining the guilt of the

23    defendant on trial".

24              Mr. Proctor, we don't have a written

25    version of this.  And I think you're going to need to

1    take -- going to need to word through this again.

2               MR. PROCTOR:  I have a written version on

3    my computer which I'll be happy to e-mail.  I think

4    I'm committed --

5               THE COURT:  E-mail it to Mr. Sale and

6    that way he can print it out.  Okay.  All right.

7               Are we get ready to go to impeachment by

8    prior inconsistent statement?

9               MR. PROCTOR:  I've just taken the last

10   sentence out and I'm E-mailing it to Mr. Sale right

11   this minute.

12              THE COURT:  And the last sentence you

13   have is, "in determining the guilt of the defendant

14   on trial"?

15              MR. PROCTOR:  The last word is, "trial,"

16   yes.

17              MR. PURCELL:  Did you at the delete the

18   identification reference?

19              MR. PROCTOR:  No, I didn't.

20              THE COURT:  Also you should take out --

21   take out provide the witness with a new identity and

22   help secure a job in a new location.  There's no

23   evidence of that that's been done in this case.

24              MR. PROCTOR:  Done.

25              THE COURT:  Thank you, Mr. Proctor.

```
 1                   Now, are we ready to go to impeachment by
 2      prior inconsistent statement?
 3                   MR. PURCELL:  Yes.
 4                   THE COURT:  Any objection by the
 5      government?
 6                   MR. PURCELL:  No.
 7                   THE COURT:  By the defense?
 8                   MR. PROCTOR:  Can you give me one second
 9      to e-mail this before I get sidetracked, Judge?
10                   THE COURT:  Sure.
11                   MR. PROCTOR:  It's on its way.
12                   THE COURT:  Then impeachment by prior
13      inconsistent statement.  Also prior perjury.
14                   Any objection by the government?
15                   MR. PURCELL:  No, Your Honor.
16                   THE COURT:  By the defense?
17                   MR. PROCTOR:  No, sir.
18                   THE COURT:  Law enforcement witness.  Any
19      objection by the government?
20                   MR. PURCELL:  No, Your Honor.
21                   THE COURT:  Defense?
22                   MR. PROCTOR:  Nope.
23                   THE COURT:  Expert witness.  Right now
24      draft No.28; *Sand and Siffert* No. 2-1.  Any objection
25      by the government?
```

1          MR. PURCELL:  No, Your Honor.

2          THE COURT:  By the defense?

3          MR. PROCTOR:  No, sir.

4          THE COURT:  I had one here but that I

5     don't know that it is applicable.  Consciousness of

6     guilt and false exculpatory statements.

7          MR. PURCELL:  We agree it should be

8     stricken.

9          THE COURT:  Okay.  That will be taken

10    out.  Because there's no evidence of a false

11    exculpatory statement being made by Mr. Hall.

12          Then consciousness of guilt and

13    fabrication of alibi.

14          MR. PURCELL:  The same.

15          THE COURT:  That should be taken out.

16    That's not applicable.  And that will be taken out.

17          Consciousness of guilt from intimidation

18    of a witness.

19          MR. PURCELL:  Your Honor, there has been

20    testimony.  What you may wish to do is just modify it

21    a bit and just delete the title, which is sort of

22    leading.

23          THE COURT:  That's exactly what I was

24    going to do, Mr. Purcell.  Let me just run through

25    this where I think this goes, Mr. Proctor.  There has

1    been testimony that the defendant spoke to certain

2    witnesses after their appearance and discussions with

3    the government.  But I'm not going to label it

4    intimidation or coercion.  And I want to try to walk

5    through this a little bit in terms of an instruction

6    here.

7                "You have heard testimony that the

8    defendant spoke with witnesses after they were

9    interviewed by government officials," period.  And

10   then what I would propose to say is, "You may not

11   consider that evidence as substitute for proof of

12   guilt in this case".

13               Any objection by the government so far?

14               MR. PURCELL:  No.

15               THE COURT:  From the defense?

16               MR. PROCTOR:  No, sir.

17               THE COURT:  Then the next paragraph would

18   read -- and I'm sort of modifying *Sand and Siffert*

19   6-16.  And it won't be titled in any way.  "However,

20   if you find that the defendant" --

21               MR. PURCELL:  I would insert, "intended

22   to," Your Honor.

23               THE COURT:  "However, if you find that

24   the defendant intended to coerce or intimidate a

25   witness, you may but are not required to infer that

1    the defendant believed that he was guilty of" -- and

2    I'm going to put, "some of the crimes for which he is

3    charged," period.  Any objection by the government?

4                    MR. PURCELL:  No, Your Honor.

5                    THE COURT:  By the defense?

6                    MR. PROCTOR:  Yes, sir.

7                    THE COURT:  All right.  Just hold on.

8    Then the next paragraph will be, "Whether or not

9    evidence of" -- I think what I would just put is,

10   "Whether or not such evidence shows any consciousness

11   of guilt is for you, the jury, to decide".

12                    Any objection by the government?

13                    MR. PURCELL:  No, Your Honor.

14                    THE COURT:  All right.  The objection by

15   the defense, generally, Mr. Proctor?

16                    MR. PROCTOR:  Well --

17                    THE COURT:  I've modified it and not only

18   modified it, I've mollified it to some extent.  I'm

19   addressing those witnesses who spoke about Mr. Hall

20   contacting them after they had been interviewed.  I'm

21   not calling it -- it's up to them to determine

22   whether or not there was any intent to intimidate or

23   coerce.

24                    MR. PROCTOR:  Right.  And specifically my

25   objection is to, "If, however, you find that the

```
 1          defendant intended to coerce or intimidate," you
 2          know, I get why coercing or intimidating someone can
 3          show consciousness evidence of guilt.  That makes
 4          sense.  But to intend to coerce almost lessens the
 5          burden.  Like that person doesn't even have to be
 6          intimidated or coerced, as long as Mr. Hall --
 7                    THE COURT:  Well, that's true.
 8                    MR. PROCTOR:  -- that was his intent.
 9                    THE COURT:  It isn't a matter of whether
10          the person was or was not intimidated or coerced
11          under the law, Mr. Proctor.  It just has to do with
12          the consciousness of guilt on the part of a
13          defendant.  So your objection is noted as to that and
14          I'm going to word it exactly as I've just had it.
15          And I've essentially lessened the severity of the
16          language in 6-16.  It will not be entitled,
17          "consciousness of guilt from intimidation of a
18          witness," nor is it going to be -- I'm not going to
19          refer to evidence specifically that he attempted to
20          intimidate or coerce.  I think we've modified it
21          sufficiently.  But your objection as to that is
22          noted.  But it clearly is supported by evidence in
23          the case as to testimony of witnesses to address how
24          the jury would treat that.
25                    All right.  Next instruction, publicity
```

1    reminder, any objection by the government?

2               MR. PURCELL:  No, Your Honor.

3               THE COURT:  By the defense?

4               MR. PROCTOR:  No, sir.

5               THE COURT:  Then introduction to the

6    charges.  Any objection as to my just essentially

7    summarizing the charges of Count 1, the conspiracy;

8    and then the elements going up through what is now

9    marked as instructions up through Instruction 39.

10   Any objection by the government?

11              MR. PURCELL:  No, Your Honor.

12              THE COURT:  By the defense?

13              MR. PROCTOR:  Just one second.

14              THE COURT:  It's just the conspiracy

15   charge and then the elements.

16              MR. PROCTOR:  Well, I guess that would be

17   where the multiple conspiracy instruction would go?

18              THE COURT:  Well, I'll get there.  This

19   is the -- I've read the conspiracy charge and the

20   elements; okay?  And now we're going to discussion

21   whether there should be an instruction on multiple

22   conspiracies.

23              MR. PROCTOR:  No objection thus far.

24              THE COURT:  All right.  So we're there at

25   that point.  You don't object to what I have here.

1     But now you're asking that I give a multiple

2     conspiracy instruction.  And I'll be glad to hear

3     from you, Mr. Proctor.  What is the evidence of

4     multiple conspiracies?

5              MR. PROCTOR:  First, if you can give me a

6     second, I'm going to find the *Sand* instruction on it.

7              It's 19-5 is the *Sand* instruction on it,

8     Your Honor.

9              THE COURT:  Give me a second.  The

10    request is for *Sand and Siffert* 19-5 on multiple

11    conspiracies.

12             MR. PROCTOR:  The first paragraph of the

13    instruction is the defendant's claim -- and I'm

14    paraphrasing -- that there were several separate and

15    independent conspiracies with various groups of

16    members.  You know, the testimony has been that, when

17    you drive up to Westport in Annor Court, there are

18    many people out hustling.  Lots of people said Mr.

19    Hall was selling by himself.  You heard the testimony

20    from Miss Brandenburg that, you know, she was buying

21    from someone else up the street and Mr. Hall got so

22    mad.  I mean, if that's not a multiple conspiracy, I

23    don't know what it is.

24             He threw a trash can through her window

25    because she bought from somewhere else.  That's

 1      testimony that there isn't a partnership in crime.

 2              Miss Hamlet, Mama, who you heard from

 3      said lots of different people were coming over to her

 4      house to package their goods.  So all of that is --

 5      and the question is not whether the jury's going to

 6      find it beyond a reasonable doubt.  The question is,

 7      is there enough evidence generated to get an

 8      instruction on it.  And so for those reasons -- and,

 9      you know, several government witnesses came in and

10      said:  I was selling my drugs; he may or may not have

11      been selling his drugs; we didn't combine our pool;

12      you know, I don't know where he sold his.

13              Officers testify to seeing him in

14      different areas with different people at different

15      times.  So for all of those I think it at least gets

16      to a jury.

17              THE COURT:  All right.  Let me read to

18      you what *Sand and Siffert* has here, Mr. Proctor, with

19      respect to the matter of multiple conspiracies.  In

20      *Sand and Siffert* it's noted that, "Generally speaking

21      this instruction is appropriate in cases where a

22      number of defendants have been collectively charged

23      in the indictment with participation in a single

24      overall conspiracy but where there is a basis for the

25      defense to claim that multiple conspiracies existed.

1        Case law indicates and suggests that the recommended

2        charge is not appropriate in the trial of a single

3        defendant".

4                And the cases cited there in *Sand and*

5        *Siffert* are *United States v. Anguiano*,

6        A-n-g-u-i-a-n-o, 873 F.2d 1304, a Ninth Circuit

7        opinion in which certiorari was denied by the Supreme

8        Court at 493 U.S. 968, a 1989 opinion.

9                Also, the Third Circuit, *United States v.*

10       *Corey*, 566 F.2d 429, Second Circuit opinion, 1977.

11               And the note here in *Sand and Siffert*

12       indicates that.

13               So really the *Sand and Siffert* language

14       doesn't support your argument in this matter, Mr.

15       Proctor.  And the government has submitted an e-mail,

16       a copy of which went to you, in terms of the cases

17       from the Fourth Circuit on this.  And the Fourth

18       Circuit last year in *United States v. McNeill*, 372

19       Fed. Appx. 420, a Fourth Circuit opinion, 2010,

20       essentially has noted that this multiple conspiracy

21       instruction is not required unless the proof at trial

22       demonstrates that the defendant was involved only in

23       separate conspiracies unrelated to the overall

24       conspiracy.

25               There is just not -- you can certainly

1      argue that; you can certainly argue that there's no

2      indication of a conspiracy; that it's just a punch of

3      people selling drugs on the street.  That's a

4      perfectly appropriate argument to make that you can

5      deal with in terms of arguing that the government

6      hasn't met its burden as to the conspiracy charge

7      here.  But the Fourth Circuit in *Squillacote*, if I'm

8      pronouncing it correctly, *United States v.*

9      *Squillacote,* S-q-u-i-l-l-a-c-o-t-e, 221 F.3d 542, the

10     Fourth Circuit opinion specifically noted that a

11     multiple conspiracy charge is required only when the

12     proof at trial demonstrates that the defendant was

13     involved only in separate conspiracies unrelated to

14     the overall conspiracy.

15             I don't think -- there's no evidence that

16     would warrant the submission of this instruction,

17     even given the argument that you certainly can make

18     to the jury on this.  And in *United States v. Babb*,

19     as the government has noted, another opinion of the

20     Fourth Circuit last year, 369 Fed. Appx. 503, a

21     Fourth Circuit opinion, 2010, it's essentially the

22     Fourth Circuit found that a district court need not

23     instruct a multiple conspiracy each time it's

24     requested but it should only give a multiple

25     conspiracy instruction if the instruction is

1    supported by the facts.  And that's *United States v.*

2    *Mills*, 995 F.2d 480, Fourth Circuit 1993.

3               Essentially, what the thrust of these

4    cases is, is that if it demonstrates that there was

5    actually involvement by the defendant in separate

6    conspiracies, again, the Fourth Circuit has required

7    there has to be some proof at trial to indicate the

8    defendant's involvement in separate conspiracies.

9    There's no evidence that has been presented by the

10   defense that he is involved in other separate

11   conspiracies.

12              The argument that, well, a lot of people

13   are selling drugs on the street in Westport and some

14   may or may not be related to the defendant is a

15   perfectly legitimate argument to make in light to the

16   instruction I'm giving the jury to attack the

17   government's case.  But it doesn't rise to a multiple

18   conspiracy instruction, either under the notes to the

19   *Sand and Siffert* pattern instruction 19-5, or in

20   light of Fourth Circuit case law.

21              So for the reasons I've indicated on the

22   record, the defendant's request for a multiple

23   conspiracy instruction will be denied.  But that has

24   been preserved on the record here in the case, Mr.

25   Proctor.

1          MR. PROCTOR:  Thank you, sir.

2          THE COURT:  Now, then, the next

3     instruction is amount of controlled substance.  And,

4     Mr. Purcell, as to this, this seems awfully contorted

5     and long in terms of the matter of the amount of the

6     controlled substance here.  We need to shorten this

7     somehow.  Because, really, in terms of the -- Count 1

8     of the indictment charges a conspiracy to possess

9     with intent to distribute 240 grams of cocaine,

10    correct?

11         MR. PURCELL:  Yes, Your Honor.

12         THE COURT:  All right.  And the defense

13    is clearly going to attack that in terms of exactly

14    what proof there was of the amount of cocaine that

15    was actually -- as to which there was testimony.  And

16    we have to come to either a shorter instruction on

17    this or any instruction at all.  What is the

18    government's suggestion on this?  And then I'll hear

19    from the defense.

20         MR. PURCELL:  I wasn't aware that you

21    wanted this reduced.  So let me look at it as we're

22    sitting here, Your Honor.

23         The reality with this, it's an important

24    instruction and it does sort of set out the vicarious

25    liability of a co-conspirator.  And there are

```
 1        instances of the defendant getting large bulks of

 2        cocaine and keeping some, giving some to others.  And

 3        that's -- that would be attributable to him, and the

 4        instruction explains that.  I don't know really how

 5        to --

 6                   THE COURT:  Let me -- we're going to

 7        retrieve 56-12, the Sand and Siffert instruction.  I

 8        think my law clerk is retrieving it now.  And we'll

 9        try to work through this.

10                   While we're waiting on this, if you'll go

11        to No. 40 -- what is now numbered No. 40 -- actually,

12        the Sand and Siffert instruction --

13                   MR. PROCTOR:  That's 56?

14                   THE COURT:  56.  56-12.

15                   I see Mr. Purpura is here in the

16        courtroom.  Nice to see you, Mr. Purpura.

17                   MR. PURPURA:  Always a pleasure.

18                   THE COURT:  We may need your expertise on

19        these here.  Just nice to see you.

20                   MR. PROCTOR:  He came at just the most

21        thrilling moment of the trial.

22                   THE COURT:  I know.  This is always very

23        thrilling.  It's a sign of a good lawyer that wants

24        to watch a charge conference.

25                   I think the next -- we have definition of
```

```
 1    distribution, Instruction No. 39.  No objection by

 2    the government or the defense, right?

 3              MR. PROCTOR:  Correct.

 4              THE COURT:  And then what I think what we

 5    do is we invert, then.  41 should come before 40.  It

 6    will be intent to distribute.

 7              Any objection as to 41, intent to

 8    distribute, from the government.

 9              MR. PURCELL:  No, Your Honor.

10              THE COURT:  From the defense?

11              MR. PROCTOR:  No, sir.

12              THE COURT:  All right.  So we'll make

13    that -- that would come first as Sand and Siffert

14    handles it.  And then, after the intent to distribute

15    instruction, we then get to the issue of amount of

16    drugs under 56-12.

17              MR. PURCELL:  Your Honor, if you just

18    want to reduce the words, we could make it -- like

19    when we get to the part where it says, "First," you

20    could just -- I'm just suggesting this as a way to

21    reduce the words the Court has to state, but keep the

22    thrust.  You could say:  First, the defendant is

23    accountable for that which he personally distributed,

24    semicolon; which he attempted or planned to

25    distribute or expressed an intent to distribute,
```

1    semicolon.  Then go down to 3:  Which another member

2    of the conspiracy distributed or possessed with

3    intent to distribute, so long as it was reasonably

4    foreseeable to the defendant, or -- and then go to

5    fourth, or, or, "and," I should say -- any other

6    member -- drugs which any other member attempted or

7    planned to distribute or possess with intent to

8    distribute, as long as it's foreseeable to the

9    defendant.  You could reduce the rest of it and just

10   run it together.

11              THE COURT:  All right.  The *Sand and*

12   *Siffert* instruction refers to the three elements just

13   described earlier which has to do with -- the *Sand*

14   *and Siffert* instruction is like one paragraph on

15   amount of drugs.  It isn't two and a half pages.

16              MR. PROCTOR:  I have it right in front of

17   me, Judge.

18              You can look over my shoulder, Mr.

19   Purcell.

20              MR. PURCELL:  Fine.

21              THE COURT:  Very much shorter.  It just

22   seems to me we go through what we've gone through in

23   terms of intent to distribute --

24              MR. PURCELL:  Your Honor, I'll go with

25   *Sand and Siffert*.

43

```
1              THE COURT:  Okay.  And then we have --
2    then we have -- it seems to me, we need the guilty of
3    substantive offense, 42 as well, correct?  And then
4    we do amount of drugs after that.
5              MR. PROCTOR:  Mr. Purcell, I believe, is
6    --
7              MR. PURCELL:  The thing is the Sand and
8    Siffert 56-12 doesn't direct the jury as to which
9    drugs could be attributed to him.  It just basically
10   says -- that's just the quantity.  That's just a
11   special verdict form.  That has nothing to do with
12   how you consider what drugs can be attributed to the
13   defendant.  That is simply what we'll get to
14   following this instruction, which is you'll be given
15   a special verdict form.  That doesn't address --
16             THE COURT:  We agree on Count 1, intent
17   to distribute.  And then --
18             MR. PURCELL:  Right.  What he's looking
19   at is just a quantity instruction.  That is, you are
20   directed to find quantity, which is actually part of
21   --
22             THE COURT:  Let me ask you this:  First
23   of all, as to Count 1, intent to distribute, and then
24   we get to the amount of drugs, let's just go right
25   with that.  On the amount of the drugs, the amount of
```

1    the controlled substance, it will read as follows --

2    let me just walk through this.

3              "If you find that the government has

4    proven the defendant guilty of the conspiracy charged

5    in Count 1, that is, that the alleged conspiracy

6    existed and that the defendant knowingly and

7    intentionally became a member of the conspiracy, then

8    you must determine beyond a reasonable doubt what

9    type and quantity of controlled substances are

10   attributable".

11             Are they determining type here?

12             MR. PURCELL:  No, Your Honor.

13             THE COURT:  They're just determining

14   quantity.

15             MR. PURCELL:  No, Your Honor.

16             THE COURT:  So type is out.  "You must

17   determine beyond a reasonable doubt what quantity of

18   controlled substances are attributable to the

19   defendant".

20             Any objection so far, Mr. Proctor?

21             MR. PROCTOR:  No, sir.

22             THE COURT:  All right.  "In determining

23   what quantity of controlled substances is

24   attributable to the defendant, you should consider

25   the following facts:  First, a defendant is

```
1    accountable for any quantity of drugs which he
2    personally distributed or possessed with intent to
3    distribute.  Second, a defendant is also accountable
4    for any quantity of drugs which he attempted or
5    planned to distribute or possessed with intent to
6    distribute.  Third, a defendant is also accountable
7    for any quantity of drugs which another member of the
8    conspiracy distributed or possessed with intent to
9    distribute as part of the conspiracy, so long as it
10   was reasonably foreseeable to the defendant that such
11   quantity of drugs would be involved in the conspiracy
12   which he joined.  Fourth, a defendant is also
13   accountable for any quantity of drugs which another
14   member of the conspiracy attempted to or planned to
15   distribute or possessed with intent to distribute, so
16   long as it was reasonably foreseeable to the
17   defendant," period.
18           And then I think what we do is then we
19   just have, "Your findings about the quantity of
20   controlled substances attributable to the defendant
21   will be noted on the verdict form which I will
22   discuss in a moment".
23           And then I leave it at that.
24           MR. PURCELL:  There's a really simple
25   paragraph, the present Page 54, Paragraph 2, has a
```

1     very simple explanation.  It says, "If your answer is

2     guilty as to the defendant, you will be asked to

3     determine the amount of crack cocaine involved in the

4     conspiracy".

5             And then you could actually take out,

6     "there was 280 grams or more," because they're going

7     to make a more than single determination.

8             THE COURT:  All right.  Then, "Your

9     findings about the controlled substance attributable

10    to the defendant will be noted on the verdict form

11    which I will discuss in a moment.  If your answer is

12    guilty as to the defendant, you will be asked to

13    determine the amount of crack cocaine involved in the

14    conspiracy," period.

15            Any objection, Mr. Proctor?

16            MR. PROCTOR:  Mr. Hall has an objection.

17            THE COURT:  What is the objection?  I'm

18    sorry.  Just verbalize what it is.

19            MR. PROCTOR:  We can probably wait until

20    we get to the verdict form.

21            THE COURT:  You mean, as to the verdict

22    form?

23            MR. PROCTOR:  Yes.

24            THE COURT:  Okay.  Then that instruction

25    will be given.  Do you have the sheet right there in

1    front of you?  What we're doing is we are -- I'll

2    read it and you can just highlight it as to what it's

3    going to say.

4            "If you find that the government has

5    proven the defendant guilty of the conspiracy charged

6    in Count 1, that is, that the alleged conspiracy

7    existed and that the defendant knowingly and

8    intentionally became a member of the conspiracy, then

9    you must determine beyond a reasonable doubt what

10   quantity of controlled substances" -- why don't we

11   just say, "cocaine"?  Isn't that what we're talking

12   about?  Crack cocaine?

13           MR. PURCELL:  Cocaine base, yes, Your

14   Honor.

15           THE COURT:  Crack cocaine?

16           MR. PURCELL:  They do have to make that

17   finding.  We can't presume for them that it is crack

18   cocaine.

19           THE COURT:  All right.  "What quantity of

20   controlled substances are attributable to the

21   defendant.  In determining what quantity of

22   controlled substances is attributable to the

23   defendant is, you should consider the following

24   factors".

25           Are you with me so far, Dan?

1          THE DEPUTY CLERK:  Yes.

2          THE COURT:  "First, a defendant is

3    accountable for any quantity of drugs which he

4    personally distributed or possessed with intent to

5    distribute.  Second, a defendant is also accountable

6    for any quantity of drugs which he attempted to

7    distribute or possessed with intent to distribute".

8          The rest of that is knocked out.  Then we

9    have, "Third, a defendant is also accountable for any

10   quantity of drugs which another member of the

11   conspiracy distributed or possessed with intent to

12   distribute as part of the conspiracy, so long as it

13   was reasonably foreseeable to the defendant that such

14   quantities of drugs would be involved in the

15   conspiracy which he joined.  Fourth, a defendant is

16   also accountable for any quantity of drugs which

17   another member of the conspiracy attempted or planned

18   to distribute or possessed with intent to distribute,

19   so long as it was reasonably foreseeable to the

20   defendant," period.

21         Then the rest of that paragraph and the

22   whole next paragraph are out.  And then it will be,

23   "Your findings about the quantity of controlled

24   substances attributable to the defendant will be

25   noted on the verdict form which I will discuss in a

1   moment".  And then the rest of it's knocked out.  And

2   we'll just finish with, "If your answer is guilty as

3   to the defendant, you will be asked to determine the

4   amount of crack cocaine involved in the conspiracy".

5   Okay.  Did you get all that?

6                    THE DEPUTY CLERK:  Yes.

7                    THE COURT:  Okay.  Then the intent to

8   distribute will come before that.  41 and 40 are

9   inverted, Dan.  40 is approved by both side but it

10  will come before that.

11                   Then we have with respect to guilty of

12  substantive offense.

13                   MR. PURCELL:  You may strike that, that

14  Your Honor.

15                   THE COURT:  I don't think that's

16  applicable.  Because the conspiracy for drugs has

17  nothing to do with 3, 4, and 5.  Well, the overt acts

18  are part of the actions as to 3, 4, and 5.  But the

19  matter of the substantive offense of 3, 4, and 5 is

20  confusing.  I think this confuses the jury and I'm

21  going to strike out the guilty of the substantive

22  offense.

23                   Then Count 3, retaliation by killing

24  informant slash witness.  I summarize Count 3.  And

25  then I go into federal investigation need not be

```
1     pending, and killing with intent to retaliate, and

2     malice aforethought, and premeditation, and statutory

3     purpose.

4               Any objections from the government?

5               MR. PURCELL:  No, Your Honor.

6               THE COURT:  From the defense?

7               MR. PROCTOR:  No, sir.

8               THE COURT:  And then Count 4, the

9     indictment and the statute.  I read Count 4, and then

10    I go over the elements of the offense thereafter.

11    And then the elements, as well, through what is now

12    marked as 53 -- up through 52.  Any objection by the

13    government?

14              MR. PURCELL:  No, Your Honor.

15              THE COURT:  By the defense?

16              MR. PROCTOR:  No, sir.

17              THE COURT:  Then we're up to what is now

18    draft 53.  Count 5 charges the defendant with

19    unlawful possession of ammunition.  Any objection by

20    the government?

21              MR. PURCELL:  No, Your Honor.

22              THE COURT:  By the defense?

23              And, as to 54, the elements of the

24    offense, any objection by the government.

25              MR. PURCELL:  No, Your Honor.
```

```
1              THE COURT:  By the defense?

2              MR. PROCTOR:  No, sir.

3              THE COURT:  Mr. Purcell, let me just ask:

4    The aiding and abetting is only charged as to Count

5    5; is that right?  Let me check the indictment here.

6              MR. PURCELL:  Your Honor, I think we can

7    strike aiding and abetting.

8              THE COURT:  It's very confusing.  And I

9    don't see any evidence -- I mean, it's just a

10   question of what witnesses the jury believes and

11   looking at --

12             MR. PURCELL:  Your Honor, it was inserted

13   in anticipation of a possible defense that didn't

14   emerge.  So we can strike it.

15             THE COURT:  All right.  I'm just

16   verifying, the way it was returned by the grand jury,

17   the grand jury charged straight conspiracy, 21 U.S.C.

18   Section 846, as to Count 1.  Count 2, that's been

19   dropped out of the case.  Count 3; Count 3 charges

20   the defendant with the murder of Kareem Guest and the

21   statutory violations.  And it also references aiding

22   and abetting on that count.  But it just doesn't fit

23   the facts of the case.  Either the jury does or does

24   not believe witnesses.  There's no indication of

25   some -- of Mr. Hall aiding and abetting somewhere
```

1    else.

2                    MR. PURCELL:  I'm withdrawing it.  Thank

3    you.

4                    THE COURT:  So it's withdrawn.  And,

5    well, I guess my point is, is that the jury can't

6    find him guilty of Counts 3, 4, and 5 by aiding and

7    abet willing.  He's either guilty of it or he's not,

8    correct?

9                    MR. PURCELL:  Well, we're not asking for

10   an instruction on it, no.

11                   THE COURT:  I'm sorry?

12                   MR. PURCELL:  We're not asking for an

13   instruction on it, no, under that theory.

14                   THE COURT:  All right.  That's fine.

15   It's just --

16                   MR. PURCELL:  Our theory, obviously, is

17   that he is the principal actor.

18                   THE COURT:  Sure.

19                   MR. PROCTOR:  Certainly we won't be

20   arguing that he drove the getaway car.

21                   THE COURT:  Counts 3, 4, and 5 have

22   referenced aiding and abetting.  But that's another

23   example of why I don't send the indictment in.  They

24   don't see that.  I summarize.  So we're taking --

25                   MR. PURCELL:  There were scenarios where

CHARGE CONFERENCE

53

1      aiding and abetting and even the *Pinkerton* theory

2      could have been applicable, but they weren't

3      generated.

4                  THE COURT:  All right.  So Instruction

5      No. 58 is going to be taken totally out.  There's not

6      going to be any discussion of aiding and abetting.

7                  And then we're up to the matter of Count

8      5, Instruction 55, the elements of the offense.

9                  First two paragraphs at 55 are

10     satisfactory to the government?

11                 MR. PURCELL:  Yes, they are, Your Honor.

12                 THE COURT:  To the defense?

13                 MR. PROCTOR:  Yes, sir.

14                 THE COURT:  All right.  Then I'm going to

15     take out the description of the first element,

16     because I'm going to indicate -- that third paragraph

17     will come completely out.  Because the next comment

18     will be, "I instruct you in this connection that the

19     prior conviction that is an element of the charge

20     here and is not disputed is only to be considered by

21     you for the fact that it exists and not" -- we have a

22     typo there, Dan.  "Is only to be considered by you

23     for the fact that it exists and not for any other

24     purpose on which I specifically instruct you".

25                 MR. PURCELL:  Your Honor, I just lost you

1       there for a second.

2                   THE COURT:  I'll read the whole thing.

3       This is how it will be worded in terms of the first

4       element, prior conviction.  "The first element the

5       government must prove beyond a reasonable doubt

6       before you can convict is that before the date the

7       defendant was charged with possessing the ammunition

8       the defendant had been convicted of a crime

9       punishable by imprisonment for a term exceeding one

10      year.  The parties have stipulated that the defendant

11      was convicted of a crime in state court and that this

12      crime is punishable by a term exceeding one year.  It

13      has also been stipulated that this felony conviction

14      occurred prior to the time that the defendant is

15      alleged to have possessed the ammunition charged in

16      the indictment.  You may thus accept this fact and

17      not require the government to produce any further

18      proof upon the matter.  I instruct you in this

19      connection that the prior conviction that is an

20      element of the charge here and is not disputed is

21      only to be considered by you for the fact that it

22      exists and not for any other purpose on which I

23      specifically instruct you.  Beyond my specific

24      instructions, you are not to consider it for any

25      other purpose".

55

```
 1                    Satisfactory to the government?

 2                    MR. PURCELL:  Yes, Your Honor.

 3                    THE COURT:  To the defense?

 4                    MR. PROCTOR:  Yes, sir.

 5                    THE COURT:  All right.  And then the

 6       second element, the elements of this.  And I assume

 7       there's no objection to those remaining elements; is

 8       that correct?

 9                    MR. PURCELL:  Correct, Your Honor.

10                    THE COURT:  Correct, Mr. Proctor?

11                    MR. PROCTOR:  I don't see a basis for

12       joint possession.  There is an instruction in

13       there --

14                    THE COURT:  Hold on a second.  We'll get

15       there.  I'm just going through the elements of the --

16       I see.  Wait a minute.

17                    MR. PURCELL:  Last paragraph.

18                    THE COURT:  Good point, Mr. Proctor.  I

19       think that that paragraph on sole or joint possession

20       can be taken out.  That will come out.  Are you with

21       me on that, Dan?

22                    And then the last paragraph will stay in.

23       So we've taken that out, Mr. Proctor.  Anything

24       further on that?

25                    MR. PROCTOR:  No, sir.
```

```
 1                   THE COURT:  And they be we're taking out

 2       aiding and abetting.

 3                   And then duty to consult and need for

 4       unanimity.

 5                   MR. PROCTOR:  I have no objections to

 6       anything from here on out, Judge.

 7                   THE COURT:  All right.  And then I'm

 8       going to appoint Juror No. 1.  I would note that

 9       Juror No. 1 is the African-American woman sitting

10       here right in seat No. 1; she's been very attentive.

11                   Actually, the record should reflect that

12       we have a very racially diverse jury here.  We have

13       essentially seven African-Americans and five white

14       jurors here.  And Juror No. 1 is one of seven

15       African-American jurors.  And she's been very

16       attentive and I would just have her be the

17       foreperson.

18                   Is there any objection from the point of

19       view of the government?

20                   MR. PURCELL:  No, Your Honor.

21                   THE COURT:  From the defense?

22                   MR. PROCTOR:  No, sir.

23                   THE COURT:  All right.  So she will be

24       the foreperson.

25                   Is there anything further from the point
```

```
 1          of view of the government before we get to the

 2          verdict sheet?

 3                    MR. PURCELL:  No.  Thank you for your

 4          time, Your Honor.

 5                    THE COURT:  All right.  Anything further

 6          from the defendant?

 7                    MR. PROCTOR:  No, sir.

 8                    THE COURT:  As to the verdict sheet, we

 9          have Count 1, "Conspiracy to distribute and

10          possession with intent to distribute crack cocaine,

11          not guilty or guilty".  And then we have, "If guilty,

12          please indicate the quantity of crack cocaine that

13          was involved.  280 grams or more.  If you found 280

14          grams or more, proceed to Count 3, otherwise

15          continue.  28 grams or more.  If you found 28 grams

16          or more, proceed to Count 3, otherwise continue".

17          Then, "Less than 28 grams".

18                    Any objection to that from your point of

19          view, Mr. Proctor?

20                    MR. PROCTOR:  Yes.

21                    THE COURT:  What is your objection?

22                    MR. PROCTOR:  Mr. Hall would object.  His

23          position is the first charge on the indictment is

24          that he did unlawfully distribute and possess with

25          intent to distribute 280 grams or more of a mixture
```

1      of cocaine base.  And he would request a verdict form

2      that says:  Do you find Mr. Hall guilty or not guilty

3      of possessing with intent to distribute, unlawfully

4      distribute, 280 grams or more of crack and leave it

5      at that.  We don't want the 28 grams in there.  We

6      don't want the less than 28 grams in there.  We would

7      just request that.

8              THE COURT:  And that will be denied.

9      This has a statutory significance, as I think all

10     counsel recognize.

11             So, Mr. Hall, they're going to determine

12     whether -- if they find you not guilty on this, they

13     don't even get to drug quantity.  That's just done.

14     They can just check not guilty.  If they find you

15     guilty, we need to make a determination of the drug

16     quantity in this case.

17             The indictment charged 280 grams.  The

18     indictment could have charged any figure.  But the

19     matter of the drug quantity is important for the jury

20     to determine for sentencing purposes in the event

21     that you were to be convicted.

22             Is there any objection to the rest of the

23     verdict sheet, Mr. Proctor?

24             MR. PROCTOR:  No.

25             THE COURT:  All right.  Okay.  The rest

59

1    of it is not guilty or guilty.

2             Mr. Purcell, let me just clarify this.

3    You have guilty or not guilty on Count 3, retaliation

4    by murder of Kareem Kelly Guest.  And then, "If

5    guilty, please continue, otherwise proceed to Count

6    5".  And then, with respect to whether he's guilty or

7    not, it's whether or not it's first degree

8    premeditated murder, correct?

9             THE WITNESS:  Yes, Your Honor.  Because

10   that's an aggravated form.  They would have to make a

11   special finding.

12            THE COURT:  I understand.  Okay.

13            MR. PROCTOR:  And, Judge, you know,

14   obviously if they tick no to that, by default it's

15   second degree.  I think we tell them in the

16   instruction all other types of murder are second

17   degree.

18            THE COURT:  I don't think we want to go

19   back on this.  I think we've covered it in the

20   instruction.

21            MR. PURCELL:  We don't need to go back.

22            THE COURT:  But I understand the legal

23   significance of it; so that's fine.  The point is, is

24   that they can find him guilty of retaliation by

25   murder of Kareem Kelly Guest, but find that it's not

1      premeditated murder, and he's still guilty of Count

2      3.  But it's not an aggregating factor.

3                  MR. PURCELL:  That's correct, Your Honor.

4                  THE COURT:  The aggravating factor, is

5      that the factor that triggers mandatory life

6      imprisonment?

7                  MR. PURCELL:  It triggers -- it refers to

8      the penalty under 1111, which is life imprisonment.

9                  THE COURT:  Right.  And then Count 4, use

10     and discharge of a firearm, relation to a crime of

11     violence, and possession of ammunition by a

12     prohibited person.

13                 All right.  With that, I think we've

14     conducted the charge conference and we're finished on

15     that.  We're ready to finalize these instructions.

16     You'll have copies of them and you certainly can make

17     reference to them in your closing arguments.

18                 How long do you think Mr. Fuchs will be

19     in his closing argument?

20                 MR. PURCELL:  45 minutes or so.

21                 THE COURT:  45 minutes.  How long do you

22     think you'll be Mr. Sullivan?

23                 MR. SULLIVAN:  Approximately 45 minutes.

24                 THE COURT:  Okay.  All right.  And then

25     what I think is, is that would take us up to -- well,

61

```
1     if we're right on schedule, that would take us up to
2     12:30.  How long would rebuttal be, Mr. Purcell?
3                   MR. PURCELL:  25 minutes.
4                   THE COURT:  I understand.  So we might be
5     looking at going up to 1 o'clock for argument and
6     then let them break for lunch and then hear my
7     instructions after lunch.
8                   I mean, we'll just have to wait and see.
9     Because I can't -- these instructions are long enough
10    they're going to take 45 minutes, probably, to read.
11    They'll be pretty hungry by a quarter to 2.  So we'll
12    just wait and see how it plays out.
13                  So, with that, we have -- Dan, do you
14    want to take the verdict sheet and these forms from
15    me?
16                  Yes, Mr. Sullivan?
17                  MR. SULLIVAN:  Just one ministerial
18    matter.  Government Exhibit 192 is the Rain Curtis
19    plea agreement.  At the time that it was entered into
20    evidence, consistent with the practice usually in
21    this district, Attachment A of the stipulation of
22    facts was not included in government Exhibit 192.
23                  Remember the discussion yesterday with
24    Mr. Jones and we included the statement of facts for
25    Mr. Jones into the plea agreement.  I've asked Mr.
```

```
1    Purcell, he has no objection, if we attach Attachment
2    A, the statement of facts in the Rain Curtis guilty
3    plea to that.  So I'd like --
4              THE COURT:  Any objection by the
5    government?
6              MR. PURCELL:  No, Your Honor.
7              THE COURT:  All right.  That will be
8    included.  Ordinarily the statement of facts is not
9    included in the plea agreement.  But as to the
10   cross-examination of those respective witnesses, it
11   will be admitted.
12             So I think that we are ready to proceed
13   to closing argument at 11 o'clock.  And I'll see you
14   all back here in court at 11 o'clock.  And you'll
15   need a podium here, Miss West will get the podium out
16   for you here.
17             And, Counsel, if you can, as you, if you
18   refer to the easel, if you can have it behind you so
19   it's not blocking my vision with the jury.  Because I
20   need to see the jury.  So if you can do that, that
21   will be helpful.  And with that we'll take a 15
22   minute recess.
23             (BRIEF RECESS.)
24             (JURY IN.)
25             THE COURT:  Good morning, everyone.
```

1      Apparently Juror No. 2 was late arriving.  So now

2      she's here and we're ready to proceed to closing

3      argument.  Is the government prepared?

4                  MR. FUCHS:  We are.

5                  MR. SULLIVAN:  We are.

6                  Can we approach the bench?

7                  THE COURT:  Certainly.

8                  (BENCH CONFERENCE ON THE RECORD.)

9                  MR. SULLIVAN:  Your Honor, I want to make

10     sure Mr. Hall is listening.

11                 Your Honor, Mr. Hall at the break and I

12     were talking about the statutory scheme under 21.841

13     I vis-a-vis what his objection was earlier to the

14     verdict sheet.  And he wanted me to put on the

15     record, which I'm happy to do so, that me and Mr.

16     Proctor do not go into the nuances of the statutory

17     sentencing schemes under 841 and how Congress has set

18     quantities and types of drugs as penalties.  And that

19     he is concerned about that; that we didn't tell him

20     that.

21                 And I think the theory would be that, if

22     we had advised him of that, somehow he would have

23     entered a plea to the lower drug amounts,

24     notwithstanding the government probably would have

25     never offered him --

```
1                    THE COURT:  It was never on the table.

2       Was that ever your offer, Mr. Purcell?  So it's of no

3       moment.

4                    MR. SULLIVAN:  I told him I would advise

5       the Court.

6                    THE COURT:  I'm fully satisfied that the

7       defendant was fully advised of his options.

8                    Thank you very much.

9                    (END OF BENCH CONFERENCE.)

10                   THE COURT:  Good morning, everyone.

11      We're ready to proceed and we have closing arguments.

12      And have they filled out their lunch menus?  Lunch is

13      on the way for you all.  Sit back and relax now and

14      we'll hear closing argument on in the case.  Mr.

15      Fuchs for the government.

16                   MR. FUCHS:  Ladies and gentlemen.  For

17      Kareem Guest, September 20, 2009 started like any

18      other day.  As you heard, he woke up that day at his

19      mom's house in Westport; he spent the day at his

20      friend's house; picks up the bedroom for his

21      daughter, who lived over on Wilgrey Court.  At about

22      10 p.m. that night, he was walking down Maisel Court

23      on his way to see her, and he never made it.

24                   As he walked down Maisel Court, he passed

25      a crowd of people that you are now very familiar
```

CLOSING - FUCHS

65

1    with.  He passed Rain Curtis, Kevin Duckett.  Most

2    importantly, he passed Antonio Hall.

3            Mr. Hall saw Kareem.  He told Kevin

4    Duckett, his best friend who was standing right next

5    to him, that he was going to smash Kareem.  That he

6    was going to kill him.

7            He sent Jamar Howard to get a gun.  And

8    when Kareem walked by, Mr. Hall pulled a mask down,

9    pulled out a gun and he chased Kareem into that cut.

10   He shot him twice in the back.  Kareem fell to the

11   ground.

12           Mr. Hall stood over him and, while Kareem

13   Guest pleaded for his life, he shot him four times in

14   the head.  It was a cold-blooded, premeditated

15   murder.  It was done out in the open, well lit court

16   yard, in front of a crowd of people.

17           It happened because Kareem Guest broke

18   the law of the street.  He told.  He talked to the

19   police.  He snitched.

20           In January of 2008 you have heard that he

21   gave an interview to the Baltimore Police Department

22   and agents of the FBI in which he talked about drug

23   dealing in Westport.  He named names.  And one of the

24   names that he gave the police was Antonio Hall, Mack.

25           He said Mack was associated with Westport

1      drug dealers.  He said Mack was the kind of guy, in

2      Kareem's words, who liked to bang the gun.  Mr. Hall

3      found out.  In Westport Mr. Hall enforces the law.

4      And when Kareem walked by him that day, he made sure

5      that his law, the law of the street, was enforced.

6      And he punished Kareem and he did it publicly.

7              He did it to send a message.  The message

8      was in Westport you don't tell.  You don't talk.  You

9      don't snitch.

10             He shot Mr. Guest that night, absolutely

11     convinced that no one was ever going to tell on him

12     again.  And it almost worked.  He almost got away

13     with it.  As you heard, it wasn't until July of 2010,

14     almost a year after Mr. Guest was killed, that

15     someone finally came forward and said what happened

16     that night.

17             Even now, almost two years after Kareem

18     was killed, there are still people who came in here

19     this week and said they didn't see what happened.

20     They don't know who killed Kareem.  They were too

21     scared, and are too scared today, to tell you what

22     happened.

23             Now, as Judge Bennett is going to

24     instruct you, Mr. Hall is here today charged with

25     four separate crimes.  We'll go through each one of

1        those in turn.

2                In Count 1, Mr. Hall is charged with

3        conspiring to distribute and possess with the intent

4        to distribute 280 grams or more of crack cocaine.  As

5        Judge Bennett will instruct you later -- I'm just

6        going to give you a quick preview, of course, of what

7        Judge Bennett instructs you on the law.  In order to

8        prove that count, Count 1, the government has to

9        prove two things.

10               First, the government has to prove that

11       an unlawful agreement or conspiracy to distribute

12       crack cocaine existed.  A conspiracy, as Judge

13       Bennett will tell you, it's just an agreement.  It's

14       simply an agreement between two people to commit some

15       unlawful act.  It doesn't need to be written down.

16       It doesn't need to be formalized.  It doesn't even

17       need to last very long.  It just need to be an

18       agreement to do some unlawful act.

19               Two people pool their money and buy drugs

20       that they're going to turn around and sell, they've

21       conspired to distribute drugs.  If someone lets a

22       drug dealer use her house to package drugs in

23       exchange for money or for drugs, she's conspired with

24       that drug dealer to distribute crack.

25               The second element, as you can see, is

1    that the defendant knowingly, willfully, and

2    voluntarily joined in that conspiracy; joined in that

3    agreement.  He wasn't coerced; he wasn't forced into

4    it.  He did it knowingly and voluntarily.

5              Now, if you find that Mr. Hall conspired

6    to distribute crack cocaine, you then need to find a

7    third thing.  You have to find how much crack he

8    distributed.  You started to hear about that, and I

9    imagine you're going to hear more about it today.

10             On your verdict form you're going to see

11   that you're going to have three options.  What you're

12   going to have to decide, it says has the government

13   shown beyond a reasonable doubt that he has -- that

14   is, Mr. Hall -- between 2004 and 2010 distributed a

15   certain amount of crack cocaine.

16             Was it 280 grams or more?  Was it

17   somewhere between 28 grams and 280 grams?  Was it

18   something less than 28 grams?  And keep in mind that

19   amount is for the entire length of that seven-year

20   conspiracy.  Between 2004 and 2010, how much crack

21   did he distribute.

22             Counts 3 and 4 and 5 are what we call

23   substantive counts.  And they all relate specifically

24   to the murder of Kareem Guest on September 20th of

25   2009.

CLOSING - FINCHO

69

```
1              As you can see, Count 3 charges Mr. Hall
2       with the murder of Kareem Guest in retaliation for
3       Mr. Guest providing information to law enforcement
4       officers about certain federal crimes.  In this case
5       it's drug trafficking.  Federal drug offenses;
6       federal firearms offenses.
7              To prove Count 3 the government has to
8       prove three things.  First and foremost, that Mr.
9       Hall killed Kareem Guest.  Second, did he kill Kareem
10      with a specific intent to retaliate against him for
11      his cooperation in that federal case of those federal
12      crimes, the drug trafficking and firearms offenses?
13      The third thing that you have to decide is whether or
14      not the defendant acted with malice and with
15      premeditation.  And, again, there's going to be a
16      special verdict form and you're going to have to
17      decide whether or not Mr. Hall acted with
18      premeditation.
19              Premeditation just means that he thought
20      about it; that he made a plan.  It wasn't an
21      unconscious act.  It wasn't spur of the moment.  That
22      he made a plan, he made a decision, and he chose to
23      kill Kareem Guest.
24              Count 4 is very closely linked to Count
25      3.  It simply charges Mr. Hall with using and
```

1    carrying and discharging a firearm in relation to a

2    crime of violence that could be prosecuted in federal

3    court.  And all that means is he used a gun to kill

4    Kareem Guest, as charged in Count 3.

5             Two elements.  The defendant committed a

6    crime of violence that could be prosecuted in federal

7    court; that's Count 3, the witness retaliation.  And,

8    second, the defendant used, carried, or discharged a

9    firearm when he committed that crime.

10            The fifth count, what we call the felon

11   in possession count.  It simply charges Mr. Hall on

12   the night of Kareem Guest's murder, September 20th,

13   2009, with possessing two rounds of nine millimeter

14   ammunition.  To prove that count the government has

15   to show Mr. Hall possessed the ammunition that night;

16   that he had a prior conviction of a felony crime, a

17   crime punishable by a year or more in prison; and

18   that those two rounds of nine millimeter ammunition

19   moved in interstate commerce.  And all that means is

20   they were built or put together somewhere outside of

21   the State of Maryland and traveled here at some point

22   in time.

23            Count may be a little bit confusing.  All

24   it's charging the defendant with is possessing the

25   bullets that killed Kareem Guest on September 20th of

71

1      2009.  It you find Mr. Hall killed Kareem Guest that

2      night with those bullets, he possessed them that

3      night.  And, because he's a prohibited person, he

4      broke the law.

5                Over the last two weeks you've heard from

6      countless witnesses; you've seen hundreds of

7      documents, pictures; mountains of evidence that

8      proves each of those four crimes.

9                We're going to start with Count 1.  It's

10     the drug conspiracy count.  As I said, the question

11     here is twofold.  Was there an agreement to

12     distribute crack cocaine between 2004 and 2010 that

13     Mr. Hall entered into?  And two, how much crack

14     cocaine did he distribute?  We'll deal with each of

15     these questions in turn.

16                First question.  Did he conspire to

17     distribute crack cocaine?  And, ladies and gentlemen,

18     I would argue to you on this question, over the last

19     two weeks, you've heard overwhelming evidence that,

20     if nothing else, Mr. Hall is a drug dealer.  You

21     heard from four or five different sets of witnesses:

22     The police in Westport; Mr. Hall's customers; his

23     co-conspirators; people he worked with; people he

24     worked through.  You heard from his friend and his

25     girlfriend.  All said Mr. Hall is a drug dealer.

1          I imagine that much will be made of the

2     fact that he was only arrested five times; he was

3     only arrested with these tiny quantities of crack on

4     them.  I wouldn't be surprised if what you hear is

5     that maybe he was a drug dealer, but maybe he was a

6     very small time drug dealer.  It's not important.

7          The first question you have to answer is

8     did he conspire with someone else to distribute crack

9     cocaine.  All of those witnesses that you heard from,

10    the police that arrested him, the customers, the

11    associates, people that worked with him, his friends,

12    they all said that what Mr. Hall does is he sells

13    crack in Westport.  He's out there every day; he

14    doesn't have a job other than selling crack.  It you

15    drive to Westport and you need crack, Mr. Hall can

16    take care of it.

17         When you consider the evidence about Mr.

18    Hall's drug dealing, as when you consider the

19    evidence for any of these counts, when you consider

20    any of these witnesses, you have to think about the

21    credibility of the witnesses.  It's very important.

22    What you've heard from here as far as Mr. Hall's drug

23    dealing is from four or five sets of witnesses who

24    have never met each other.  They have no idea who

25    each other is.  They've never spoken to each other;

1        they have no idea what each other said.

2                All these people, all these different

3        sets, who knew Mr. Hall from as far back to 2004 to

4        as recently as 2010, they all corroborate each other.

5        They all say the same thing.  They talk about how Mr.

6        Hall got his drugs, where he packaged them, how he

7        packaged them, how he sold them on the street.

8        You'll have to decide if it's possible that all those

9        different witnesses -- who never meet each other,

10       never talked to each other, hadn't even heard each

11       other's testimony -- came in here and somehow

12       concocted a grand lie to implicate Mr. Hall.

13               Let's start with the police officers you

14       heard from yesterday.  You heard from Detective Green

15       first.  He told you that in July of 2005 he arrested

16       Mr. Hall for drug dealing.  He said he was driving up

17       Annor Court when he saw a truck driving into the

18       neighborhood.  He saw Mr. Hall come to the window.

19       He saw money change hands for something in Mr. Hall's

20       pants.  Mr. Hall saw the officer behind him and took

21       off running.  Detective Green tackled him and found

22       on him those two ziplock bags of crack cocaine that

23       you saw.

24               He said that that was the first time he

25       had seen Mr. Hall.  But, after that, after 2005, he

1    saw Mr. Hall just about every time he was in the

2    neighborhood.  And every time he saw him doing the

3    same thing:  He was hanging out on those street

4    corners; he was running up to cars; running up to

5    people; and he looked like he was dealing drugs.

6    Every time he was out there.  Morning, noon, night.

7            Sergeant Larry Williams testified.  He

8    arrested Mr. Hall in January of 2007.  Very similar.

9    He observed Mr. Hall and another man consummate what

10   appeared to be a hand-to-hand drug transaction.  The

11   man walked up to Mr. Hall; he offered money; Mr. Hall

12   took something out of his mouth; offered it to that

13   customer; the customer walked off; Mr. Hall walked

14   off.

15           The customer was stopped; he was

16   arrested; he was found to have one of those ziplock

17   bags of crack that you saw.

18           Sergeant Williams said he ran into Mr.

19   Hall every time he was in Westport.  Sergeant

20   Williams was there every day; Mr. Hall was there

21   every day.  Standing on the street corners.  He was

22   running up to cars.  He was running up to people.  He

23   was committing what looked like from a distance

24   hand-to-hand drug transactions every day.

25           Sergeant Williams said he has been

1       working in the Southern District going to Westport

2       every day at least as far back as 2004.  He remembers

3       seeing Mr. Hall there every day.  It's what Mr. Hall

4       did.  Day in, day out.

5                   Detective Janu testified.  March 24,

6       2008, he stopped a van being driven by Donald Weiss.

7       In the passenger seat was Mr. Hall.  Crack rocks at

8       Mr. Weiss' feet, on Mr. Hall.  Detective Janu found

9       $2700 in cash in $100 bills.  He arrested him

10      because, in his experience, when you've got drugs,

11      you've got big amounts of cash, they usually have

12      something to do with each other.

13                  Special Agent Gabe Brooks from the ATF

14      testified.  He arrested Mr. Hall on August 7th of

15      2008.  He was working undercover that day, doing

16      buy/bust operations.

17                  He said he drove up Dorton Court; he saw

18      Mr. Hall from a distance; Mr. Hall waved him over;

19      Mr. Hall asked, "How many?"; Special Agent Brooks

20      said, "Four"; Mr. Hall then directed two people --

21      keep in mind conspiracy.  We have to show an

22      agreement with other people; that he was working with

23      other people.  Directed two people to come to Special

24      Agent Brooks' car.  And they gave him four of those

25      ziplock bags of crack.

1                    Detective Paul Thompson is the last

2       person that arrested Mr. Hall.  It was in March of

3       2009.  He was on the other side of Westport, over on

4       the Annapolis Road side.  He said from a distance he

5       saw a group of people standing on a street corner

6       with money in their hand.  And he saw Mr. Hall walk

7       over, something clenched in his fist.  The detective

8       thought that a drug transaction was about to take

9       place, so he started to approach.  Mr. Hall took

10      whatever was in his hand, put it in his mouth, took a

11      swig from his water bottle, and he swallowed it.

12                   Detective Thompson said he's that seen

13      that all the time.  Drug dealers keep the drugs in

14      their mouth and swallow them when police get close.

15                   Detective Thompson said he was often in

16      Westport, almost as much as Officer Williams.  And,

17      again, he said he saw Mr. Hall every day out there

18      engaged in what appeared to be drug trafficking.

19                   As I said, the defense is probably going

20      to talk a little bit about how little drugs were

21      seized.  Mr. Proctor wrote up on the board -- and

22      it's true.  Every time he was arrested, tiny amounts,

23      it's about a gram.  But, those five arrests I've just

24      spoken about, they are not the totality of what Mr.

25      Hall did.  They're not supposed to be the sum total

 1    of his drug dealing.  They were only offered as

 2    examples.  They're just snapshots of what Mr. Hall

 3    did every day for seven years.

 4              You think about the officers just like

 5    anybody else.  You have to consider their

 6    credibility; you have to weigh that.  But remember

 7    what you heard.  You heard from five different

 8    officers, many of which don't even work together.

 9    One of which is no longer even working for the

10    Baltimore Police Department.  They all corroborated

11    each other.  They all said the same thing:  Mr. Hall

12    was out there every day committing what looked like

13    street-level drug transactions.  And he was arrested

14    five times for doing it.

15              Most of these officers -- I don't believe

16    any of them were involved in a federal investigation.

17    You have to ask yourself:  What possible reason do

18    they have to lie?  Junior officers; no dog in this

19    fight.  Why would they come in here and perjury

20    themselves?  How would they know to tell the same

21    story?

22              You saw them; you heard from them; that's

23    why we bring these witnesses to you.  It's up to you

24    to judge whether or not you thought they were telling

25    the truth.

78

```
 1              The second set of people that you heard

 2     from, it's Mr. Hall's customers.  You heard from

 3     Tracy Brandenburg.  She testified last Friday.  She

 4     said that she was a crack addict that went to

 5     Westport to buy drugs.  At some point she met Mr.

 6     Hall.  And usually when she went there or often when

 7     she went there she would buy directly from Mr. Hall.

 8     That went on for almost a year.  Small amounts each

 9     time; small ziplock bags.  But every time she went

10     there and saw him, he had had drugs available.

11              Just like the officers said.  She said he

12     was out there on the streets, walking up to cars,

13     meeting people, taking care of her, taking care of

14     her friends.  She said she was not Mr. Hall's only

15     customer.  She was not the only person buying crack

16     from.

17              Remember, what she said corroborates what

18     the police officers said.  Same location, same

19     technique, same drugs, same packaging.

20              Also remember -- and it's important to

21     note that she stopped buying drugs from Mr. Hall

22     after Mr. Hall threw a brick through her window when

23     she tried to buy drugs from someone else.  She was

24     disloyal.  So, punishment.

25              Again, what do you think about Miss
```

1        Brandenburg's credibility.  You saw her; you listened

2        to her.  Ask yourself:  Why would Miss Brandenburg

3        come here and lie?  What possible benefit does she

4        have?  She hasn't seen Mr. Hall for years.  She

5        doesn't receive any benefits from the federal

6        government.  It's not as though she was working off

7        some kind of charge.  She came here and she told the

8        truth.  It's for you to decide whether or not you

9        believe her.

10              You also heard from Robert Parsons.  He's

11       the man who was shot.  He was a customer of Hall.  He

12       knew Mr. Hall because he had purchased from Hall

13       hundreds of times.  It stopped in 2004.

14              What he said about Mr. Hall's drug

15       dealing -- again, corroborated by Miss Brandenburg

16       whom he's never met, he's never talked to.  It's

17       corroborated by the police officers.  He talked about

18       Hall being out there every day on the streets of

19       Westport selling crack.

20              Again, why is Mr. Parsons lying?  Why did

21       he come here to commit perjury?  That's what you have

22       to ask yourself.  You heard from him.  You have to

23       decide if he was telling the truth.

24              The third group of people you heard from,

25       Mr. Hall's associates.  People that he worked with or

1    worked through to distribute the drugs.  And, again,

2    keep in mind, conspiracy; it has to be an agreement;

3    it has to be other people.  These people worked with

4    Mr. Hall.  These are the second person in that

5    conspiracy.

6              You heard from Jocelyn Hamlet.  She

7    testified last Friday.  She's the older woman who

8    lived in Westport.  Between 2006 and 2010 she told us

9    that she let Mr. Hall package drugs in her house.  He

10   paid her in cash or he paid her in crack.  But for

11   those four years he was there three or four times a

12   week with Kevin Duckett packaging crack.

13             She said he even brought his kids with

14   him at some point.

15             Her testimony was corroborated by Kevin

16   Duckett, who said that's where they packaged their

17   drugs.  It was also corroborated by Rain Curtis, who

18   said she went with Mr. Hall when he went to package

19   the drugs and he did it at Mama's house.  You saw

20   Miss Hamlet.  You have to decide whether you believe

21   her.

22             Again, why is Miss Hamlet lying?  Why

23   would she come here and commit perjury?  The only

24   benefit she received from the government was that we

25   helped relocate her.  And that should be telling in

1    and of itself.  Why does she need to leave Westport?

2    Why does she need to get away from Antonio Hall?

3    That's the only benefit she received.  I guess what

4    you have to ask is:  Would someone come in and commit

5    perjury just so they could be relocated away from

6    friends and family?

7            David McClinton, you heard from him.

8    David McClinton was a drug dealer.  And he said his

9    source of supply was Antonio Hall.  If you remember,

10   he was arrested on December 6 of 2009 with crack over

11   on Annapolis Road.  Coincidentally, the same

12   intersection where Mr. Hall was arrested dealing.  He

13   said he bought from Hall that day, then, and that he

14   had bought from Hall before, and that he had picked

15   up the drugs from Mr. Hall's girlfriend, Caprese

16   Diggs' house.

17           You saw Mr. McClinton.  He obviously did

18   not want to be here.  He did not want to testify.

19   The only benefit that he received was a bus ticket

20   out of town.  Again, why did he need to leave town?

21   Why was everyone so anxious to get away from Mr.

22   Hall?  It will be up to you to determine if the price

23   of a bus ticket was enough to get Mr. McClinton to

24   come here and lie, if you thought he was lying when

25   he came in and talked to us.

```
 1              Jamar Howard.  Very important witness.

 2    He was one of the eyewitnesses to Kareem Guest's

 3    murder.  If you remember from his testimony he said

 4    that at least once or twice Mr. Hall had fronted him

 5    drugs.  Hall had given him the drugs and said, "You

 6    go and sell them.  Give me the money.  I'll give you

 7    a little something when you're done".  He said he did

 8    that at least once or twice.

 9              You heard from Kevin Duckett, another

10    very important witness.  Kevin Duckett said that he

11    was Mr. Hall's best friend.  And all the police

12    officers said they often saw those two together.  All

13    the other witnesses said, yes, Mr. Hall and Mr.

14    Duckett very were close, they called each other

15    cousins.

16              Mr. Duckett testified that he had been

17    selling drugs with Antonio Hall between 2006 and

18    2009.  And he explained how he did it.  They pooled

19    their money.  Big Kev would give the money to Mr.

20    Hall.  Mr. Hall would go to his supplier.  He would

21    bring back the drugs, bring back the crack.  And then

22    they would go to Jocelyn Hamlet's house and they

23    would package it up.  And then together they would

24    sell it on the streets of Westport.

25              And you saw Mr. Duckett testify.  You saw
```

1     how reluctant he was.  You saw his fear.  You saw how

2     hard it was for him to testify with half of Westport

3     watching him.

4                    You heard how he absolutely demanded to

5     be moved out of town for his safety.  And, as the

6     defense will make a deal of the money spent by the

7     federal government to move him, that money didn't go

8     to Mr. Duckett.  It went to pay for his housing, his

9     food.  It was meant to relocate him, to keep him

10    safe.  If too much money was spent, that's our fault.

11    Blame me.  It has nothing to do with whether or not

12    he was lying.  He didn't see that money.  All he did

13    was get moved out of town.

14                   You also have to remember that everything

15    Mr. Duckett said, at least as far as the drug

16    dealing, was corroborated by somebody else.  Miss

17    Hamlet said:  Yes, Kev and Mack came to my house and

18    they cut up the drugs, every week; three or four

19    times a week.  Miss Diggs said:  Yeah, they went to

20    Miss Hamlet's house and cut it up.  The police

21    officers all said:  Mr. Hall, he's all on there on

22    the streets, often with Big Kev, selling drugs in

23    little ziplock bags, hand-to-hand, day after day, all

24    day long.

25                   Rain Curtis.  You heard from her.  And,

1     of course, she's a very important witness in the

2     murder of Kareem Guest.  She was Mack's girlfriend

3     for four years.  And she obviously cared about him

4     very much.  She kept trying to protect him all

5     throughout this case.  She went to jail to protect

6     him.  You saw how upset she was to come in here and

7     testify.

8              But she corroborated what Kevin said,

9     what Miss Hamlet said, what all those police officers

10    said.  She said she saw Mack go to Hamlet's house;

11    she saw Big Kev there; they sold crack on the streets

12    of Westport.

13             And then maybe most importantly you heard

14    the words of the defendant himself on that recorded

15    conversation he had with Kevin Duckett.  You'll

16    remember Mr. Duckett decided to cooperate with the

17    government in the fall of 2010.  So the FBI gave Mr.

18    Duckett a wire and asked him to go talk to Mr. Hall,

19    have a conversation with him.  And you heard that

20    tape.  That tape will be back with you in the jury

21    room.  I encourage you to listen to it again.

22             Page 6 of the November 18 call, please.

23    I'm going to read to you from the transcript,

24    starting where it's highlighted from Mr. Hall.

25             "Man, I just helped Gerard out, right?"

1          "Source," that means Kevin Duckett, said

2     "who?"

3          "Damn Gerard, Mimi and her brother.  So

4     he needed a stack".

5          Mr. Duckett, what was a stack?  A

6     thousand dollars.

7          "Duckett.  Yeah.

8          "He needed a stack, I gave him 700.  I

9     said, 'Yo, check this out'.  But he supposed to pay

10    me back when he get his check, you feel me?"

11         Duckett says, "Yeah."

12         "I said, 'Yo, check this out, yo.  Here's

13    this $700.  Bring me some sales, yo, and I will give

14    you 300 more dollars'.  He couldn't even do that.  He

15    couldn't even bring me a sale yet.  Just sitting on

16    my $700".

17         Mr. Duckett told us, he was talking about

18    sales.  Giving him $700, he's talking about getting

19    him sales of crack, funneling business to Mr. Hall.

20         Page 7.  A little later in the

21    conversation.  "I asked him, 'Did he help him out and

22    shit?'"  And I apologize for the language.

23         "First he said, 'no,' then he said he owe

24    me something.  I just let him keep it.

25         "Source:  I think he fucked you.  Because

```
 1          they be together, you know me?  I'm like God damn.

 2          Why you ain't give a thousand dollars to me?

 3                      "I gave him 700 though with no problem.

 4          I said, 'Yo, don't give me a couple sales, yo,' and

 5          you feel me?  He ain't give me a sale yet.  Up there

 6          making phone calls".

 7                      Again, he's talking about giving this man

 8          money to funnel crack sales to him.

 9                      Page 8.  Mr. Hall and Mr. Duckett

10          continue the conversation.  Mr. Hall asked, "You want

11          to take a ride, yo?"

12                      Mr. Duckett says, "We can".

13                      Mr. Hall says, "You want to take me to

14          hit a sale, then?"

15                      Mr. Duckett says, "Come on".

16                      Mr. Hall says, "Tatum," that's his

17          brother, "I need the phone".

18                      He's not going to Marshalls to get a good

19          deal.  He's going to a crack sale.  He said it

20          himself.

21                      Page 10, please.

22                      This is a conversation between Mr. Hall,

23          Mr. Duckett, and another gentleman, Deonte Smith.  At

24          the bottom of Page 10, right at the bottom.

25                      Mr. Smith is talking to Mr. Hall.  "But
```

CLOSING - TUCHA

87

```
 1        you was dead wrong giving Bruce something without
 2        letting me know, cuz".
 3                    Hall says, "Why?
 4                    "Yo, I ain't even -- yo, I ain't even
 5        know he got nothing from you when he came down".
 6                    Hall says, "I mean I gave him a couple of
 7        couple stones".
 8                    Mr. Duckett said stones are crack rocks.
 9                    "I be giving him like a hundred dollars'
10        worth of nickels," which are five dollars bags, $5
11        bags of cocaine, "and let him dime them".  Which Mr.
12        Duckett says means turn around and sell them for $10.
13        And he just give me my straight money back".
14                    Mr. Smith said, "Right".
15                    Mr. Hall says, "Come on, that's money".
16                    Mr. Duckett says, "Ain't nothing easier
17        than that".
18                    Hall says, in the bank, yo".
19                    Smith says, "I already know, I just want
20        to look over top his ass."
21                    Mr. Hall says, "Right.  But the whole
22        thing is, yo, by the time he's fucked up, I done made
23        money, right; you feel me?"
24                    Smith says, "Right, right.  So he was due
25        for a package to fuck up".
```

1          Duckett says, "He ain't getting high".

2          Hall said, "Yeah".

3          Smith says, "Yo, he getting high as

4      shit".

5          Hall says, "But he got sales".  He's

6      talking about sales again.  "And he be out all the

7      time".

8          And Smith says, "Yo, the sales come to

9      his house and Cinderella's house when everybody's

10     gone".

11         Hall says, "Yeah".

12         Smith says, "You feel me?  Even though

13     they know we be burning".

14         Hall says, "And they know they be

15     burning".

16         Smith says, "Yeah, they know they be

17     burning.  They still come to him".

18         And Hall says, "That's because they be

19     desperate for a piece of 'caine".  That's cocaine.

20     He's talking about drug sales.  Those are the words

21     of the defendant himself.

22         So, in conclusion, all of that evidence,

23     taken together, it shows that between 2004 and 2010

24     what Mr. Hall was, before anything else, was a drug

25     dealer.  Witness after witness; witnesses who never

1    met each other; police officers; customers;

2    associates said what Mr. Hall did day in and day out

3    was sell drugs in Westport.

4              He's not a kingpin.  He's selling dime

5    bags at a time.  Buying ounces at a time and cutting

6    it up.  But day after day, week after week, for seven

7    years he's selling crack on the streets of Westport.

8              He pooled his money with Duckett to buy

9    the crack.  They took it to Hamlet's house for a

10   certain period of time and she let them package it

11   up.  He then sold it on the street himself, as the

12   police officers said when they arrested him; or sold

13   it to the customers, as they said; or he sold it

14   through other people, like Howard and Sherod and

15   Bruce.

16             Keep in mind, as I said before, you heard

17   all this from separate sets of witnesses who never

18   talked to each other, never heard from each other,

19   didn't here hear each other's testimony.  And each of

20   them corroborated each other.  They all gave you

21   pieces of the puzzle that are consistent; they all

22   fit together.

23             Most of these witnesses had absolutely no

24   reason to lie.  The police officers, no reason to

25   lie.  The customers, many of the associates, getting

1   no benefit from coming in here and testifying against

2   a man they know is violent.  For the most part what

3   people wanted in return for coming to testify was to

4   be relocated; to move away from Mr. Hall.

5              Now, the second question.  Quantity or

6   weight.  How much crack was Mr. Hall selling between

7   2004 and 2010?  And when Mr. Sullivan comes up here

8   and talks, you may hear:  It's possible, yes, Antonio

9   Hall is no angel; maybe he is a drug dealer; but he

10  is small time.  He sells a bag here and there.  It's

11  not 280 grams' worth.

12             As I said before, don't be confused by

13  the individual acts that we put on.  They are not

14  what we allege is the totality; but the total, the

15  complete picture of what Mr. Hall was doing.  He was

16  arrested five times selling small amounts of crack.

17  No one believes that those were the five times in the

18  last seven years that Mr. Hall had crack on him.

19  Customers don't say that.  The associates don't say

20  that.  Common sense doesn't say that.

21             The police.  They said:  Yes, we only

22  caught him five times.  But he's out there every day.

23  He's doing the same thing; we saw him every time,

24  running up to cars, running up to people.  It looked

25  like drug dealing to us.

1                    Customers bought from him regularly, day

2       after day.  All of them said, "I wasn't his only

3       customer.  He was out always there:

4                    His associates, Hamlet.  She said Mr.

5       Hall and Mr. Duckett came to her house three or four

6       times a week from 2007 to 2010 to cut up and package

7       the drugs.  Said it wasn't much each time.  It would

8       be a quarter of an ounce; that's seven grams.  But if

9       you do the math, that's seven grams four times a

10      week.  That's 28 grams.  She said they did it week

11      after week, year after year.  It only takes ten weeks

12      of packaging up 28 grams each week to get to 280

13      grams.

14                   And of course Mr. Duckett said that he

15      pooled his money with Hall every week and they bought

16      varying quantities of drugs.  As much as an ounce, 28

17      grams.  Two ounces, 56 grams.  He said at one point

18      they pooled their money and bought as much as a

19      kilogram.  A thousand grams of crack.  He said that,

20      beyond that, he saw Mr. Hall with kilograms of crack

21      more than once.  A thousand grams in a single

22      transaction.

23                   What you'll need to decide is:  Did he

24      sell or distribute over seven years 280 grams or

25      more.  Again, these are all different sets of

1      witnesses, people who never heard from one each

2      other, they don't know what each other said, yet they

3      all say the same thing about the scale of his drug

4      trafficking.  He was not a kingpin.  He absolutely

5      was not.  He was a street-level drug dealer.  But he

6      was a hard working one and he was out there for seven

7      years every day.  It's what he did.  It's how he

8      spent his time.  It's how he maid his money.  It's

9      what he talked about to his friends.  He was a drug

10     dealer.

11             Now, if Mr. Hall had just been a drug

12     dealer, this case might not be here.  But he wasn't.

13     He was a drug dealer that used guns and he used

14     violence in furtherance of the drug trafficking.  He

15     did it to protect the operation and to protect

16     himself.  It was part and parcel to what he needed to

17     do to survive as a drug dealer.

18             You heard about the shooting of Martie

19     Williams, who Mr. Tinkler said was a competitor.  You

20     heard about the shooting of Martie Williams.  Excuse

21     me.  Mr. Parsons, who informed on one of Mr. Hall's

22     friends.  And, of course, you heard about the murder

23     of Kareem Guest.

24             Now, as all this violence relates to

25     Count 1, the drug conspiracy, the judge will instruct

1        you the government has alleged certain overt acts.

2        Overt acts are just acts that were taken in

3        furtherance of the conspiracy.  And two of those acts

4        that you'll see in the indictment were the shooting

5        of Mr. Parsons and the killing of Mr. Williams.

6               As the judge will instruct you, the

7        government doesn't need to prove those overt acts to

8        prove that he was a drug trafficker.  All those overt

9        acts are examples.  They're just illustrations of

10       what he did as a drug dealer.  They're illustrative.

11       But at the end of the day you can find that he didn't

12       commit them and still find that he was a drug

13       trafficker.

14              Before we start talking about the

15       specific allegations of violence, remember what you

16       heard from those police officers yesterday about the

17       statements Mr. Hall made to them about the guns and

18       about the violence.  Sergeant Williams said that Mr.

19       Hall admitted to him that, when Sergeant Williams

20       chased him in the summer of 2009, Mr. Hall had two

21       ratchets, two guns, on him; and that he had thrown

22       them in the trash can and he had gotten away.

23              Mr. Hall walked up to Sergeant Williams a

24       second time and told him, "Hey, Sarge, if I put a

25       mask on and jump around the corner with the two guns,

CLOSING - FUCHS

94

1      you wouldn't be able to identify me".

2                  Another time he talked to the police

3      about shooting the man who shot his brother, Tatum,

4      from half a block away.  And he bragged about how

5      good he was with a gun.

6                  Now let's talk about the specific acts of

7      violence.  Robert Parsons.  Parsons testified that he

8      was shot in February of 2004.  He knew Mr. Hall very

9      well.  He bought from him, he said, hundreds of

10     times.  Mr. Parsons said over time he became a bigger

11     and bigger consumer of drugs.  And at some point he

12     started loaning his car out in exchange for drugs.

13                 And one of the people he loaned his car

14     to was a guy named Freddy Jackson.  Freddy was a

15     friend of Mr. Hall's.  At some point Freddy used Mr.

16     Parson's car to commit a murder.  And, when the

17     police came to talk to Mr. Parsons about that murder,

18     Parsons said, "I wasn't using the car.  I loaned it

19     to Freddy".

20                 When Mack found out, Mr. Parsons

21     testified that, as soon as he found out, their

22     relationship changed.  He testified that in February

23     of 2004 he got a phone call to meet an associate of

24     Mr. Hall, Larry Cheese -- who you've heard about

25     before -- on the street corner in Westport; the

1   corner of Huron and Hollins Ferry Road.

2              Mr. Parsons testified that he was waiting

3   there for Cheese when he saw a car drive up.  And out

4   of that car jumped Mr. Hall, dressed all in black.

5   He had a mask on; he had a gun; and he opened fire on

6   Mr. Parsons from across the street.  He hit him seven

7   times; broke his leg; severed his femoral artery.  He

8   almost killed him.

9              Mr. Parsons said, "Yep, he was wearing a

10  mask but I have no doubt that that was Mack.  I knew

11  him, I dealt with him, I knew how he was built, I

12  knew how he walked, I knew how he carried himself.

13  That was Mack".

14             Right after the shooting he looked at a

15  six-pack, photo ID, photo array, and he identified

16  Mack as the shooter.

17             Forensics.  You don't have to take Mr.

18  Parsons' word for it.  There was a shell casing left

19  at the scene of the Parsons shooting.  One of the

20  detectives the next day found that shell casing.  It

21  was a nine millimeter.

22             A month later detectives in Westport

23  found a nine millimeter pistol in a trash can behind

24  the house of the mother of Mr. Hall's children.

25  Baltimore Police Department looked at the two guns --

1    or looked at the gun and looked at the casing.  And

2    they figured and found out, based on its breech face

3    markings, that that pistol that was found in the

4    trash can behind Mr. Hall's baby's mother's house was

5    the same gun used to shoot that nine millimeter

6    bullet that hit Mr. Parsons.

7              Kevin Duckett said that at one point

8    after the Parsons shooting he was walking with Mack

9    along Huron Street where Mr. Parsons was shot and

10   Mack bragged to him, "This is where I shot that white

11   guy".

12             Martie Williams.  Martie Williams was

13   killed in March of 2009.  You saw those pictures.

14   Mr. Duckett explained that at some point before

15   Martie was killed that Mack and Martie got into a

16   dispute; what Mr. Duckett said Mack thought Martie

17   was being disloyal.  And so Mack came up with a plan

18   to kill Martie.

19             What he did was he sent Kevin to Martie's

20   house to check and see if Martie was there.  And he

21   called Kevin on the phone and said, "Hey, is the

22   scale there?"  "Scale" was the code for Martie.  He

23   said, "Yeah".  Essentially said Martie was here.

24             Kev walked out, you saw that on the

25   video.  A short time later, two men ran in, Mr. Hall

97

1      and a guy named Eastwood.  They ran in and they shot

2      Martie in the back of the head four times.  Mr.

3      Duckett later talked to Mack about the shooting.  And

4      Mack told him:  A dumbass, being Eastwood, dropped a

5      clip right outside the house.  Meaning.  A magazine

6      from the pistol.  If you remember, the detective that

7      investigated the Martie Williams shooting said he

8      went outside the house; what did we find?  A pistol

9      magazine on the ground.  And you saw those pictures.

10             Mr. Duckett also testified that Linnard

11     Cunningham who was the second man in the room where

12     Martie Williams was killed.  When he was taken down

13     to homicide to answer some questions, who went and

14     picked him up, but Mack and Kev.  They picked him up

15     in homicide.  And Duckett said they questioned him

16     about what he told the police.  Fortunately for Mr.

17     Cunningham, he said, "I didn't tell them anything.  I

18     don't know who did it".  The person, again, was

19     wearing a mask.

20             Mr. Cunningham testified, yesterday I

21     believe it was, and he confirmed this.  Mack and Kev

22     were the ones that picked me up from homicide.

23             Do you remember, you heard from Henry

24     Tinkler, another Westport drug dealer.  Friend with

25     Martie Williams.  Friends of all these people.  He

1        explained that, shortly before the murder of Martie

2        Williams, he saw a dispute between Martie and Mack.

3        It wasn't over really loyalty; it was about business.

4        He said that the dispute was that Martie Williams was

5        selling someone else's drugs.  Not Mack's drugs,

6        someone else's drugs in Westport.  And Westport was

7        Mack's territory.

8                Soon after that Martie Williams was

9        killed.  Mr. Tinkler testified that a few days later

10       he went and talked to Mack about Martie's best

11       friend, Relly.  And what Mack told him was, "I'm a

12       little concerned.  Relly's about to retaliate against

13       me for killing Martie Williams.  I think I'm going to

14       have to get him first".

15               As with any witness, you have to question

16       the credibility of all these people to wonder why and

17       what would motivate Mr. Tinkler.  You saw him.  You

18       have to judge his credibility.  Keep in mind, Mr.

19       Tinkler wasn't being paid to be here; he is not a

20       government cooperator; he's not being reimbursed; not

21       working off charges.  He came in and he testified.

22               What does all this evidence tell you

23       about the shooting of Mr. Parsons, the shooting of

24       Martie Williams?  It's that violence was a necessary

25       part of this drug conspiracy for Mr. Hall.  He didn't

1      shoot these people for fun; he did it because of

2      business.  Parsons was an informant.  He talked.  He

3      snitched.  He was dangerous.  He was a threat, so he

4      was shot seven times.

5                  Martie Williams was disloyal.  He was

6      selling someone else's drugs in Westport.  And that's

7      Mack's territory.  He was shot four times in the back

8      of the head.

9                  Again, as I said, in Count 1, these are

10     just overt acts; they're just examples.  The

11     government doesn't have to prove them; they're not

12     the totality of what Mr. Hall did.  They're just

13     examples of how Mr. Hall conducted his drug

14     conspiracy.  They're proof the conspiracy existed;

15     proof of what he did.

16                 Now, let's turn to the substantive

17     charges, why we're here, the murder of Kareem Guest.

18     The murder you will see is in the jury instructions

19     is charged in every count of the indictment.  It's

20     charged as part of the drug conspiracy.  And then

21     it's charged in what we call the substantive counts,

22     that's 3, 4, and 5.

23                 Let's talk about the evidence of the

24     murder.

25                 You heard from back -- about a week and a

1   half ago -- Assistant United States Attorney Chris

2   Mason.  You heard from Detective Todd Moody.  They

3   said that in 2008 they were investigating drug

4   dealing in Westport.  They said in January of 2008

5   Mr. Hall (sic) was arrested on a related charge and

6   he agreed to be interviewed by the FBI.  And he,

7   during this interview he gave them information about

8   drug dealers in Westport, who was dealing.

9           He identified specifically, among others,

10  Mr. Hall, Mack.  Talked about the use of firearms in

11  furtherance of the conspiracy.  He talked about Hall

12  as being the kind of guy, as I said before, who liked

13  to bang the gun.

14          Specifically -- and as I told you some of

15  the elements for those substantive counts.  Keep in

16  mind the information that Mr. Guest gave related to

17  federal crimes, federal drug trafficking, violations

18  of federal gun laws.

19          In any case, the case against Jamar

20  Stewart was eventually brought.  You saw that

21  indictment.  And, in May of 2009, the case was about

22  to go to trial.  Kareem Guest was a witness.  He had

23  given that interview; it had been written down in

24  what we keep calling the Guest 302, which is the FBI

25  report of the interview.

1              Right before trial was supposed to start,

2    AUSA Mason said that he turned over all of the

3    statements of the witnesses, as he's required to do.

4    One of the statements he turned over to the defense

5    counsel for the defendants who were about to go to

6    trial was Kareem Guest's interview, the Guest 302.

7    The lawyer for one of those defendants, who you heard

8    from, Michael Carithers, he gave copies of that, of

9    the Guest 302, copies of all those statements to one

10   of the defendants, the guy, Larry Cheese, who you

11   heard with before.

12              Cheese made sure that those papers were

13   distributed all over Westport.  The witnesses told

14   you they saw papers on the blacktop; on Alaska Court;

15   they saw the papers posted to a light pole.  They

16   said they saw some of the papers posted in a local

17   bar.  Just about everyone who came in here who lived

18   in Westport said at in that time at some point they

19   saw the papers.

20              Mr. Tinkler, Mr. McClinton, and Kevin

21   Duckett all testified that they saw Mr. Hall look at

22   the papers.  And they all said when he saw that he

23   was named by, among other people, Kareem Guest.  He

24   was very angry.

25              If you remember, Mr. Duckett testified on

1    the night Kareem was killed, when Mr. Hall said, "I'm

2    about to smash that guy," Kevin said, "It's not

3    really a good time.  There's too many people around.

4    Get somebody else to do that work".  And Mr. Hall

5    said, "That wasn't your name in the papers, Kev".

6              Later that summer, the summer of 2009,

7    Mr. Guest came home.  He was back in Westport living

8    at his mom's house.  And on September 20th, 2009 he

9    was killed.  The crux of this case.

10              You heard from seven people who were

11   there the night he was killed.  Let's talk about each

12   of them.

13              Rain Curtis.  I talked about her before.

14   She was Mr. Hall's girlfriend.  The night of

15   September 20th, she drove over to Westport to meet

16   her friend, Tamica Mouzon.  And they walked over to

17   Maisel.  She said there was a crowd there.  She saw

18   Seattle, she saw Avery, she saw Shameka Ross in her

19   truck next to the fire hydrant.  She said standing

20   nearby in the grass she saw Kevin Duckett, Jamar

21   Howard, Ferl, Keyburn, Roddy, and most importantly

22   she saw Mr. Hall.

23              She saw Kareem Guest walk by on Maisel.

24   She saw him walk by the truck, past the fire hydrant.

25   And, as he walked down that cut, she saw Mack pull

1    down his mask.  If you remember, she said Mack often

2    wore a mask.  Of course, he told the police if he was

3    going to do a shooting he would wear a mask; that way

4    no one could figure out who he was.

5              She said she saw him run down the cut and

6    he started shooting at Kareem.  She saw Kareem fall

7    to the ground.  She heard Kareem say, "No, Mack".

8    Then she saw Mack standing over Kareem shooting him

9    in the head.

10             After the shooting she tried to jump in

11   Shameka Ross' truck.  She said Mack and Kev jumped

12   in, she jumped out and ran away.

13             Now, no doubt the defense is going to

14   argue that Miss Curtis is a liar.  She lied before.

15   She was charged with perjury.  She's only telling you

16   what the government wants you to hear to get out of

17   jail, get back to her kids.

18             She did.  She did lie in front of the

19   grand jury.  She originally said she wasn't there.

20   She told us why.  She told us that to protect her

21   boyfriend.  She did it because she was terrified.

22   Like everyone else, she knew what happened to

23   cooperators.  She had seen it happen to Kareem Guest.

24             Importantly -- and you'll hear this

25   again -- she was the first person to tell us that

CLOSING - FUCHS

104

1    Mack was the person who did it.  Before that we

2    didn't know.  We couldn't pressure her to say that

3    because we didn't know Mack was the shooter.

4             And you have to ask yourself:  Given

5    that, of all the people who are standing around that

6    night, why is Mack the person she identified?  The

7    dangerous guy.  Her boyfriend.  Why didn't she

8    identify Kevin?  If she was just telling us what we

9    wanted to hear, telling us something so she could get

10   ought of jail, tell us about Ferl; tell us Ferl did

11   it.  But she didn't.  She told us it was Mack.

12            That's where you decide whether to

13   believe Miss Curtis.  You saw how scared she was, how

14   upset she was, how difficult it was for her to

15   testify in front of half of Westport.  Ask yourself:

16   Why was she so scared?  Why did she need to be

17   scared?  Why did she ask to be moved away from

18   Westport?  Why does every witness who's testified

19   against Mr. Hall ask to be moved away from him?

20            Kevin Duckett.  Said he was in Westport

21   that night, standing right neck to Mack.  Said they

22   saw Kareem.  Mack told him that he was going to smash

23   Kareem; that he was going to kill Kareem.  Kev told

24   Mack, "There's too many people around.  Let somebody

25   else do it".  Mack said, again, "That wasn't your

1    name in the papers".

2              Mr. Duckett left for a few minutes.  When

3    he came back, he saw Jamar Howard hand Mack a gun.

4    And he saw Mack pull the slide back and see if there

5    was a round in the chamber.  And when he did a round

6    popped out; a bullet popped out.  And he and Mack and

7    Ferl then crawled around on the ground in the grass

8    by the fire hydrant to try to find it.  Keep that in

9    mind.  Tamica Mouzon told you the same thing.  When

10   she walked up, she said Mr. Hall was crawling around

11   on the ground looking for something.

12             Kevin then said he saw Kareem Guest walk

13   down Maisel.  When he did, Mack started running after

14   him and shooting.  He heard Kareem say, "Don't do

15   this to me, Mack".

16             Kevin and Mack then jumped into the

17   truck, Shameka Ross' truck.  They left of the scene.

18   Kev was seated behind the driver.  Mack jumped into

19   the passenger side behind Shaquanda Isaac, on the

20   side closest, keep this in mind, to Kareem Guest.

21             They grove away.  Mr. Duckett and

22   everyone else who was in the car said they drove

23   downtown to drop off Mack.  Mr. Duckett added a very

24   important detail, very interestingly.  He said he

25   stopped at a stop light and Mack jumped out, ran to

1   the car behind him that was being driven by Gerald

2   Horton, Roddy, and he gave Roddy the gun.  He then

3   got back in the car.  Mack got dropped off.  And

4   everybody else went back to Westport to see what was

5   going on.  Keep that in mind.

6            Everyone else in the truck went back to

7   the scene of the crime.  One person didn't.  Antonio

8   Hall.

9            After the investigation began that you've

10  heard a great deal about, Mack said -- excuse me --

11  Mr. Duckett said that he and Mack went and talked to

12  every witness.  All the witnesses that came in, they

13  kept going up to them, asking, "What did you say?

14  What questions are they asking you?"

15           Keep in mind, during that time, just

16  about every other witness was willing to tell us Kev

17  was in the area.  "I was at the scene, Kev was at the

18  screen".  But one person that no one would ever

19  identify at the scene for over a year was Mack.

20           All right.  Let's talk about Jamar

21  Howard, Ferl.  He corroborated what Mr. Duckett told

22  you.  He saw Kareem walking down Maisel.  Mr. Hall

23  told him, "Hey, go get that".  He knew exactly what

24  that meant.  Go get the gun.  He went to the

25  electrical box down on Wilgrey where he had seen Mr.

1    Hall before, and he found there a semiautomatic

2    pistol.  He brought it back to Mack.  And he said,

3    just like Mr. Duckett, just like Tamica Mouzon, Mike

4    pulled the slide back and a round popped out and they

5    crawled around on the ground looking for the bullet.

6    He left for a few minutes, Mr. Howard did.  And, when

7    he came back, as he walked up that sidewalk, he

8    passed Kareem Guest.

9              As Kareem Guest passed, he saw Mack,

10   dressed in black, wearing a mask, holding a gun, run

11   past him shooting at Kareem Guest.  He was right

12   there when it happened.  He heard Kareem say, "No,

13   Mack.  I didn't tell them anything".

14             When the investigation began, Mr. Howard

15   went to the grand jury, just like every other

16   witness.  Mack at some point came up to him and

17   asked, "What did you say?  What kind of questions are

18   they asking?"

19             At the grand jury, Mr. Howard put himself

20   away from the scene.  But he did say who else was

21   there, who was in the area.  He talked about Seattle,

22   he talked about Avery, he talked about the girls.

23   One person that he wouldn't say -- keep this in

24   mind -- the one person that none of them would say

25   was there was Antonio Hall.

108

1          Now, Tamica Mouzon.  Tamica Mouzon is

2     important because she corroborates parts of other

3     people's story.  She was Rain Curtis's friend, if you

4     remember.  They went to Westport together that night.

5     When she got to Maisel Court she said, "I saw Mack

6     bending down on the ground in the grass.  It looked

7     like he was looking for something".  Remember what

8     Duckett told you; remember what Howard told you.

9     That's when Mack pulled the slide back and the round

10    popped out and they were on the ground looking for

11    it.

12         She said a short time later Kareem Guest

13    walked by, she heard the shots.  "The shooter was

14    wearing a mask, I don't know who it was".  Remember

15    what she did say.  The shooter was built like Mack.

16    "And I heard Kareem Guest's last word, 'Mack,

17    please'."

18         After she went to the grand jury Mack,

19    Tatum, Kev, all came to ask her what she had said in

20    the grand jury.  Like everyone else.  She eventually

21    admitted for a while that she was there.  She

22    eventually admitted Kev was there, Shameka was there,

23    Jamar Howard was there.  Again, the one person she

24    wouldn't say was there, Antonio Hall.

25         I'm sure the defendant is going to say:

1    Well, the government essentially pressured her into

2    saying Mack was there.  Again, they will keep saying

3    that.  But remember who is notable by their absence

4    in all of those accounts early in the investigation.

5    Antonio Hall.

6              Before we knew who did it, she knew who

7    to leave out of the scene.  Say that again.  Before

8    we knew that Mack was the killer, for some reason

9    everyone was telling us:  Oh, no, Mack wasn't there.

10   They now admit:  Yes, he was there.  But for some

11   reason, for all that time, he's the one person they

12   wouldn't say was there.

13             Shameka Ross and Shaquanda Isaac.  Those

14   are the two ladies in the truck.  They said they were

15   at the scene that night, eventually.  Eventually

16   admitted to being there.  But both of them said, "I

17   didn't see what happened".

18             Now, this happened five, ten feet away

19   from the windshield of the car they were sitting in.

20   They say today they didn't see what happened.  But

21   what both of them do say is after the shooting a

22   bunch of people tried to jump in the truck.  In

23   cross-examination it eventually came out that neither

24   Miss Ross, who was on the side behind the passenger

25   seat, really knows who got in when and who got in

CLOSING — FUCHS

110

1    where.  Everyone's bumping around; Miss Ross wasn't

2    turning around.  She felt people bumping the back of

3    her seat.  But they both said, "When we left the

4    scene, there were four people in the car".  Miss

5    Ross, Miss Isaac, Kevin, and Mr. Hall.  They both

6    said Kevin was sitting behind the driver, Miss Ross;

7    Antonio Hall -- who was there, they finally

8    admitted -- was sitting behind the passenger seat.

9                 Like everyone else, they said they left

10   Westport.  Said they'd drop Mack off downtown.  And

11   that was the end of the story.

12                 Miss Ross eventually went to the grand

13   jury multiple times.  She eventually said:  Yes, I

14   was there.  Eventually she said:  Mack was there.

15   But it wasn't until after we had identified who the

16   shooter was.  Before we identified -- again, before

17   we identified who the killer was -- Mack was the

18   person she left out.  She's now willing to say:  Yes,

19   he was there.  What she can't explain, what cannot be

20   explained, is why -- because she came in to talk to

21   us all those times, and came in front of the grand

22   jury -- she was willing to say everyone else was

23   there, but not Mack.

24                 And she took it a step farther, as you

25   heard on cross-examination.  She not only said or

1    refused herself to say Mack was there, she's told

2    Shaquanda Isaac what she had said and encouraged her

3    to say Mack wasn't there.  Why would she do that?

4    Why is she leaving Mack out?  Why is he the only

5    person that wasn't there?  And why is she telling

6    Shaquanda Isaac to say the same thing?  She now

7    admits Mack was there.  Why are they protecting him?

8    Why?

9              The last person we heard from who was at

10   the scene was Robert Jones, Seattle.  He came in here

11   from federal prison.  He, like many of the witnesses,

12   originally said that Mack wasn't even there.  The

13   person who shot Kareem Guest was a man dressed in

14   black, wearing a mask, definitely wasn't Mack,

15   different build, Mack wasn't even there.

16             Seattle has been gone for a while.  He

17   left Baltimore in February 2010 or so.  2011.  He

18   somehow has this memo that the story has changed.  He

19   told us the same story everybody told us originally.

20   All these people are around.  Mack?  Nope, Mack

21   wasn't there.

22             Eventually all these people admitted:

23   Yes, Mack was there, and I left him out.  But Mack he

24   wasn't at the scene; he was in the car when we drove

25   away.  All except Mr. Jones.  He hasn't been here; he

1    doesn't know the story's been changed.

2              Once again, the last piece of evidence,

3    you heard from the defendant himself.  As you heard,

4    Mr. Duckett was wired up after he agreed to cooperate

5    and he started to talk to Mr. Hall.  And he was

6    trying to find information about the killing.  Page

7    2.

8              See that on your screens, lady and

9    gentlemen?  Let me give you a little context for this

10   conversation.  It's very important.  When Mr. Duckett

11   eventually agreed to cooperate in the fall of 2010,

12   he provided us information we didn't have before.

13   He's the one who told us:  We, Mack and I, left the

14   scene in Shameka Ross' truck; we went to downtown

15   Baltimore.  And, when we stopped at a red light, Mack

16   jumped out with the gun and he went to the car that

17   was following us and he gave it to Roddy, Gerald

18   Horton.

19             No one else had told us that.  Of course,

20   no one else would know that except the four people

21   that were in the truck:  Shameka Ross, Shaquanda

22   Isaac, Kevin Duckett and Antonio Hall.  There are

23   only four people that would know that.  Now, as soon

24   as he told us that, we brought Shameka Ross and

25   Shaquanda Isaac back into the grand jury.  We asked

1    them, "What about Roddy?  Did you ever stop the car

2    and see Mack go to Roddy's car?"  They, "Nope, that

3    never happened".

4              Now, that's the context for this

5    conversation.  A short time after we had that meeting

6    with Miss Ross and Miss Isaac and asked them what

7    about Roddy, the first time we ever asked, "Was Roddy

8    there," when all this is finally done, this

9    conversation followed with Mr. Hall.  And this is

10   right after Mr. Duckett pulls up.  Again, I'm sorry

11   for the language.

12             "Why the fuck?  They say those people was

13   questioning them".  He's talking about Shameka Ross

14   and Shaquanda Isaac.  "About Roddy".

15             Duckett say, "Who?"

16             "Was questioning them about Roddy."

17             Kevin Duckett said, "Who said that?"

18             Mr. Hall said, "Meka," Shameka Ross.

19             Mr. Duckett said, "what about?"

20             Mr. Hall said, "About was Roddy following

21   us and did somebody get out and give the gun and shit

22   like that".

23             Mr. Duckett said, "Get the fuck out of

24   here".

25             Mr. Hall said, "Hell, yeah".

1           Mr. Duckett says, "Did Roddy say they

2     questioned him?"

3           Mr. Hall said, "Roddy been said they

4     questioned him before he even came home.  And said

5     the just happened" -- "and she said this just

6     happened like two weeks ago or a week ago or

7     something".

8           As I told you, we just asked Shameka Ross

9     and Shaquanda Isaac, "Did you ever stop and see Mack

10    give the gun to Roddy?"

11          Mr. Duckett says, "and what?"

12          And Mr. Hall said, "The same thing".  He

13    paused.  "That's crazy, Kev.  They know that, too".

14          He didn't say what are they talking

15    about.  He didn't say they got it all wrong.  He said

16    they know that, too.  Talking about him getting out

17    of the car and giving the gun to Roddy.

18          Next page.  Mr. Hall says, "Yeah, both of

19    them said the same thing.  They asked" -- meaning the

20    government -- "they asked about him".

21          Mr. Duckett said, "Hey, yo, but do you

22    remember what Kwana was saying; remember they thought

23    they had my voice and Kwana was saying it was Roddy?"

24          Mr. Hall says, "Right, it was Roddy".

25          Duckett says, "In the background."

1          Hall says, "Right.  But how they know I

2     got out of the car?"

3          Mr. Duckett, who you heard at least from

4     Detective Moody, I believe, Mr. Duckett was getting a

5     little nervous.  There's four people in the car:

6     Shameka Ross, Shaquanda Isaac, Mr. Hall and Mr.

7     Duckett.  It does not take a rocket scientist to

8     figure out who would have told him that.

9          Mr. Duckett's standing there, "I don't

10    know".

11         Mr. Hall says, "That's something right

12    there, too".

13         Mr. Duckett says, "My thing is all right,

14    boom.  If they're saying it's Roddy's voice, right?

15    If they take Roddy down there for a voice sample".

16    Gets on the phone; gets back off the phone.  "Yeah,

17    but it got back to the deal with the joint, you feel

18    me?"

19         Consider those words.  "They know that

20    too.  How they know I got out?"

21         That's the evidence of the murder of

22    Kareem Guest.

23         I want to talk to you briefly about those

24    substantive counts, some of the decisions you need to

25    make about them.  As I said before, the murder of

1    Kareem Guest is charged in all four counts, drug

2    conspiracy, Count 3, Count 4, Count 5.

3                Now, Count 3.  If you would.  Elements.

4    Mr. Hall killed Kareem Guest with specific intent to

5    retaliate for providing law enforcement with

6    information relating to federal offenses with malice

7    and premeditation.

8                Now, if you find Mr. Hall murdered Kareem

9    Guest, you have to answer a few more questions.  Was

10   it in retaliation for Kareem's cooperation with law

11   enforcement about the drug trafficking crimes and

12   about the federal gun charges?

13               Mr. Tinkler, Mr. McClinton, and Mr.

14   Duckett all said that they all saw the papers; saw

15   that Guest was cooperating against.  Duckett

16   testified right before Mr. Guest was killed Hall

17   said, "It wasn't your name in those papers".  Talking

18   about the Guest 302.  Was it done with premeditation?

19   And, as I said before, the question is:  Was there

20   some kind of forethought, or was this an unconscious,

21   spontaneous act?

22               Think about what you heard.  Hall saw

23   Guest walk up Maisel and turned to Kevin and said,

24   "I'm going to kill him".  Then he sent Jamar Howard

25   to go get a gun.  The gun comes back, he checks to

1       see if the gun is working; pulls the slide back.

2       That's when the bullet popped out.

3                    He then shot Mr. Guest in the back.  He

4       wasn't satisfied.  He ran over and shot him two more

5       times in an effort to make sure he was dead.

6       Planning, forethought, premeditation.

7                    Count 4, very closely linked.  Use of a

8       firearm in furtherance of a crime of violence that

9       could be prosecuted in federal court.  That's Count

10      3, the murder of Kareem Guest.  Simple question here.

11      Was a gun used to kill Kareem Guest?  If you find

12      Count 3 happened, the next question is:  Was the gun

13      used?  Of course it was.  The medical examiner said

14      Mr. Guest was killed, showed six or seven shots in

15      his body.

16                   Count 5, the last count.  The felon in

17      possession count.  Somewhat confusing.  The questions

18      are:  Did Hall have a prior conviction?  Did he

19      possess that CCI ammo?  You saw the shell casings the

20      first or second day of trial.  Did those shell

21      casings travel in interstate commerce.

22                   You heard a stipulation, agreed-upon

23      facts.  Mr. Hall has a prior conviction.  So he was a

24      prohibited person.

25                   During the second day of trial you heard

CLOSING - PURCELL

118

1     from that nexus expert, if you remember?  He says CCI

2     ammo is not made in Maryland.  Therefore it traveled

3     in interstate commerce.  The question is:  Did Mr.

4     Hall possess it.  If you decide Mr. Hall shot the

5     Kareem Guest with those nine millimeter CCI bullets,

6     he possessed the cases that night.

7            Now, I'm going to be done very shortly,

8     and Mr. Sullivan is going to argue defendant's case.

9     I think you can sort of expect -- you've already seen

10    before -- what they're going to argue.  The

11    defendant's case -- or, excuse me -- the government's

12    case is a house of cards; it's built on a bunch of

13    witnesses who are drug addicts, they're criminals,

14    they're liars.  The government forced them to talk.

15           I imagine you're going to hear them beat

16    up on the government for the significant amount of

17    time -- we are overzealous; we forced these people to

18    say this.  We rushed to judgment.

19           You're going to have to decide based on

20    your common sense, on your life experiences, on your

21    observations of all of the witnesses, if they were

22    telling the truth.

23           As Mr. Purcell told you in opening

24    statement, this is not at the end of the day a very

25    complicated case.  It's not a technical case.

1    There's no DNA or wiretap, no phone analysis.  It's a

2    bunch of eyewitnesses.  It's a bunch of people that

3    came in and said, "This is what I saw".  It will be

4    for you to decide whether you believe them.

5             Now, in making that determination, in

6    deciding whether you believe if they were telling the

7    truth, I'd ask you to ask a few questions.  Ask a few

8    questions of the defendant.  The first question:  How

9    likely is it that all of these witnesses that you've

10   heard, these 30-some government witnesses, that

11   they're all lying?  Because at the end of the day

12   what all these witnesses are saying is that this

13   was -- this murder -- is part of a larger drug

14   conspiracy.  And all these people, the police, the

15   customers, the associates of Mr. Hall, people who

16   knew him as far back as 2004, haven't seen him this

17   years, people who dealt with him in 2010, all these

18   people are telling the same sorry.  They're giving

19   you different pieces of the same puzzle.  How likely

20   is it that they're all lying?

21            Most of the witnesses who came in front

22   of you had no incentive to lie.  They weren't getting

23   any benefits from the government; they weren't

24   working off charges; they hadn't been relocated.

25   Those who did get some benefit from the government

1    for the most part, you heard, what did they get?

2    They got moved away from Mr. Hall at their request.

3    That's the benefit they got.

4             The second question you should ask:  Why

5    would these people lie?  Again, most of them have no

6    reason to lie.  They haven't been compensated.  Most

7    of them haven't spoken to each other to coordinate

8    their story.  You have to decide if the benefit of

9    moving either to a different town or across town is

10   enough to get someone to come in and commit perjury.

11            Third question you should ask:  If these

12   witnesses were going to come in and lie, why would

13   they tell such little lies?  Why wouldn't they tell

14   the big lie?  If we were going to have these

15   witnesses come in and paint Mr. Hall as a drug

16   trafficker, why wouldn't they say:  Hey, I saw him

17   with truckloads of crack?  I dealt crack with him all

18   the time; ounces, kilos at a time?  Why does Kevin

19   Duckett say it was usually ounces at time?  Why does

20   Jocelyn Hamlet say:  Maybe several grams a day?

21            Why would the witnesses who saw the

22   murder say Mack was wearing a mask?  Why didn't they

23   say, "You know what?  I saw him.  That was Mack.  I

24   talked to him about it, he told me he was going to

25   kill him".

1           Why would they tell these little lies?

2     Why would they make it so hard?  Why didn't they just

3     tell big lies?

4           The fourth question I think you should

5     ask:  Why is everyone so scare?  If Mr. Hall wasn't a

6     dangerous person, why is everyone who's testified

7     asked to be relocated?  Is that to their benefit?

8     They moved away from Mr. Hall.  Why are these people

9     so anxious to leave their friends, their family,

10    their neighbors, just because they testified against

11    Mr. Hall?  What are they scared of?

12          Last question; it's the most important

13    question.  I think it's the question that cannot be

14    answered.  Why for so long did everyone protect Mack?

15    It wasn't until July 2010 that the government learned

16    from Rain Curtis that Mack was the shooter.  Why is

17    it, if everyone admits now that Mack was at the

18    scene, that before July of 2010 they named everyone

19    else that was there; Kevin Duckett, Jamar Howard, the

20    girls, Seattle, Avery.  The one person consistently

21    every single person left out multiple times was

22    Antonio Hall.

23          Even bigger question:  Why would Shameka

24    Ross not only leave Mack out, but then try to

25    convince Shaquanda Isaac to say the same thing?  Why

1    would she try to suborn perjury?  Why would she do

2    that?

3             I think the answer is simple.  They saw a

4    federal witness murdered in cold blood right in front

5    of them.  They saw what Mack does to people who talk.

6    And that's why they protected him; that's why they're

7    so scared.

8             Again, it's as Mr. Purcell told you in

9    opening statements.  This is not a complicated case.

10   It's a question of do you believe all these witnesses

11   or don't you?  If you don't believe them, you should

12   do what Mr. Proctor asked in opening statements; send

13   Mack home to Westport.  But if you do believe them,

14   I'm going to ask you to hold him responsible for what

15   he's done.  To find him guilty of drug trafficking

16   and murdering Kareem Guest.

17             Thank you very much.

18             THE COURT:  Thank you, Mr. Fuchs.

19             Mr. Sullivan.

20             MR. SULLIVAN:  Thank you, Your Honor.

21             Your Honor, may it please the Court.

22   Ladies and gentlemen of the jury, good afternoon.

23   Government counsel.

24             You know, I wish I lived in a world that

25   was as clean and concise and proper as apparently the

```
 1      United States Attorney's Office does.  Because my

 2      experience is the world, especially in Westport,

 3      don't operate like that.

 4                And let me go right to where government

 5      counsel left off.  Why for so long did everyone

 6      protect Mack?  This is a case about whether or not

 7      the United States Government with, its resources and

 8      its abilities and its body wires and detective/FBI

 9      Todd Moody could make a case.  And this is not about

10      the streets.  They want to pretend and scare you

11      about the law of the streets.  That's not where we

12      are now, ladies and gentlemen.  And let me talk for a

13      second about what you're supposed to do.

14                You are the jury in this case.  And, as

15      Judge Bennett has told you and he will tell you

16      again, you are the exclusive finders of the facts.

17      What happened that night in Westport to Mr. Guest,

18      what happened in this alleged drug conspiracy

19      involving Mr. Hall, whether he possessed a firearm,

20      whether he's a prohibited person who possessed a

21      firearm that night -- it's not even a firearm by the

22      way, it's two little teeny-teeny pieces of smashed up

23      metal.  That's not for the government to decide and

24      it's not for me to decide.  You are the exclusive

25      judge of the facts.
```

1          What I find troubling is that the

2    government, without really saying it, wants you to

3    believe that this gentleman over here, Antonio Hall,

4    known as Mack, should be held out to be the poster

5    child for everything that goes wrong in Westport.

6    And, for that matter, everything that goes wrong in

7    Baltimore City.

8          The culture of snitching.  The culture of

9    the government making deals with people.  And what

10   happens to those people when they're not protected.

11   That's not my responsibility.  That's not Mr.

12   Proctor's responsibility.  That's the responsibility

13   of the government.  Just like it's the government's

14   responsibility in this case to prove to you beyond a

15   reasonable doubt by the law of the courtroom, not the

16   street, what happened.

17          And it's not just what happened, because

18   we obviously all know as rational people, and we've

19   seen the pictures, that Mr. Guest was killed.

20   There's no doubt about that.  But I'm going to spend

21   some time talking to you, and I'm going to take my

22   time.  But I know that, trust me, it's very dangerous

23   to stand between 14 people and their lunch.  But we

24   will get there as quickly as I can.

25          Your job now is not to assume things, not

1    to guess things, not to speculate about things, not

2    have hunches about things, which sounds ironically

3    similar to a lot of the government's witnesses in

4    this case.

5              And let me get this out quickly before I

6    forget.  Mr. Proctor and I are not arguing by any

7    stretch of the imagination that all of the 29 or 30

8    witnesses who testified in this case are liars.

9    We're not saying that.  And it would be irresponsible

10   to say that.  But what we are saying to you is some

11   of them are and some of them stretch the truth.  And

12   it's for you to make the credibility determination.

13   And the judge later on will instruct you precisely as

14   to what credibility means and what the rules are for

15   making that determination.

16             Now, listen, the beauty of why we select

17   you folks -- and it was talked about a little earlier

18   by my co-counsel in opening -- is that when the

19   Founding Fathers -- they needed somebody to stand

20   between the ultimate power of the government and the

21   citizenry.  And who is accused of a crime.

22             So the Founding Fathers said, "We're

23   going to pick people from all over to sit in

24   judgement.  And we sure don't want lawyers to do it".

25   And here in Maryland in the Northern Division, we

1      reach out to multiple counties, multiple life

2      experiences, because what we want is common sense.

3              And the task for you in this case, I

4      would suggest, is, knowing that Mr. Hall is presumed

5      innocent -- and, by the way, he is presumed innocent

6      at the beginning of this trial; at this very second

7      he is presumed innocent; when you hear the conclusion

8      of the evidence and go back with all of the exhibits

9      into the jury room, he is presumed innocent at that

10     point.  And that presumption of innocence only

11     evaporates if each and every one of you are convinced

12     beyond a reasonable doubt of each and every element

13     of the four counts in this indictment.

14              Now, if you can't be convinced beyond a

15     reasonable doubt, then Judge Bennett will tell you --

16     don't take my word for it -- that -- because Mr.

17     Fuchs told you, I'll be telling you a lot of things

18     to you today.  Don't take my word for it, take judge

19     Bennet's word for it.  If you are not convinced

20     beyond a reasonable doubt, and even if you don't like

21     it, you have to acquit.  Because you can't guess and

22     you can't assume and you can't have any hunches.

23              Now, before I go into -- and I'm not

24     going to do what Mr. Fuchs did, because Mr. Proctor

25     and I have confidence in your abilities.  We've

1    watched you, just like you've watched us.  You've all

2    taken notes.  You've got here on time.  You've been

3    attentive.  I can't begin to tell you the number of

4    inconsistencies and what we would suggest would be

5    fabrications that occurred in this case.

6              Last night I was thinking about trying to

7    create a chart of all of the lies that people told.

8    And I call them lies; it's up for you to determine

9    how you feel about it.  But I would suggest to you

10   that, if you don't tell the government what they want

11   to hear the first time, they'll bring you back down

12   to the city the second time.  If you don't tell them

13   the second time, they'll bring you back down to the

14   city the third time.  If they don't believe you a

15   third time, they'll tell you, "We know Mack did.  It,

16   how can we get that information from you?"

17             And then you'll hear people talk about,

18   "Well, I need to be relocated out of Westport; I need

19   money".  The one thing that just resonated with me

20   when Mr. Fuchs talked about Mr. McClinton and the

21   $200 and the bus ticket he got, are any of you happy

22   that that sex offender man who came out of the sewer

23   who raped a child got a bus ticket from the

24   government and $200 and they called him as a witness?

25   I hope he doesn't end up in any of your counties.

1      That's all I can tell you.  That is the quality of

2      the person that the government chose to call in this

3      case.

4               And don't kid yourself.  They could have

5      brought in -- you know, Mr. Fuchs talks about this

6      snapshot of drugs in this case.  You know, you saw it

7      by yourself.  The government could have done anything

8      and everything they wanted in this case.  They're not

9      required to do specific investigative techniques.

10     But this is who they chose; this is the cream of the

11     crop.  This is the government's A-list witnesses.

12     These are the people they chose to present their case

13     to convince you that Mr. Hall's guilty beyond a

14     reasonable doubt.

15               So last night when I was trying to pin

16     together Rain Curtis, what she said, against what

17     Kevin Duckett said, against what Ferl said; who was

18     in the grass, who was bending over, who was in the

19     car, how they got in the car, I gave up and quite

20     frankly, watched the end of Master Chef.  Okay?

21     Because it was too complicated.

22               It was too complicated because the volume

23     of lies in this case, the volume of inconsistencies

24     in this case, were overwhelming to me.

25               Now, you have your own impressions

1    because you took notes.  But let me tell you what I

2    think is kind of interesting about this case.

3              Your ultimate job is to determine where

4    the truth lies.  And I love that little -- you know,

5    I'm not an intellectual, I'm just a trial attorney.

6    But I love that little play on words, "where the

7    truth lies".  Because I would suggest that the truth

8    lies so shallow in this case that you can't be

9    convinced beyond a reasonable doubt that Mr. Hall was

10   in a drug conspiracy; with who, because it's an

11   agreement between two persons.  I guess we have all

12   these unnamed people under the government snapshot.

13   But why didn't they bring them in?  If they were

14   there, why didn't they bring them in?

15             I would suggest to you that there's

16   insufficient evidence; that the government can't

17   convince you beyond a reasonable doubt that Mr. Hall

18   shot in retaliation Kareem Guest.  And I would

19   suggest to you that he didn't use a firearm in the

20   commission of that, because he didn't do it.  And

21   then I would also say to you that the evidence is

22   insufficient to conclude that he is -- that he

23   possessed a firearm as a prohibited person, or the

24   little fragments of ammunition.

25             But what I want to talk to you a little

1    bit about is the case and its true lies and

2    reasonable doubt.  Because that's what it really is

3    at the very end of the day.  And, a lie, we all know

4    what a lie is.  We have kids; we've lied ourselves.

5    But we know that a lie is deviating from the truth.

6    And we know that liars aren't believed.

7              And there's tons of evidence in the

8    Bible, all the way through Greek mythology, to

9    popular literature, that liars are not worthy of your

10   belief.  And I would ask you, when you look at the

11   jury instructions and listen to Judge Bennett give

12   you the instructions, pay particular attention to the

13   credibility instructions on how you determine if

14   someone is truthful or not.  Because in those

15   instructions the judge is going to tell you some very

16   important kernels of truth that you should use to

17   evaluate.

18              So here's some highlights from some of

19   the government witnesses; at least my perceptions of

20   them.

21              Dishonesty, perjury, deceit, fabrication,

22   guile, misrepresentations, fibbing, double-dealing,

23   two-faced, prevarication, falsity, mendacity, and

24   untruthfulness.  Those are the foundation of the

25   witnesses that the government wants you to convict

1      Mr. Hall on for the murder of Kareem Guest.

2                  You know, again, I don't want to talk

3      about the Bible too much.  But the Bible talks about

4      the man who built his house on the foundation of rock

5      versus the man who builds his house on the foundation

6      of sand.  And in this case -- and then the Bible

7      talks about, if you build your house on a foundation

8      of rock, it will be strong and it will withhold the

9      rains and the weather.  If you build it on a

10     foundation of sand, it will melt away because it

11     can't stand it.  And I think that's what's happening

12     here.

13                 The government doesn't choose its

14     witnesses; they'll be the first to tell you, even

15     though I don't know if I necessarily agree with that

16     on some regards.  But they chose these seven people

17     to come and testify about the Kareem Guest murder.

18     And I'll get to the drug conspiracy later; I'm not

19     going to go Counts 1 through 5, I'm just going to

20     kind of jump around a little bit.

21                 So Mr. Fuchs told you, and he used the

22     word, "mountain of evidence".  He said:  We have a

23     mountain of evidence in this case.  Well, let me talk

24     a little bit about that.  Under that analogy, I

25     guess, Mr. Fuchs believes that the government has

1    sufficient evidence beyond a reasonable doubt before

2    Mr. Hall's presumption of innocence that they could

3    carry you to the summit where you will convict Mr.

4    Hall.

5              Well, let me suggest to you -- and when

6    he said it I kind of chuckled, because I just got

7    through reading a book called *Into Thin Air*.  And

8    it's about Mt. Everest; and, you know, that's the

9    highest mountain in the world; and it's over between

10   Nepal and China.  And the only way you can get to the

11   top, to that summit, is you have to hire these people

12   called Sherpas.  And that's what they're called.

13   They're the indigenous population that live on the

14   mountains.

15             And these are the people -- and it

16   doesn't matter.  You can have as much money as the

17   FBI, the Baltimore City Police Department, the

18   federal government.  But you -- and you could be the

19   best rock climber in the world.  But you are not

20   getting to the top of that mountain unless you have

21   these Sherpas.  Because they know the trails, they

22   know where the avalanches are, they know where the

23   crevices are that you can fall in and die.  They know

24   how to get you to the top.

25             So the government has to get to the top

1      with seven Sherpas in this case.  And these people, I

2      would suggest to you, are just simply not worthy of

3      your belief.

4              And, again, I want to emphasize

5      something.  Your job is so important.  You're not

6      standing here or sitting here making decisions about

7      what's wrong in our society, what's wrong with

8      Baltimore County, Baltimore City, what's wrong with

9      Westport.  That's not your job.  Your job here is to

10     consider the exhibits that were allowed into evidence

11     as well as -- and I don't even really want to touch

12     this -- the testimony that came from, particularly

13     right now, seven people who sat in this chair, looked

14     at you, and testified.  And let's start just quickly

15     with Mr. Carithers.

16             You know, the beauty of doing what I

17     do -- which is why, every time I stand up, whether

18     it's my first time or last time, I love what I do.

19     Mr. Carithers made me angry.  And I usually don't get

20     up and scream at witnesses; you may not believe that,

21     but I usually don't.  But Mr. Carithers did something

22     that was so wrong that he set a wheel in motion.  And

23     it was a wheel in motion that ended up with Mr.

24     Guest's murder.  And he has been -- he got immunity

25     from the government.

134

```
 1                    Remember that discussion that, whatever
 2      he said, the government wouldn't prosecute him for
 3      it?  He has been disbarred.  And then what was
 4      particularly irksome -- and again, you know, I'm a
 5      true believer, also.  I don't know how many of you
 6      read Sherlock Holmes' stuff.  But you know, he always
 7      talks about the little facts.  You can look at the
 8      big facts.  But it's the little facts; the devil's in
 9      the details.  You got to look at the little facts to
10      determine whether somebody's truthful or not.
11                    And that to me is what we had tried to do
12      when we were trying to punch holes in the
13      government's case to convince you that the government
14      hasn't made its case beyond a reasonable doubt
15      against Mr. Hall.
16                    Do you remember the whole problem with
17      Mr. Carithers saying that?  And it was a stupid
18      little, and this is what, you know, when people lie
19      about stupid things.  I can kind of understand lying
20      about big facts; but I can't understand about, and
21      you should not accept, anyone who lies about little
22      facts.
23                    When Mr. Carithers said:  It was about
24      one or two months after Mr. Cheese got indicted in
25      the Stewart indictment that I entered my appearance.
```

135

1       And then I showed him the indictment, the docket

2       sheet where he entered his appearance four days later

3       and he had the audacity to tell you ladies and

4       gentlemen that he considered that to be one to two

5       months later because the indictment was in August and

6       he entered his appearance in September.

7               Then he continued not being truthful with

8       you when -- and he was crushed by Mrs. Knox about:

9       Here's the envelope of discovery.  He said it never

10      happened.  Mrs. Knox received a phone call from him

11      and he said -- he said throw it away.  And she

12      said -- he said -- I never said that to her.

13              So here's a person, typical of these

14      Sherpas the government's called, who's trying to

15      protect himself from being a defendant.  The whole

16      thing about the day planner; that he needed to go

17      back to go to a day planner to determine whether or

18      not he was lying to the government, is patently -- it

19      just doesn't even, -- I don't even want to comment on

20      it.

21              Rain Curtis.  I don't care if Rain Curtis

22      loved Mr. Hall.  It is of no moment to me.  Rain

23      Curtis is a downright perjurer.  She has taken an

24      oath -- not in that seat; promised a jury similar to

25      you, a grand jury, to tell the truth; did not do it

1       and was convicted.

2              Now, Mr. Purcell in his opening talked

3       about these laws of the street versus these laws of

4       nature and having a -- and having kids somehow

5       insulates you from telling the truth.  Well, that's

6       not the rules of law that you're going to be told by

7       Judge Bennett in this case.

8              And again, you know, Mr. Fuchs didn't

9       talk about it.  But listen to the phone call that she

10      made to Hershel up in the jail.  It wasn't government

11      orchestrated.  It wasn't government planned.

12      Detective Moody wasn't there.  Where she says, "They

13      killed".  "They killed that boy".

14             Now, she would have no reason to believe

15      that the government was listening to that call.  She

16      did testify that she thought that those calls were

17      recorded, so she wasn't trying to be all blatant

18      about it.  But why wouldn't she say, "He killed him"?

19      Why did she say, "They killed that boy"?

20             She was wrong about what he was wearing.

21      She and Mr. Duckett are completely wrong about what

22      Mr. Duckett did.  If you believe Mr. Duckett, he was

23      sitting in the truck, even though no one puts him in

24      the truck except himself.  Or, if you believe Rain

25      Curtis, Duckett was out on the grass close to where

1    Mr. Guest was shot.

2            She was coy and deceitful about her drug

3    and alcohol use.  Everybody else said they were

4    socializing.  I would suggest to you that socializing

5    is a way to get high and drink alcohol on this Sunday

6    night while her kids were somewhere else.

7            And don't forget that Rain Curtis has not

8    yet been sentenced.  So, yes, she he has free housing

9    right now.  The government's paying for her housing.

10   And I'm not suggesting there's anything wrong with

11   that.  But the ultimate person who determines whether

12   Rain gets free government housing in the future is

13   Judge Bennett.  Because ultimately Rain Curtis is

14   going to come to Judge Bennett for her sentencing and

15   faces the possibility of being incarcerated in the

16   Bureau of Prisons.  More free government housing,

17   separated from her children.

18           What a powerful motivator to say what the

19   government wants you to say.  "I want to stay with my

20   kids.  I don't want to go to jail.  What do you need

21   me to do?"

22           And don't forget flowing through -- like

23   a stream flowing through a lot of these people's

24   testimony was:  Hey, do you remember meeting with

25   Detective Moody?  Do you remember meeting with

```
1          Assistant U.S. Attorney Purcell?  Do you remember
2     talking to them about the case?
3               Yeah.
4               Do you remember them talking to you about
5     we know Mack did it; just give it up?
6               Witnesses said that.
7               The other thing that I think is
8     interesting for your consideration is nobody -- I
9     don't believe.  And, again, my recollection doesn't
10    control.  But I don't think anybody said Kareem said
11    the same thing when he died.  People were all over
12    the map on what he said.
13              Now, look, it is incredibly horrific that
14    he died.  And I'm not suggesting otherwise.  And I'm
15    not suggesting that this case makes or falls -- the
16    government's burden makes or falls on what Kareem
17    Guests's last dying words were.  But you would think
18    that, if everybody was there and everybody heard it,
19    they would hear the same thing.  But that's not the
20    case.  It's just, again, one of these little details
21    that I think should cause you to pause.
22              The other thing about Rain Curtis that I
23    think really should cause you to stop dead in your
24    tracks is, again, a little thing, but it goes to her
25    credibility.
```

1              Remember the testimony about the traffic

2     stop with Detective Moody where she was sitting on,

3     in her purse, I don't know where it was, some

4     marijuana.  And she did get busted for the marijuana.

5     But she possessed it that day while she was having

6     interaction with Moody.  And she said, quote, "It's

7     not a crime if they don't know".  That's what she

8     said.

9              So I would suggest to you that Rain

10    Curtis, even withstanding Detective Moody coming to

11    her job and embarrassing her, really is looking for

12    her future to stay out of prison.  So her ability to

13    help carry the government up this mountain is not

14    possible at all.

15             Kevin Duckett.  Ladies and gentlemen of

16    the jury, Kevin Duckett received immunity from the

17    government for actively participating in the murder

18    of Martie Williams.  He set it up; he set it in

19    motion; and the government is not prosecuting him for

20    it.

21             Mr. Duckett got a free pass for a drug

22    distribution case from September of 2010 from these

23    prosecutors who helped and made a call to get the

24    state case dismissed.

25             Now, they will tell you that:  We were

```
1    too afraid to bring Duckett back into the city

2    because he's living somewhere else; you know, a place

3    with a pool or something like that.  But we didn't

4    want to bring him back.

5             Mr. Duckett is a murderer, violent, beats

6    women.  Is not believable.  His version of what

7    happened, where he was on the cut, is contradicted by

8    all of them because they never all don't tell the

9    same story.  And he's just a person who you just

10   can't trust.  And we'll talk about it a little later,

11   but he is the rock, no pun intended, of -- maybe --

12   of the government's drug conspiracy case.  Because,

13   if you don't believe Kevin Duckett about splitting

14   kilos or half kilos with Mr. Hall, then there's no

15   weight.

16            Look at this.  And Mr. Fuchs talked about

17   it.  This is Mr. Proctor's chart here.  All those

18   times that they arrested Mr. Hall throughout that

19   whole -- during those years, 1.29 grams.

20            Now, what the government wants to do is

21   they want to bootstrap it.  Everybody knows what

22   "bootstrap" means.  They want to bootstrap and say,

23   "Oh, look.  If he did these five things; then you

24   know he was doing it every day; so you just got to

25   add it up, and let's believe Mr. Duckett".
```

1              I would suggest to you, ladies and

2      gentlemen, that Mr. Duckett, this convicted felon

3      with a temper, who just punched Miss Brandenburg in

4      the face, shouldn't be believed by you at all for

5      anything.

6              And it's really -- you know, the thing

7      about the -- we'll talk with this in a minute, too.

8      The thing about Martie Williams and Robert Parsons,

9      the murder of Martie Williams and the shooting of

10     Robert Parsons, the thing that's particularly irksome

11     is Mr. Hall's not standing before you charged with

12     those crimes as substantive counts.  You will not

13     have the opportunity to vote guilty or not guilty;

14     has the government reached its burden of proof beyond

15     a reasonable doubt to defeat Mr. Hall's presumption

16     of innocence on the murder of Martie Williams, or on

17     the shooting of Robert Parsons.

18              They're overt acts.  So you're not going

19     to be able to come and vote on that as a juror.  But

20     what the government does is they just throw it in as

21     evidence in this case to help dirty up Mr. Hall.  To

22     help you say, "Oh, this person 's dangerous; this

23     person's violent".

24              But he's not charged in this indictment

25     with those offenses, so you'll never have a chance to

1       vote on that.

2                  But I would suggest to you that Mr.

3       Duckett is not worthy of belief and is a very

4       dangerous Sherpa to help carry you up this mountain.

5       Because he will rob you at gunpoint like he did when

6       he's was 15, and steal everything that you have.

7                  Tamica Mouzon.  All I want to say about

8       her is Percocet and drinking.  Because I would

9       suggest to you when she testified in front of you --

10      and the judge will give you an instruction about how

11      you are to evaluate the credibility or believability

12      of people who were on drugs or who have been addicted

13      to drugs or who are on drugs now.  I would just leave

14      it at that.  She, again, told different stories about

15      what Mack was wearing.  She even thought she had

16      immunity.  And then remember, Mr. Purcell went back

17      at her on redirect and talked about the difference

18      between recantation and immunity, which it was lost

19      on her.  She didn't know.  But she didn't -- she

20      thought she had immunity.  She didn't see Ferl there.

21      And the government told her, "We know Mack did it".

22                  Shameka Ross.  She testified Kevin wasn't

23      in the truck before the shooting, even though Kevin

24      was.  That her and Shaquanda Isaac had worked out

25      their story together.  That the government told her

1    that Mack did it before she ultimately said that he

2    did.  And who got in where.

3            Shaquanda Isaac, poor girl, age 13 starts

4    using marijuana, sitting in the front seat of the

5    truck rolling a blunt at the time she hears a shot.

6    She didn't see anything.  And, whether she did or

7    not, she has never told anybody that she did.  She

8    was just there to get her marijuana and do what she

9    does, drink and get high.

10           Jamal Howard, Ferl.  This is an

11   interesting guy here.  Because first of all, he tells

12   you straight out of the box upon direct examination

13   by the government that he didn't really know Mr. Hall

14   at all.  And that's what he said from the witness

15   stand.  Then it came out that he supposedly one or

16   two times dealt -- handled drugs for him.  But, you

17   know, him and Mr. McClinton, you know, when they take

18   the witness stand and can't tell the truth in the

19   period of 20 minutes, I would suggest to you that

20   they're just not worthy of believing and they're not

21   worthy of being believed.

22           That there is this whole thing about the

23   gun.  I did not get the sense that Ferl has any kind

24   of extrasensory perception ability; that he just

25   happened to know what, "Go get that," meant.  If it

1    was even said by Mr. Hall.  And that he just happened

2    to know by some kind of instincts where to go to get

3    it out of all of the electrical boxes that are in the

4    Westport projects.  I don't believe that for a

5    second, and you shouldn't believe that for a second.

6              Ferl knew more than he told you.  And

7    remember, there's two types of lying.  There's

8    omission and commission.  If I know something and I'm

9    not saying, I'm lying just as much as I'm telling you

10   a lie.  He had an immunity letter, too.  He's got

11   benefits from the government.  He said Mack was

12   wearing jeans.

13             The government made a big deal of Ferl

14   saying how afraid he was of Mr. Hall.  But at the end

15   on my recross, remember I asked Ferl:  You're so

16   afraid of Mack that you let Mack take your kids to

17   the football and swimming.  And he said:  Yeah.

18             And do you remember Ferl was such a drug

19   dealer, was so involved, I guess, in the Scarface

20   operation of Westport led by this drug leader over

21   here, Mr. Hall, that he couldn't even tell you what

22   the simplest street terms are for what an eight-ball

23   is, 3.5 grams.  He didn't know what a Vick was, seven

24   grams, named after Michael Vick's jersey number.  He

25   didn't know the basics of a drug dealer.

1          These people are the ones that the

2     government wants you to trust to convict Mr. Hall

3     beyond a reasonable doubt of these crimes.  And I

4     would suggest to you that forget about Mt. Everest

5     and forget about this mountain of evidence that the

6     government says they have.  They can't -- these seven

7     people, these seven Sherpas that are going to lead

8     you, by their testimony -- because that's the only

9     evidence in the case, their word -- they can't lead

10    you up an anthill, let alone Mt. Everest.  They can't

11    come close to convincing you beyond a reasonable

12    doubt that Mr. Hall did these things as he's charged.

13         And let me tell you something else.  I

14    suggest that, if Mr. Duckett told you:  The light is

15    green, put your foot on the gas pedal, would you look

16    or would you go?

17         Would you look or would you go?

18         Is there that little seed deep, deep down

19    in your hearts and in your minds wondering:  Am I

20    being duped by these people?  Are they telling me the

21    truth?  Are they withholding?

22         Now, look, you know, I'm not a big

23    conspiracy theorist, either.  And I don't believe for

24    a second that the FBI and Mr. Purcell and Mr. Fuchs

25    said:  Look.  We need to find ourselves a poster boy

146

1     for Westport and we're going to just -- just open the

2     housing directory, find someone, and let's make a

3     case against him.

4             No.  That's not what happened.

5     There's -- obviously, Hall's out there hustling, Mr.

6     Hall is out there hustling.  Either using drugs or

7     selling drugs and selling these small quantities.

8     But is he in an agreement with other people?  Let's

9     talk about that for a second.

10            But before we go there, let me just ask

11    you to think about another thing as you consider the

12    evidence in this case.  We did call Seattle in our

13    case.  We don't have immunity.  We don't have the

14    ability to give anybody relocation expenses.  We

15    don't have the ability to give people bus tickets.

16    All we do is issue a subpoena; the judge grants it;

17    and he comes here.  And that's what we did.  He was

18    never called before the grand jury.  Seattle never

19    went before the grand jury.

20            And according to Seattle, Mr. Jones, the

21    government made him some really inviting promises of

22    what they would do for him if he agreed to say that

23    Mr. Hall was the shooter.  And he didn't do it.  He

24    knows what the consequences are of taking an oath and

25    testifying.  And he testified on the night Mr. Guest

1    was murdered there was one shooter; he didn't look

2    like Mr. Hall; didn't walk like Mr. Hall; was taller

3    than Mr. Hall.  And then he also testified how he

4    came around from the left to the right -- looking at

5    government's Exhibit 2 -- how he came from the left

6    to the right and into the cut in order to shoot him.

7    And that he didn't think it was Mr. Hall.

8              And he also talked to you a little bit

9    about his interactions with Detective Moody.  But

10   here's a man who doesn't have a deal with the

11   government; who came and testified on his own

12   volition.  I would suggest to you that there were

13   considerable differences in his testimony versus what

14   I would call the seven Sherpas that the government

15   wants you to believe.

16             The bottom line for the Guest murder,

17   ladies and gentlemen, is there's no fingerprints,

18   there's no DNA, there's no gun.  The only evidence of

19   the fact that Mr. Hall killed Mr. Guest is that you

20   have to believe hook line and sinker the testimony of

21   these seven people.  And the judge is going to

22   instruct you -- and this is not verbatim -- but the

23   judge is going to instruct you when you're evaluating

24   the credibility of a witness, you've really got to

25   think about:  Is this someone that I would trust when

CLOSING - SULLIVAN

148

1    I'm making an important decision in my life?

2              Now, if Kevin Duckett is the type of

3    person that you would trust, if Michael Carithers is

4    the type of person you would trust, if Rain Curtis is

5    the type of person you would trust, on and on and on

6    and on, then I guess then the government's made its

7    case beyond a reasonable doubt; then you should

8    convict Mr. Hall.  But if they're not, the foundation

9    of the government's case crumbles as to the murder of

10   Mr. Guest.

11             Now, let's talk about the drug conspiracy

12   just for a couple minutes.  Now, I told you earlier

13   they could have put on any witnesses that they wanted

14   and they could have put on whatever they wanted.  We

15   could have had a three-week trial instead of a

16   two-week trial.

17             Being a drug dealer does not mean you're

18   in a conspiracy.  Being a drug dealer does not mean

19   you have met nor does it mean the government has

20   proven that the elements that Judge Bennett will tell

21   you.  Being a drug dealer, just a bunch of people

22   hanging out everybody doing our own thing in

23   Westport, is not a conspiracy.  There has to be proof

24   of an agreement between two or more persons.

25             Now, I guess Mr. Fuchs wants you to

1    believe these white people who bought drugs or people

2    who were motioning -- but who are these people?

3    Where are these people?  They could have called them.

4    I guess their names are in the police reports

5    somewhere, but they didn't do it.  From January 2004

6    till December 2010, combined, confederated and agreed

7    with other persons to knowingly, intentionally, and

8    unlawfully distribute and possess with intent to

9    distribute, 280 grams or more of a mixture or

10   substance containing a detectable amount of cocaine

11   base, commonly called crack cocaine.

12            Here it is, ladies and gentlemen, right

13   here.  2005 to 2009.  1.29 grams.

14            Now, what Mr. Fuchs was talking to you

15   about, and what you can't do, is you can't start

16   guessing.  All right.  Well, let's see.  1.29 grams

17   times 365 times 5, round out -- probably didn't work

18   on Christmas, no.  No.  Doesn't work.

19            And if you take these kilos and quarter

20   ounces out.  Look, Mr. Fuchs talked a lot about Miss

21   Hamlet and Mama.  If you believe that Mr. Hall

22   combined, confederated, and agreed with Mama to be in

23   a drug conspiracy; this poor woman who is as drug

24   addicted as I've ever seen a witness; who was a crack

25   addict; who let these people different times,

1    different days, working independently, bag crack in

2    her house; then I guess you should convict Mr. Hall

3    of this, if his co-conspirator was poor Miss Hamlet.

4              It wasn't Miss Hamlet.  Miss Hamlet was

5    having some hard times.  She testified to that.  But

6    also Miss Hamlet testified to a whole period of time

7    where Mr. Hall was coming into her house packaging

8    where Mr. Proctor said, "Did you know that Mr. Hall

9    was in jail between these periods of times?"  And

10   then she kind of laughed and said, "Oh, you got me".

11             So maybe it's not all as crystal clear to

12   Miss Hamlet as need be.

13             Who are these people that Mr. Hall, his

14   conspirators, who possessed or planned to possess

15   drugs?  Who are the members of this Hall conspiracy

16   and where are they and why didn't they testify?

17             If you take that 129 grams (sic) and you

18   multiply it by 200 percent, it's still under 280

19   grams.  Still under 28 on grams of crack.

20             Now, let's talk a little bit about some

21   of these other crack addicts and other people that

22   testified before you that the government chose to

23   call in this case to testify.  You know, Miss

24   Brandenburg.  Again, heroin and crack addict.  Who

25   told us about Mr. Hall's Aunt Frieda or Grandma

1     Irene.  You know, I would suggest that she doesn't

2     know how many times she did, when she did, from Mr.

3     Hall or anyone else.  That you can't rely on her to

4     establish quantity in this case.

5              Same thing with Mr. Parsons.  The beauty

6     of Mr. Parsons' testimony that Mr. Fuchs talked about

7     is, when this conspiracy started in January of 2004

8     as indicted by the grand jury, Mr. Parsons was done

9     dealing with -- done dealing with Mr. Hall.  So not a

10    single piece of crack did Mr. Parsons buy from Mr.

11    Hall after January of 2004.  So again, it's a giant

12    red herring slithering across the courtroom here

13    because, you know, you all need to consider -- and

14    the judge will instruct you -- what's in the

15    indictment.  If Hall was dealing crack with Parsons,

16    pre-January 2004, he's not charged with that and you

17    can't convict him for that.

18             Again, I talked about Mr. McClinton

19    earlier, and these 33 jell caps that he testified he

20    got from Hall.  Well, that's -- that's his testimony.

21    If you choose to believe him, convict Mr. Hall.  But

22    I would suggest to you that Mr. McClinton is a person

23    not worthy of belief.  And I told you earlier what

24    the government did for him and where he'll be going

25    sometime soon.

1          Now, I will agree with Mr. Fuchs that the
2    police are out there doing their job.  I have no
3    qualms with that.  But there are two, three police
4    officers I just want to talk about for just a second
5    to kind of show you that the world and, you know,
6    everything's not is as white and black as the
7    government wants you to believe.  But things are
8    actually gray.  And it's your job as exclusive
9    finders of the facts to determine what the truth is
10   in this case.
11          Let's talk really quick about Sergeant
12   Williams.  Ladies and gentlemen, I find it absolutely
13   unbelievable that Sergeant Williams was confronted by
14   Mr. Hall and Mr. Hall said to him, "I am very
15   proficient with my weaponry".
16          Now, I would suggest to you -- it's not
17   in evidence and what I say is not evidence.  But I
18   don't think Mr. Hall went to Gilman, and I don't
19   think he went to Loyola.  All right?  It can't be
20   true.  "I'm very proficient with my weaponry".
21          First of all, listen to the tape of
22   Duckett and Mr. Hall.  Do you hear any of King's
23   English in those tapes?  Why would Sergeant Williams
24   say that?  Why would he say something like that?
25   Because he knows he needs to come in and testify for

1      the government and put guns in Mr. Hall's hands.

2      "I'm very proficient with my weaponry".

3             Compare that to the Duckett/Hall body

4      wire.  That's not how Mr. Hall talks.  And why

5      Sergeant Williams do that?  I don't know.  It's up

6      for you to decide.  And it's up for you to decide

7      whether it's important or not important.  But I would

8      suggest to you that, when you get on the stand and

9      you say something that's not true, you're not worthy

10     of belief.  And, when you're not worthy of belief,

11     the government's not moving that ball closer to

12     beyond a reasonable doubt because you're standing as

13     interference to that.

14            The other agent, Agent Brooks.  Again,

15     you know, perhaps accidental, not monumental in the

16     sake of where this case is.  But testified in one

17     part about four pink jell caps; but there are only

18     two pink jell caps.

19            Now, I'm not suggesting that Agent Brooks

20     is lying.  I'm not suggesting that he's doing

21     anything sinister.  But what I'm saying is people

22     have problems in recollection of things that occurred

23     a long time ago.  And I think Agent Brooks is a

24     perfect example of that.  And he's also a perfect

25     example of when he testified after he observed this

1    drug deal going down with Mr. Hall -- and do you

2    remember the testimony was somehow Mr. Hall was kind

3    of like an air traffic controller directing people to

4    do things.  And when the arrest teams came in

5    sometime later, I guess Mr. Hall didn't have any of

6    the prerecorded serial number bills in his

7    possession.

8            But isn't that kind of weird?  Because if

9    you're the maestro of the orchestra standing up there

10   directing everybody, directing all the different

11   sections, wouldn't you get the money?  Wouldn't Mr.

12   Hall have that prerecorded serial number money in his

13   pocket?  He didn't.

14           I find it unbelievable, ladies and

15   gentlemen, and I think you should too, that, when Mr.

16   Hall supposedly came up to Sergeant Williams and

17   said, "I killed the man" -- basically -- "I killed

18   the man who shot my brother," that Sergeant Williams'

19   reaction was to do nothing about it.  No report, no

20   calling anybody.  "Hey, do you guys have a dead body

21   over there?"  Nothing about it.

22           Now, in the drug conspiracy count there

23   is these overt acts about the drug quantities.  And

24   we talked about the Martie Williams shooting, the

25   murder, and the Parsons shooting.  And we talked

1        about why they're there.  But let me suggest to you

2        something else to think about.  As to the Parsons

3        shooting, was it in furtherance of a drug conspiracy,

4        which the government has charged; or was it in

5        furtherance of Mr. Parsons ratting out Freddy for the

6        Baltimore County homicide?  If Mr. Parsons was shot

7        by whomever that night, was it because he told the

8        police on Freddy; or was it in furtherance of the

9        drug trafficking offense?

10               I would suggest that the motive for

11       shooting Mr. Parsons was that he told on Freddy.

12       That has nothing to do with the drug trafficking

13       charges that are in the indictment.

14               As to that shooting, by the way, you

15       know, Mr. Parsons, who -- knock on wood -- is

16       recovering from his terrible drug addiction, the way

17       he testified -- and I don't have somebody to put up

18       pictures for me.  But when you look at those crime

19       scene photographs, how he tells his story differs

20       from some of those pictures.

21               He says that Mr. Hall or who he thought

22       was Mr. Hall -- even though the person was dressed

23       all in black -- never left that one side of the

24       street.  And you would have to believe that there is

25       these two parked cars there; that this person from

1    across the street was, I guess, so proficient with

2    his weaponry that he could cut through both of those

3    cars and get Mr. Parsons just at the right time just

4    in the leg.  I don't buy it and I don't think that

5    you should buy it either, ladies and gentlemen.

6              Martie Williams is, again, another

7    senseless murder of a 19-year-old young man.  You

8    know, we talked a little bit about BGF, Black

9    Guerilla Family.  Detective Dohony and I talked about

10   what gangs do and the violence that are associated

11   with gangs.  And Detective Dohony talked about the

12   types and calibers of the guns that were used in that

13   case.  And then there's Mr. Cunningham who talked

14   about -- again, you know, the devil's in the details.

15   It's the little things.  That it was about 15 to 20

16   minutes when Kevin Duckett left before the shooters

17   came in.

18              Watch the video.  That's just not right.

19   It's moments before.  You've seen the video.  They

20   played it in their case in chief.  So, you know --

21   and what can you take when a man's sitting there

22   watching his friend right next to him be assassinated

23   by two men dressed in black, who closes his eyes

24   because he thinks he's about to be killed?  What

25   exactly does that person remember?  No one's

```
1       identified Mr. Hall in that case.
2                   Mr. Cunningham and Mr. Tinkler have
3       different stories.  And, again, I'm not going to get
4       into it, but Tinkler took an oath and told you that
5       Cunningham buried his clothes, and made a big
6       production of it.  Didn't have blood on it.  Needed
7       to bury it so the police wouldn't be there.
8                   That's not what Mr. Cunningham said.  "I
9       threw it in some stream to float out to the
10      Patapsco".
11                  Mr. Cunningham cleaned up the crime scene
12      before the police got there because he didn't want to
13      be involved.  Mr. Cunningham dismantled his own .357
14      and threw it into the river, the stream, so he
15      wouldn't have it, either.
16                  You know, I don't belittle what happened
17      to Mr. Williams.  But I would suggest that you're not
18      asked to go reach a verdict on the Williams shooting
19      in this case.
20                  We talked a little bit about Count 5, the
21      possession of -- the prohibited person in possession
22      of a firearm.  And, as Judge Bennett has told you and
23      will tell you again, we agree that Mr. Hall is a
24      prohibited person; he cannot possess a firearm.  But
25      is the evidence in this case sufficient -- if you
```

1    find the evidence insufficient to convict him of the

2    Kareem Guest murder, then by definition you should

3    not convict him of possessing these two little

4    fragments of ammunition in this case.

5            Here are my final thoughts, and then we

6    can all have lunch.  You have a really hard job,

7    ladies and gentlemen.  You really do.  Because what

8    Mr. Proctor and I do is we challenge the government's

9    case.  We're proud to represent Mr. Hall, just like

10   we're proud to represent anybody that the United

11   States accuses of committing a crime.  And our job is

12   to give you things to think about.  Because the world

13   is not, again, as clean and concise and black and

14   white as the government wants you to believe.

15           You know, what happened in Westport, I

16   guess based on what we've heard, stays in Westport.

17   And it's not your job to defeat the rule of the

18   street and the laws of the street; but it is your job

19   to follow the rules of law.  And the rules of law

20   benefit Mr. Hall considerably in this case.

21           These Sherpas can't get up this mountain.

22   And these can't be guilty beyond a reasonable doubt

23   in this case.  And your obligation is to follow the

24   evidence where it leads you.  And you may not like it

25   and you may not be happy that you're going to reach

1      the conclusions that you're going to reach.  And

2      you're probably going to wish that the government

3      could have better witnesses and make it cleaner for

4      you and erase the doubts that you have; to erase the

5      shortfalls of the government's case.  You may wish

6      that with all your heart.  But that's not your job.

7      You have to follow the rules of law and the facts in

8      this case.

9                  How many times can a person lie before

10     they're believed?  All the way back to Aristotle.

11     Aristotle talked about you can't believe a liar.  And

12     I'm going to end with just a simple thing that we

13     were all, all taught and heard as children.  The boy

14     who cried wolf.

15                  And what was the ultimate story there?

16     That this little boy said, "The wolf have is coming,

17     the wolf is coming".  And the whole town ran up to

18     the mountain range; ran up to the mountain range with

19     their clubs to beat back the wolf to save the sheep.

20     And they didn't find any wolf and they went back.

21                  And then the boy said, "The wolves are

22     coming, the wolves are coming, the wolves are

23     coming".  And the town grabbed their clubs and ran up

24     again.  And there were no wolves.

25                  And then the next day the boy yelled,

CLOSING - SULLIVAN

160

1    "The wolves are coming, the wolves are coming, the

2    wolves are coming".  And the people in the town went

3    on their business.  They didn't grab their clubs;

4    they didn't do anything.  And the wolves were coming.

5    And what happened?  The flock was dispersed, and the

6    town was damaged by it.

7              And what's the ultimate story there?

8    That, even when a liar tells the truth, no one

9    believes them.  Even when a liar tells the truth, no

10   one believes them.  And that's the government's case

11   here.

12             On behalf of Mr. Proctor and Mr. Hall, we

13   thank you for your time and attention.  We're glad

14   you're serving as jurors in this case.  Follow the

15   truth.  Follow where the truth lies.  Figure out how

16   the government's going to get to that top of that

17   mountain of evidence with the witnesses they called,

18   the evidence they introduced, and I would suggest to

19   you that you will acquit Mr. Hall in this case.

20             Thank you.

21             THE COURT:  Thank you very much, Mr.

22   Sullivan.

23             Ladies and gentlemen, we'll now take a

24   break for lunch and we'll start again at 2:30.  And

25   lunch is in there waiting for them; is that right?

1             THE DEPUTY CLERK:  It's on its way.

2             THE COURT:  Your lunch is on the way.  Go

3       wait for it in the jury room.  We'll take an hour

4       break for lunch and we're starting at 2:30.

5             (LUNCH RECESS.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                        AFTERNOON SESSION

2               (JURY OUT.)

3               THE COURT:  We have received word, the

4    jury has indicated to Miss West, the deputy clerk of

5    court, that they would -- once we finish with

6    rebuttal argument and the charge to the jury, they'd

7    like just to come back tomorrow, which is quite

8    frankly what I was going to suggest anyway.

9                    Any problem from the point of view of the

10   government?

11                  MR. PURCELL:  No, sir.

12                  THE COURT:  Any problem from the defense?

13                  MR. PROCTOR:  No, sir.

14                  THE COURT:  I will tell them that's what

15   we'll do.  So with that we'll have rebuttal argument

16   here.

17                  MR. PROCTOR:

18                  (JURY IN.)

19                  THE COURT:  Good afternoon, everyone.

20   First we'll hear from the government rebuttal and

21   then you will hear my instructions on the law at the

22   conclusion of the rebuttal argument.  Might take a

23   break in the middle of my instructions because

24   sometimes the jury is a little overwhelmed with all

25   the law.  It's one of the things you don't see on
```

1      television, is the judge instructing the jury on the

2      law.  TV ratings would go down, I can tell you.

3              But what I want to tell you is I've

4      gotten word that you all suggested that at the

5      conclusion of today that you go home for the day and

6      come back tomorrow morning to begin deliberations.

7      That was going to be exactly my suggestion.  It's

8      late in the day.  Indeed, I have an appointment at 6

9      tonight, so I need to be here if you have any

10     questions.  So that's the best way to do it.

11             So we will have, rebuttal argument from

12     Mr. Purcell in a few minutes on of the government.

13     And then I will give you the jury instructions.  And

14     then we might take a break midway in the instructions

15     to let you stretch a little bit.  And we'll finish

16     that and you'll go for the day.  And we'll start here

17     promptly tomorrow morning.  I'd ask you to get here

18     no letter than 9:30, 20 of 10.  And then what we'll

19     try to do is get in the courtroom as soon as we can,

20     some time -- at the absolute latest, 10 o'clock.  And

21     we'll all be here in the courtroom again and I'll

22     make sure everyone's here and then you all go and

23     deliberate.

24             So, with that, we'll be glad to hear from

25     you, Mr. Purcell, on behalf of the government.

1          MR. PURCELL:  Thank you, Your Honor.

2          Good afternoon, ladies and gentlemen.

3   You've heard quite a lot from me by watching the

4   witness presentations, though I was not speaking

5   directly to you during those presentations.

6   Everything, of course, that has happened to the

7   courtroom has been for your benefit.

8          I, like you, listened to the defense

9   closing.  And this is the part of the trial called

10  the rebuttal.  And really my argument is fairly much

11  limited to rebuttal.  And I made notes -- not many,

12  actually -- as to the defense points.

13         It was a refreshing little break in the

14  trial because we got to catch up on our Biblical

15  references, defense attorney anecdotes and cliches.

16  We all got a good book recommendation.  Of course,

17  I've already read that book.  Jon Krakauer has some

18  other books that you might want to pick up, but that

19  was about the extent of it.

20         Like you, perhaps, I was waiting for some

21  answers.  I was waiting for some explanations.  And

22  the key thing about which we require explanation is

23  this:  It is one thing to stand in front of you and

24  say you cannot believe the government's main seven

25  witnesses that were characterized -- there were not

1    seven; there were six in terms of the murder.  You

2    cannot really believe those witnesses, it was

3    suggested, because they're a bunch of liars.  And,

4    actually, that's not the case.  Only five of them are

5    liars.  Mr. Duckett has only ever given one version

6    of what happened.  The other five, Rain Curtis,

7    Tamica Mouzon, Shameka Ross, Shaquanda Isaac, and

8    Ferl, Jamar Howard, all have lied before the grand

9    jury.  They didn't lie before you.  They got their

10   lying done before they got in here.

11           What counsel didn't get into and didn't

12   discuss and certainly didn't explain, I don't think

13   even Aristotle referred to it in any of his

14   teachings, but it's a very simple fact of life, but

15   true:  Anyone can lie.  But nobody lies --

16   particularly under oath, under penalty of going to

17   jail, as Miss Rain Curtis found out the hard way --

18   nobody lies without a good reason.  And all five of

19   those people, every single one of them, lied not

20   here, but before they got here in the grand jury.

21           And what I was waiting for as I sat and

22   watched counsel, and, of course he's not going to

23   answer this question.  We challenged him to; my

24   co-counsel challenged him to at the end of his

25   remarks:  Answer these questions.  And we can let

REBUTTAL - CHURCH

1     Mr. -- we can let Mack go home to Westport.

2              And the question is:  Why did each of

3     those five people lie before the grand jury?  And lie

4     about him?  And, of course, that's the answer.  He's

5     not going to touch that.  Nor he.

6              It's one thing to say they're lying.  I

7     made notes of every one of the witnesses he went

8     through.  He spoke about Shameka Ross and Shaquanda

9     Isaac basically in just the same sentence and then

10    turned the page.  And, really, that's where it begins

11    and ends, is with Shameka Ross and Shaquanda Isaac.

12    Particularly Shameka Ross.

13             Long before the government ever knew who

14    committed this crime, which occurred on September

15    20th, 2009 -- and the family is still waiting for

16    justice; that's why I'm talking to you today because

17    even though that closing requires no rebuttal,

18    something must be said for Kareem.

19             But even at that point, September 20th,

20    2009, these five witnesses all knew who not to say

21    was there.

22             Now, they hoped they wouldn't have to be

23    interviewed at all.  They hoped this would be just

24    another Baltimore City murder investigated by

25    Baltimore City cops; maybe prosecuted, if it got

1   lucky, by some Baltimore City prosecutors.  And Mack
2   was counting from that day on, doing this boldly in
3   front of other people who he knew wouldn't talk.  He
4   wasn't counting on somebody caring that Kareem was
5   killed.
6              But we do care.  They care, the
7   government cares, the community cares.
8              He wasn't counting on somebody pressing
9   the issue and continuing to press the issue from
10  September, October, November, December, January,
11  February, March, April, May, June, July 2010.  But up
12  to that point all five of these individuals had
13  committed perjury.  And isn't it amazing -- and it
14  was completely unexplained -- how could this
15  coincidence be that each of these five people came to
16  the grand jury and each one of them omitted any
17  reference to Mack as being there?
18             No problem talking about Seattle being
19  there.  Or Kevin.  And you've heard this.  You've
20  heard me say this in opening; you've heard me ask the
21  questions of the witnesses and Detective Duckett, of
22  the witnesses themselves -- not Detective Duckett.
23  Sorry.  Detective Moody.
24             All these same questions.  And up to that
25  point we did not know.  But they knew who to exclude.

1              Now, if counsel had been able to offer

2     you an answer as to why all five people knew before

3     we did who to protect, then it would be over.  But

4     they can't answer that.  And it's still over.

5     Because their omission -- their omission is the best

6     evidence the government has against the defendant.

7     It's as simple as that.

8              Because nobody lies without a reason.

9     Their reason was they wanted to stay alive.  You just

10    don't tell on Mack.  And you know why now.

11             You've seen a litany -- you've seen

12    witness after witness come in terrified of him.  You

13    saw one guy come in who had been shot seven times by

14    him.  You saw Martie Williams' body.  He was shot ten

15    times.  Ten times in the back of the head and the

16    back of the neck.  Two different guns.  Four .40s and

17    six .32s.  And then, of course, Kareem.  Seven.  Four

18    in the top of his head like stitches.  That's just

19    the way it is.

20             And that's who the defendant is.  And the

21    only way you get a defendant like this is to push

22    through the people who are protecting him.  And we

23    got lucky, as you've heard.  You heard the Raymond

24    Curtis tape.  "I was standing right there".  Thank

25    you.  That was the break.

REBUTTAL - CHURCH

169

```
 1                    And even then when we learned that in
 2      February of 2010 she was still so afraid, she came
 3      back to our offices:  Oh, we're so powerful; we get
 4      people to tell us what they want to tell us.  She
 5      came back with her attorney, sat in our offices, her
 6      attorney heard that tape, and she still said, "I'm
 7      not talking.
 8                    "We know you know who it is.  You were
 9      there.  You said you saw it.  You told her Hershel.
10                    "Nope".
11                    Indicted in this courtroom; the sentence
12      coming up.  But the point is she pled to the crime of
13      perjury.
14                    But finally, in July of 2010, she had
15      enough.  Yeah, the law of nature did take over.  What
16      mother -- what parent, but particularly what mother,
17      particularly in that family, wants their children
18      being raised by somebody else when they can be there?
19      So she made a choice.  And she came in and she told
20      the government what happened.
21                    Now, why did she lie up to that point;
22      and who was she protecting?  She never denied Seattle
23      was there; she never denied Duckett was there; she
24      never denied anybody but the defendant, just like the
25      other four.
```

1              Now, that's just not a coincidence.

2    That's the reality of this case.  And you know it.

3    And, as I said in opening, the answer to the

4    question, why did they lie, who were they protecting,

5    is the person who committed this murder.

6              Now, somebody forgot to tell Seattle, who

7    was arrested, I think, in April of 2010 before we had

8    a chance to know from Rain Curtis who actually

9    committed the murder -- he was already now in federal

10   custody for sticking a gun in a woman's face and

11   invading her home and taking money and drugs --

12   somebody forgot to tell him before he took the stand

13   yesterday so proudly that:  Hey, dude, the story's

14   changed.  We're not doing the he wasn't there any

15   more story.  Forgot to tell him.

16             I'm sitting there listening to him.  And

17   he said, No, Mack wasn't there.  He had left two

18   hours before".  I was like:  What a dope.  He just

19   buried his friend.  He just buried his friend.

20             The better story for him to have said is

21   the:  Oh, yeah, Mack was standing there, Kevin was

22   standing right there, and some other third guy runs

23   out.  He forgot or didn't know; nobody told him that

24   all the other people had said, the he wasn't there

25   version, that was, we've done away with that.  We

1      know the he was there version, but either we didn't

2      see him, or we're telling the truth and we saw him do

3      it.

4                   He wasn't their witness.  He was our

5      witness.  He was doing yesterday what Shameka Ross,

6      Rain Curtis, Miss Isaac, what they were all doing way

7      back in 2009.  Somebody forgot to tell him.  Thank

8      you, Seattle.

9                   And he was so proud of himself.  You

10     know, if it was such -- if that's all he had to say?

11     Remember, I asked him, "Why didn't you come in before

12     you were even arrested," we were trying to talk to

13     him.  Probably because there was a gun stuck to his

14     head, which I challenged.  But why didn't he come

15     forward, if that's all he had to say way back in

16     2009?

17                  He didn't implicate anybody.  What was

18     the big secret?  He wasn't telling on anybody.  If

19     that's all he has to offer you.  An idiot.  His

20     idiot.  His friend.

21                  You know, some of the witnesses in this

22     case have been degraded.  About all the defense has

23     done in this case is mock our witnesses, laugh at

24     them, call them whatever they call them, sex

25     offenders, degrade them, ridicule them.  They're not

1    our friends.  We never met Mack before he killed

2    Kareem, until 2010.  They're his friends.  They're

3    the people he sold drugs to.  The people he would set

4    up to do murders for him.  They're not our friends,

5    they're his friends.

6            That's why he's so freaked out.  He can't

7    believe this.  People are telling on him now.  Some

8    of them are.  Some of them are saying just what they

9    have to say.

10           But I sat there and waited and waited and

11   waited while we went through Biblical references and

12   Aristotle and the boy who cried wolf and waited for,

13   like:  Okay.  Tell us why those five people all

14   coincidentally kept the same person out of their

15   accounts for months.  For months.  Until after July

16   2010 in every single case.

17           That's the case right there.  That should

18   be it.  Besides the fact that they came and told you

19   then what they saw.

20           Two of these witnesses -- two of these

21   witnesses you might remember have not asked to be

22   moved.  Which two did not ask to be moved?  Very

23   simple.  Shameka Ross, Shaquanda Isaac; the two

24   people who were in the car.  The two people who were

25   in this car who both lied about even being there in

1    their original grand jury.  Shaquanda was only at the

2    grand jury twice.  The first time -- and she had

3    other meetings where she continued to deny.  But Miss

4    Ross had been to the grand jury two times.  Both

5    times don't know anything about it.  "I wasn't

6    there".

7            And then we learned -- of course, she

8    admitted she told Shaquanda to say exactly the same

9    thing.  Who were they protecting?  Who did they omit?

10   Of course, it's obvious.  She omitted the defendant.

11           But those two are still not being

12   truthful.  Can you possibly believe they were in that

13   car and really didn't see what happened?  Do you

14   believe that?  They told us what they had to tell us.

15           They didn't hear any last words.  You

16   know why?  Because every witness who heard the last

17   words of Kareem told you the same thing.  One of the

18   words they heard was, "Mack, please," or, "No, Mack.

19   I didn't tell them anything".  Every one of them was

20   "No, Mack".  And they were not going to say the word,

21   "Mack".

22           Mr. Cunningham.  Do you believe Mr.

23   Cunningham at Martie Williams' murder, the guy that

24   sat here and testified, he was completely almost

25   inarticulate as he testified when I was asking him

1    questions.  You saw him on the stand.

2              I needed to bring them in so you could

3    see them and assess for yourselves with whether they

4    were being completely truthful and if they were

5    afraid, or scared.

6              And this is Mr. Cunningham on the stand.

7    You're up there.  You were sitting next to a guy who

8    was shot.  He runs out after them.  And he's looking

9    at the defendant saying, "I've always said, I've

10   always said I didn't know who it was.  I'm still

11   telling you, even though you can't get at me right

12   now, I'm still saying, I've never told.  I'm not

13   telling".  Just like he told him after he went to the

14   homicide office.  "I didn't tell them anything".

15             You know, I don't know what's so scary

16   about this guy except for one thing.  When he has a

17   gun in his hand, he likes to use it.  He does like

18   the bang the gun.  He couldn't care less about who he

19   kills.  His best friend, Kevin Duckett, told you, and

20   you heard it on that tape.  He comes back to the

21   officers -- I'm now talking about November 20th, 2009

22   (sic), the two different undercover meetings he did

23   or whatever.  When the defendant started asking and

24   talking about Roddy in those questions, he came back.

25   And the first thing he did was start yelling at

1    Detective Moody for letting me ask questions in the

2    grand jury of those witnesses about Roddy.

3                   And in that very conversation he's

4    telling Duckett, "Yeah, the two girls in the car,

5    Shameka and Shaquanda ran right back to me just in

6    the past couple of weeks".  And it was just in the

7    past couple weeks; and we were asking about Roddy.

8    We were only asking that the last couple of weeks

9    because we only learned about Roddy in October of

10   2009.  '10.  Sorry.  2010 when Duckett finally came

11   in.

12                  And that freaked the defendant out.  And

13   it freaked out Mr. Duckett even more.  Because he

14   told you, "He would kill me; he would kill Roddy".

15   And it was that night that he began his happy exile

16   from Baltimore.  And he's unhappy about it.  Oh, but

17   don't believe him because his place has a swimming

18   pool?  Crazy.  That's crazy, Mack.  That's crazy.

19                  He would kill anyone.  And you have the

20   evidence of that.  You know, it isn't just killing

21   them.  He exterminates people.  Most heads are barely

22   big enough to take four bullets in them.

23                  Yeah, people are scared of him.  And,

24   yeah, they all went to the grand jury and all of them

25   became liars.  But don't condemn them when the reason

1    they became liars was because of him.  And that's the

2    part that the defense has not addressed.  Yeah,

3    they're liars.  They lied for him.  Long before we

4    even knew Mack was there.  We didn't even know Mack

5    was there.  Because they didn't tell us.  Talk about

6    a conspiracy?  That's a conspiracy.

7                 You know, at one point I thought this guy

8    must be -- I don't know.  I thought the defense was

9    going to say he wants to be a police officer when he

10   grows up; that's why he goes and interviews all the

11   people that we just had at the grand jury.  He's just

12   trying to find out who did it.  He talked to these

13   people more than we did.  They'd go to the grand

14   jury; he'd show up on their front door.  Every one of

15   them told you he interviewed them.

16                 And they weren't interviews with pens,

17   and, "Hey, how was it in there?"  He was making them

18   tell him they didn't say anything.  And each one of

19   them did that.

20                 Shameka Ross, really the most important

21   witness in the case because you saw her just break

22   down in the courtroom.  Panicked.  When she had to

23   admit that she told somebody a lie.  And you saw her;

24   you saw her hostile.  And she had never been that way

25   before them.  In front of the defendant; sure.  "I'm

1        still not telling them anything, Mack.  I'm not like

2        my boyfriend or my husband.  I'm not a snitch".

3        Cheese, that's her boyfriend.  Cheese was believed to

4        be a snitch.

5                    Miss Isaac was 19 at the time.  She'll do

6        whatever she was told.  She knows the rules.  Because

7        the first thing -- remember Tamica was -- Tamika,

8        when she took the stand.  The first thing she said.

9        I asked her something about:  What what do you see;

10       what are the rules.

11                   You don't see anything.  You don't see

12       anything; you don't hear anything.

13                   And that's the thing we have to overcome.

14       And we can't go out and do street justice.  As

15       counsel said, this is it.  This is Kareem's only

16       chance for justice is in here.  And you do have to

17       put yourself in the shoes of these witnesses.  You

18       have to step into their shoes to understand why they

19       lied.  Why he is now able to call them liars.

20                   Do you think Rain Curtis was lying?  You

21       know, one of the other questions I wanted counsel to

22       address -- and he just went over Rain Curtis.  She

23       was drinking, drinking.  She wasn't honest about when

24       she started drinking because Tamica said she was

25       drinking earlier and Rain said she didn't start

1    drinking until after the shooting.

2             Who cares?  Now, they're good lawyers.

3    And they know that you don't know a good case or a

4    bad case when you see one.  They create or try to

5    create things that you need to be concerned about.

6             Well, there are things you don't need to

7    be concerned about; and that's one of them.  But what

8    he didn't say and what he didn't begin to address --

9    and I was waiting and I asked when I had her on the

10   stand -- but I would have liked to have heard -- if I

11   were a juror and I was sitting here -- I would like

12   to have had one of the defense attorneys say:  Why

13   did you pick my client as the person you said was the

14   shooter?  Why did you do that?  If you love him and

15   you slept with him?  I guess.  And you went out and

16   did drug stuff with him and you went into houses with

17   him, like Mama's house?  Of all the people in the

18   world, why did you pick him?

19            And the answer would have been:  Because,

20   after sitting in jail for six months, I've had

21   enough.  These guys are not messing around.  I'm

22   going to tell the truth.  And the truth is you are a

23   murderer, sir.  You.  Are now caught.  Your day are

24   over.  Done.

25            He's not so scary.  He doesn't scare me.

```
1        Of course, I have guards all over the place.  Rain
2   Curtis didn't have any guards when she first came to
3   the grand jury.  She had to go back there.  Tamica
4   Mouzon didn't have any guards.  Shaquanda Isaac
5   didn't have any guards.  This is where they live.  He
6   could kill them like that.  In front of people.
7               Okay.  They lied.  If you can't
8   understand why, then we need a new system of justice.
9   Because it means jurors have no contact with what's
10  really happening in the world.  And it's certain you
11  do understand why; that's why there's 12 of you
12  pooling your experience.
13              But these are people, too.  These
14  witnesses are just as much people as you are.  They
15  live their lives.  This is not their major
16  preoccupation in life, is coming in as witnesses.
17  They're telling you what happened in their lives.
18  And hopefully, God willing, they'll be able to live
19  their lives as peacefully as possible.  Knowing, as
20  Kevin Duckett admitted, that he spends the rest of
21  his life, swimming pool or not at his apartment, with
22  a bullseye on his back.
23              Yes, get me back to my -- wherever I am.
24  Or Miss Hamlet, who went from one public housing to
25  another public housing.  Oh, we really helped her.
```

1      We might keep her alive for a couple of months.  She

2      has some guts.  She looked right at him.  "Yeah, I

3      know that guy, Mack".  She almost laughed at him.

4      "Yeah, when I was a crackhead, I let that guy use my

5      house.  I agreed to let him use my house.  I allowed

6      him to use me in his drug trafficking conspiracy".

7      Just like he used the little kids he sent out to --

8      hitters, they call them -- to serve the customers.

9              But we never heard a word about why these

10     people lied.  And I'm actually sick yelling about it.

11     You've got to see it.  If I can see it, you can see

12     it.  I'm an idiot.  I'm not that bright.  And I sure

13     wish I was as clever as counsel is trying to make us,

14     because I would make some better witnesses.  I would

15     have broken Ross and Mouzon and got them to tell me

16     the truth.

17             But there are some things people are more

18     afraid of than going to jail.  And you know, I wasn't

19     there that night.  And a couple of them have said,

20     "What would you do?"  Yeah, what would you do?

21     You're standing five feet away from somebody who gets

22     shot seven times for being a snitch.  Are you going

23     to run right out and tell somebody about that?  No.

24     That's the reality.

25             You know, that's what he's counting on.

1    He's counting on that.  The family's counting on you

2    and the system, the criminal justice system, against

3    this kind of a serious crime, is also counting on

4    you.

5         If I was as good as they say, I would

6    have broken those two people.  They'd be telling you

7    the truth, as well; the full truth.  Not just finally

8    after three visits to the grand jury that he hopped

9    into the car and they drove him away.

10        I would have also liked to hear why do --

11   these witnesses are running back and telling the

12   defendant, him, about our questions about Roddy in

13   the grand jury.  Now, I didn't make that up.  You

14   heard it on the tape.

15        Well, they know about Roddy.  Roddy; he

16   brought that up.  Duckett was so scared he couldn't

17   even follow up.  He said he was sent in there to get

18   some incriminating information?  He was so scared, he

19   didn't even know what to do.  He was like, "Huh?"

20   Comes back and yells at us for talking about Roddy.

21   We moved him the same day.

22        Let's listen to what a drug trafficking

23   conspirator sounds like on the street.  This is

24   something I want you to take away.  You've heard

25   this.  This is the real defendant with his drug

 1     conspirators on the street.  This is the man.  This

 2     is like, what, two minutes of his life on this tape.

 3     Two minutes.  And he's talking about stacks and crack

 4     and these dependents that he has and he has to take

 5     care of and give them drugs; they're not doing sales.

 6     This is two minutes of what we've charged for just,

 7     what, seven years of his drug existence?  Let's

 8     listen to this.  This is Mack.  This is the guy

 9     they're all afraid of.

10                 (Audio playing.)

11                 MR. PURCELL:  One little additional

12     piece, please.  That's the defendant.  Was that 45

13     seconds of his life?  Multiply that by seven years.

14     Busy guy.  He must be real high strung.  That's why

15     he shoots everybody.

16                 (Audio playing.)

17                 MR. PURCELL:  That's the defendant.

18     Charming.

19                 Now, one of the things I want to discuss

20     or just respond to is why you should not believe --

21     this accusation about why you should not believe

22     Kevin Duckett because he has immunity.  Well, in the

23     law enforcement world, sometimes people have to get

24     immunity.  And remember the tape we played of the

25     Williams murder, and you saw the big guy leaving, and

1    then the two guys go in and shoot Mr. Williams ten

2    times?  And the police had already interviewed the

3    people who were inside who confirmed that Duckett had

4    been in the house and left.

5              So when Duckett came in -- and I asked

6    him this, and he confirmed it through the detective

7    as well.  We didn't have any evidence against Duckett

8    except that he was there.  He hadn't confirmed to

9    anybody that he set it up.  The only people that knew

10   that were him, Duckett, and the defendant.  So we had

11   nothing.  That is, I can't, no one can, get a proffer

12   from somebody, that is, get them to tell us what they

13   did and what they know, and then say, "Oh, so you set

14   it up?  Well, you're under arrest.  Let's go".

15   That's not the way it works.  The Constitution don't

16   allow that.

17             But we knew he wasn't the shooter.  You

18   know, sometimes you have to get the guy who set the

19   shooter up and set the murder in action.  Sometimes

20   you have to do that.  And that's what happened here.

21             Duckett didn't ask for immunity.  I

22   offered it to him.  We knew he hadn't done anything

23   in terms of the actual assassination of that witness.

24   We knew it wasn't his beef.  He wasn't the

25   triggerman; it wasn't his plan.  So yeah, he got a

184

1       walk.  But he got a walk, anyway.  Because the only

2       person in the world who knew he set it up was the

3       defendant and him.  And neither of them were saying.

4       So we got a free witness.  So a guy who, instead of

5       out there is walking around as a guy who got away

6       with murder, now he's a guy walking around as our

7       witness with a bullseye on his back for the rest of

8       his life.

9                    But you got to hear what he did and who

10      he did it for.  And you can have complete confidence

11      that he's not the murderer and that he gave this

12      story to protect himself as the murderer because of

13      that videotape.  That videotape was played for a one

14      reason.  To allow you to see what the witness has

15      said is absolutely true.  You've seen him.  He's a

16      big guy and it helps on the video.  Walking up the

17      street.

18                   So, yes, he did get a pass.  And he

19      understands that, if he doesn't tell the truth, all

20      that goes away.  That's the way it has to happen

21      sometimes.

22                   Now, one other witness who got immunity

23      was Carithers; Mr. Carithers.  Now, Mr. Carithers was

24      called by the government simply to establish for you

25      the motive, that is, how that Guest 302 -- which

185

1    you'll be able to look at in a couple minutes; well,

2    when you begin your deliberation -- how this got on

3    to the street.  We had to establish that.

4              Now, Mr. Carithers had immunity for his

5    testimony here in the courtroom.  And, if you look at

6    the letter that he has, that's exactly what it says.

7    Why did he need immunity for his testimony here in

8    the courtroom?  He needed it because he's under

9    investigation for lies to the government or possible

10   lies to the government in earlier proffer sessions.

11   As he said, as the letter says, those are not

12   immunized.

13             So what he said here to you to establish

14   how this stuff got out on to the street is protected.

15   But what he said before is not.  Now, that particular

16   investigation is out of my hands, out of this

17   office's hands.  It's being handled by a different

18   U.S. Attorney's Office.  And he has to deal with

19   them.

20             Now, why the defense spent a half hour

21   beating the hell out of him, I have no idea.  That

22   was just gratuitous.  That was just gratuitous.  It

23   was cruel, actually.  He has a lot of problems.  He

24   didn't intend anyone to get killed.  He didn't kill

25   Kareem Guest.  Detective Moody and I didn't kill

1    Kareem Guest.  Duckett didn't kill Kareem Guest.

2    Seattle didn't Kareem Guest.  Westport didn't kill

3    Kareem Guest.  That guy over there killed Kareem

4    Guest.  Just as he killed Martie Williams and tried

5    to kill Mr. Parsons.

6              The last thing I want to discuss is Mr.

7    Parsons.  You've heard enough about the drugs and

8    conspiracy.  And, if you can't see that -- and I

9    think you can; you don't need me to assist.  But I

10   was waiting when we were hearing about the Parsons

11   shooting scene, about this one nine millimeter

12   cartridge that was found on the ground that day.  I

13   was wondering how counsel was going to explain this

14   incredible coincidence.  But, isn't it crazy that the

15   person who was shot on that street, on Huron and

16   Hollins Ferry, just happens to be absolutely sure

17   that it was Hall who shot him?  And that's not the

18   case.  That's not the whole case.  That's a witness

19   describing a guy in a mask.  You can understand that

20   that's tough.

21             We're not relying just on Mr. Parsons

22   saying that.  I was waiting to hear how he was going

23   to explain the coincidence that -- how the casing

24   that was found at the scene the next morning, this

25   casing right here that we were lucky to find of the

```
 1      seven that were fired on the street -- who knows

 2      where they are -- this casing matches a gun, one of

 3      two guns and a bag of crack found in the trash can of

 4      the defendant's baby's mother's house about 14 days

 5      later.  Whoa, that's a coincidence.

 6              And how it's a coincidence that Mr.

 7      Duckett remembers that, while he was walking up Huron

 8      Street with the defendant, he told him, "Yeah, that's

 9      where I shot the white guy".  That's what he told us.

10              If he was my guy, I would have coached

11      him to tell you a lot more with it.  He also told you

12      that he had been shot for snitching.  Of course, we

13      know he had been shot for snitching.  I shouldn't

14      even say that word, it's disgusting.

15              He had told the police truthfully who had

16      his car.  I don't know where we're heading when

17      telling the police the truth, coming in here and

18      facing your community, is something awful; something

19      about a murderer, whatever it might be.  It is for

20      him.  And he has complete confidence in his system.

21              Well, these two systems are in conflict,

22      folks.  And it's a serious conflict.  And this case

23      wasn't brought as a message.  It's brought because

24      this guy was a federal witness.  It's the least we

25      can do for his mother and his family.  There's no
```

1      message being sent here.  I'm way past the let's-

2      send-a-message stage.  Nobody's listening out there.

3              But this case is before you because of

4      this guy's conduct.  And the only thing we're going

5      to affect in this trial is his conduct.  And that's

6      what I'm asking you to do".  To go back into that

7      jury room -- put that verdict sheet up, please.  And

8      mark it.  Let me show you how easy it is to mark a

9      verdict sheet.

10             Guilty.  Possession with intent to

11     distribute.  280 grams.  It could be 280,000 grams.

12     This guy does thousands of grams.  A kilogram is a

13     thousand grams.  Mr. Duckett told you, among many

14     others, beyond the days and days and weeks and weeks

15     and years and years of daily transactions, that,

16     yeah, he got kilos with the defendant.

17             Now, he got held up on one question; and

18     it was my fault.  I even said to him -- I said, "Did

19     you get kilos from the defendant," who had the source

20     of supply.  Remember, he was saying, "I gave my money

21     to the defendant.  Hall had the source of supply.

22     We'd pool our money.  He'd go buy it".

23             You have to ask these guys the right

24     question.  He never got a kilo, Mr. Duckett, he got

25     half kilos.  He got parts of kilos from the

1    defendant, who got kilos.  One kilo is over 280

2    grams.  280 grams is about a pound.  About a pound,

3    right?  Sorry.  That's why I'm not -- a half pound.

4    A half pound of white powder.  So that means when you

5    go to the store to buy some sugar for your coffee,

6    those of us who still use sugar in our coffee, you

7    know, there's big bags.

8              This isn't the big bag; this is the

9    little bag.  The little half bag.  He was buying

10   bricks of cocaine and turning it into crack and

11   putting it out on the streets through kids.  And what

12   a great dad; what a great dad.  Took his kids over to

13   Mama's to help them package up the crack.  I didn't

14   make that up.  She didn't make it up.  She did say he

15   only did it a couple times.  You know, didn't always

16   do that.  It is disgusting.

17             What a coincidence.  Bad set of

18   coincidences for this guy.  The only thing that

19   happened here that he didn't count on was that

20   someone cared.  At one point I thought I was in this

21   trial -- it must be, there's two easy jobs in this

22   city this law enforcement.  One, Baltimore City

23   Homicide detective.  I mean, they run around and all

24   that; they have to do all these interviews.  But it's

25   really pretty easy because there's never any

```
 1    witnesses.  Nobody ever saw anybody.

 2              So fine, I got a case; no witnesses;

 3    okay; fine.  Case closed.  Big file.  Nothing to do.

 4              The other job is defense attorneys.  You

 5    go with your blow torch and then skewer every witness

 6    the government puts up and hope you'll think that the

 7    prosecutors are bad, the detectives are bad, the

 8    witnesses are all liars, they've all been bought off.

 9    The standard crap that is thrown at these witnesses

10    in the cases.

11              Well, this case was built to last.  We're

12    not asking you to believe one witness.  We didn't

13    bring in just Rain Curtis or just Kevin Duckett.

14    There's layers and layers of evidence.  Layers of

15    eyewitnesses.  Evidence as to why they lied.  Common

16    grand jury transcripts that they all omitted the

17    defendant.  Layers of his customers; layers of his

18    co-conspirators.  People have no reason to come in

19    and not be truthful.  This case was built to get a

20    conviction and get this guy off the street.

21              If you don't believe that, if you find

22    otherwise, then send him back to Westport.  We've

23    done the best job we can do.  Those people have

24    sacrificed essentially their freedom, a large part of

25    their freedom and their safety, to come in here and
```

```
 1    tell what happened.  You've heard what happened.

 2    People who know have told you.  Now you know.  I'm

 3    going to ask you to go back into that jury room,

 4    think it all through, talk about it, take your time.

 5                 These guys have been waiting for years.

 6    Take your time.  Join with each other and I'm

 7    completely confident you'll come back with the

 8    verdict warranted in this case.  Guilty; guilty;

 9    guilty; guilty.

10                 It's about responsibility.  It is about

11    time somebody make this guy face responsibility for

12    his conduct.

13                 Thank you very much.

14                 THE COURT:  Thank you, Mr. Purcell.

15                 MR. PURCELL:  Now the fun part.

16                 THE COURT:  Ladies and gentlemen, I now

17    instruct you on the law, as I indicated.  And I will

18    read these jury instructions to you.  And a copy of

19    these jury instructions will also be given to you.

20    And they'll be tape recorded, as well, correct,

21    they're tape recorded, as well, if you wanted to

22    listen to the tape for some reason.  But you will

23    have a copy of everything from which I'm reading.  So

24    you're welcome to take notes but you're going to have

25    a copy of this, as well, back in the jury room to
```

1     look through.

2              And I think what I'm going to do -- and

3     after verdicts I always talk to jurors.  And this is

4     a very laborious process, but it's very important,

5     that we might take a break midway through the reading

6     of the law just to let you air your head out for a

7     few moments and then we'll have you come back in.  So

8     just bear with me.

9              You've now heard all of the evidence and

10    the arguments of counsel and about to enter into your

11    final duty which is to decide the fact issues in the

12    case.  Before you do that I will instruct you on the

13    law.  You must pay close attention to me now.  I will

14    go as slowly as I can and be as clear as possible.

15             I told you at the start of the trial that

16    your principal function during the taking of

17    testimony would be to listen carefully and observe

18    each witness who testified.  It has been obvious to

19    me and to counsel that you have faithfully discharged

20    this duty.  Your interest has never flagged and it is

21    evident that you followed the testimony with close

22    attention.  I ask you that you give me that same

23    careful attention as I instruct you on the law.

24             You have now heard all the evidence in

25    the case as well as the final arguments of the

1    lawyers for the parties.  My duty at this point is to

2    instruct you as to the law.  It is your duty to

3    accept these instructions of law and apply them to

4    the facts as you determine them, just as it is been

5    my duty to preside over the trial and decide what

6    testimony and evidence is relevant under the law for

7    your consideration.

8              On these legal matters you must take the

9    law as I give it to you.  If any attorney has stated

10   a legal principle different from any that I state to

11   you in my instructions, it is my instructions that

12   you must follow.

13             Your role is to pass upon and decide the

14   factual issues in the case.  You, the members of the

15   jury, are the sole and exclusive judges of the facts.

16   You pass upon the weight of the evidence; you

17   determine the credibility of the witnesses; you

18   resolve such conflicts as there may be in the

19   testimony; and you draw whatever reasonable inference

20   you decide to draw from the facts as you have

21   determined them.

22             In determining the facts you must rely

23   upon your own recollection of the evidence.  The

24   evidence in this case consists of the sworn testimony

25   of the witnesses and the exhibits received into

1     evidence.  What the lawyers have said in their

2     opening statements last week and their closing

3     arguments today and in their objections and in their

4     questions to the witnesses is not evidence.  What I

5     say to you is not evidence.

6               Since you are the sole and exclusive

7     judges of the facts, I do not mean to indicate any

8     opinion as to the facts or what your verdict should

9     be.  You are to perform the duty of finding the facts

10    without bias or prejudice as to any party.  You are

11    to perform your final duty in an attitude of complete

12    fairness and impartiality.

13              The case is important to the government,

14    for the enforcement of criminal laws is a matter of

15    prime concern to this community.  Equally, it is

16    important to the defendant, who is charged with a

17    serious crime.

18              The fact that the prosecution is brought

19    in the name of the United States of America entitles

20    the government to no greater consideration than that

21    accorded to any other party to a litigation.  By the

22    same token, it is entitled to no less consideration.

23    All parties, whether government or individuals, stand

24    as equals at the bar of justice.

25              Your verdict must be based solely upon

1    the evidence developed at trial or the lack of

2    evidence.  It would be improper for you to consider

3    in reaching your decision as to whether the

4    government sustained its burden of proof any personal

5    feelings you may have about the defendant's race,

6    religion, national origin, sex, or age.  All persons

7    are entitled to the presumption of innocence and the

8    government has the burden of proof, as I will discuss

9    in a moment.

10          It would be equally improper for you to

11   allow any feelings you might have about the nature of

12   the crime charged to interfere with your decision

13   making process.

14          I remind you that an indictment itself is

15   not evidence.  It merely describes the charges made

16   against the defendant.  It is an accusation.  It may

17   not be considered by you as any evidence of the guilt

18   of the defendant.

19          In reaching your determination of whether

20   the government has proved the defendant guilty beyond

21   a reasonable doubt, you may consider only the

22   evidence introduced or lack of evidence.

23          The indictment contains a total of four

24   counts.  By agreement of the parties, Count 2 is no

25   longer in the case.  So you're going to have Count 1,

1      Count 3, Count 4 and Count 5.  And Count 2 is out of

2      the case.  The lawyers all agree with that, Count 2

3      is out of the case.

4              The indictment contains a total of four

5      counts.  Each of the four counts -- and you should

6      not concern yourself with the reason for why Count 2

7      is not being submitted to you.

8              Each of the four counts charges the

9      defendant with a different crime.  You must consider

10     each count separately and return a separate verdict

11     of guilty or not guilty for each.  And I'll go over

12     the verdict sheet with you at the end of these

13     instructions.

14             Whether you find the defendant guilty or

15     not guilty as to one offense should not affect your

16     verdict as to any other offense charged.

17             It does not matter if the indictment

18     charges that a specific act occurred on or about a

19     certain date and the evidence indicates that, in

20     fact, it was on another date.  The law only requires

21     a substantial similarity between the dates alleged in

22     the indictment and the date established by testimony

23     or exhibits.

24             The burden is on the prosecution, that

25     is, the government, to prove the defendant's guilt

1     beyond a reasonable doubt.  As a result, the

2     defendant begins the trial here with a clean slate.

3     This presumption of innocence alone is sufficient to

4     acquit the defendant unless you, after a careful and

5     impartial consideration of all of the evidence, are

6     unanimously convinced beyond a reasonable doubt of

7     the defendant's guilt.

8               If the government fails to sustain its

9     burden of proving the defendant guilty beyond a

10    reasonable doubt, you must find the defendant not

11    guilty.  This burden never shifts to the defendant

12    for the simple reason that the law never imposes upon

13    a defendant in a criminal case the burden or duty of

14    calling any witness or producing any evidence.

15              The fact that one party called more

16    witnesses and introduced more evidence than the other

17    does not mean that you should necessarily find the

18    facts in favor of the side offering the most

19    witnesses.  By the same token, you do not have to

20    accept the testimony of any witness who has not been

21    contradicted or impeached if you find the witness not

22    to be credible.

23              You also have to decide which witnesses

24    to believe and which facts are true.  To do this you

25    must look at all the evidence, drawing upon your own

1   common sense and personal experience.  After

2   examining all the evidence, you may decide that the

3   party calling the most witnesses has not persuaded

4   you because you do not believe its witnesses, or

5   because you do believe the fewer witnesses called by

6   the other side.

7           In a moment I will discuss the criteria

8   for evaluating credibility.  For the moment, however,

9   you should keep in mind that the burden of proof is

10   always on the government and the defendant is not

11   required to call any witnesses or offer any evidence,

12   since he is presumed to be innocent.

13           During the trial you have heard testimony

14   of witnesses and argument by counsel that the

15   government did not utilize certain specific

16   investigative techniques.  You may consider these

17   facts in deciding whether the government has met its

18   burden because, as I told you, you should look to all

19   of the evidence or lack of evidence in deciding

20   whether the defendant is guilty.

21           However, you are also instructed that

22   there is no legal requirement that the government use

23   any of these specific investigative techniques to

24   prove its case.  Law enforcement techniques are not

25   your concern.

1          Your concern, as I have said, is to

2     determine whether or not on the evidence or lack of

3     evidence the defendant's guilt has been proved beyond

4     a reasonable doubt.

5          There are two types of evidence, as I

6     mentioned last week, that are generally presented

7     during a trial:  Direct and circumstantial evidence.

8     Direct evidence is the testimony of a person who

9     asserts actual knowledge of a fact, such as an

10    eyewitness.  Circumstantial evidence is proof of a

11    chain of facts and circumstances indicating the

12    existence of a fact.

13         The law makes no distinction between the

14    weight or value to be given to either direct evidence

15    or circumstantial evidence.  Nor is a greater degree

16    of certainty required of circumstantial evidence than

17    of direct evidence.  You should weigh all the

18    evidence in the case.  After weighing all the

19    evidence, if you are not convinced of the guilt of

20    the defendant beyond a reasonable doubt, you must

21    find him not guilty.

22         I remind you that a lawyer's question to

23    a witness is not evidence.  At times a lawyer on

24    cross-examination may have incorporated into a

25    question a statement that assumed certain facts to be

1      true and asked the witness if the statement was true.

2      If the witness denies the truth of the statement, and

3      if there is no evidence in the record proving the

4      assumed fact is true, then you may not consider the

5      fact to be true simply because it was contained in

6      the lawyer's question.  In short, questions are not

7      evidence; answers are.

8                   The evidence in this case consists of the

9      sworn testimony of the witnesses, the exhibits

10     received in evidence, and certain stipulations.  I

11     think there was one main stipulation.  A stipulation

12     is an agreement among the parties that a certain fact

13     is true.  You should regard such agreed facts as

14     true.

15                  Exhibits which have been marked for

16     identification but not received may not be considered

17     by you as evidence.  Only those exhibits received and

18     introduced into evidence may be considered as

19     evidence by you.  And those items of evidence that

20     are in evidence will go back into the jury room with

21     you.

22                  Anything you may have seen or heard about

23     this case outside the courtroom is not evidence and

24     must be entirely disregarded.  As I indicated before,

25     only the witnesses' answers are evidence and you are

1    not to consider a question as evidence.  Similarly,

2    statements by counsel are not evidence.  You should

3    consider the evidence in light of your own common

4    sense and experience and you may draw reasonable

5    inferences from the evidence.

6              There has been evidence that the

7    defendant allegedly made certain statements to which

8    the government claims he admitted certain facts

9    charged in the indictment.  You should first examine

10   with great care whether each statement was made, and

11   if so, whether, in fact, it was voluntarily and

12   understandingly made.  I instruct you that are to

13   give the statements such weight as you feel they

14   deserve in light of all the evidence.

15             The defendant did not testify in this

16   case.  Under our Constitution, he has no obligation

17   to testify or to present any other evidence because

18   it is the prosecution's burden to prove the defendant

19   guilty beyond a reasonable doubt.  That burden

20   remains with the prosecution throughout the entire

21   trial and never shifts to the defendant.  The

22   defendant is never required to prove that he is

23   innocent.

24             You may not attach any significance to

25   the fact that the defendant did not testify.  No

1    adverse inference against him may be drawn by you

2    because he did not take the witness stand.  You may

3    not consider this against the defendant in any way in

4    your deliberations in the jury room.

5              During the trial you've heard the

6    attorneys use the term, "inference," and in their

7    arguments they have asked you to infer on the basis

8    of your reason, experience and common sense, from one

9    or more established facts, the existence of some

10   other fact.

11             An inference is not a suspicion or a

12   guess.  It is a reasoned, logical decision to

13   conclude that a disputed fact exists on the basis of

14   another fact which you know exists.

15             Knowledge, willfulness, and intent

16   involve the state of a person's mind.  It has often

17   been said to juries that the state of one's mind is a

18   fact as much as the state of one's digestion.

19   Accordingly, this is a fact you are called on to

20   decide.

21             Medical science has not yet devised an

22   instrument which can record what was in one's mind in

23   the distant past.  Rarely is direct proof available

24   to establish the state of one's mind.  This may be

25   inferred from what he says or does, his words, his

1    actions, and his conduct, as of the time of the

2    occurrence of certain events.

3          The intent with which an act an is done

4    on often more clearly and conclusively shown by the

5    act itself or by a series of acts than by words or

6    explanations of the act uttered long after its

7    occurrence.  Accordingly, knowledge, willfulness, and

8    intent are usually established by surrounding facts

9    and circumstances as of the time the acts in question

10   occurred, or the events took place, and the

11   reasonable inferences to be drawn from them.

12         You have had an opportunity to observe

13   all the witnesses.  It is now your job to decide how

14   believable each witness was in his or her testimony.

15   You are the sole judges of the credibility of each

16   witness and of the importance of his or her

17   testimony.

18         It must be clear to you by now that you

19   are being called upon to resolve various factual

20   issues under the charges of the indictment in the

21   face of the very different pictures painted by the

22   government and the defense.  You will now have to

23   decide where the truth lies and an important part of

24   that decision will involve making judgments about the

25   testimony of the witnesses you have listened to and

1    observed.  In making those judgments, you should

2    carefully scrutinize all of the testimony of each

3    witness, the circumstances under which each witness

4    testified, and every matter in evidence which may

5    help you to decide the truth and the importance of

6    each witness' testimony.

7            Your decision whether or not to believe a

8    witness may depend upon how the witness impressed

9    you.  Was the witness candid, frank, and forthright?

10   Or did the witness seem as if he or she was hiding

11   something, being evasive, or suspect in some way?

12   How did the way the witness testified on direct

13   examination compare with the way the witness

14   testified on cross-examination?  Was the witness

15   consistent in his or her testimony, or did the

16   witness contradict himself or herself?  Did the

17   witness strike you as someone who was trying to

18   report his or her knowledge accurately?

19           How much you choose to believe a witness

20   may be influenced which the witness' bias.  Does the

21   witness have a relationship with the government or

22   the defendant which may affect the way he or she

23   testifies?  Does the witness have some incentive,

24   loyalty, or motive that might cause him or her to

25   shade the truth?  Or does the witness have some bias,

1    prejudice or hostility that may have caused the

2    witness, consciously or not, to give you something

3    other than a completely accurate account of the facts

4    to which he or she testified?

5              Even if the witness was impartial, you

6    should consider whether the witness had an

7    opportunity to observe the facts he or she testified

8    about.  And you should also consider the witness'

9    ability to express himself or herself.  Ask yourself

10   whether the witness' recollection of the facts stand

11   up in the light of common experience and all the

12   other evidence.

13             In other words, what you must try to do

14   in deciding credibility is to size a person up in

15   light of his or her demeanor and explanations given,

16   and in light of all the other evidence in the case,

17   just as you would in any important matter where you

18   are trying to decide if a person is truthful,

19   straightforward, and accurate in his or her

20   recollection.  In deciding the question the

21   credibility, remember that you should use your common

22   sense, your good judgment, and your experience.

23             In evaluating the credibility of the

24   witnesses, you should take into account any evidence

25   that the witness who testified may benefit in some

1    way from the outcome of this case.  Such an interest

2    in the outcome creates a motive to testify falsely

3    and may sway the witness to testify in a way that

4    advances his or her own interests.  Therefore, if you

5    find that any witness whose testimony you are

6    considering may have an interest in the outcome of

7    this trial, then you should bear that factor in mind

8    when evaluating the credibility of his or her

9    testimony and accept it with great care.

10            This is not to suggest that every witness

11   who has an interest in the outcome of a case will

12   testify falsely.  It is for you to decide to what

13   extent, if at all, the witness' interest has affected

14   or colored his or her judgment.

15            You have heard witnesses who testified

16   that they were actually involved in planning and

17   carrying out the crimes charged in the indictment.

18   There has been a great deal said about these

19   so-called accomplice witnesses in the summations of

20   counsel and whether or not you should believe them.

21            The government argues, as it is permitted

22   to do, that it must take the witnesses as it finds

23   them.  It argues that only people who themselves take

24   part in criminal activity have the knowledge required

25   to show criminal behavior by others.

1              For those very reasons, the law allows

2       the use of accomplice testimony.  Indeed, it is the

3       law in federal courts that the testimony of

4       accomplices may be enough in itself for conviction,

5       if the jury finds that the testimony establishes

6       guilt beyond a reasonable doubt.

7              However, it is also the case that

8       accomplice testimony is of such a nature that it must

9       be scrutinized with great care and viewed with

10      particular caution when you decide how much of that

11      testimony to believe.  I have given you some general

12      considerations on credibility and I will not repeat

13      them all here.  Nor will I repeat all of the

14      arguments made on both sides.  However, let me say a

15      few things that you may want to consider during your

16      deliberations on the subject of accomplices.

17             You should ask yourselves whether these

18      so-called accomplices would benefit more by lying or

19      by telling the truth?  Was their testimony made up in

20      any way because they believed or hoped that they

21      would somehow receive favorable treatment by

22      testifying falsely?  Or did they believe that their

23      interests would be best served by testifying

24      truthfully?  If you believe that the witness was

25      motivated by hopes of personal gain, was the

1    motivation one which would cause him to lie or was it

2    one which would cause him to tell the truth?  Did

3    this motivation color his testimony?

4               In sum, you should look at all of the

5    evidence in deciding what credence and what weight,

6    if any, you will want to give to the accomplice

7    witnesses.

8               The government has called as witnesses

9    people who are named by the prosecution as

10   co-conspirators but who were not charged as

11   defendants.

12              For this reason, you should exercise

13   caution in evaluating their testimony and scrutinize

14   it with great care.  You should consider whether they

15   have an interest in the case and whether they have a

16   motive to testify falsely.  In other words, ask

17   yourselves whether they have a stake in the outcome

18   of this trial.  As I have indicated, their testimony

19   may be accepted by you if you believe it to be true,

20   and it is up to you, the jury, to decide what weight,

21   if any, to give to the testimony of these unindicted

22   co-conspirators.

23              You have heard the testimony of some

24   witnesses who have been promised that, in exchange

25   for testifying truthfully, completely, and fully,

1    they will not be prosecuted for any crimes which he

2    may have admitted either here in court or in

3    interviews with the prosecutors.  These grants of

4    immunity have either been by formal order of immunity

5    by the Court or arranged directly between the witness

6    and the government by letter agreement.  The

7    government is permitted to make these kinds of

8    promises and is entitled to call as witnesses people

9    to whom these promises are given.

10           You are instructed that you may convict a

11   defendant on the basis of such witness' testimony

12   alone, if you find that his testimony proves the

13   defendant guilty beyond a reasonable doubt.  However,

14   the testimony of a witness who has been promised that

15   he will not be prosecuted should be examined by you

16   with greater care than the testimony of an ordinary

17   witness.  You should scrutinize it closely to

18   determine whether or not it is colored in such a way

19   as to place guilt upon the defendant in order to

20   further the witness' own interests; for such a

21   witness, confronted with the realization that he can

22   win his own freedom by helping to convict another,

23   has a motive to falsify his testimony.  Such

24   testimony should be received by you with suspicion

25   and you may give it such weight, if any, as you

1    believe it deserves.

2              There has been evidence introduced at the

3    trial that the government called as a witness a

4    person who was using or addicted to drugs when the

5    events he or she observed took place, or who is now

6    using drugs.  I instruct you that there is nothing

7    improper about calling such a witness to testify

8    about events within his or her personal knowledge.

9              On the other hand, his or her testimony

10   must be examined with greater scrutiny than the

11   testimony of any other witness.  The testimony of a

12   witness who was using drugs at the time of the events

13   he is testifying about, or who is using drugs at the

14   time of his testimony, may be less believable because

15   of the effect the drugs may have on his ability to

16   perceive or relate the events in question.

17             If you decide to accept his testimony

18   after considering it in light of all of the evidence

19   in this case, then you may give it whatever weight,

20   if any, you find it deserves.

21             You have heard testimony from a

22   government witness who pled guilty to charges arising

23   out of the same facts as this case.  You are

24   instructed that you are to draw no conclusions or

25   inferences of any kind about the guilt of the

1      defendant on trial from the fact that a prosecution

2      witness pled guilty to similar charges.  That

3      witness' decision to plead guilty was a personal

4      decision about his or her own guilt.  It may not be

5      used by you in any way as evidence against or

6      unfavorable to the defendant on trial here.

7              You have heard the testimony of some

8      witnesses who with were previously convicted of

9      crimes punishable by more than one year in jail.

10     These prior convictions were placed into evidence for

11     you to consider in evaluating the witness'

12     credibility.  You may consider the fact that the

13     witness who testified is a convicted felon in

14     deciding how much of his testimony to accept and what

15     weight, if any, it should be given.

16             You have heard reference in this trial

17     that witnesses have been relocated.  Let me explain

18     it how you may consider that fact in evaluating the

19     credibility of the witness for whom this was

20     arranged.

21             If a witness' or his family's safety is

22     jeopardized by his willingness to testify, the

23     government is quite within its rights to move the

24     witness and his family to a new place to live.  The

25     witness may also receive money to help him or her get

1        started after he or she has moved.  These things are

2        all done to protect the witness in exchange for the

3        risk the witness has been willing to take by

4        cooperating with authorities.

5                    You are instructed that you may consider

6        whether the fact that a witness has been relocated

7        creates a motive for the witness to testify falsely

8        against the accused.  You may ask yourselves whether

9        the relocation is regarded by the witness as a

10       benefit, whether it creates an interest, and whether

11       the interest is more likely than not to create a bias

12       against the defendant.

13                   You are, however, cautioned that you may

14       not consider the reasons for the witness being

15       relocated in determining the guilt of the defendant

16       on trial.

17                   You have heard evidence that a witness

18       made a statement on an earlier occasion which counsel

19       may argue is inconsistent with the witness' trial

20       testimony.  Evidence of the prior inconsistent

21       statement was placed before you for the limited

22       purpose of helping you decide whether to believe the

23       trial testimony of the witness.  If you find that the

24       witness made an earlier statement that conflicts with

25       his or her trial testimony, you may consider that

1    fact in deciding how much of his or her trial

2    testimony, if any, to believe.

3            In making this determination, you may

4    consider whether the witness purposely made a false

5    statement or whether it was an innocent mistake;

6    whether the inconsistency concerns an important fact

7    or whether it had to do with a small detail; whether

8    the witness had an explanation for the inconsistency;

9    and whether that explanation appealed to your common

10   sense.

11           It is exclusively your duty, based upon

12   all evidence and your own good judgment, to determine

13   whether the prior statement was inconsistent, and, if

14   so, how much, if any, weight will be given to the

15   insistent statement in determining whether to believe

16   all or part of the witness' testimony.

17           There has been evidence that a witness

18   who testified at this trial lied under oath at

19   another proceeding.  I must warn you that the

20   testimony of this witness should be viewed cautiously

21   and weighed with great care.  It is, however, for you

22   to decide how much of that witness' testimony, if

23   any, you wish to believe.

24           You have heard the testimony of law

25   enforcement officials.  The fact that witnesses may

1    be employed by the federal, state, or local

2    government as law enforcement official does not mean

3    that their testimony is necessarily deserving of more

4    or less consideration or greater or lesser weight

5    than that of an ordinary witness.

6              At the same time, it is quite legitimate

7    for defense counsel to try to attack the credibility

8    of a law enforcement witness on the grounds that his

9    testimony may be colored by a personal or

10   professional interest in the outcome of the case.

11             It is your decision, after reviewing all

12   of the evidence, whether to accept the testimony of

13   the law enforcement witness and to give that

14   testimony whatever weight, if any, you find it

15   deserves.

16             In this case I have permitted certain

17   witnesses to express their opinion about a matter in

18   issue with respect to the expert witnesses.  Some of

19   the witnesses may be permitted to give their opinion

20   as experts.  A witness may be permitted to testify to

21   an opinion on those matters about which he or she has

22   special knowledge, skill, experience, and training.

23   Such testimony is presented to you on the theory that

24   someone who is experienced and knowledgeable in the

25   field can assist you in understanding the evidence or

1         in reaching an independent decision on the facts.

2                   In weighing this opinion testimony, you

3         may consider the witness' qualifications, his or her

4         opinions, the reasons for testifying, as well as all

5         of the other considerations that ordinarily apply

6         when you are deciding whether or not to believe a

7         witness' testimony.  You may give the opinion

8         testimony whatever weight, if any, you find it

9         deserves in light of all of the evidence in this

10        case.  You should not, however, accept opinion

11        testimony merely because I allowed the witness to

12        testify concerning his or her opinion.  Nor should

13        you substitute it for your own reason, judgment, and

14        common sense.  The determination of the facts in this

15        case rests solely with you.

16                  You have heard testimony that the

17        defendant spoke with witnesses after they were

18        interviewed by government officials.  You may not

19        consider that evidence as substitute for proof of

20        guilt in this case.

21                  However, if you find that the defendant

22        intended to coerce or intimidate a witness, you may,

23        but are not required to, infer that the defendant

24        believed that he was guilty of some of the crimes for

25        which he is charged.

1          Whether or not such evidence shows any

2     consciousness of guilt is for you, the jury, to

3     decide.

4          You must completely disregard any report

5     which you have read in the press, seen on television,

6     or heard on the radio.  Indeed, it would be up fair

7     to consider such reports since they are not evidence

8     and the parties have no opportunity of contradicting

9     their accuracy or otherwise explaining them away.  In

10    short, it would be a violation of your oath as jurors

11    to allow yourselves to be influenced in any manner by

12    such publicity.

13         You must also continue to be mindful of

14    my earlier admonitions to avoid reading about the

15    case in the newspapers, watching any news concerning

16    the case on television, or listening to any radio

17    accounts of the case.  As stated above, you must

18    limit the information you get about the case to what

19    came to you in the courtroom through the rules of

20    evidence.

21         And that is very important to remind you,

22    since you're going home tonight and coming back

23    tomorrow to start deliberations.  You're absolutely

24    not to listen to any news reports on television or

25    read the "Baltimore Sun" or anything else about this

1    case.  It would be unfair to the government and it

2    would be unfair to the defendant and you're not to do

3    so.

4              Now, we're next going to consider the

5    crimes with which the defendant is charged in the

6    superseding indictment.  Each alleged crime is

7    charged in what's called a count.  And I will now

8    discuss the rules of law which govern whether the

9    crime charged has been proven.

10             I'm going to read the first count to you.

11   And you're not going to get the indictment, but I'm

12   summarizing the indictment right here in these

13   instructions.  And I'm going to read the first count

14   to you.  And then we're going to take a break and

15   we'll come back and we'll go over the elements.

16             Count 1 alleges that the defendant became

17   a member of a criminal conspiracy.  The relevant

18   statute on Count 1 of the superseding indictment is

19   Section 846 of Title 21 of the United States Code,

20   which prohibits any person from attempting or

21   conspiring to commit any offense defined in 21 United

22   States Code Section 841, which makes it unlawful,

23   quote, "to manufacture, distribute, or dispense, or

24   possess with intent to manufacture, distribute, or

25   dispense, a controlled substance".

1            Count 1 of the superseding indictment

2    reads as follows:  The grand jury for the District of

3    Maryland charges that from on or about January 2004

4    until on or about December 2, 2010, within the state

5    and District of Maryland, Antonio Hall, also known as

6    Mack, the defendant herein, did knowingly,

7    intentionally, and unlawfully combine, conspire,

8    confederate, and agree with other persons, known and

9    unknown to the grand jury, to knowingly,

10   intentionally, and unlawfully distribute and possess

11   with intent to distribute 280 grams or more of a

12   mixture or substance containing a detectable amount

13   of cocaine base, commonly called crack cocaine, a

14   Schedule II narcotic controlled substance, in

15   violation of Title 21, United States Code, Section

16   841(a)(1).

17           The second paragraph in terms of object

18   of the conspiracy:  At all times material herein, the

19   object of the defendant and other members of the

20   conspiracy was to obtain the specified quantities of

21   substances containing cocaine base with the intent to

22   distribute it to drug abusers as crack or ready, in

23   and around the streets of the Baltimore community of

24   Westport, for the purpose of making money.

25           And then the indictment lists a series of

1    overt acts in Paragraph 3.  In furtherance of the

2    conspiracy, and to effect the objects thereof, the

3    defendant and other members of the conspiracy

4    committed overt acts, including the following, in

5    furtherance of the conspiracy in the District of

6    Maryland.

7              A.  On or about February 10, 2004, on the

8    2400 block of Huron Avenue, in Westport, Baltimore,

9    Maryland, the defendant used a revolver to commit the

10   non-fatal shooting of one of his drug customers --

11   and the initials are R.P. -- whose identity is known

12   to the grand jury, in retaliation for R.P. having

13   provided information to the police in which he

14   identified FJ, an individual from Westport who was

15   under police investigation for a shooting.

16             B.  On or about July 29, 2005, on the

17   2400 block of Annor Court, Westport, the defendant

18   conducted street sales of a quantity of a substance

19   containing cocaine base.

20             C.  On or about January 26, 2007, on the

21   2400 block of Annor Court, Westport, the defendant

22   conducted street sales of a quantity of a substance

23   containing cocaine base.

24             Paragraph D, continuing the overt acts

25   that are listed.  On or about March 24, 2008, on the

220

1    2600 block of Pierpont Drive, Baltimore, the

2    defendant possessed a quantity of a substance

3    containing cocaine base and $2,700 in U.S. currency

4    that was the proceeds of drug trafficking.

5              E.  On or about August 2008 on Dorton

6    Court, Westport, the defendant conducted street sales

7    of a quantity of a substance contain cocaine case.

8              F.  On or about March 21, 2009, at 2635

9    Maisel Street, Westport, the defendant and another

10   member of the conspiracy use the a .40 caliber

11   handgun and a .32 caliber handgun to shoot a member

12   of the conspiracy named Martie Williams eight times,

13   resulting in the death of Williams.

14             G.  On or about March 27, 2009, on the

15   2800 block of Kent Street, Westport, the defendant

16   conducted street sales of a quantity of substance

17   containing cocaine base case.

18             And then finally H as to an overt act:

19   On or about September 20, 2009, on the 2400 block of

20   Maisel Court, Westport, the defendant used a nine

21   millimeter handgun to shoot Kareem Guest, resulting

22   in the death of Guest, as further described in Count

23   3 of this superseding indictment.

24             Now, that is Count 1.  And we've take a

25   break now.  We've been going for about an hour and

```
 1          twenty minutes with the arguments and instructions.

 2          We'll take a ten-minute recess and then I will go

 3          over the elements of the various offenses.  And then

 4          we will recess until tomorrow morning.  So we will

 5          take a recess.

 6                    (BRIEF RECESS.)

 7                    (JURY IN.)

 8                    THE COURT:  Now, as to Count 1, I've just

 9          read the conspiracy charge.  Let me go over the

10          elements of the offense.  All of this will be back in

11          the jury room with you to help you guide your

12          deliberations.

13                    To prove conspiracy to distribute

14          narcotics, the government must establish each of the

15          following elements beyond a reasonable doubt.  First,

16          that an unlawful agreement or conspiracy to

17          distribute cocaine base existed; and, second, that

18          the defendant knowingly, willfully, and voluntarily

19          became a member of that conspiracy.  Proof of an

20          overt act in furtherance of a conspiracy is not

21          required to sustain a drug conspiracy conviction.

22                    Count 1, first element, existence of an

23          agreement.  Under 21 United States Code, Section 846,

24          a conspiracy is a combination or agreement of two or

25          more persons to join together to attempt to
```

1    accomplish some unlawful purpose.  It is a kind of

2    partnership in criminal purposes in which each member

3    becomes the agent of every other member.  The gist or

4    essence of the offense is a combination or mutual

5    agreement by two or more persons to disobey or

6    disregard the law.

7          Thus, the first element which the

8    government must prove beyond a reasonable doubt in

9    order to establish the offense of conspiracy is that

10   two or more persons entered the unlawful agreement

11   charged in the indictment.

12          In order for the government to satisfy

13   this element, you need not find that the alleged

14   members of the conspiracy met together and entered

15   into any express or formal agreement.  Similarly, you

16   need not find that the alleged conspirators stated,

17   in other words or writing, what the scheme was, its

18   object or purpose, or every precise detail on the

19   scheme, or the means by which its object or purpose

20   was to be accomplished.  Indeed, it is sufficient for

21   the government to show that there was a mutual

22   understanding, either spoken or unspoken, between two

23   or more people to cooperate with each other to

24   accomplish an unlawful act.

25          You may, of course, find that the

1    existence of an agreement to disobey or disregard the

2    law has been established by direct proof.  However,

3    since conspiracy is, by its very nature,

4    characterized by secrecy, you may also infer its

5    existence from the circumstances of this case and the

6    conduct of the persons involved.  In a very real

7    sense, then, in the context of conspiracy cases,

8    actions often speak louder than words.  In this

9    regard, you may, in determining whether an agreement

10   existed here, consider the actions and statements of

11   all those you find to be participants as proof that a

12   common design existed on the part of the persons

13   charged to act together for the accomplishment of an

14   unlawful purpose.

15              The second element which the government

16   must prove beyond a reasonable doubt to establish the

17   offense of conspiracy in Count 1 is that the

18   defendant knowingly, willfully, and voluntarily

19   became a participant in or member of the conspiracy.

20              If you are satisfied that the conspiracy

21   charged in the indictment existed, you must next ask

22   yourselves who were the members of that conspiracy.

23   In deciding whether the defendant was, in fact, a

24   member of the conspiracy, you should consider

25   whether, based upon all of the evidence, it appears

1    that the defendant knowingly and willfully joined the

2    conspiracy.  Did he participate in it with knowledge

3    of its unlawful purpose and with the specific

4    intention of furthering its business or objective as

5    an associate or worker?

6              In that regard, it has been said that, in

7    order for a defendant to be deemed a participant in a

8    conspiracy, he must have had a stake in the venture

9    or its outcome.  You are instructed that, while proof

10   of a financial interest in the outcome of a scheme is

11   not essential, if you find that a defendant had such

12   an interest, that is a factor which you may properly

13   consider in determining whether or not a defendant

14   was a member of the conspiracy charged in the

15   indictment.

16             As I mentioned a moment ago, before a

17   defendant can be found to have been a conspirator,

18   you must first find that he knowingly joined in the

19   unlawful agreement or plan.  The key question,

20   therefore, is whether a defendant joined the

21   conspiracy with an awareness of at least some of the

22   basic aims and purposes of the unlawful agreement.

23             It is important for you to note that a

24   defendant's participation in the conspiracy must be

25   established by independent evidence of his own acts

1    or statements, as well as those of the other alleged

2    co-conspirators and the reasonable inferences which

3    may be drawn from them.

4              A defendant's knowledge is a matter of

5    inference from the facts proved.  In that connection

6    I instruct you that to become a member of the

7    conspiracy a defendant need not have known the

8    identities of each and every other member, nor need

9    he have been apprised of all of their activities.

10   Moreover, a defendant need not have been fully

11   informed as to all of the details, or the scope of

12   the conspiracy, in order to justify an inference of

13   knowledge on his part.  Furthermore, a defendant need

14   not have joined in all of the conspiracy's unlawful

15   objectives.

16             The extent of a defendant's participation

17   has no bearing on the issue of his guilt.  A

18   conspirator's liability is not measured by the extent

19   or duration of his participation.  Indeed, each

20   member may perform separate and distinct acts and may

21   perform them at different times.  Some conspirators

22   play major roles, while others play minor parts in

23   the scheme.  An equal role is not what the law

24   requires.  In fact, even a single the act may be

25   sufficient to draw a defendant within the ambit of

JURY INSTRUCTIONS

226

1          the conspiracy.

2                    Further, a defendant's membership in a

3          conspiracy is presumed to continue until he takes

4          affirmative action to withdraw from the conspiracy.

5                    I want to caution you, however, that a

6          defendant's mere presence at the scene of the alleged

7          crime does not, by itself, make him a member of the

8          conspiracy.  Similarly, mere association with one or

9          more members of the conspiracy does not automatically

10         make a defendant a member.  A person may know or be

11         friendly with a criminal without being a criminal

12         himself.  Mere similarity of conduct or the fact that

13         they may have assembled together and discussed common

14         aims and interests does not necessarily establish

15         proof of the existence of a conspiracy.

16                   I want to caution you that mere knowledge

17         or acquiescence without participation in the unlawful

18         plan is not sufficient.  Moreover, the fact that the

19         acts of a defendant without knowledge merely happen

20         to further the purposes or objectives of the

21         conspiracy does not make that defendant a member.

22         More is required under the law.  What is necessary is

23         that a defendant must have participated with

24         knowledge of at least some of the purposes or

25         objectives of the conspiracy and with the intention

1       of aiding in the accomplishment of those unlawful

2       ends.

3                   In sum, a defendant with an understanding

4       of the unlawful character of the conspiracy must have

5       intentionally engaged, advised, or assisted in it for

6       the purpose of furthering the illegal undertaking.

7       He thereby becomes a knowing and willing participant

8       in the unlawful agreement, that is to say, a

9       conspiracy.

10                  As I have instructed you, you are being

11      asked to determine whether the defendant conspired to

12      possess powdered and crack cocaine.  The legal

13      concept of possession may differ from the everyday

14      usage of the term, so I will explain it in some

15      detail.

16                  Actual possession is what most of us

17      think of as possession, that is, having physical

18      custody or control of an object.  For example, if you

19      find that a defendant had drugs on his person, you

20      may find that he had possession of the drugs.

21      However, a person need not have actual physical

22      custody of an object in order to be in legal

23      possession of it.  If an individual has the ability

24      to exercise substantial control over an object that

25      he does not have in his physical custody, then he is

1    in possession of that item.  An example of this from

2    everyday experience would be a person's possession of

3    items he keeps in the safe deposit box of his bank.

4    Although the person does not have physical custody of

5    those items, he exercises substantial control over

6    them and so has what is known as constructive

7    possession of them.

8              Distribution is defined as the actual,

9    constructive, or attempted transfer of narcotics.

10   Simply stated, the words "distribute" and "deliver"

11   mean to pass on or to hand over to another, or to

12   cause to be passed on or handed over to another, or

13   to attempt to pass on or hand over to another,

14   narcotics.  In short, distribution requires a

15   concrete involvement in the transfer of drugs.

16             Distribution does not require a sale.

17   Activities in furtherance of the ultimate sale such

18   as vouching for the quality of drugs, negotiating for

19   or receiving the price, and supplying or delivering

20   the drugs may constitute distribution.  In short,

21   distribution requires a concrete involvement in the

22   transfer of the drugs.

23             If you find that the defendant knowingly

24   possessed narcotics, then you must decide whether the

25   defendant intended to distribute them.  As previously

1       stated, the word "distribute" means to pass on or to

2       hand over to another or to cause to be passed on or

3       handed to another, or to attempt to pass on or hand

4       over to another, narcotics.  In short, the intent to

5       distribute requires an intention to be involved in

6       the transfer of the drugs.

7                   The same considerations that apply to

8       your determination whether the defendant knew he

9       possessed controlled substances apply to your

10      decision concerning the defendant's intention to

11      distribute them.  Since you cannot read a defendant's

12      mind, you must make inferences from his behavior.

13      However, you may not convict a defendant unless these

14      inferences convince you beyond a reasonable doubt

15      that the defendant intended to distribute the drugs.

16                  When I say that you must find that the

17      defendant intended to distribute the drugs, that does

18      not mean that you must find that he intended

19      personally to distribute the drugs.  It is sufficient

20      if you find that the defendant intended to cause or

21      intended the distribution of the controlled substance

22      by others.

23                  Basically what you're determining is

24      whether the drugs in the defendant's possession were

25      for personal use or for the purpose of distribution.

1        Often it is possible to make this determination from

2        the quantity of drugs found in a defendant's

3        possession.

4                    For example, it would be highly unlikely

5        that a person with 50,000 doses of amphetamines

6        possesses them for personal consumption.

7                    Possession of a large quantity of

8        narcotics does not mean that a defendant intended to

9        distribute them.  On the other hand, a defendant may

10       have intended to distribute controlled substances

11       even if he did not possess large amounts of them.

12       Other physical evidence such as paraphernalia for the

13       packaging or processing of drugs can show such an

14       intent.  There might also be evidence of a plan to

15       distribute.  You should make your decision whether

16       the defendant intended to distribute the controlled

17       substances in his possession from all of the evidence

18       presented.

19                    I have one more instruction on

20       conspiracy.

21                    If you find that the government has

22       proven the defendant guilty of the conspiracy charged

23       in Count 1, that is, the alleged conspiracy existed

24       and that the defendant knowingly and intentionally

25       became a member of the conspiracy, then you must

```
1    determine, beyond a reasonable doubt, what quantity
2    of controlled substances are attributable to the
3    defendant.  In determining what quantity of
4    controlled substance is attributable to the
5    defendant, you should consider the following factors:
6    First, a defendant is accountable for any quantity of
7    drugs which he personally distributed or possessed
8    with intent to distribute; second, a defendant is
9    also accountable for any quantity of drugs which he
10   attempted to or planned to distribute or possess with
11   intent to distribute; third, a defendant is also
12   accountable for any quantity of drugs which another
13   member of the conspiracy distributed or possessed
14   with intent to distribute as part of the conspiracy,
15   so long as it was reasonably foreseeable to the
16   defendant that such a quantity of drugs would be
17   involved in the conspiracy which he joined; and,
18   fourth, a defendant is also accountable for any
19   quantity of drugs which another member of the
20   conspiracy attempted to or planned to distribute or
21   possess with intent to distribute, so long as it was
22   reasonably foreseeable to the defendant.
23           Your findings about the quantity of
24   controlled substances attributed to the defendant
25   will be noted on the verdict form which I will
```

1    discuss in a moment.

2              If your answer is guilty as to the

3    defendant, you will be asked to determine the amount

4    of crack cocaine involved in the conspiracy.  And

5    you've already seen this on the screen during closing

6    argument, it will be not guilty or guilty as to the

7    conspiracy.  And then you will have to fill out of

8    these blanks, whether it's 280 grams or more.  If so,

9    then you go to Count 3.  If it's 28 grams or more,

10   you go to Count 3.  Or if it's less than 28 grams,

11   then you move on to Count 3.  You just check it to

12   find a quantity there if you find him guilty.

13             All right.  Now, we'll move to the final

14   remaining counts, Count 3, 4 and 5.

15             Count 3, retaliation by killing informant

16   or witness.

17             Count 3 charges the defendant with

18   witness retaliation as follows:  And the grand jury

19   for the District of Maryland further charges that on

20   or about September 20, 2009, in the State and

21   District of Maryland, Antonio Hall, also known as

22   Mack, the defendant herein, did willfully,

23   deliberately, maliciously, and with premeditation

24   kill Kareem Kelly Guest with the intent to

25   retaliation against Kareem Kelly Guest for providing

1    information to law enforcement officers of the

2    Federal Bureau of Investigation and the Baltimore

3    City Police Department relating to the commission and

4    possible commission of a federal offense, to-wit:

5    Drug trafficking and drug trafficking conspiracy, in

6    violation of 21 United States Code, Section 841(a)(1)

7    and 864 respectively; using and carrying firearms

8    during and in relation to a drug trafficking crime,

9    in violation of 18 United States Code, section

10   824(C); and possession of a firearm and ammunition by

11   a convicted felon, in violation of 18 United States

12   Code, Section 922(g)(1).

13           And that's all an alleged violation of

14   Title 18, United States Code, sections 1111(a) and

15   1513(a)(1)(B) and 2.

16           The relevant statute on the subject is

17   Title 18, United States Code, Section 1513(a)(1)(B),

18   which provides whoever kills or attempts to kill

19   another person with intent to retaliate against any

20   person for providing to a law enforcement officer any

21   information relating to the commission or possible

22   commission of a federal offense shall be guilty of

23   that crime as so listed.

24           In order to prove the defendant guilty of

25   Count 3 of the indictment, the government must prove

 1      each of the following elements beyond a reasonable

 2      doubt:  First, that on or about September 20, 2009,

 3      the defendant killed or attempted to kill Kareem

 4      Guest; second, that the defendant acted knowingly and

 5      with specific intent to retaliate against Kareem

 6      Guest for providing a law enforcement officer any

 7      information relating to the commission or possible

 8      commission of a federal offense; and, third, that the

 9      killing is a murder as defined in 18 United States

10      Code, Section 1111, in that the defendant, with

11      malice aforethought, unlawfully killed a human being,

12      Kareem Kelly Guest, willfully, deliberately,

13      maliciously, and with premeditation.

14              An act is done knowingly if it is done

15      voluntarily and purposely and not by accident or

16      mistake.

17              By specific intent, I mean that the

18      defendant must have acted knowingly and with the

19      unlawful intent to retaliate for providing

20      information to a law enforcement officer about a

21      violation or possible violation of federal law.

22              In order to satisfy this element, it is

23      not necessary for the government to prove that the

24      defendant knew he was breaking any particular

25      criminal law.  Nor need the government prove that the

1    defendant knew that the law enforcement officer to

2    whom the information was provided was a federal law

3    enforcement officer.  Nor need the government prove

4    that the information was provided directly to a

5    federal law enforcement officer.

6            In a case where the victim or recipient

7    of the retaliation did not provide the information

8    directly to a federal law enforcement officer, which

9    the government contends here, the government must

10   show only that there was a reasonable likelihood that

11   the information would have been provided to a federal

12   officer.  The government must show only that the

13   likelihood that the information would be provided to

14   a federal officer was more than remote, outlandish,

15   or simply hypothetical.

16           Also, I instruct you that drug

17   trafficking and drug trafficking conspiracy in

18   violation of 21 United States Code, Section 841(a)(1)

19   and 846 respectively, using and carrying firearms

20   during and in relation to a drug trafficking crime in

21   violation of 18 United States Code, Section 924(c),

22   and possession of a firearm and ammunition by a

23   convicted felon in violation of 18 United States

24   Code, Section 922(g)(1) are federal criminal

25   offenses.  Again, however, it is not necessary for

1          the government to prove that the defendant knew that

2          they were federal offenses.

3                     With respect to Count 3, I would note

4          that the law does not require that a federal

5          proceeding was pending at the time or even that it

6          was about to be initiated when the act of retaliation

7          was attempted or committed.  Nor does the law require

8          that the recipient of the retaliation must be the

9          person who provided the information or be involved in

10         an ongoing federal investigation or in an

11         investigation of a federal crime.

12                    The third element of Count 3 is that the

13         killing of Kareem Guest is a murder as defined in 18

14         United States Code, Section 1111, in that the

15         defendant, with malice aforethought, unlawfully

16         killed a human being, Kareem Kelly Guest, willfully,

17         deliberately, maliciously, and with premeditation.

18                    Section 1111 of Title 18 United States

19         Code defines murder as follows:  Murder is the

20         unlawful killing of a human being with malice

21         aforethought.  Every murder perpetrated by any kind

22         of willful, deliberate, malicious, and premeditated

23         killing is murder in the first degree.  Any other

24         murder is murder in the second degree.

25                    The government must prove beyond a

1    reasonable doubt that the defendant acted with malice

2    aforethought.  Malice aforethought is the state of

3    mind that would cause a person to act without regard

4    for the life of another.  To satisfy this element the

5    defendant must have acted consciously with the intent

6    to kill another person.

7              However, the government need not prove a

8    subjective intent to kill on the part of the

9    defendant.  It would be sufficient to satisfy this

10   element if it proved reckless and wanton conduct on

11   the part of the defendant which grossly deviated from

12   a reasonable standard of care, such that he was aware

13   of the serious risk of death.

14             In order to establish this element, the

15   government must prove that the defendant acted

16   willfully, with a bad or evil purpose to break the

17   law.  However, the government need not prove spite,

18   malevolence, hatred, or ill will toward the victim.

19             Finally, the government must prove beyond

20   a reasonable doubt with respect to premeditated

21   murder that the defendant acted willfully,

22   deliberately, and with premeditation.

23             An act is done with premeditation if it

24   is done upon planning or deliberation.  In order to

25   satisfy this element the government must prove that

238

1    the defendant killed Kareem Guest only after thinking

2    the matter over, deliberately, whether to act before

3    committing the crime.  There is no requirement that

4    the government prove that the defendant deliberated

5    for any particular period of time in order to show

6    premeditation.  The amount of time needed for

7    premeditation of a killing depends on the person and

8    the circumstances.  It is sufficient to satisfy this

9    element if you find that, before he acted, the

10   defendant had a period of time to become fully aware

11   of what he intended to do and to think it over before

12   he acted.

13          This statute, 18 United States Code

14   section 1513, is designed to protect persons from

15   retaliation for the appearance of witnesses or

16   parties in criminal and civil federal proceedings and

17   from retaliation for information given to law

18   enforcement officers about federal crimes.  The

19   integrity of the federal system of justice depends

20   upon persons giving truthful evidence and information

21   free from the fear of retaliation.  This statute is

22   devised to make it unlawful for anyone to retaliate

23   against someone who has been a witness, victim, or

24   informant, or against anyone associated with a

25   witness, victim, or informant.

1                    As to Count 4 of the indictment, Count 4

2        charges a violation of section 924(c) of Title 18,

3        United States Code, which provides whoever during and

4        in relation to any crime of violence or drug

5        trafficking crime for which he may be prosecuted in a

6        court of the United States uses or carries or

7        discharges a firearm is guilty of a crime.

8                    I will now read Count 4.

9                    The grand jury for the District of

10       Maryland further alleges that on or about September

11       20, 2009, in the state and District of Maryland,

12       Antonio Hall, also known as Mack, the defendant

13       herein, did knowingly use, carry and discharge a

14       firearm during and in relation to a crime of violence

15       for which he may be prosecuted in a court of the

16       United States, to-wit:  Willfully, deliberately,

17       maliciously, and with premeditation killing Kareem

18       Kelly Guest with intent to retaliate against Kareem

19       Kelly Guest for providing information to law

20       enforcement officers of the Federal Bureau of

21       Investigation and the Baltimore City Police

22       Department relating to the commission and possible

23       commission of a federal offense, in violation of 18

24       United States Code, section 1513(a)(1)(B), as set

25       forth in Count 3 of this superseding indictment,

         1      which is incorporated by reference herein.

         2              The relevant statute is 18 United States

         3      Code section 924(c)(1)(A)(3), which provides that any

         4      person who during and in relation to any crime of

         5      violence for which the person may be prosecuted in a

         6      court of the United States uses or carries a firearm

         7      shall be guilty of this crime.

         8              We will now turn to the elements of this

         9      offense of 924(c).

        10              The government must prove each of the

        11      following elements beyond a reasonable doubt to

        12      sustain its burden of proving the defendant guilty of

        13      Count 4.

        14              First, that the defendant committed a

        15      crime of violence for which he might be prosecuted in

        16      a court of the United States; and, second, that the

        17      defendant knowingly used, carried, or discharged a

        18      firearm during and in relation to that crime of

        19      violence.

        20              The first element that the government

        21      must prove beyond a reasonable doubt is that the

        22      defendant committed a crime of violence for which he

        23      might be prosecuted in a court in the United States.

        24              The defendant is charged in Count 3 of

        25      the indictment with killing the victim in retaliation

1     for the victim providing information to law

2     enforcement relating to the commission of a federal

3     crime or possible federal crime.

4              I instruct you that this is a crime of

5     violence.  However, it is for you to determine that

6     the government has proven beyond a reasonable doubt

7     that the defendant committed the crime in Count 3 as

8     charged.

9              The second element that the government

10    must prove beyond a reasonable doubt is that the

11    defendant knowingly used, carried, or discharged a

12    firearm in furtherance of the crime of violence as

13    charged in Count 3.

14             A firearm is any weapon which will or is

15    designed to or may be readily converted to expel a

16    projectile by the action of an explosive.

17             In order to satisfy this element, the

18    government must prove that the defendant had

19    possession of the firearm and that such possession

20    was in furtherance of the crime of violence.

21             Possession means that the defendant

22    either had physical possession of the firearm on his

23    person or that he had dominion and control over the

24    place where the firearm was located and had the power

25    and intention to exercise control over the firearm.

1              To possess a firearm in furtherance of

2       the crime of violence means that the firearm helped

3       forward, advance, or promote the commission of the

4       crime.  The mere possession of the firearm at the

5       scene of the crime is not sufficient under this

6       definition.  The firearm must have played some part

7       in furthering the crime in order for this element to

8       be satisfied.

9              For this element you must also find that

10      the defendant possessed the firearm knowingly.  This

11      means that he possessed it purposely and voluntarily

12      and not by accident or mistake.  It also means that

13      he knew that the weapon was a firearm as we commonly

14      use the world.  However, the government is not

15      required to prove that the defendant knew that he was

16      breaking the law.  The term "discharge" means that

17      the firearm was fired, and that is purely

18      self-explanatory.

19             As to Count 5, the last count.  Count 5

20      charges the defendant with unlawful possession of

21      ammunition.  Count 5 reads as follows:  The grand

22      jury for the District of Maryland further charges

23      that on or about September 20th, 2009 in the State

24      and District of Maryland, Antonio Hall, also known as

25      Mack, the defendant herein, having been previously

```
 1    convicted of a crime punishable by imprisonment for a
 2    term exceeding one year, did knowingly possess two
 3    rounds of nine millimeter Luger ammunition in and
 4    affecting commerce.
 5              The relevant statute is Section 922(g)(1)
 6    of Title 18 of the United States Code, which provides
 7    in part that it shall be unlawful for any person who
 8    has been convicted in any court of a crime punishable
 9    by imprisonment for a term exceeding one year to
10    possess in or affecting commerce any ammunition.
11              As to the elements of this offense, the
12    government must prove each of the following elements
13    beyond a reasonable doubt this order to sustain its
14    burden of proving the defendant guilty of Count 5.
15    First, that prior to September 20th, 2009, the
16    defendant had been convicted in any court of a crime
17    punishable by imprisonment for a term exceeding one
18    year.  Second, that the defendant knowingly possessed
19    the ammunition as charged.  And, third, that the
20    possession charged was in or affecting interstate or
21    foreign commerce.
22              The first element the government must
23    prove beyond a reasonable doubt before you can
24    convict is that before the date the defendant is
25    charged with possessing the ammunition the defendant
```

1   had been convicted of a crime punishable by

2   imprisonment for a term exceeding one year.

3           The parties have stipulated that the

4   defendant was convicted of a crime in state court and

5   that this crime is punishable by imprisonment for a

6   term exceeding one year.  It has also been stipulated

7   that this felony conviction occurred prior to the

8   time that the defendant is alleged to have possessed

9   the ammunition charged in the indictment.  You may

10  thus accept this fact and not require the government

11  to produce any further proof upon the matter.

12          As I indicated before, however, I

13  instruct you in this connection that the prior

14  conviction that is an element of the charge here and

15  is not disputed is only to be considered by you for

16  the fact that it exists and not for any other purpose

17  on which I specifically instruct you.  Beyond my

18  specific instructions you are not to consider it for

19  any other purpose.

20          The second element that the government

21  must prove beyond a reasonable doubt is that on or

22  about the date set forth in the indictment the

23  defendant knowingly possessed ammunition.

24          Ammunition means ammunition for a firearm

25  and includes cartridge cases, primers, bullets, or

1    propellant powder designed for use in any firearm.  A

2    firearm is any weapon which will or is designed to or

3    may readily be converted to expel a projectile by

4    action of an explosive.

5              To possess means to have something within

6    a person's control.  This does not necessarily mean

7    that the defendant had to hold the firearm

8    physically, that is, to have actual possession of it.

9    As long as the firearm is within his control, the

10   defendant possesses it.  If you find that the

11   defendant either had actual possession of the firearm

12   or the ammunition or that he had the power and

13   intention to exercise control over it, even though it

14   was not in his physical possession, you may find that

15   the government has proven possession.

16             To satisfy this element you must also

17   find that the defendant knowingly possessed the

18   ammunition.  This mans that he possessed the

19   ammunition purposely and voluntarily and not by

20   accident or mistake.  However, the government is not

21   required to prove that the defendant knew that he was

22   breaking the law.

23             The third element the government must

24   prove beyond a reasonable doubt is that the

25   ammunition the defendant is charged with possession

1     was in or affecting interstate commerce.  This means

2     that the government must prove that at some point

3     prior to the defendant's possession the ammunition

4     traveled in interstate commerce.  It is sufficient

5     for the government to satisfy this element by proving

6     that at any time prior to the date charged in the

7     indictment the ammunition crossed a state line or an

8     international boundary.  It is not necessary that the

9     government prove that the defendant, himself, carried

10    it across a state line or across an international

11    boundary, nor must the government prove who carried

12    it across or how it was transported.  It is also not

13    necessary for the government to prove that the

14    defendant knew that the ammunition had previously

15    traveled in interstate commerce.

16          If there has been evidence that the

17    ammunition in question was manufactured in a foreign

18    country or in a different state than Maryland, where

19    the defendant is charged with possessing it, you are

20    permitted to infer from this fact that the ammunition

21    traveled in interstate commerce; however, your not

22    required to do so.

23          The government to prevail must prove the

24    essential elements beyond a reasonable doubt as to

25    these charges.  If the government succeeds, your

1    verdict should be guilty; if the government fails, it

2    should be not guilty.  To report a verdict, it must

3    be unanimous.

4            Your function is to weigh the evidence in

5    the case and to determine whether or not the

6    defendant is guilty, solely upon the basis of such

7    evidence.

8            Each juror is entitled to his or her

9    opinion.  Each should, however, exchange views with

10   his or her fellow jurors.  That is the very purpose

11   of jury deliberation:  To discuss and consider the

12   evidence; to listen to the arguments of fellow

13   jurors; to present your individual views; to consult

14   with one another; and to reach an agreement based

15   solely and wholly on the evidence if you can do so

16   without violence to your own individual judgment.

17           Each of you must decide the case for

18   yourself after consideration with your fellow jurors

19   of the evidence in the case.  But you should not

20   hesitate to change an opinion which, after discussion

21   with your fellow jurors, appears erroneous.

22           Nevertheless, if after carefully

23   considering all the evidence and the arguments of

24   your fellow jurors, you entertain a conscientious

25   view that differs from the others, your not to yield

1    your conviction simply because you are outnumbered.

2    Your final vote must reflect your conscientious

3    conviction as to how the issues should be decided.

4    Your verdict, whether guilty or not guilty, must be

5    unanimous.

6            The question of possible punishment of

7    the defendant is of no concern to the jury and should

8    not in any sense enter into or influence your

9    deliberations.  The duty of imposing sentence rests

10   exclusively upon the Court.  Your function is to

11   weigh the evidence in the case and to determine

12   whether or not the defendant is guilty beyond a

13   reasonable doubt solely upon the basis of such

14   evidence.  Under your oath as jurors, you cannot

15   allow a consideration of the possible punishment if

16   the defendant were to be convicted which may be

17   imposed upon the defendant -- as I said, if he's

18   convicted -- to influence your verdict in any way or

19   in any sense enter into your deliberations.

20           Upon retiring to the jury room, Juror No.

21   1 will be your foreperson; that is, the person who

22   will preside over your deliberations and who will be

23   your spokesperson here in court.  She runs the

24   meeting, controls deliberations, and communicates

25   with the Court.

1              A verdict form has been prepared for your

2      convenience.  I've already discussed the matter as to

3      conspiracy.  Count 3 is retaliation by murder of

4      Kareem Kelly Guest; not guilty or guilty.  If you

5      find Mr. Hall guilty, then you should address whether

6      or not it was first degree murder, whether it was

7      premeditated, either a yes or a no as to

8      premeditation.

9              As to Count 4, use and discharge of

10     firearm in relation to a crime of violence, either

11     not guilty or guilty.

12             And then Count 5, possession of

13     ammunition by a prohibited person, either not guilty

14     or guilty.

15             And the foreperson will sign it and date

16     it after you've reached your verdicts.

17             If it becomes necessary during

18     deliberations to communicate with the Court, you may

19     send a note by the marshal, who will be outside of

20     the jury room.  No member of the jury should ever

21     attempt to communicate with the Court by any means

22     other than a signed and dated writing and the Court

23     will never communicate with any member of the jury on

24     any subject touching on the merits of the case,

25     otherwise than in writing or orally here in open

1    court.

2                Almost always I bring everybody back in;

3    I answer your question.  The lawyers are here, the

4    defendant's here.  And you go back in the jury room.

5    Occasionally there may be something where I can just

6    respond in writing, but any question comes out in

7    that form.

8                When you have reached a unanimous

9    agreement as to your verdict, please advise the Court

10   by sending a note through the marshal that you have

11   reached a verdict.  You do not advise the marshal of

12   what the verdict is; you don't hand the marshal the

13   verdict sheet; you don't write the verdict down in

14   the note to the marshal.  You just give him a note

15   that you've reached a verdict.  When I've received

16   that note, I will call the attorneys together and

17   have you return with your verdict to the courtroom.

18                You're never to reveal to any person, not

19   even to me as to the judge in the case, how the jury

20   stands, numerically or otherwise, on the question of

21   the guilt or innocence of the defendant until after

22   you have reached a unanimous verdict.  And then what

23   you would do, is that you would send the verdict

24   sheet -- you would say you have a verdict; you bring

25   the verdict sheet in; Miss West, the deputy clerk of

```
 1    court, will take the role; she'll ask if you've found
 2    a verdict; you'll say you have.  She'll ask, "Who
 3    shall speak for you?"  The foreperson will indicate
 4    that she shall speak for you, for the jury.  And then
 5    it's desired by the Court to look at the verdict
 6    sheet.  I'll look at the verdict sheet; I'll hand it
 7    back to the deputy clerk.  She'll bring it back over
 8    to you, Madam Forelady, and then we will take the
 9    verdict in the case in that fashion.
10              Now, if any of you bring cell phones
11    tomorrow, they'll be given to Miss West during your
12    deliberations and be returned to you at the
13    conclusion of your deliberations.
14              Counsel, if you'll just approach the
15    bench for one second, please.
16              (BENCH CONFERENCE ON THE RECORD.)
17              THE COURT:  Are there any additions or
18    corrections or did I misread anything?
19              MR. PURCELL:  You did everything
20    correctly.  Instruction No. 52, if you look at it,
21    Your Honor, needs to be regiven.  The second element,
22    use of a firearm.  It's captioned correctly, but the
23    body of the instruction -- I'm sure it's my fault --
24    says, "possession in furtherance".  It should be,
25    "use during and in relation".  So we need to have,
```

```
 1          "use and in relation to".  And we've already --

 2                    THE COURT:  What is it you want me to

 3          reread?

 4                    MR. PROCTOR:  The last paragraph.  I'm

 5          sorry, Judge.  Why don't you get a copy, since it's

 6          your instruction.

 7                    THE COURT:  I've got a copy.

 8                    MR. PROCTOR:  No.  The this is the

 9          amended one.

10                    THE COURT:  52 changes.  And I'll get an

11          amended 52; is that correct?

12                    MR. PROCTOR:  Yes.

13                    THE COURT:  Make a note that I've read

14          that and have to correct it.

15                    MR. PURCELL:  The paragraph that begins

16          with --

17                    MR. PROCTOR:  He just added the whole

18          last paragraph, "in order to".

19                    MR. PURCELL:  Okay.  So you can just --

20                    THE COURT:  I'll just reread Instruction

21          No. 52.  I'll insert it here and I'll reread it.  And

22          we have to make sure that this new Instruction 52

23          goes in the instructions.

24                    MR. PURCELL:  Yes, Your Honor.  This part

25          here, this paragraph I'm pointing to right here where
```

```
1          it talks with possession in furtherance is not the
2          way -- he's indicted for used during and in relation.
3          So this paragraph, actually when you reread it, can
4          be excluded.
5                        THE COURT:  Which paragraph can be
6          excluded?
7                        MR. PURCELL:  This paragraph that -- if
8          you guys follow me -- that I'm bracketing right here.
9                        THE COURT:  This can be excluded.
10                       MR. PURCELL:  Yes.
11                       THE COURT:  Does the defense agree it
12         should be excluded?
13                       MR. PROCTOR:  Because he's only indicted
14         as --
15                       MR. PURCELL:  Use during and in relation.
16                       MR. SULLIVAN:  We agree.
17                       MR. PURCELL:  The second paragraph, as
18         well, that I've bracketed also goes out.  So we just
19         use the instruction as Dan has brought out, beginning
20         with, "In order prove this".  We don't talk about --
21                       THE COURT:  The next paragraph is knocked
22         out, as well?
23                       MR. PURCELL:  Yes.
24                       THE COURT:  All right.  We'll have to
25         take that one out.  Because I don't think the jury
```

1    just gets some of the excess.  So essentially what's

2    left is just these six lines and this paragraph.

3                    MR. PURCELL:  Exactly.

4                    THE COURT:  Is that correct?

5                    MR. SULLIVAN:  Yes, Your Honor.

6                    THE COURT:  What I'm going to do is

7    reread Court's Instruction 52 as follows:  The second

8    element, knowing use of a firearm during and in

9    relation to the commission of the predicate crime.

10   The second element that the government must prove

11   beyond a reasonable doubt is that the defendant

12   knowingly used, carried, or discharged a firearm in

13   furtherance of the crime of violence charged in Count

14   3.

15                    A firearm is any weapon which will or is

16   designed to or may be readily converted to expel a

17   projectile by the action of an explosive.

18                    And then the next paragraph I'll read is:

19   In order to prove that the defendant used the

20   firearm, the government must prove beyond a

21   reasonable doubt an active employment of a firearm by

22   the defendant during and in relation to the crime of

23   violence.  This does not mean that the defendant

24   fired or attempted to fire a weapon, although those

25   would obviously constitute use of the weapon.

```
1    Brandishing, displaying, or even referring to the
2    weapon so that others present know that the defendant
3    had the firearm available if needed all constitute
4    use of a firearm.  However, the mere possession of a
5    firearm at or near the scene of the crime without
6    active employment as I've just described is not
7    sufficient to constitute the use of a firearm.
8              Very little of which has to do with the
9    facts of this case.  They're either going to
10   determine he used the gun or he didn't.
11             MR. PURCELL:  The only addition is the
12   very last, as to discharge, see that sentence there;
13   it needs to be restated because he's charged with
14   discharging.  So, just add that bracketed last
15   sentence.
16             THE COURT:  I'm going to highlight in
17   yellow what I'm going to read and then you all look
18   at it.  Okay.  And we're going to go line by line and
19   each side is going to look at it.
20             Here, I'm highlighting in yellow exactly
21   what I'm going to read; okay?  All of which is
22   hornbook law in terms of what's the alleged in this
23   case.  Everybody look at what I've marked in yellow.
24   Is there any other change in this?  I want you to
25   read it, and both -- everybody read it and take a
```

```
1     look at it.  And then, Dan, you're going to have take

2     off the highlighting in yellow and redo it when they

3     come back tomorrow.

4                    Is there any objection from the defense

5     on that?

6                    MR. PROCTOR:  There's just one word that

7     needs to be taken out.

8                    MR. PURCELL:  And this sentence just

9     basically, if I may do this, is the last sentence, in

10    brackets.

11                   THE COURT:  Goes down at the bottom?

12                   MR. PURCELL:  Yes.

13                   THE COURT:  All right.  Now, Dan, you're

14    going to have to listen carefully.  Take a look at

15    what they changed here.

16                   MR. SULLIVAN:  Your Honor, while Dan --

17    there's one other matter.

18                   THE COURT:  Okay.  Yes.

19                   MR. SULLIVAN:  There is one other matter

20    that doesn't need rewriting.  But on Page 51,

21    Instruction 39, the word "powder" got in there,

22    "powder cocaine".  We just need to delete the

23    reference to "powder" in any jury instructions that

24    go back.  So Page 51, Instruction 39.

25                   THE COURT:  All right.  And where is it
```

1   on here?

2           MR. SULLIVAN:  Second line.  The

3   defendant conspired to possess powder and crack

4   cocaine.

5           THE COURT:  Just crack cocaine.  See that

6   there on Page 51, Dan?  And we'll get that changed,

7   as well.  We'll give them the instructions tomorrow,

8   not tonight.

9           MR. PROCTOR:  Judge, we actually don't

10  want you to read that.  It's almost drawing attention

11  to it.  Just as long as the written instructions go

12  back.

13          THE COURT:  I'm not going to reread it

14  again.  Just to make sure that's how it goes.

15          MR. PROCTOR:  Okay.

16          THE COURT:  Are there any other

17  corrections from the government?

18          MR. PURCELL:  No.

19          THE COURT:  Are there any corrections any

20  from the defendant?

21          MR. PROCTOR:  No, sir.

22          THE COURT:  Any previous objections have

23  been preserved.  And I'll reread this to them now.

24  Any previous objections are preserved.

25          I'm not going to dismiss the alternate

1    jurors yet.  I'm going to have them all come back

2    here at 9:30 tomorrow.  And once I know everybody's

3    here then I'll dismiss the alternate jurors.

4              Is that agreeable to the government?

5              MR. PURCELL:  Yes, Your Honor.

6              MR. PROCTOR:  Yes, Your Honor.

7              (END OF BENCH CONFERENCE.)

8              THE COURT:  All right.  Ladies and

9    gentlemen, the lawyers agree that there have to be

10   come corrections to Instruction No. 52, which will be

11   corrected so when you come back tomorrow you'll have

12   the corrected version here.  And I'm just going to

13   read it to you now.  It's not that long.  So just

14   bear with me.  I know you're enjoying it.

15             And, by the way, when you get the tape

16   here that you can listen to, if you want to listen to

17   my voice again -- Mr. Rolland loves to listen to my

18   voice.  That's why he has the headset on.

19             With respect to the second element,

20   knowing use of a firearm during and in relation to

21   the commission of the predicate crime.

22             The second -- this has to do with the

23   924(c) charge.  The second element -- this is as to

24   Count 4.  The second element the government must

25   prove beyond a reasonable doubt is that the defendant

1    knowingly used, carried, or discharged a firearm in

2    furtherance of the crime of violence charged in Count

3    3.

4              A firearm is any weapon which will or is

5    designed to or may be readily converted to expel a

6    projectile by the action of an explosive, which I

7    previously stated.

8              The rest of this is much shorter and

9    briefer and to the point.

10             In order to prove that the defendant used

11   the firearm, the government must prove beyond a

12   reasonable doubt an active employment of the firearm

13   by the defendant during and in relation to the

14   commission of the crime of violence.  This does not

15   mean that the defendant must actually fire or attempt

16   to fire the weapon, although those would obviously

17   constitute use of the weapon.  Brandishing,

18   displaying, or even referring to the weapon so that

19   others present knew that the defendant had the

20   firearm available if needed all constitute use of the

21   firearm.

22             However, the mere possession of a firearm

23   at or near the site of the crime without active

24   employment as I've just described it is not

25   sufficient to constitute a use of the firearm.  The

1       term "discharge" requires that the firearm was fired,

2       and is self-explanatory.

3               Okay.  And that change will be made here

4       in Instruction No. 52 and you'll be getting copies of

5       all of that.  And, Dan, if you'll make sure that it's

6       changed in the copy that I've read here as well as in

7       my trial book.

8               Thank you.  Ladies and gentlemen, I'm

9       about to dismiss you now.  Anyone in the courtroom

10      will remain in the courtroom and the officers will

11      make sure that the jurors then proceed out of the

12      building.

13              Hold on just one second, please.

14              Jim, do you want to come up here for a

15      minute, please?

16              (BENCH CONFERENCE ON THE RECORD.)

17              THE COURT:  I want to make sure this is

18      on the record.  I want to make sure that down in the

19      main lobby that there aren't any people congregating

20      around by the front door or that in any way

21      communicate any issue while the jurors are getting to

22      their cars.  I don't have any reason to believe

23      otherwise.  But I just want the court security

24      officers in the lobby; making sure there are not

25      people assembling in the lobby by the front door.

1               (END OF BENCH CONFERENCE.)

2               THE COURT:  All right.  Now, I'm going to

3     excuse you and then you're all due back tomorrow,

4     including the two alternates.  At some point in time

5     you'll be excused before deliberations start, but I

6     want you both back, as well; okay?  So everybody

7     comes back including the two alternates.  And I'll

8     ask that you get here by 9:30.  And we're going to

9     try to start between 9:30 and 10.

10               Counsel, if you all will be available to

11    be here by 9:30 so we can start at 9:30 tomorrow.

12               And, again, I caution you, you should not

13    discuss this with anyone.  Not just a matter of if it

14    would be covered on television or there's any report

15    in the "Baltimore Sun", for example, but also when

16    you go home.  It's perfectly understandable.  People

17    say, "Well, how was court today; what happened in

18    court?"  And you just can't talk about it.  Because

19    you have to base it on the arguments and evidence

20    here.  And you come back.  And then finally tomorrow

21    morning at 9:30 you all can now start talking about

22    the case.  And we'll all be here.  I will discharge

23    you -- I mean, not discharge you.

24               The bailiff will be sworn at that time

25    and then you will be sent to deliberate.  And, as I

```
 1    say, you'll have a verdict sheet and the written

 2    instructions with you as well as all of the exhibits.

 3              So with that, this Court is adjourned for

 4    the day and I'll see you all tomorrow morning at

 5    9:30.

 6              (TRIAL RECESSED.)

 7

 8              I certify that the foregoing is a correct

 9    transcript from the record of proceedings in the

10    above-entitled matter.

11

12                        s/ Anthony Rolland

13                        ANTHONY ROLLAND

14

15

16

17

18

19

20

21

22

23

24

25
```

1

## $

**$10** - 87:12
**$100** - 75:9
**$2,700** - 220:3
**$200** - 127:21,
127:24
**$2700** - 75:9
**$700** - 85:13, 85:16,
85:18

## '

**'10** - 175:10
**'caine** - 88:19
**'did** - 85:21
**'mack** - 108:16
**'no** - 85:23
**'yo** - 85:9, 85:12,
86:4

## 1

**1** - 2:25, 4:7, 17:6,
33:7, 39:7, 43:16,
43:23, 44:5, 47:6,
51:18, 56:8, 56:9,
56:10, 56:14, 57:9,
61:5, 67:2, 67:8, 71:9,
92:25, 99:9, 131:19,
195:25, 217:16,
217:18, 218:1,
220:24, 221:8,
221:22, 223:17,
230:23, 248:21
**1.29** - 140:19,
149:13, 149:16
**10** - 1:11, 5:9, 6:10,
6:17, 64:22, 86:21,
86:24, 163:18,
163:20, 219:7, 261:9
**11** - 6:11, 6:18,
62:13, 62:14
**1111** - 60:8, 234:10,
236:14, 236:18
**1111(a** - 233:14
**12** - 6:12, 7:12,
179:11
**129** - 150:17
**1290** - 5:20
**12:30** - 61:2
**13** - 7:12, 143:3
**1304** - 36:6
**14** - 7:13, 7:15,
124:23, 187:4
**15** - 7:21, 62:21,
142:6, 156:15
**150** - 5:24
**1513** - 238:14
**1513(a)(1)(b** -
233:15, 233:17,
239:24
**16** - 11:5
**17** - 11:12
**18** - 12:21, 84:22,
233:9, 233:11,
233:14, 233:17,
234:9, 235:21,
235:23, 236:13,
236:18, 238:13,
239:2, 239:23, 240:2,
243:6
**19** - 12:22, 177:5
**19-5** - 34:7, 34:10,
38:19
**19-year-old** - 156:7
**192** - 61:18, 61:22
**1977** - 36:10
**1989** - 36:8

**1993** - 38:2
**1995** - 5:20
**1998** - 5:25
**1:10-cr-0744-rdb** -
1:6

## 2

**2** - 2:25, 3:23, 4:2,
4:7, 4:10, 4:12, 4:13,
4:19, 4:20, 4:24,
45:25, 51:18, 61:11,
63:1, 112:7, 147:5,
195:24, 196:1, 196:2,
196:6, 218:4, 233:15
**2-1** - 28:24
**20** - 13:4, 13:5, 18:6,
64:17, 143:19,
156:15, 163:18,
220:19, 232:20,
234:2, 239:11
**200** - 150:18
**2004** - 68:14, 68:20,
71:12, 73:3, 75:2,
79:13, 88:23, 90:7,
94:8, 94:23, 119:16,
149:5, 151:7, 151:11,
151:16, 218:3, 219:7
**2005** - 73:15, 73:25,
149:13, 219:16
**2006** - 80:8, 82:17
**2007** - 74:8, 91:6,
219:20
**2008** - 65:20, 75:6,
75:15, 100:3, 100:4,
219:25, 220:5
**2009** - 18:6, 64:17,
68:25, 70:13, 71:1,
76:3, 81:10, 82:18,
93:20, 96:13, 100:21,
102:6, 102:8, 149:13,
166:15, 166:20,
171:7, 171:16,
174:21, 175:10,
220:8, 220:14,
220:19, 232:20,
234:2, 239:11,
242:23, 243:15
**2010** - 36:19, 37:21,
66:13, 68:14, 68:20,
71:12, 73:4, 80:8,
84:17, 88:23, 90:7,
91:6, 111:17, 112:11,
119:17, 121:15,
121:18, 139:22,
149:6, 167:11, 169:2,
169:14, 170:7, 172:2,
172:16, 175:10, 218:4
**2011** - 1:11, 111:17
**20th** - 19:12, 68:24,
70:12, 70:25, 102:8,
102:15, 166:15,
166:19, 174:21,
242:23, 243:15
**21** - 13:24, 151:17,
217:19, 217:21,
218:15, 220:8,
221:23, 233:6, 235:18
**21.841** - 63:12
**22** - 13:24, 14:22,
15:7
**221** - 37:9
**24** - 22:2, 75:5,
219:25
**240** - 39:9
**2400** - 219:8,
219:17, 219:21,
220:19
**25** - 61:3
**26** - 219:20

**2600** - 220:1
**2635** - 220:8
**27** - 220:14
**28** - 15:7, 57:15,
57:17, 58:5, 58:6,
68:17, 68:18, 91:10,
91:12, 91:16, 150:19,
232:9, 232:10
**280** - 46:6, 57:13,
57:25, 58:4, 58:17,
67:4, 68:16, 68:17,
90:11, 91:12, 91:24,
149:9, 150:18,
188:11, 189:1, 189:2,
218:11, 232:8
**280,000** - 188:11
**2800** - 220:15
**29** - 125:7, 219:16
**2:30** - 160:24, 161:4

## 3

**3** - 3:1, 4:7, 12:9,
21:8, 42:1, 49:17,
49:18, 49:19, 49:23,
49:24, 51:19, 52:6,
52:21, 57:14, 57:16,
59:3, 60:2, 68:22,
69:1, 69:7, 69:25,
70:4, 70:7, 99:22,
116:2, 116:3, 117:10,
117:12, 196:1, 219:1,
220:23, 232:9,
232:10, 232:11,
232:14, 232:15,
232:17, 233:25,
236:3, 236:12,
239:25, 240:24,
241:7, 241:13, 249:3,
254:14, 259:3
**3.5** - 144:23
**30** - 125:7
**30-some** - 119:10
**300** - 85:14
**302** - 100:24, 101:6,
101:9, 116:18, 184:25
**32** - 220:11
**32s** - 168:17
**33** - 151:19
**357** - 157:13
**365** - 149:17
**369** - 37:20
**372** - 36:18
**382** - 5:24
**39** - 33:9, 41:1,
256:21, 256:24

## 4

**4** - 3:1, 4:8, 49:17,
49:18, 49:19, 50:8,
50:9, 52:6, 52:21,
60:9, 68:22, 69:24,
99:22, 116:2, 117:7,
196:1, 232:14, 239:1,
239:8, 240:13, 249:9,
258:24
**40** - 40:11, 41:5,
49:8, 49:9, 220:10
**40s** - 168:16
**41** - 41:5, 41:7, 49:8
**42** - 43:3
**420** - 36:19
**429** - 36:10
**45** - 60:20, 60:21,
60:23, 61:10, 182:12
**480** - 38:2
**493** - 36:8

## 5

**5** - 3:2, 4:8, 49:17,
49:18, 49:19, 50:18,
51:5, 52:6, 52:21,
53:8, 59:6, 68:22,
87:10, 99:22, 116:2,
117:16, 131:19,
149:17, 157:20,
196:1, 232:14,
242:19, 242:21,
243:14, 249:12
**50,000** - 230:5
**503** - 37:20
**51** - 256:20, 256:24,
257:6
**52** - 50:12, 251:20,
252:10, 252:11,
252:21, 252:22,
254:7, 258:10, 260:4
**53** - 50:12, 50:18
**54** - 45:25, 50:23
**542** - 37:9
**55** - 53:8, 53:9
**56** - 40:13, 40:14,
91:17
**56-12** - 40:7, 40:14,
41:16, 43:8
**566** - 36:10
**57** - 5:19
**58** - 53:5

## 6

**6** - 3:3, 3:9, 81:10,
84:22, 163:8
**6-16** - 30:19, 32:16

## 7

**7** - 3:21, 5:8, 85:20
**7-15** - 22:18, 24:4,
26:15
**7-8** - 14:18
**7-9** - 17:5
**7-9.1** - 17:2, 17:12,
20:11
**700** - 85:8, 86:3
**7th** - 75:14

## 8

**8** - 5:8, 6:9, 86:9
**824(c** - 233:10
**841** - 63:17, 217:22
**841(a)(1** - 218:16,
233:6, 235:18
**846** - 51:18, 217:19,
221:23, 235:19
**864** - 233:7
**873** - 36:6

## 9

**9** - 5:8, 6:10
**922(g)(1** - 233:12,
235:24, 243:5
**924(c** - 235:21,
239:2, 240:9, 258:23
**924(c)(1)(a)(3** -
240:3
**968** - 36:8
**995** - 38:2
**9:30** - 163:18,
258:2, 261:8, 261:9,
261:11, 261:21, 262:5

## A

**A-list** - 128:11
**abet** - 52:7
**abetting** - 51:4,
51:7, 51:22, 51:25,
52:22, 53:1, 53:6,
56:2
**abilities** - 123:8,
126:25
**ability** - 20:5,
139:12, 143:24,
146:14, 146:15,
205:9, 210:15, 227:23
**able** - 7:10, 94:1,
141:19, 168:1,
177:19, 179:18, 185:1
**above-entitled** -
262:10
**absence** - 109:3
**absent** - 5:22
**absolute** - 12:4,
163:20
**Absolutely** - 3:13,
11:16
**absolutely** - 11:18,
66:10, 83:4, 89:23,
92:4, 152:12, 184:15,
186:16, 216:23
**abundance** - 7:9
**abusers** - 218:22
**accept** - 20:6,
54:16, 134:21, 193:3,
197:20, 206:9,
210:17, 211:14,
214:12, 215:10,
244:10
**accepted** - 208:19
**accident** - 234:15,
242:12, 245:20
**accidental** - 153:15
**accomplice** - 13:10,
14:15, 206:19, 207:2,
207:8, 208:6
**accomplices** -
207:4, 207:16, 207:18
**accomplish** - 222:1,
222:24
**accomplished** -
222:20
**accomplishment** -
223:13, 227:1
**accorded** - 194:21
**according** - 146:20
**Accordingly** -
202:19, 203:7
**account** - 205:3,
205:24
**accountable** -
41:23, 45:1, 45:3,
45:6, 45:13, 48:3,
48:5, 48:9, 48:16,
231:6, 231:9, 231:12,
231:18
**accounts** - 109:4,
172:15, 216:17
**accuracy** - 216:9
**accurate** - 205:3,
205:19
**accurately** - 204:18
**accusation** -
182:21, 195:16
**accused** - 23:14,
125:21, 212:8
**accuses** - 158:11
**acquiescence** -
226:17
**acquit** - 126:21,
160:19, 197:4
**act** - 12:4, 12:6,
12:11, 67:15, 67:18,
69:21, 116:21,

196:18, 203:3, 203:5, 203:6, 220:18, 221:20, 222:24, 223:13, 225:24, 234:14, 236:6, 237:3, 237:23, 238:2
**acted** - 69:14, 69:17, 234:4, 234:18, 237:1, 237:5, 237:15, 237:21, 238:9, 238:12
**action** - 183:19, 226:4, 241:16, 245:4, 254:17, 259:6
**actions** - 49:18, 203:1, 223:8, 223:10
**active** - 254:21, 255:6, 259:12, 259:23
**actively** - 139:17
**activities** - 225:9
**Activities** - 228:17
**activity** - 206:24
**actor** - 52:17
**acts** - 49:17, 90:13, 93:1, 93:2, 93:3, 93:7, 93:9, 94:6, 99:10, 141:18, 154:23, 203:5, 203:9, 219:1, 219:4, 219:24, 224:25, 225:20, 226:19
**Actual** - 227:16
**actual** - 183:23, 199:9, 227:21, 228:8, 245:8, 245:11
**add** - 140:25, 255:14
**added** - 105:23, 252:17
**addict** - 18:13, 18:14, 78:4, 149:25, 150:24
**addicted** - 17:3, 17:11, 18:7, 18:10, 18:18, 18:21, 19:3, 142:12, 149:24, 210:4
**addiction** - 155:16
**addicts** - 118:13, 150:21
**addition** - 255:11
**additional** - 13:19, 22:8, 182:11
**additions** - 251:17
**address** - 4:8, 32:23, 43:15, 177:22, 178:8, 249:5
**addressed** - 176:2
**addressing** - 31:19
**adjourned** - 262:3
**admission** - 7:22, 7:23, 7:25
**admit** - 109:10, 176:23
**admits** - 111:7, 121:17
**admitted** - 8:4, 9:12, 9:24, 10:12, 16:6, 17:24, 62:11, 93:19, 108:21, 108:22, 109:16, 110:8, 111:22, 173:8, 179:20, 201:8, 209:2
**admonitions** - 216:14
**advance** - 242:3
**advances** - 206:4
**adverse** - 202:1
**advise** - 10:1, 64:4, 250:9, 250:11
**advised** - 63:22, 64:7, 227:5

**affect** - 188:5, 196:15, 204:22
**affected** - 206:13
**affecting** - 243:4, 243:10, 243:20, 246:1
**aforethought** - 50:2, 234:11, 236:15, 236:21, 237:2
**afraid** - 25:8, 140:1, 144:14, 144:16, 169:2, 174:5, 180:18, 182:9
**African** - 56:9, 56:13, 56:15
**African-american** - 56:9, 56:15
**African-americans** - 56:13
**afternoon** - 122:22, 162:19, 164:2
**Afternoon** - 162:1
**age** - 143:3, 195:6
**Agent** - 75:13, 75:19, 75:24, 153:14, 153:19, 153:23
**agent** - 153:14, 222:3
**agents** - 65:22
**aggravated** - 59:10
**aggravating** - 60:4
**aggregating** - 60:2
**ago** - 100:1, 114:6, 153:23, 224:16
**agree** - 16:19, 16:20, 16:21, 29:7, 43:16, 131:15, 152:1, 157:23, 196:2, 218:8, 253:11, 253:16, 258:9
**agreeable** - 16:11, 16:14, 26:11, 258:4
**agreed** - 4:10, 100:6, 112:4, 112:11, 117:22, 146:22, 149:6, 149:22, 180:5, 200:13
**Agreed** - 24:19
**agreed-upon** - 117:22
**agreement** - 4:13, 4:18, 13:15, 13:16, 14:16, 15:20, 16:10, 61:19, 61:25, 62:9, 67:11, 67:13, 67:14, 67:18, 68:3, 71:11, 75:22, 80:2, 129:11, 146:8, 148:24, 195:24, 200:12, 209:6, 221:16, 221:23, 221:24, 222:5, 222:10, 222:15, 223:1, 223:9, 224:19, 224:22, 227:8, 247:14, 250:9
**ahead** - 10:20, 10:22
**aided** - 1:24
**aiding** - 51:4, 51:7, 51:21, 51:25, 52:6, 52:22, 53:1, 53:6, 56:2, 227:1
**aims** - 224:22, 226:14
**ain't** - 86:2, 86:5, 87:4, 88:1
**Ain't** - 87:16
**air** - 154:3, 192:6
**Alaska** - 101:14
**alcohol** - 137:3, 137:5

**alibi** - 29:13
**alive** - 168:9, 180:1
**allegations** - 93:15
**allege** - 90:14
**alleged** - 8:23, 44:5, 47:6, 54:15, 93:1, 123:18, 196:21, 217:6, 222:13, 222:16, 225:1, 226:6, 230:23, 233:13, 244:8, 255:22
**allegedly** - 9:5, 9:10, 9:23, 10:10, 201:7
**alleges** - 217:16, 239:10
**allow** - 2:6, 183:16, 184:14, 195:11, 216:11, 248:15
**allowed** - 133:10, 180:5, 215:11
**allows** - 207:1
**Almost** - 250:2
**almost** - 24:4, 32:4, 66:12, 66:14, 66:17, 76:16, 78:8, 95:8, 173:24, 180:3, 257:10
**alone** - 26:21, 145:10, 197:3, 209:12
**alternate** - 257:25, 258:3
**alternates** - 261:4, 261:7
**amazing** - 167:13
**ambit** - 225:25
**amended** - 252:9, 252:11
**America** - 1:3, 194:19
**american** - 56:9, 56:15
**americans** - 56:13
**ammo** - 117:19, 118:2
**Ammunition** - 244:24
**ammunition** - 50:19, 54:7, 54:15, 60:11, 70:14, 70:15, 70:18, 129:24, 158:4, 233:10, 235:22, 242:21, 243:3, 243:10, 243:19, 243:25, 244:9, 244:23, 244:24, 245:18, 245:19, 245:25, 246:3, 246:7, 246:14, 246:17, 246:20, 249:13
**amount** - 39:3, 39:5, 39:14, 41:15, 42:15, 43:4, 43:24, 43:25, 46:3, 46:13, 49:4, 68:15, 68:19, 118:16, 149:10, 218:12, 232:3, 238:6
**amounts** - 63:23, 75:11, 76:22, 78:8, 90:16, 230:11
**amphetamines** - 230:5
**analogy** - 131:24
**analysis** - 119:1
**anecdotes** - 164:15
**angel** - 90:9
**angry** - 101:24, 133:19
**Anguiano** - 36:5, 36:6

**Annapolis** - 76:4, 81:11
**Annor** - 34:17, 73:17, 219:17, 219:21
**answer** - 46:1, 46:11, 49:2, 72:7, 97:13, 116:9, 122:3, 165:23, 166:4, 168:2, 168:4, 170:3, 178:19, 232:2, 250:3
**Answer** - 165:25
**answered** - 121:14
**answers** - 164:21, 200:7, 200:25
**anthill** - 145:10
**Anthony** - 262:12, 262:13
**anticipation** - 51:13
**Antonio** - 1:7, 65:2, 65:24, 81:2, 81:9, 82:17, 90:8, 106:7, 107:25, 108:24, 109:5, 110:7, 112:22, 121:22, 124:3, 218:5, 232:21, 239:12, 242:24
**anxious** - 81:21, 121:9
**anyway** - 162:8, 184:1
**apartment** - 179:21
**apologize** - 85:22
**appealed** - 213:9
**appearance** - 30:2, 134:25, 135:2, 135:6, 238:15
**Appearances** - 1:14
**appeared** - 74:10, 76:18
**applicable** - 20:25, 29:5, 29:16, 49:16, 53:2
**apply** - 26:16, 193:3, 215:5, 229:7, 229:9
**appoint** - 56:8
**appointment** - 163:8
**apprised** - 225:9
**approach** - 63:6, 76:9, 251:14
**appropriate** - 35:21, 36:2, 37:4
**approved** - 49:9
**Appx** - 36:19, 37:20
**April** - 167:1, 170:7
**area** - 106:17, 107:21
**areas** - 35:14
**argue** - 37:1, 71:18, 103:14, 118:8, 118:10, 212:19
**argues** - 206:21, 206:23
**arguing** - 37:5, 52:20, 125:6
**argument** - 6:2, 36:14, 37:4, 37:17, 38:12, 38:15, 60:19, 61:5, 62:13, 63:3, 64:14, 162:6, 162:15, 162:22, 163:11, 164:10, 198:14, 232:6
**arguments** - 60:17, 64:11, 192:10, 192:25, 194:3, 202:7, 207:14, 221:1, 247:12, 247:23, 261:19
**arising** - 20:24,

210:22
**Aristotle** - 159:10, 159:11, 165:13, 172:12
**arranged** - 15:14, 16:9, 23:1, 209:5, 211:20
**array** - 95:15
**arrest** - 154:4, 183:14
**arrested** - 72:2, 72:3, 72:10, 73:15, 74:8, 74:16, 75:9, 75:14, 76:2, 76:22, 77:13, 81:10, 81:12, 89:12, 90:16, 100:5, 140:18, 170:7, 171:12
**arrests** - 76:23
**arriving** - 63:1
**artery** - 95:7
**ass** - 87:20
**assassinated** - 156:22
**assassination** - 183:23
**assembled** - 226:13
**assembling** - 260:25
**asserts** - 199:9
**assess** - 174:3
**assist** - 186:9, 214:25
**Assistant** - 1:16, 100:1, 138:1
**assisted** - 227:5
**associate** - 94:23, 224:5
**associated** - 65:25, 156:10, 238:24
**associates** - 72:11, 79:25, 89:2, 89:25, 90:19, 91:4, 119:15
**association** - 226:8
**assume** - 55:6, 124:25, 126:22
**assumed** - 199:25, 200:4
**Atf** - 75:13
**attach** - 62:1, 201:24
**Attachment** - 61:21, 62:1
**attack** - 38:16, 39:13, 214:7
**attempt** - 5:21, 221:25, 228:13, 229:3, 249:21, 259:15
**attempted** - 32:19, 41:24, 42:6, 45:4, 45:14, 48:6, 48:17, 228:9, 231:10, 231:20, 234:3, 236:7, 254:24
**attempting** - 217:20
**attempts** - 233:18
**attention** - 130:12, 160:13, 192:13, 192:22, 192:23, 257:10
**attentive** - 56:10, 56:16, 127:3
**attentiveness** - 2:25
**attitude** - 194:11
**Attorney** - 1:16, 100:1, 138:1
**attorney** - 129:5, 164:15, 169:5, 169:6, 193:9
**Attorney's** - 123:1, 185:18

3

attorneys - 178:12,
190:4, 202:6, 250:16
attributable - 40:3,
44:10, 44:18, 44:24,
45:20, 46:9, 47:20,
47:22, 48:24, 231:2,
231:4
attributed - 43:9,
43:12, 231:24
audacity - 135:3
Audio - 182:10,
182:16
August - 1:11,
75:14, 135:5, 220:5
Aunt - 150:25
Ausa - 101:2
authorities - 23:11,
212:4
automatically -
226:9
available - 78:10,
202:23, 255:3,
259:20, 261:10
avalanches -
132:22
Avenue - 219:8
Avery - 102:18,
107:22, 121:20
avoid - 216:14
aware - 39:20,
237:12, 238:10
awareness - 224:21
awful - 187:18
awfully - 39:4

B

Babb - 37:18
baby's - 96:4, 187:4
background -
114:25
bad - 18:13, 18:14,
178:4, 190:7, 237:16
Bad - 189:17
bag - 90:10, 150:1,
187:3, 189:8, 189:9
bags - 73:22, 74:17,
75:25, 78:9, 83:23,
87:10, 87:11, 89:5,
189:7
bailiff - 261:24
ball - 144:22,
153:11
Baltimore - 65:21,
77:10, 95:25, 111:17,
112:15, 124:7,
132:17, 133:8, 155:6,
166:24, 166:25,
167:1, 175:16,
189:22, 216:25,
218:23, 219:8, 220:1,
233:2, 239:21, 261:15
bang - 66:2, 100:13,
174:18
bank - 87:18, 228:3
bar - 101:17, 194:24
barely - 175:21
base - 47:13, 58:1,
149:11, 218:13,
218:21, 219:19,
219:23, 220:3,
220:17, 221:17,
261:19
based - 96:2,
118:19, 158:16,
194:25, 213:11,
223:25, 247:14
basic - 5:2, 20:10,
224:22
basics - 144:25

basis - 35:24,
55:11, 202:7, 202:13,
209:11, 247:6, 248:13
bear - 192:8, 206:7,
258:14
bearing - 25:5,
225:17
beat - 118:15,
159:19
beating - 185:21
beats - 140:5
beauty - 125:16,
133:16, 151:5
became - 44:7,
47:8, 94:10, 175:25,
176:1, 217:16,
221:19, 223:19,
230:25
become - 225:6,
238:10
becomes - 222:3,
227:7, 249:17
bedroom - 64:20
beef - 183:24
began - 1:06:9,
107:14, 175:15
begin - 127:3,
163:6, 178:8, 185:2
beginning - 15:12,
126:6, 253:19
begins - 8:18,
166:10, 197:2, 252:15
behalf - 160:12,
163:25
behavior - 206:25,
229:12
behind - 62:18,
73:20, 95:23, 96:4,
105:18, 105:19,
106:1, 109:24, 110:6,
110:8
belief - 130:10,
133:3, 142:3, 151:23,
153:10
believability -
142:11
believable - 20:4,
140:6, 203:14, 210:14
believer - 134:5
believes - 11:25,
51:10, 90:17, 131:25,
160:9, 160:10
belittle - 157:16
bench - 63:6,
251:15
Bench - 63:8, 64:9,
251:16, 258:7,
260:16, 261:1
bending - 108:6,
128:18
benefit - 23:16,
24:22, 79:3, 80:24,
81:3, 81:19, 90:1,
119:25, 120:3, 120:8,
121:7, 158:20, 164:7,
205:25, 207:18,
212:10
benefits - 21:24,
79:5, 119:23, 144:11
Bennet's - 126:19
Bennett - 1:12,
66:23, 67:5, 67:7,
67:13, 123:15,
126:15, 130:11,
136:7, 137:13,
137:14, 148:20,
157:22
best - 65:4, 82:11,
98:10, 132:19,
163:10, 168:5,

174:19, 190:23,
207:23
better - 12:13,
159:3, 170:20, 180:14
Between - 68:20,
80:8
between - 15:15,
16:9, 67:14, 68:14,
68:17, 71:12, 82:17,
86:22, 88:23, 90:6,
98:2, 124:23, 125:20,
129:11, 132:9,
142:18, 148:24,
150:9, 196:21,
199:13, 209:5,
222:22, 261:9
beyond - 35:6, 44:8,
44:17, 47:9, 54:5,
68:13, 91:20, 124:14,
126:12, 126:14,
126:20, 128:13,
129:9, 129:17, 132:1,
134:14, 141:14,
145:3, 145:11, 148:7,
153:12, 158:22,
188:14, 195:20,
197:1, 197:6, 197:9,
199:3, 199:20,
201:19, 207:6,
209:13, 221:15,
222:8, 223:16,
229:14, 231:1, 234:1,
236:25, 237:19,
240:11, 240:21,
241:6, 241:10,
243:13, 243:23,
244:21, 245:24,
246:24, 248:12,
254:11, 254:20,
258:25, 259:11
Beyond - 54:23,
244:17
Bgf - 156:8
bias - 23:18,
194:10, 204:20,
204:25, 212:11
Bible - 130:8, 131:3,
131:6
Biblical - 164:14,
172:11
big - 75:11, 120:14,
121:3, 134:8, 134:20,
144:13, 145:22,
157:5, 171:18,
175:22, 182:25,
184:16, 189:7, 189:8
Big - 82:19, 83:22,
84:11, 190:3
bigger - 94:10,
94:11, 121:23
bills - 75:9, 154:6
bit - 3:5, 3:15,
29:21, 30:5, 70:23,
76:20, 130:1, 131:20,
131:24, 147:8,
150:20, 156:8,
157:20, 163:15
Black - 156:8
black - 95:4,
107:10, 111:14,
152:6, 155:23,
156:23, 158:13
blacktop - 101:14
Blame - 83:11
blanks - 232:8
blatant - 136:17
block - 94:4, 219:8,
219:17, 219:21,
220:1, 220:15, 220:19
blocking - 62:19

blood - 122:4, 157:6
blooded - 65:14
blow - 190:5
blunt - 143:5
board - 76:21
body - 117:15,
123:8, 153:3, 154:20,
168:14, 251:23
boilerplate - 2:19,
14:8, 15:17, 19:16,
19:22, 20:21
boldly - 167:2
book - 132:7,
164:16, 164:17, 260:7
books - 164:18
boom - 115:14
bootstrap - 140:21,
140:22
bottle - 76:11
bottom - 86:24,
147:16, 256:11
bought - 34:25,
81:13, 81:14, 91:1,
91:15, 91:18, 94:9,
149:1, 190:8
boundary - 246:8,
246:11
box - 106:25,
143:12, 228:3
boxes - 144:3
boy - 136:13,
136:19, 145:25,
159:13, 159:16,
159:21, 159:25,
172:12
boyfriend - 103:21,
104:7, 177:2, 177:3
bracketed - 253:18,
255:14
bracketing - 253:8
brackets - 256:10
bragged - 94:4,
96:10
Brandenburg -
18:13, 34:20, 78:3,
79:2, 79:15, 141:3,
150:24
Brandenburg's -
79:1
Brandishing -
255:1, 259:17
break - 61:6, 63:11,
160:24, 161:4,
162:23, 163:14,
164:13, 168:25,
176:21, 192:5,
217:14, 220:25,
237:16
breaking - 234:24,
242:16, 245:22
breech - 96:2
brick - 78:22
bricks - 189:17
Brief - 62:23, 221:6
briefer - 259:9
briefly - 115:23
bright - 160:12
Bring - 85:13
bring - 77:23,
82:21, 85:15, 127:11,
127:13, 129:13,
129:14, 140:1, 140:4,
174:2, 190:13, 200:2,
250:24, 251:7, 251:10
broke - 65:17, 71:4,
95:7
broken - 180:15,
181:6
Brooks - 75:13,
75:19, 153:14,

153:19, 153:23
Brooks' - 75:24
brother - 85:3,
86:17, 94:3, 154:18
brought - 80:13,
100:20, 107:2,
112:24, 128:5,
181:16, 187:23,
194:18, 253:19
Bruce - 87:1, 89:15
build - 111:15,
131:7, 131:19
building - 260:12
builds - 131:5
built - 70:20, 95:11,
108:15, 118:12,
131:4, 190:11, 190:19
bulks - 40:1
bullet - 96:6, 105:6,
107:5, 117:2
bullets - 70:25,
71:2, 118:5, 175:22,
244:25
bullseye - 179:22,
184:7
bumping - 110:1,
110:2
bunch - 109:22,
118:12, 119:2,
148:21, 165:3
burden - 5:9, 32:5,
37:6, 138:16, 141:14,
195:4, 195:8, 196:24,
197:9, 197:11,
197:13, 198:9,
198:18, 201:18,
201:19, 240:12,
243:14
Bureau - 137:16,
233:2, 239:20
buried - 157:5,
170:19
burning - 88:13,
88:15, 88:17
bury - 157:7
bus - 81:19, 81:23,
127:21, 127:23,
146:15
business - 85:19,
98:3, 99:2, 160:3,
224:4
busted - 139:4
Busy - 182:14
buy - 67:19, 78:5,
78:7, 78:23, 89:8,
151:10, 156:4, 156:5,
188:22, 189:5
buy/bust - 75:16
Buying - 89:5
buying - 34:20,
78:15, 78:21, 189:9

C

caliber - 220:10,
220:11
calibers - 156:12
candid - 204:20
cannot - 110:19,
121:13, 157:24,
164:24, 165:2,
229:11, 248:14
Caprese - 81:15
caps - 151:19,
153:17, 153:18
caption - 7:23
captioned - 7:25,
251:22
car - 52:20, 75:24,
94:12, 94:13, 94:16,

94:18, 95:3, 95:4,
105:22, 106:1, 106:3,
109:19, 110:4,
111:24, 112:16,
113:1, 113:2, 114:17,
115:2, 115:5, 128:19,
172:24, 172:25,
173:13, 175:4, 181:9,
187:16
**cards** - 118:12
**care** - 8:6, 10:2,
10:13, 14:21, 72:16,
78:13, 135:21, 167:6,
174:18, 182:5,
201:10, 206:9, 207:9,
208:14, 209:16,
213:21, 237:12
**cared** - 84:3, 189:20
**careful** - 192:23,
197:4
**carefully** - 192:17,
204:2, 247:22, 256:14
**cares** - 167:7, 178:2
**caring** - 167:4
**Carithers** - 14:20,
101:8, 133:15,
133:19, 133:21,
134:17, 134:23,
148:3, 184:23, 185:4
**carried** - 70:8,
95:12, 240:17,
241:11, 246:9,
246:11, 254:12, 259:1
**carries** - 239:6,
240:6
**carry** - 132:3,
139:13, 142:4, 239:13
**carrying** - 70:1,
206:17, 233:7, 235:19
**cars** - 74:4, 74:22,
78:12, 90:24, 155:25,
156:3, 260:22
**cartridge** - 186:12,
244:25
**case** - 3:24, 4:2,
4:14, 4:19, 5:15, 5:18,
6:4, 11:22, 18:22,
20:8, 20:24, 21:2,
21:11, 21:16, 22:21,
23:24, 24:5, 25:6,
26:19, 26:20, 27:23,
30:12, 32:23, 38:17,
38:20, 38:24, 51:19,
51:23, 58:16, 64:14,
69:4, 69:11, 84:5,
92:12, 100:19,
100:21, 102:9, 118:8,
118:11, 118:12,
118:25, 122:9, 123:6,
123:9, 123:14,
124:14, 125:4, 125:8,
126:3, 127:5, 128:3,
128:6, 128:8, 128:12,
128:23, 128:24,
129:2, 129:8, 130:1,
131:6, 131:23, 133:1,
134:13, 134:14,
136:7, 138:2, 138:15,
138:20, 139:22,
139:24, 140:12,
141:21, 145:9, 146:3,
146:12, 146:13,
148:7, 148:9, 150:23,
151:4, 152:10,
153:16, 156:13,
156:20, 157:1,
157:19, 157:25,
158:4, 158:9, 158:20,
158:23, 159:5, 159:8,
160:10, 160:14,

160:19, 165:4, 170:2,
171:22, 171:23,
172:16, 172:17,
176:21, 178:3, 178:4,
181:8, 187:22,
188:3, 190:2, 190:11,
190:19, 191:8,
192:12, 192:25,
193:14, 193:24,
194:13, 195:25,
196:2, 196:3, 197:13,
198:24, 199:18,
200:8, 200:23,
201:16, 205:16,
206:11, 206:11, 207:7,
208:15, 210:19,
210:23, 214:10,
214:16, 215:10,
215:15, 215:20,
216:15, 216:16,
216:17, 216:18,
217:1, 220:7, 220:17,
223:5, 235:6, 247:5,
247:17, 247:19,
248:11, 249:24,
250:19, 251:9, 255:9,
255:23, 261:22
**Case** - 1:6, 36:1,
190:3
**cases** - 35:21, 36:4,
36:16, 38:4, 118:6,
190:10, 223:7, 244:25
**cash** - 75:9, 75:11,
80:10
**casing** - 95:18,
95:20, 96:1, 186:23,
186:25, 187:2
**casings** - 117:19,
117:21
**catch** - 164:14
**caught** - 90:22,
178:23
**caused** - 205:1
**caution** - 7:9,
207:10, 208:13,
226:5, 226:16, 261:12
**cautioned** - 23:19,
26:6, 212:13
**cautiously** - 213:20
**Cci** - 117:19, 118:1,
118:5
**cell** - 251:10
**certain** - 8:3, 8:4,
9:2, 9:5, 9:11, 9:12,
9:23, 9:25, 10:11,
10:12, 18:20, 30:1,
68:15, 69:4, 89:10,
93:1, 179:10, 196:19,
198:15, 199:25,
200:10, 200:12,
201:7, 201:8, 203:2,
214:16
**certainly** - 14:6,
36:25, 37:1, 37:17,
60:16, 165:12
**Certainly** - 52:19,
63:7
**certainty** - 199:16
**certify** - 262:8
**certiorari** - 36:7
**chain** - 199:11
**chair** - 133:13
**challenge** - 158:8
**challenged** -
165:23, 165:24,
171:14
**chamber** - 105:5
**chance** - 141:25,
170:8, 177:16
**change** - 73:19,

247:20, 255:24, 260:3
**changed** - 94:22,
111:18, 112:1,
170:14, 256:15,
257:6, 260:6
**changes** - 252:10
**character** - 227:4
**characterized** -
164:25, 223:4
**charge** - 2:16,
18:12, 33:15, 33:19,
36:2, 37:6, 37:11,
40:24, 53:19, 54:20,
57:23, 60:14, 79:7,
100:5, 162:6, 221:9,
224:4, 258:23
**charged** - 8:4, 9:12,
9:25, 10:12, 31:3,
35:22, 44:4, 47:5,
51:4, 51:17, 54:7,
54:15, 51:17, 58:18,
66:24, 67:2, 70:4,
99:19, 99:20, 99:21,
103:15, 116:1,
141:11, 141:14,
145:12, 151:16,
156:4, 182:6, 194:16,
195:12, 196:16,
201:9, 206:17,
208:10, 215:25,
217:5, 217:7, 217:9,
222:11, 223:13,
223:21, 224:14,
230:22, 240:24,
241:13, 243:19,
243:20, 243:25,
244:9, 245:25, 246:6,
246:19, 254:13,
255:13, 259:2
**charges** - 5:1,
20:23, 21:13, 33:6,
33:7, 39:8, 50:18,
51:19, 69:1, 69:25,
70:11, 98:21, 99:17,
116:12, 119:24,
155:13, 195:15,
196:8, 196:18,
203:20, 210:22,
211:2, 218:3, 232:17,
232:19, 239:2,
242:20, 242:22,
246:25
**charging** - 70:24
**Charming** - 182:18
**chart** - 127:7,
140:17
**chased** - 65:9,
93:20
**check** - 51:5, 58:14,
85:9, 85:10, 85:12,
96:20, 232:11
**checks** - 116:25
**Cheese** - 94:24,
95:3, 101:10, 101:12,
134:24, 177:3
**Chef** - 128:20
**chief** - 156:20
**child** - 124:5,
127:23
**children** - 95:24,
137:17, 159:13,
169:17
**China** - 132:10
**choice** - 169:19
**choose** - 131:13,
151:21, 204:19
**chose** - 69:22,
128:2, 128:10,
128:12, 131:16,

150:22
**Chris** - 100:1
**Christmas** - 149:18
**chuckled** - 132:6
**Cinderella's** - 88:9
**Circuit** - 5:15, 5:16,
5:20, 5:25, 6:4, 36:6,
36:9, 36:10, 36:17,
36:18, 36:19, 37:7,
37:10, 37:20, 37:21,
37:22, 38:2, 38:6,
38:20
**circumstances** -
199:11, 203:9, 204:3,
223:5, 238:8
**circumstantial** -
6:13, 7:12, 199:7,
199:15, 199:16
**Circumstantial** -
199:10
**cited** - 36:4
**citizenry** - 125:21
**City** - 124:7, 132:17,
133:8, 166:24,
166:25, 167:1,
189:22, 233:3, 239:21
**city** - 127:12,
127:14, 140:1, 189:22
**civil** - 238:16
**claim** - 34:13, 35:25
**claims** - 8:3, 9:11,
9:24, 10:12, 201:8
**clarify** - 59:2
**clean** - 122:25,
158:13, 197:2
**cleaned** - 157:11
**cleaner** - 159:3
**clear** - 25:6, 150:11,
192:14, 203:18
**clearly** - 18:7,
32:22, 39:13, 203:4
**clenched** - 76:7
**Clerk** - 48:1, 49:6,
161:1
**clerk** - 40:8, 162:4,
250:25, 251:7
**clever** - 180:13
**cliches** - 164:15
**client** - 10:20,
178:13
**climber** - 132:19
**Clinton** - 1:15
**clip** - 97:5
**close** - 76:14,
82:14, 136:25,
145:11, 192:13,
192:21
**closed** - 190:3
**closely** - 69:24,
117:7, 209:17
**closer** - 153:11
**closes** - 156:23
**closest** - 105:20
**closing** - 6:1, 60:17,
60:19, 62:13, 63:2,
64:11, 64:14, 164:9,
166:17, 194:2, 232:5
**clothes** - 157:5
**clubs** - 159:19,
159:23, 160:3
**co** - 13:25, 14:8,
14:14, 39:25, 71:23,
125:18, 150:3,
165:24, 190:18,
208:10, 208:22, 225:2
**co-conspirator** -
13:25, 14:8, 14:14,
39:25, 150:3
**co-conspirators** -
71:23, 190:18,

208:10, 208:22, 225:2
**co-counsel** -
125:18, 165:24
**coached** - 187:10
**cocaine** - 17:18,
39:9, 39:14, 40:2,
46:3, 46:13, 47:11,
47:12, 47:15, 47:18,
49:4, 57:10, 57:12,
58:1, 67:4, 67:12,
68:6, 68:15, 71:12,
71:14, 71:17, 72:9,
73:22, 87:11, 88:19,
149:10, 149:11,
189:10, 218:13,
218:21, 219:19,
219:23, 220:3, 220:7,
220:17, 221:17,
227:12, 232:4,
256:22, 257:4, 257:5
**Cocaine** - 47:13
**Code** - 217:19,
217:22, 218:15,
221:23, 233:6, 233:9,
233:12, 233:14,
233:17, 234:10,
235:18, 235:21,
235:24, 236:14,
236:19, 238:13,
239:3, 239:24, 240:3,
243:6
**code** - 96:22
**coerce** - 30:24,
31:23, 32:1, 32:4,
32:20, 215:22
**coerced** - 32:6,
32:10, 68:3
**coercing** - 32:2
**coercion** - 30:4
**coffee** - 189:5,
189:6
**coincidence** -
167:15, 170:1,
186:14, 186:23,
187:5, 187:6, 189:17
**coincidences** -
189:18
**Coincidentally** -
81:11
**coincidentally** -
172:14
**cold** - 65:14, 122:4
**cold-blooded** -
65:14
**collectively** - 35:22
**color** - 208:3
**colored** - 206:14,
209:18, 214:9
**combination** -
221:24, 222:4
**combine** - 14:21,
35:11, 218:7
**combined** - 149:6,
149:22
**coming** - 35:3, 90:1,
90:3, 139:10, 150:7,
159:16, 159:17,
159:22, 159:23,
160:1, 160:2, 160:4,
169:12, 179:16,
187:17, 216:22
**comment** - 26:9,
53:17, 135:19
**commerce** - 70:19,
117:21, 118:3, 243:4,
243:10, 243:21,
246:1, 246:4, 246:15,
246:21
**commission** - 21:7,
21:20, 144:8, 233:3,

5

233:4, 233:21,
233:22, 234:7, 234:8,
239:22, 239:23,
241:2, 242:3, 254:9,
258:21, 259:14
 **commit** - 67:14,
79:21, 80:23, 81:4,
93:12, 94:16, 120:10,
217:21, 219:9
 **committed** - 12:6,
27:4, 70:5, 70:9,
166:14, 167:13,
170:5, 170:9, 219:4,
236:7, 240:14,
240:22, 241:7
 **committing** - 74:23,
77:12, 158:11, 238:3
 **common** - 118:20,
126:2, 198:1, 201:3,
202:8, 205:11,
205:21, 213:9,
215:14, 223:12,
226:13
 **Common** - 90:20,
190:15
 **commonly** - 149:11,
218:13, 242:13
 **communicate** -
249:18, 249:21,
249:23, 260:21
 **communicates** -
248:24
 **community** - 167:7,
187:18, 194:15,
218:23
 **compare** - 204:13
 **Compare** - 153:3
 **compensated** -
120:6
 **competitor** - 92:19
 **complete** - 90:15,
184:10, 187:20,
194:11
 **completely** - 16:4,
53:17, 136:21,
167:14, 173:24,
174:4, 191:7, 205:3,
208:25, 216:4
 **complicated** -
118:25, 122:9,
128:21, 128:22
 **computer** - 1:24,
27:3
 **computer-aided** -
1:24
 **concealed** - 21:7
 **concede** - 8:18,
8:20
 **concept** - 227:13
 **concern** - 4:16,
4:20, 4:23, 194:15,
196:6, 198:25, 199:1,
248:7
 **concerned** - 63:19,
98:12, 178:5, 178:7
 **concerning** -
215:12, 216:15,
229:10
 **concerns** - 213:6
 **concise** - 122:25,
158:13
 **conclude** - 129:22,
202:13
 **conclusion** - 88:22,
126:7, 162:22, 163:5,
251:13
 **conclusions** -
159:1, 210:24
 **conclusively** -
203:4

 **concocted** - 73:12
 **concrete** - 228:15,
228:21
 **condemn** - 175:25
 **condemnation** -
188:4, 188:5, 191:12, 203:1,
223:6, 226:12, 237:10
 **conducted** - 60:14,
99:13, 219:18,
219:22, 220:6, 220:16
 **confederate** - 218:8
 **confederated** -
149:6, 149:22
 **conference** - 2:16,
40:24, 60:14
 **Conference** - 63:8,
64:9, 251:16, 258:7,
260:16, 261:1
 **confidence** -
126:25, 184:10,
187:20
 **confident** - 191:7
 **confirmed** - 97:21,
183:3, 183:6, 183:8
 **conflict** - 187:21,
187:22
 **conflicts** - 193:18,
212:24
 **confronted** -
152:13, 209:21
 **confused** - 90:12
 **confuses** - 49:20
 **confusing** - 49:20,
51:8, 70:23, 117:17
 **confusion** - 12:3
 **congregating** -
260:19
 **Congress** - 63:17
 **connection** - 53:18,
54:19, 225:5, 244:13
 **conscientious** -
247:24, 248:2
 **consciously** -
205:2, 237:5
 **Consciousness** -
29:5, 29:17
 **consciousness** -
29:12, 31:10, 32:3,
32:12, 32:17, 216:2
 **consequences** -
146:24
 **consider** - 12:12,
20:22, 22:24, 23:12,
23:20, 26:6, 30:11,
43:12, 44:24, 47:23,
54:24, 72:17, 72:18,
72:19, 77:5, 133:10,
146:11, 151:13,
195:2, 195:21, 196:9,
198:16, 200:4, 201:1,
201:3, 202:3, 205:6,
205:8, 207:15,
208:14, 211:11,
211:12, 211:18,
212:5, 212:14,
212:25, 213:4, 215:3,
215:19, 216:7, 217:4,
223:10, 223:24,
224:13, 231:5,
244:18, 247:11
 **Consider** - 115:19
 **considerable** -
147:13
 **considerably** -
158:20
 **consideration** -
4:11, 11:6, 138:8,
193:7, 194:20,
194:22, 197:5, 214:4,
247:18, 248:15

 **considerations** -
3:2, 207:12, 215:5,
229:7
 **considered** - 23:24,
25:20, 53:20, 53:22,
54:21, 135:4, 195:17,
200:16, 200:18,
244:15
 **considering** - 20:7,
206:6, 210:18, 247:23
 **consistent** - 61:20,
89:21, 204:15
 **consistently** -
121:20
 **consists** - 193:24,
200:8
 **conspiracies** -
33:22, 34:4, 34:11,
34:15, 35:19, 35:25,
36:23, 37:13, 38:6,
38:8, 38:11
 **conspiracy** - 2:21,
12:2, 21:5, 21:13,
33:7, 33:14, 33:17,
33:19, 34:2, 34:22,
35:24, 36:20, 36:24,
37:2, 37:6, 37:11,
37:14, 37:23, 37:25,
38:18, 38:23, 39:8,
42:2, 44:4, 44:5, 44:7,
45:8, 45:9, 45:11,
45:14, 46:4, 46:14,
47:5, 47:6, 47:8,
48:11, 48:12, 48:15,
48:17, 49:4, 49:16,
51:17, 67:11, 67:12,
68:2, 68:20, 71:10,
75:21, 80:2, 80:5,
92:25, 93:3, 98:25,
99:14, 99:20, 100:11,
116:2, 119:14,
123:18, 129:10,
131:18, 140:12,
145:23, 148:11,
148:18, 148:23,
149:23, 150:15,
151:7, 154:22, 155:3,
176:6, 180:6, 186:8,
217:17, 218:18,
218:20, 219:2, 219:3,
219:5, 220:10,
220:12, 221:9,
221:13, 221:16,
221:19, 221:20,
221:21, 221:24,
222:9, 222:14, 223:3,
223:7, 223:17,
223:19, 223:20,
223:22, 223:24,
224:2, 224:8, 224:14,
224:21, 224:24,
225:7, 225:12, 226:1,
226:3, 226:4, 226:8,
226:9, 226:15,
226:21, 226:25,
227:4, 227:9, 230:20,
230:22, 230:23,
230:25, 231:13,
231:14, 231:17,
231:20, 232:4, 232:7,
233:5, 235:17, 249:3
 **Conspiracy**- 57:9
 **conspiracy's** -
225:14
 **conspirator** - 13:25,
14:8, 14:14, 39:25,
150:3, 181:23, 224:17
 **conspirator's** -
225:18
 **conspirators** -

71:23, 150:14, 182:1,
190:18, 208:10,
208:22, 222:16,
225:2, 225:21
 **conspire** - 71:16,
72:8, 218:7
 **conspired** - 67:21,
67:23, 68:5, 227:11,
257:3
 **conspiring** - 67:3,
217:21
 **constitute** - 228:20,
254:25, 255:3, 255:7,
259:17, 259:20,
259:25
 **Constitution** -
183:15, 201:16
 **constructive** -
228:6, 228:9
 **construed** - 21:4
 **consult** - 56:3,
247:13
 **consumer** - 94:11
 **consummate** - 74:9
 **consumption** -
230:6
 **contact** - 179:9
 **contacting** - 31:20
 **contain** - 220:7
 **contained** - 200:5
 **containing** -
149:10, 218:12,
218:21, 219:19,
219:23, 220:3, 220:17
 **contains** - 3:22,
195:23, 196:4
 **contending** - 9:3
 **contends** - 235:9
 **context** - 112:9,
113:4, 223:7
 **continue** - 19:23,
25:3, 57:15, 57:16,
59:5, 86:10, 216:13,
226:3
 **continued** - 135:7,
173:3
 **continuing** - 167:9,
219:24
 **contorted** - 39:4
 **contradict** - 204:16
 **contradicted** -
140:7, 197:21
 **contradicting** -
216:8
 **control** - 138:10,
227:18, 227:24,
228:5, 241:23,
241:25, 245:6, 245:9,
245:13
 **controlled** - 39:3,
39:6, 44:1, 44:9,
44:18, 44:23, 45:20,
46:9, 47:10, 47:20,
47:22, 48:23, 217:25,
218:14, 229:9,
229:21, 230:10,
230:16, 231:2, 231:4,
231:24
 **controller** - 154:3
 **controls** - 248:24
 **convenience** -
249:2
 **conversation** -
84:15, 84:19, 85:21,
86:10, 86:22, 112:10,
113:8, 113:9, 175:3
 **converted** - 241:15,
245:3, 254:16, 259:5
 **convict** - 54:6,
130:25, 132:3, 145:2,

148:8, 150:2, 151:17,
151:21, 158:1, 158:3,
209:10, 209:22,
229:13, 243:24
 **convicted** - 54:8,
54:11, 58:21, 136:1,
141:2, 211:8, 211:13,
233:11, 235:23,
243:1, 243:8, 243:16,
244:1, 244:4, 248:16,
248:18
 **conviction** - 22:3,
53:19, 54:4, 54:13,
54:19, 70:16, 117:18,
117:23, 190:20,
207:4, 221:21, 244:7,
244:14, 248:1, 248:3
 **convictions** -
211:10
 **convince** - 121:25,
128:13, 129:17,
134:13, 229:14
 **convinced** - 66:11,
126:11, 126:14,
126:19, 129:9, 197:6,
199:19
 **convincing** - 145:11
 **cooperate** - 84:16,
112:4, 112:11, 222:23
 **cooperating** -
23:10, 116:15, 212:4
 **cooperation** -
69:11, 116:10
 **cooperator** - 98:20
 **cooperators** -
103:23
 **coordinate** - 120:7
 **copies** - 60:16,
101:8, 101:9, 260:4
 **cops** - 166:25
 **copy** - 36:16,
191:18, 191:23,
191:25, 252:5, 252:7,
260:6
 **Corey** - 36:10
 **corner** - 76:5,
93:25, 94:25, 95:1
 **corners** - 74:4,
74:21
 **Correct** - 24:6, 41:3,
55:9, 55:10
 **correct** - 17:13,
18:1, 39:10, 43:3,
52:8, 55:8, 59:8, 60:3,
191:20, 252:11,
252:14, 254:4, 262:8
 **corrected** - 258:11,
258:12
 **corrections** -
251:18, 257:17,
257:19, 258:10
 **correctly** - 26:15,
37:8, 251:20, 251:22
 **corroborate** - 73:4
 **corroborated** -
77:10, 79:15, 79:17,
80:15, 80:17, 83:16,
84:8, 89:20, 106:21
 **corroborates** -
78:17, 108:2
 **Counsel** - 3:16,
7:25, 15:6, 62:17,
251:14, 261:10
 **counsel** - 6:1,
58:10, 101:5, 122:23,
123:5, 125:18,
165:11, 165:22,
165:24, 168:1,
177:15, 177:21,
180:13, 186:13,

6

192:10, 192:19,
198:14, 201:2,
206:20, 212:18, 214:7
   **count** - 51:22, 67:8,
70:10, 70:11, 70:14,
71:10, 99:19, 117:16,
117:17, 154:22,
189:19, 196:10,
217:7, 217:10,
217:13, 242:19
   **Count** - 3:23, 4:1,
4:10, 4:12, 4:13, 4:19,
4:20, 4:24, 12:9, 21:8,
33:7, 39:7, 43:16,
43:23, 44:5, 47:6,
49:23, 49:24, 50:8,
50:9, 50:18, 51:4,
51:18, 51:19, 53:7,
57:9, 57:14, 57:16,
59:3, 59:5, 60:1, 60:9,
67:2, 67:8, 69:1, 69:7,
69:24, 70:4, 70:7,
70:23, 71:9, 92:25,
99:9, 116:2, 116:3,
117:7, 117:9, 117:12,
117:16, 157:20,
195:24, 195:25,
196:1, 196:2, 196:6,
217:16, 217:18,
218:1, 220:22,
220:24, 221:8,
221:22, 223:17,
230:23, 232:9,
232:10, 232:11,
232:14, 232:15,
232:17, 233:25,
236:3, 236:12, 239:1,
239:8, 239:25,
240:13, 240:24,
241:7, 241:13,
242:19, 242:21,
243:14, 249:3, 249:9,
249:12, 254:13,
258:24, 259:2
   **counties** - 126:1,
127:25
   **counting** - 167:2,
167:4, 167:8, 180:25,
181:1, 181:3
   **countless** - 71:6
   **country** - 246:18
   **Counts** - 52:6,
52:21, 68:22, 131:19
   **counts** - 3:22, 4:5,
4:7, 4:25, 11:24,
68:23, 72:19, 99:21,
100:15, 115:24,
116:1, 126:13,
141:12, 195:24,
196:5, 196:8, 232:14
   **County** - 133:8,
155:6
   **couple** - 86:4, 87:6,
87:7, 148:12, 175:6,
175:7, 175:8, 180:1,
180:19, 185:1, 189:15
   **course** - 67:6, 84:1,
91:14, 92:22, 103:2,
112:19, 117:13,
164:6, 164:16,
165:22, 166:4,
168:17, 173:7,
173:10, 179:1,
187:12, 222:25
   **court** - 5:20, 5:25,
16:6, 25:5, 37:22,
54:11, 62:14, 65:15,
70:3, 70:7, 117:9,
162:5, 209:2, 239:6,
239:15, 240:6,

240:16, 240:23,
243:8, 243:16, 244:4,
248:23, 250:1, 251:1,
260:23, 261:17,
261:18
   **Court** - 1:1, 2:3, 2:8,
2:10, 2:15, 3:1, 3:11,
3:14, 4:12, 4:18, 4:23,
5:5, 5:7, 5:14, 6:16,
6:23, 7:3, 7:8, 7:18,
7:20, 8:15, 8:24, 9:9,
9:21, 10:24, 10:25,
11:9, 11:11, 11:15,
11:17, 12:14, 12:19,
13:2, 13:4, 13:8,
13:10, 13:13, 13:15,
13:22, 14:1, 14:7,
14:12, 14:24, 15:3,
15:9, 15:14, 15:16,
15:24, 16:1, 16:8,
16:14, 16:17, 16:21,
16:24, 17:5, 17:7,
17:17, 17:20, 17:25,
18:17, 19:2, 19:7,
19:10, 20:14, 20:16,
20:19, 21:12, 21:17,
21:20, 21:23, 22:1,
22:6, 22:10, 22:14,
22:19, 24:3, 24:8,
24:15, 25:2, 25:12,
26:3, 26:13, 27:5,
27:12, 27:20, 27:25,
28:4, 28:7, 28:10,
28:12, 28:16, 28:18,
28:21, 28:23, 29:2,
29:4, 29:9, 29:15,
29:23, 30:15, 30:17,
30:23, 31:5, 31:7,
31:14, 31:17, 32:7,
32:9, 33:3, 33:5,
33:12, 33:14, 33:18,
33:24, 34:9, 34:17,
35:17, 36:8, 39:2,
39:12, 40:6, 40:14,
40:18, 40:22, 41:1,
41:10, 41:12, 41:21,
42:11, 42:21, 43:1,
43:16, 43:22, 44:13,
44:16, 44:22, 46:8,
46:17, 46:21, 46:24,
47:15, 47:19, 48:2,
49:7, 49:15, 50:6,
50:8, 50:15, 50:17,
50:22, 51:1, 51:3,
51:8, 51:15, 52:4,
52:11, 52:14, 52:18,
52:21, 53:4, 53:12,
53:14, 54:2, 55:3,
55:5, 55:10, 55:14,
55:18, 56:1, 56:7,
56:21, 56:23, 57:5,
57:8, 57:21, 58:8,
58:25, 59:12, 59:18,
59:22, 60:4, 60:9,
60:21, 60:24, 61:4,
62:4, 62:7, 62:25,
63:7, 64:1, 64:5, 64:6,
64:10, 64:21, 64:22,
64:24, 73:17, 75:17,
101:14, 108:5,
122:18, 122:21,
160:21, 161:2, 162:3,
162:12, 162:14,
162:19, 191:14,
191:16, 209:5,
219:17, 219:21,
220:6, 220:20, 221:8,
248:10, 248:25,
249:18, 249:21,
249:22, 250:9, 251:5,

251:17, 252:2, 252:7,
252:10, 252:13,
252:20, 253:5, 253:9,
253:11, 253:21,
253:24, 254:4, 254:6,
255:16, 256:11,
256:13, 256:18,
256:25, 257:5,
257:13, 257:16,
257:19, 257:22,
258:8, 260:17, 261:2,
262:3
   **Court's** - 2:24, 6:9,
6:18, 7:20, 26:1,
254:7
   **courtroom** - 40:16,
124:15, 151:12,
163:19, 163:21,
164:7, 169:11,
176:22, 185:5, 185:8,
200:23, 216:19,
250:17, 260:9, 260:10
   **courts** - 207:3
   **cousins** - 82:15
   **covered** - 59:19,
261:14
   **covers** - 19:13
   **coy** - 137:2
   **crack** - 17:18, 46:3,
46:13, 47:17, 49:4,
57:10, 57:12, 58:4,
67:4, 67:12, 67:24,
68:6, 68:7, 68:15,
68:20, 71:12, 71:13,
71:17, 72:3, 72:8,
72:13, 72:14, 72:15,
73:22, 74:17, 75:25,
78:4, 78:15, 79:19,
80:10, 80:12, 81:10,
82:21, 84:11, 85:19,
86:8, 86:19, 87:8,
89:7, 89:9, 90:6,
90:16, 90:18, 91:19,
91:20, 120:17,
149:11, 149:24,
150:1, 150:19,
150:21, 150:24,
151:10, 151:15,
182:3, 187:3, 189:10,
189:13, 218:13,
218:22, 227:12,
232:4, 257:3, 257:5
   **Crack** - 47:12,
47:15, 75:7
   **crackhead** - 180:4
   **crap** - 190:9
   **crawled** - 105:7,
107:5
   **crawling** - 105:10
   **Crazy** - 175:18
   **crazy** - 114:13,
175:18, 186:14
   **cream** - 128:10
   **create** - 23:18,
127:17, 178:4, 178:5,
212:11
   **creates** - 23:13,
23:16, 206:2, 212:7,
212:10
   **credence** - 208:5
   **credibility** - 12:22,
22:25, 72:21, 77:6,
79:1, 98:16, 98:18,
125:12, 125:14,
130:13, 138:25,
142:11, 147:24,
193:17, 198:8,
203:15, 205:14,
205:21, 205:23,
206:8, 207:12,

211:12, 211:19, 214:7
   **credible** - 197:22
   **crevices** - 132:23
   **cried** - 159:14,
172:12
   **crime** - 5:1, 35:1,
54:8, 54:11, 54:12,
60:10, 70:2, 70:6,
70:9, 70:16, 70:17,
106:7, 117:8, 125:21,
139:7, 155:18,
157:11, 158:11,
166:14, 169:12,
181:3, 194:17,
195:12, 196:9, 217:6,
217:9, 226:7, 223:8,
233:23, 235:20,
236:11, 238:3, 239:4,
239:5, 239:7, 239:14,
240:4, 240:7, 240:15,
240:18, 240:22,
241:3, 241:4, 241:7,
241:12, 241:20,
242:2, 242:4, 242:5,
242:7, 243:1, 243:8,
243:16, 244:1, 244:4,
244:5, 249:10, 254:9,
254:13, 254:22,
255:5, 258:21, 259:2,
259:14, 259:23
   **crimes** - 12:1, 16:5,
31:2, 66:25, 69:4,
69:12, 71:8, 100:17,
116:11, 141:12,
145:3, 206:17, 209:1,
211:9, 215:24, 217:5,
238:18
   **criminal** - 181:2,
194:14, 197:13,
206:24, 206:25,
217:17, 222:2,
226:11, 234:25,
235:24, 238:16
   **criminals** - 118:13
   **criteria** - 198:7
   **crop** - 128:11
   **cross** - 13:21,
62:10, 109:23,
110:25, 199:24,
204:14
   **cross-examination**
- 62:10, 109:23,
110:25, 199:24,
204:14
   **crossed** - 246:7
   **crowd** - 64:25,
65:16, 102:17
   **cruel** - 185:23
   **crumbles** - 148:9
   **crushed** - 135:8
   **crux** - 102:9
   **crystal** - 150:11
   **Csi** - 6:20, 7:1
   **culture** - 124:8
   **Cunningham** -
97:11, 97:17, 97:20,
156:13, 157:2, 157:5,
157:8, 157:11,
157:13, 173:22,
173:23, 174:6
   **currency** - 220:3
   **Curtis** - 21:4, 61:18,
62:2, 65:1, 80:17,
83:25, 102:13,
103:14, 104:13,
121:16, 128:16,
135:21, 135:23,
136:25, 137:7,
137:13, 138:22,
139:10, 148:4, 165:6,

165:17, 168:24,
170:8, 171:6, 177:20,
177:22, 179:2, 190:13
   **Curtis's** - 108:3
   **custody** - 170:10,
227:18, 227:22,
227:25, 228:4
   **customer** - 74:13,
74:15, 78:15, 79:11,
91:3
   **customers** - 71:22,
72:10, 78:2, 89:1,
89:13, 89:25, 119:15,
180:8, 190:17, 219:10
   **Customers** - 90:19,
91:1
   **cut** - 65:9, 83:18,
83:20, 91:6, 102:25,
103:5, 140:7, 147:6,
156:2
   **cutting** - 89:5
   **cuz** - 87:2

# D

   **dad** - 189:12
   **daily** - 188:15
   **damaged** - 160:6
   **Damn** - 85:3
   **damn** - 86:1
   **Dan** - 19:14, 19:23,
47:25, 49:9, 53:22,
55:21, 61:13, 253:19,
256:1, 256:13,
256:16, 257:6, 260:5
   **dangerous** - 99:4,
104:7, 121:6, 124:22,
141:22, 142:4
   **date** - 54:6, 196:19,
196:20, 196:22,
243:24, 244:22,
246:6, 249:15
   **dated** - 249:22
   **dates** - 5:8, 196:21
   **daughter** - 64:21
   **David** - 81:7, 81:8
   **days** - 98:9, 135:2,
150:1, 187:4, 188:14
   **dead** - 87:1, 117:5,
138:23, 154:20
   **deal** - 2:22, 9:13,
37:5, 71:14, 83:6,
86:19, 106:10,
115:17, 144:13,
147:10, 154:1,
185:18, 206:18
   **dealer** - 67:22,
67:24, 71:20, 71:25,
72:5, 72:6, 81:8,
88:25, 90:9, 92:5,
92:10, 92:12, 92:13,
92:17, 93:10, 97:24,
144:19, 144:25,
148:17, 148:18,
148:21
   **dealers** - 66:1,
76:13, 100:8
   **dealing** - 65:23,
72:18, 72:23, 73:16,
74:5, 77:1, 79:15,
81:12, 83:16, 90:25,
100:4, 100:8, 130:22,
151:9, 151:15
   **deals** - 124:9
   **dealt** - 95:11,
119:17, 120:17,
143:16
   **death** - 220:13,
220:22, 237:13
   **deceit** - 130:21

7

deceitful - 137:2
December - 81:10, 149:6, 167:10, 218:4
decide - 20:6, 23:25, 25:21, 31:11, 68:12, 69:13, 69:17, 73:8, 79:8, 79:23, 80:20, 91:23, 104:12, 118:4, 118:19, 119:4, 120:8, 123:23, 123:24, 153:6, 192:11, 193:5, 193:13, 193:20, 197:23, 198:2, 202:20, 203:13, 203:23, 204:5, 205:18, 206:12, 207:10, 208:20, 210:17, 212:22, 213:22, 216:3, 228:24, 247:17
decided - 84:16, 248:3
deciding - 8:5, 8:18, 8:23, 9:13, 9:14, 10:9, 119:6, 198:17, 198:19, 205:14, 205:20, 208:5, 211:14, 213:1, 215:6, 223:23
decision - 69:22, 148:1, 195:3, 195:12, 202:12, 203:24, 204:7, 211:3, 211:4, 214:11, 215:1, 229:10, 230:15
decisions - 115:24, 133:6
deemed - 224:7
deep - 145:18
default - 59:14
defeat - 141:15, 158:17
Defendant - 1:9, 1:17
defendant - 5:1, 7:22, 7:24, 8:1, 8:2, 9:2, 9:5, 9:10, 9:23, 10:10, 23:18, 23:21, 23:23, 25:6, 25:15, 26:2, 26:8, 26:19, 26:23, 27:13, 30:1, 30:8, 30:20, 30:24, 31:1, 32:1, 32:13, 36:3, 36:22, 37:12, 38:5, 38:14, 40:1, 41:22, 42:4, 42:9, 43:13, 44:4, 44:6, 44:19, 44:24, 44:25, 45:3, 45:6, 45:10, 45:12, 45:17, 45:20, 46:2, 46:10, 46:12, 47:5, 47:7, 47:21, 47:23, 48:2, 48:5, 48:9, 48:13, 48:15, 48:20, 48:24, 49:3, 50:18, 51:20, 54:7, 54:8, 54:10, 54:14, 57:6, 64:7, 68:1, 69:14, 70:5, 70:8, 70:24, 84:14, 88:21, 108:25, 112:3, 119:8, 135:15, 168:6, 168:20, 168:21, 174:9, 174:23, 175:12, 176:25, 181:12, 181:25, 182:12, 182:17, 183:10, 184:3, 187:8,

188:16, 188:19, 188:21, 189:1, 190:17, 194:16, 195:16, 195:18, 195:20, 196:9, 196:14, 197:2, 197:4, 197:9, 197:10, 197:11, 197:13, 198:10, 198:20, 199:20, 201:7, 201:15, 201:18, 201:21, 201:22, 201:25, 202:3, 204:22, 209:11, 209:13, 209:19, 211:1, 211:6, 212:12, 212:15, 215:17, 215:21, 215:23, 217:2, 217:5, 217:16, 218:6, 218:19, 219:3, 219:9, 219:17, 219:21, 220:2, 220:6, 220:9, 220:15, 220:20, 221:18, 223:18, 223:23, 224:1, 224:7, 224:11, 224:13, 224:17, 224:20, 225:7, 225:10, 225:13, 225:25, 226:10, 226:19, 226:21, 226:23, 227:3, 227:11, 227:19, 228:23, 228:25, 229:8, 229:13, 229:15, 229:17, 229:20, 230:8, 230:9, 230:16, 230:22, 230:24, 231:3, 231:5, 231:6, 231:8, 231:11, 231:16, 231:18, 231:22, 231:24, 232:3, 232:17, 232:22, 233:24, 234:3, 234:4, 234:10, 234:18, 234:24, 235:1, 236:1, 236:15, 237:1, 237:5, 237:9, 237:11, 237:15, 237:21, 238:1, 238:4, 238:10, 239:12, 240:12, 240:14, 240:17, 240:22, 240:24, 241:7, 241:11, 241:18, 241:21, 242:10, 242:15, 242:20, 242:25, 243:14, 243:16, 243:18, 243:24, 243:25, 244:4, 244:8, 244:23, 245:7, 245:10, 245:11, 245:17, 245:21, 245:25, 246:9, 246:14, 246:19, 247:6, 247:8, 248:12, 248:16, 248:17, 250:21, 254:11, 254:19, 254:22, 254:23, 255:2, 257:3, 257:20, 258:25, 259:10, 259:13, 259:15, 259:19
defendant's - 8:5, 9:15, 11:6, 34:13, 38:8, 38:22, 118:8, 118:11, 187:4, 195:5, 196:25, 197:7, 199:3, 224:24, 225:4,

225:16, 226:2, 226:6, 229:10, 229:11, 229:24, 230:2, 246:3, 250:4
defendants - 35:22, 101:5, 101:7, 101:10, 208:11
defense - 2:20, 3:12, 4:3, 5:5, 7:18, 8:15, 10:19, 11:9, 11:15, 12:16, 13:2, 13:8, 13:13, 15:24, 16:15, 20:14, 21:20, 21:24, 22:6, 28:7, 28:16, 29:2, 30:15, 31:5, 31:15, 33:3, 33:12, 35:25, 38:10, 39:12, 39:19, 41:2, 41:10, 50:6, 50:15, 50:22, 51:1, 51:13, 53:12, 55:3, 56:21, 76:19, 83:6, 101:4, 103:13, 162:12, 164:8, 164:12, 164:15, 171:22, 176:2, 176:8, 178:12, 185:20, 190:4, 203:22, 214:7, 253:11, 256:4
Defense - 7:25, 28:21
define - 5:21, 6:4
defined - 11:11, 217:21, 228:8, 234:9, 236:13
defines - 236:19
defining - 6:1
definitely - 111:14
definition - 5:23, 40:25, 158:2, 242:6
degrade - 171:25
degraded - 171:22
degree - 59:7, 59:15, 59:17, 199:15, 236:23, 236:24, 249:6
delete - 27:17, 29:21, 256:22
deliberate - 163:23, 236:22, 261:25
deliberated - 238:4
deliberately - 232:23, 234:12, 236:17, 237:22, 238:2, 239:16
deliberation - 185:2, 237:24, 247:11
deliberations - 163:6, 202:4, 207:16, 216:23, 221:12, 248:9, 248:19, 248:22, 248:24, 249:18, 251:12, 251:13, 261:5
deliver - 228:10
delivering - 228:19
demanded - 83:4
demeanor - 205:15
demonstrates - 36:22, 37:12, 38:4
denied - 5:12, 6:6, 36:7, 38:23, 58:8, 169:22, 169:23, 169:24
denies - 200:2
deny - 173:3
Deonte - 86:23
Department - 65:21, 77:10, 95:25, 132:17, 233:3, 239:22
dependents - 182:4

deposit - 228:3
Deputy - 48:1, 49:6, 161:1
deputy - 162:4, 250:25, 251:7
described - 42:13, 220:22, 255:6, 259:24
describes - 195:15
describing - 186:19
description - 53:15
deserve - 8:10, 10:6, 10:17, 201:14
deserves - 20:10, 210:1, 210:20, 214:15, 215:9
deserving - 214:3
design - 223:12
designed - 238:14, 241:15, 245:1, 245:2, 254:16, 259:5
desired - 251:5
desperate - 88:19
detail - 105:24, 213:7, 222:18, 227:15
details - 134:9, 138:20, 156:14, 225:11
detectable - 149:10, 218:12
Detective - 73:14, 73:21, 75:5, 75:8, 76:1, 76:12, 76:15, 100:2, 115:4, 136:12, 137:25, 139:2, 139:10, 147:9, 156:9, 156:11, 167:21, 167:22, 167:23, 175:1, 185:25
detective - 76:7, 97:6, 183:6, 189:23
detective/fbi - 123:8
detectives - 95:20, 95:22, 190:7
determination - 6:5, 11:2, 46:7, 58:15, 119:5, 125:12, 125:15, 195:19, 213:3, 215:14, 229:8, 230:1
determine - 9:16, 31:21, 44:8, 44:17, 46:3, 46:13, 47:9, 49:3, 58:11, 58:20, 81:22, 127:8, 129:3, 130:13, 134:10, 135:17, 152:9, 193:4, 193:17, 193:2, 209:18, 213:12, 227:11, 231:1, 232:3, 241:5, 247:5, 248:11, 255:10
determined - 193:21
determines - 137:11
determining - 23:21, 26:7, 26:22, 27:13, 44:11, 44:13, 44:22, 47:21, 193:22, 212:15, 213:15, 223:9, 224:13, 229:23, 231:3
developed - 195:1
deviated - 237:11
deviating - 130:5
devil's - 134:8, 156:14
devised - 202:21, 238:22
die - 132:23

died - 138:11, 138:14
differ - 227:13
difference - 142:17
differences - 147:13
different - 5:1, 22:17, 35:3, 35:14, 71:21, 73:2, 73:9, 77:7, 91:25, 111:15, 119:19, 120:9, 142:14, 149:25, 150:1, 154:10, 157:3, 168:16, 174:22, 185:17, 193:10, 196:9, 203:21, 225:21, 246:18
differs - 155:19, 247:25
difficult - 104:14
digestion - 202:18
Diggs - 83:19
Diggs' - 81:16
dime - 87:11, 89:4
direct - 6:12, 43:8, 143:12, 199:14, 199:17, 202:23, 204:12, 223:2
Direct - 199:7, 199:8
directed - 43:20, 75:20
Directed - 75:23
directing - 154:3, 154:10
directly - 15:15, 16:9, 78:7, 164:5, 209:5, 235:4, 235:8
directory - 146:2
dirty - 141:21
disbarred - 134:3
discharge - 60:10, 239:13, 242:16, 249:9, 255:12, 260:1, 261:22, 261:23
discharged - 70:8, 192:19, 240:17, 241:11, 254:12, 259:1
discharges - 239:7
discharging - 70:1, 255:14
discovery - 135:9
discuss - 45:22, 46:11, 48:25, 165:12, 182:19, 186:6, 195:8, 198:7, 217:8, 232:1, 247:11, 261:13
discussed - 226:13, 249:2
discussion - 33:20, 53:6, 61:23, 134:1, 247:20
discussions - 30:2
disgusting - 187:14, 189:16
Dishonesty - 130:21
disloyal - 78:24, 96:17, 99:5
dismantled - 157:13
dismiss - 257:25, 258:3, 260:9
dismissed - 139:24
disobey - 222:5, 223:1
dispense - 217:23, 217:25
dispersed - 160:5
displaying - 255:1, 259:18
dispute - 96:16, 98:2, 98:4

8

**disputed** - 53:20,
54:20, 202:13, 244:15
**disregard** - 216:4,
222:6, 223:1
**disregarded** -
200:24
**distance** - 74:23,
75:18, 76:4
**distant** - 202:23
**distinct** - 225:20
**distinction** - 199:13
**distribute** - 39:9,
41:6, 41:8, 41:14,
41:25, 42:3, 42:7,
42:8, 42:23, 43:17,
43:23, 45:3, 45:5,
45:6, 45:9, 45:15,
48:5, 48:7, 48:12,
48:18, 49:8, 57:9,
57:10, 57:24, 57:25,
58:3, 58:4, 67:3, 67:4,
67:11, 67:21, 67:24,
68:6, 68:21, 71:12,
71:14, 71:17, 72:8,
80:1, 91:24, 149:8,
149:9, 188:11,
217:23, 217:24,
218:10, 218:11,
218:22, 221:13,
221:17, 228:10,
228:25, 229:1, 229:5,
229:11, 229:15,
229:17, 229:19,
230:9, 230:10,
230:15, 230:16,
231:8, 231:10,
231:11, 231:14,
231:20, 231:21
**distributed** - 41:23,
42:2, 45:2, 45:8, 48:4,
48:11, 68:8, 68:14,
101:13, 231:7, 231:13
**Distribution** - 228:8,
228:16
**distribution** - 41:1,
139:22, 228:14,
228:20, 228:21,
229:21, 229:25
**district** - 5:20, 5:25,
37:22, 61:21
**District** - 1:1, 1:13,
75:1, 218:2, 218:5,
219:5, 232:19,
232:21, 239:9,
239:11, 242:22,
242:24
**diverse** - 56:12
**Division** - 125:25
**Dna** - 119:1, 147:18
**docket** - 135:1
**documents** - 71:7
**dog** - 77:18
**Dohony** - 156:9,
156:11
**dollars** - 85:6, 86:2,
87:10
**dollars'** - 85:14,
87:9
**dominion** - 241:23
**Donald** - 75:6
**Done** - 27:24,
178:24
**done** - 12:10, 23:8,
27:23, 58:13, 65:15,
82:7, 87:22, 113:8,
116:18, 118:7,
122:15, 128:7, 151:8,
151:9, 165:10,
170:25, 171:23,
183:22, 190:23,

203:3, 212:2, 234:14,
237:23, 237:24
**door** - 176:14,
260:20, 260:25
**dope** - 170:18
**Dorton** - 75:17,
220:5
**doses** - 230:5
**double** - 5:22,
130:22
**double-dealing** -
130:22
**doubt** - 5:12, 5:17,
6:1, 6:5, 6:8, 35:6,
44:8, 44:17, 47:9,
54:5, 68:13, 95:10,
103:13, 124:15,
124:20, 126:12,
126:15, 126:20,
128:14, 129:9,
129:17, 130:2, 132:1,
134:14, 141:15,
145:3, 145:12, 148:7,
153:12, 158:22,
195:21, 197:1, 197:6,
197:10, 199:4,
199:20, 201:19,
207:6, 209:13,
221:15, 222:8,
223:16, 229:14,
231:1, 234:2, 237:1,
237:20, 240:11,
240:21, 241:6,
241:10, 243:13,
243:23, 244:21,
245:24, 246:24,
248:13, 254:11,
254:21, 258:25,
259:12
**doubts** - 159:4
**down** - 3:5, 26:9,
42:1, 64:22, 64:24,
65:8, 67:15, 87:5,
97:12, 100:23,
102:25, 103:1, 103:5,
105:13, 106:22,
106:25, 108:6,
115:15, 127:11,
127:13, 145:18,
154:1, 163:2, 176:22,
250:13, 256:11,
260:18
**downright** - 135:23
**downtown** - 105:23,
110:10, 112:14
**drafted** - 11:3
**draw** - 193:19,
193:20, 201:4,
210:24, 225:25
**drawing** - 197:25,
257:10
**drawn** - 202:1,
203:11, 225:3
**dressed** - 95:4,
107:10, 111:13,
155:22, 156:23
**drink** - 137:5, 143:9
**drinking** - 142:8,
177:23, 177:24,
177:25, 178:1
**drive** - 34:17, 72:15,
95:3
**Drive** - 220:1
**driven** - 75:6, 106:1
**driver** - 105:18,
110:6
**driving** - 73:16,
73:17

**drop** - 105:23,
110:10
**dropped** - 51:19,
97:4, 106:3
**drove** - 52:20,
75:17, 102:15,
105:22, 111:24, 181:9
**Drug** - 76:13, 233:5
**drug** - 12:2, 17:14,
21:5, 21:13, 58:13,
58:15, 58:19, 63:23,
65:22, 66:1, 67:22,
67:24, 69:5, 69:12,
71:10, 71:20, 71:25,
72:5, 72:6, 72:18,
72:22, 73:16, 74:10,
74:24, 76:8, 76:18,
77:1, 77:13, 79:14,
81:8, 83:15, 88:20,
88:24, 90:9, 90:25,
92:3, 92:5, 92:9,
92:11, 92:13, 92:14,
92:17, 92:25, 93:8,
93:10, 93:12, 97:24,
98:25, 99:13, 99:20,
100:3, 100:8, 100:17,
116:1, 116:11,
118:13, 119:13,
120:15, 122:15,
123:18, 129:10,
131:18, 137:2,
139:21, 140:12,
144:18, 144:20,
144:25, 148:11,
148:17, 148:18,
148:21, 149:23,
154:1, 154:22,
154:23, 155:3, 155:9,
155:12, 155:16,
178:16, 180:6,
181:22, 181:25,
182:7, 218:22,
219:10, 220:4,
221:21, 233:5, 233:8,
235:16, 235:17,
235:20, 239:4
**drugs** - 17:3, 17:11,
18:8, 19:3, 19:6, 19:7,
20:1, 20:3, 20:4,
35:10, 35:11, 37:3,
38:13, 41:16, 42:6,
42:15, 43:4, 43:9,
43:12, 43:24, 43:25,
45:1, 45:4, 45:7,
45:11, 45:13, 48:3,
48:6, 48:10, 48:14,
48:16, 49:16, 63:18,
67:19, 67:21, 67:22,
67:23, 73:6, 74:5,
75:10, 76:13, 76:20,
78:5, 78:10, 78:19,
78:21, 78:23, 80:1,
80:9, 80:17, 80:19,
81:15, 82:5, 82:17,
82:21, 83:18, 83:22,
89:3, 91:7, 91:16,
94:11, 94:12, 98:5,
98:6, 99:6, 128:6,
142:12, 142:13,
143:16, 146:6, 146:7,
149:1, 150:15,
170:11, 172:3, 182:5,
186:7, 210:4, 210:6,
210:12, 210:13,
210:15, 227:19,
227:20, 228:15,
228:18, 228:20,
228:22, 229:6,
229:15, 229:17,
229:19, 229:24,

230:2, 230:13, 231:7,
231:9, 231:12,
231:16, 231:19
**Duckett** - 14:2, 14:5,
65:1, 65:4, 80:12,
80:16, 82:9, 82:10,
82:14, 82:16, 82:25,
83:8, 83:15, 84:15,
84:16, 84:18, 85:1,
85:5, 85:7, 85:11,
85:17, 86:9, 86:12,
86:15, 86:23, 87:8,
87:12, 87:16, 88:1,
89:8, 91:5, 91:14,
96:7, 96:14, 96:16,
97:3, 97:10, 97:15,
101:21, 101:25,
102:20, 104:20,
105:2, 105:21,
105:23, 106:11,
106:21, 107:3, 108:8,
112:4, 112:10,
112:22, 113:10,
113:15, 113:17,
113:19, 113:23,
114:1, 114:11,
114:21, 114:25,
115:3, 115:4, 115:7,
115:13, 116:14,
116:15, 120:19,
121:19, 128:17,
136:21, 136:22,
136:25, 139:15,
139:16, 139:21,
140:1, 140:5, 140:13,
140:25, 141:2, 142:3,
145:14, 148:2,
152:22, 156:16,
165:5, 167:21,
167:22, 169:23,
174:19, 175:4,
175:10, 175:13,
179:20, 181:16,
182:22, 183:3, 183:5,
183:7, 183:10,
183:21, 186:1, 187:7,
188:13, 188:24,
190:13
**Duckett's** - 115:9
**Duckett/hall** - 153:3
**dude** - 170:13
**due** - 87:24, 261:3
**dumbass** - 97:4
**duped** - 145:20
**duration** - 225:19
**during** - 100:7,
106:15, 140:19,
164:5, 192:16, 199:7,
207:15, 232:5, 233:8,
235:20, 239:3,
239:14, 240:4,
240:18, 249:17,
251:11, 251:25,
253:2, 253:15, 254:8,
254:22, 258:20,
259:13
**During** - 117:25,
198:13, 202:5
**duty** - 56:3, 192:11,
192:20, 193:1, 193:2,
193:5, 194:9, 194:11,
197:13, 213:11, 248:9
**dying** - 138:17

---

**E**

**e-mail** - 27:3, 28:9,
36:15
**E-mail** - 27:5
**E-mailing** - 27:10

**early** - 109:4
**easel** - 62:18
**easier** - 87:16
**Eastwood** - 97:1,
97:4
**easy** - 188:8,
189:21, 189:25
**effect** - 20:4, 25:19,
210:15, 219:2
**effort** - 117:5
**eight** - 144:22,
220:12
**eight-ball** - 144:22
**Either** - 51:23, 146:6
**either** - 12:18,
15:13, 16:6, 16:8,
21:22, 25:25, 38:18,
39:16, 52:7, 120:9,
145:23, 156:5,
157:15, 171:1,
199:14, 209:2, 209:4,
222:22, 241:22,
245:11, 249:7,
249:10, 249:13, 255:9
**electrical** - 106:25,
144:3
**element** - 12:9,
53:15, 53:19, 54:4,
54:20, 55:6, 67:25,
126:12, 221:22,
222:7, 222:13,
223:15, 234:22,
236:12, 237:4,
237:10, 237:14,
237:25, 238:9,
240:20, 241:9,
241:17, 242:7, 242:9,
243:22, 244:14,
244:20, 245:16,
245:23, 246:5,
251:21, 254:8,
254:10, 258:19,
258:23, 258:24
**Elements** - 116:3
**elements** - 33:8,
33:15, 33:20, 42:12,
50:10, 50:11, 50:23,
53:8, 55:6, 55:7,
55:15, 70:5, 100:15,
148:20, 217:15,
221:3, 221:10,
221:15, 234:1, 240:8,
240:11, 243:11,
243:12, 246:24
**embarrassing** -
139:11
**emerge** - 51:14
**emphasize** - 133:4
**employed** - 214:1
**employment** -
254:21, 255:6,
259:12, 259:24
**encourage** - 84:21
**encouraged** - 111:2
**end** - 26:22, 93:11,
110:11, 118:24,
119:11, 127:25,
128:20, 130:3,
144:14, 159:12,
165:24, 196:12
**End** - 64:9, 258:7,
261:1
**ended** - 133:23
**ends** - 166:11,
227:2
**enforced** - 66:5
**enforcement** -
28:18, 69:3, 116:5,
116:11, 182:23,
189:22, 194:14,

198:24, 213:25,
214:2, 214:8, 214:13,
233:1, 233:20, 234:6,
234:20, 235:1, 235:3,
235:5, 235:8, 238:18,
239:20, 241:2
  **enforces** - 66:3
  **engaged** - 76:18,
227:5
  **English** - 152:23
  **enjoying** - 258:14
  **enter** - 192:10,
248:8, 248:19
  **entered** - 61:19,
63:23, 71:13, 134:25,
135:2, 135:6, 222:10,
222:14
  **entertain** - 247:24
  **entire** - 21:16,
68:19, 201:20
  **entirely** - 200:24
  **entitle** - 15:4
  **entitled** - 15:19,
15:21, 32:16, 194:22,
195:7, 209:8, 247:8,
262:10
  **entitles** - 194:19
  **envelope** - 135:9
  **equal** - 225:23
  **Equally** - 194:15
  **equally** - 195:10
  **equals** - 194:24
  **erase** - 159:4
  **erroneous** - 247:21
  **especially** - 123:2
  **essence** - 222:4
  **essential** - 224:11,
246:24
  **Essentially** - 38:3,
96:23
  **essentially** - 24:3,
32:15, 33:6, 36:20,
37:21, 56:13, 109:1,
190:24, 254:1
  **establish** - 151:4,
184:24, 185:3,
185:13, 202:24,
221:14, 222:9,
223:16, 226:14,
237:14
  **established** - 6:3,
196:22, 202:9, 203:8,
223:2, 224:25
  **establishes** - 207:5
  **etcetera** - 5:2
  **evaluate** - 130:17,
142:11
  **evaluating** - 22:25,
147:23, 198:8,
205:23, 206:8,
208:13, 211:11,
211:18
  **evaporates** - 126:11
  **evasive** - 204:11
  **event** - 58:20
  **events** - 18:5, 18:8,
18:20, 19:3, 19:12,
19:18, 19:21, 20:2,
20:5, 203:2, 203:10,
210:5, 210:8, 210:12,
210:16
  **eventually** - 100:20,
108:20, 108:22,
109:15, 109:23,
110:12, 110:13,
112:11
  **Eventually** - 109:15,
110:14, 111:22
  **Everest** - 132:8,
145:4, 145:10

**everyday** - 227:13,
228:2
  **evidence** - 3:3,
6:13, 7:12, 7:13, 7:21,
8:2, 8:11, 9:2, 9:4,
9:10, 9:23, 10:7,
10:10, 10:18, 18:2,
18:7, 18:23, 20:8,
23:22, 24:17, 25:4,
25:13, 26:9, 26:17,
27:23, 29:10, 30:11,
31:9, 31:10, 32:3,
32:19, 32:22, 34:3,
35:7, 37:15, 38:9,
51:9, 61:20, 71:7,
71:19, 72:17, 72:19,
88:22, 98:22, 99:23,
112:2, 115:21, 126:8,
129:16, 129:21,
130:7, 131:22,
131:23, 132:1,
133:10, 141:21,
145:5, 145:9, 146:12,
147:18, 152:17,
157:25, 158:1,
158:24, 160:17,
160:18, 168:6,
175:20, 183:7,
190:14, 192:9,
192:24, 193:6,
193:16, 193:23,
193:14, 194:1, 194:4,
194:5, 195:1, 195:2,
195:15, 195:17,
195:22, 196:19,
197:5, 197:14,
197:16, 197:25,
198:2, 198:11,
198:19, 199:2, 199:3,
199:5, 199:7, 199:8,
199:10, 199:14,
199:15, 199:16,
199:17, 199:18,
199:19, 199:23,
200:3, 200:7, 200:8,
200:10, 200:17,
200:18, 200:19,
200:20, 200:23,
200:25, 201:1, 201:2,
201:3, 201:5, 201:6,
201:14, 201:17,
204:4, 205:12,
205:16, 205:24,
208:5, 210:2, 210:18,
211:5, 211:10,
212:17, 213:12,
213:17, 214:12,
214:25, 215:9,
215:19, 216:1, 216:7,
216:20, 223:25,
224:25, 230:12,
230:14, 230:17,
238:20, 246:16,
247:4, 247:7, 247:12,
247:15, 247:19,
247:23, 248:11,
248:14, 261:19
  **Evidence** - 190:15,
212:20
  **evident** - 192:21
  **evil** - 237:16
  **exactly** - 29:23,
32:14, 39:13, 106:23,
156:25, 163:7, 173:8,
185:6, 255:20
  **Exactly** - 254:3
  **examination** -
62:10, 109:23,
110:25, 143:12,
199:24, 204:13,

204:14
  **examine** - 8:6, 10:2,
10:13, 201:9
  **examined** - 19:24,
209:15, 210:10
  **examiner** - 117:13
  **examining** - 198:2
  **example** - 52:23,
153:24, 153:25,
227:18, 228:1, 230:4,
261:15
  **examples** - 77:2,
93:9, 99:10, 99:13
  **exceeding** - 54:9,
54:12, 243:2, 243:9,
243:17, 244:2, 244:6
  **except** - 7:7, 23:25,
25:20, 111:25,
112:20, 136:24,
174:16, 183:8
  **excess** - 254:1
  **exchange** - 16:3,
23:9, 67:23, 94:12,
208:24, 212:2, 247:9
  **exclude** - 167:25
  **excluded** - 253:4,
253:6, 253:9, 253:12
  **exclusive** - 123:16,
123:24, 152:8,
193:15, 194:6
  **exclusively** -
213:11, 248:10
  **exculpatory** - 29:6,
29:11
  **excuse** - 106:10,
118:11, 261:3
  **Excuse** - 92:20
  **excused** - 261:5
  **exercise** - 208:12,
227:24, 241:25,
245:13
  **exercises** - 228:5
  **Exhibit** - 61:18,
61:22, 147:5
  **Exhibits** - 200:15
  **exhibits** - 7:13,
126:8, 133:10,
193:25, 196:23,
200:9, 200:17, 262:2
  **exile** - 175:15
  **existed** - 35:25,
44:6, 47:7, 67:12,
99:14, 221:17,
223:10, 223:12,
223:21, 230:23
  **existence** - 182:7,
199:12, 202:9,
221:22, 223:1, 223:5,
226:15
  **exists** - 53:21,
53:23, 54:22, 202:13,
202:14, 244:16
  **expect** - 118:9
  **expel** - 241:15,
245:3, 254:16, 259:5
  **expenses** - 146:14
  **experience** - 75:10,
123:2, 179:12, 198:1,
201:4, 202:8, 205:11,
205:22, 214:22, 228:2
  **experienced** -
214:24
  **experiences** -
118:20, 126:2
  **Expert** - 28:23
  **expert** - 118:1,
214:18
  **expertise** - 40:18
  **experts** - 214:20
  **explain** - 4:4, 22:24,

110:19, 165:12,
186:13, 186:23,
211:17, 227:14
  **explained** - 82:18,
96:14, 98:1, 110:20
  **explaining** - 4:6,
216:9
  **explains** - 40:4
  **explanation** - 46:1,
164:22, 213:8, 213:9
  **explanations** -
164:21, 203:6, 205:15
  **explanatory** -
242:18, 260:2
  **explosive** - 241:16,
245:4, 254:17, 259:6
  **express** - 205:9,
214:17, 222:15
  **expressed** - 41:25
  **extent** - 31:18,
164:19, 206:13,
225:16, 225:18
  **exterminates** -
175:21
  **extrasensory** -
143:24
  **eyes** - 156:23
  **eyewitness** -
199:10
  **eyewitnesses** -
82:2, 119:2, 190:15

**F**

**F.2d** - 36:6, 36:10,
38:2
  **F.3d** - 5:19, 5:24,
37:9
  **fabrication** - 29:13,
130:21
  **fabrications** - 127:5
  **face** - 96:2, 141:4,
170:10, 191:11,
203:21
  **faced** - 130:23
  **faces** - 137:15
  **facing** - 187:18
  **fact** - 8:7, 9:17,
10:3, 10:15, 12:9,
21:6, 22:25, 23:12,
53:21, 53:23, 54:16,
54:21, 72:2, 147:19,
165:14, 172:18,
192:11, 194:18,
196:20, 197:15,
199:9, 199:12, 200:4,
200:5, 200:12,
201:11, 201:25,
202:10, 202:13,
202:14, 202:18,
202:19, 211:1,
211:12, 211:18,
212:6, 213:1, 213:6,
213:25, 223:23,
225:24, 226:12,
226:18, 244:10,
244:16, 246:20
  **factor** - 60:2, 60:4,
60:5, 206:7, 224:12
  **factors** - 47:24,
231:5
  **facts** - 8:4, 9:12,
9:25, 10:12, 11:1,
11:3, 11:22, 18:22,
20:24, 21:1, 24:5,
38:1, 44:25, 51:23,
61:22, 61:24, 62:2,
62:8, 117:23, 123:16,
123:25, 134:7, 134:8,
134:9, 134:20,

134:22, 152:9, 159:7,
193:4, 193:15,
193:20, 193:22,
194:7, 194:8, 194:9,
197:18, 197:24,
198:17, 199:11,
199:25, 200:13,
201:8, 202:9, 203:8,
205:3, 205:7, 205:10,
210:23, 215:1,
215:14, 225:5, 255:9
  **factual** - 193:14,
203:19
  **fails** - 197:8, 247:1
  **fair** - 216:6
  **fairly** - 164:10
  **fairness** - 194:12
  **faithfully** - 192:19
  **fall** - 84:17, 103:6,
112:11, 132:23
  **falls** - 135:15,
138:16
  **false** - 29:6, 29:10,
213:4
  **falsely** - 23:14,
206:2, 206:12,
207:22, 208:16, 212:7
  **falsify** - 209:23
  **falsity** - 130:23
  **familiar** - 64:25
  **family** - 23:4, 81:6,
121:9, 166:15,
169:17, 187:25,
211:24
  **Family** - 156:9
  **family's** - 23:2,
181:1, 211:21
  **far** - 16:12, 30:13,
33:23, 44:20, 47:25,
72:22, 73:3, 75:2,
83:15, 119:16
  **fashion** - 11:4,
251:9
  **fatal** - 219:10
  **Fathers** - 125:19,
125:22
  **fault** - 83:10,
188:18, 251:23
  **favor** - 197:18
  **favorable** - 207:21
  **Fbi** - 65:22, 84:17,
100:6, 100:24,
132:17, 145:24
  **fear** - 25:16, 83:1,
238:21
  **February** - 94:8,
94:22, 111:17,
167:11, 169:2, 219:7
  **Fed** - 36:19, 37:20
  **Federal** - 69:5,
233:2, 239:20
  **federal** - 49:25,
69:4, 69:6, 69:11,
70:2, 70:6, 77:16,
79:5, 83:7, 100:17,
100:18, 111:11,
116:6, 116:12, 117:9,
122:4, 132:18, 170:9,
187:24, 207:3, 214:1,
233:4, 233:22, 234:8,
234:21, 235:2, 235:5,
235:8, 235:11,
235:14, 235:24,
236:2, 236:4, 236:10,
236:11, 238:16,
238:18, 238:19,
239:23, 241:2, 241:3
  **feelings** - 21:22,
195:5, 195:11
  **feet** - 75:8, 109:18,

180:21
**fell** - 65:10
**fellow** - 247:10,
247:12, 247:18,
247:21, 247:24
**felon** - 70:10,
117:16, 141:2,
211:13, 233:11,
235:23
**felony** - 22:2, 54:13,
70:16, 244:7
**felt** - 110:2
**femoral** - 95:7
**Ferl-** 102:21,
104:10, 105:7,
106:21, 128:17,
142:20, 143:10,
143:23, 144:6,
144:13, 144:15,
144:18, 165:8
**Ferry-** 95:1, 186:16
**few** - 98:9, 105:2,
107:6, 116:9, 119:7,
163:12, 192:7, 207:15
**fewer** - 198:5
**fibbing** - 130:22
**field** - 214:25
**fifth** - 70:10
**fight** - 77:19
**figure** - 58:18,
103:4, 115:8
**Figure-** 160:15
**figured** - 96:2
**file** - 190:3
**fill** - 232:7
**filled** - 64:12
**final** - 158:5,
192:11, 192:25,
194:11, 232:13, 248:2
**finalize** - 60:15
**finally** - 66:15,
110:7, 113:8, 169:14,
175:10, 181:7,
220:18, 261:20
**Finally-** 237:19
**financial** - 224:10
**finders** - 123:16,
152:9
**findings** - 45:19,
46:9, 48:23, 231:23
**Fine-** 13:22, 42:20
**fine** - 2:8, 2:10,
3:25, 4:21, 6:17, 9:7,
14:13, 25:3, 26:12,
52:14, 59:23, 190:2,
190:3
**fingerprints** -
147:17
**finish** - 26:5, 49:2,
162:5, 163:15
**finished** - 60:14
**fire** - 95:5, 102:19,
102:24, 105:8,
254:24, 259:15,
259:16
**firearm** - 60:10,
70:1, 70:9, 117:8,
123:19, 123:21,
129:19, 129:23,
157:22, 157:24,
233:10, 235:22,
239:7, 239:14, 240:6,
240:18, 241:12,
241:14, 241:19,
241:22, 241:24,
241:25, 242:1, 242:2,
242:4, 242:6, 242:10,
242:13, 242:17,
244:24, 245:1, 245:2,
245:7, 245:9, 245:11,

249:10, 251:22,
254:8, 254:12,
254:15, 254:20,
254:21, 255:3, 255:4,
255:5, 255:7, 258:20,
259:1, 259:4, 259:11,
259:12, 259:20,
259:21, 259:22,
259:25, 260:1
**firearms** - 69:6,
69:12, 100:10, 233:7,
235:19
**fired** - 187:1,
242:17, 254:24, 260:1
**First-** 2:24, 34:5,
41:19, 41:22, 43:22,
44:25, 48:2, 53:9,
67:10, 69:8, 71:16,
85:23, 152:21,
162:20, 221:15,
231:6, 234:2, 240:14,
243:15
**first** - 2:19, 8:6, 9:1,
9:16, 10:2, 10:8,
10:13, 18:11, 34:12,
41:13, 53:15, 54:3,
54:4, 57:23, 59:7,
72:7, 73:15, 73:24,
98:14, 103:25, 113:7,
117:20, 119:8,
127:11, 131:14,
133:18, 143:11,
173:2, 174:25, 177:7,
177:8, 179:2, 201:9,
217:10, 217:13,
221:22, 222:7,
224:18, 236:23,
240:20, 243:22, 249:6
**fist** - 76:7
**fit** - 14:12, 18:22,
24:5, 51:22, 89:22
**five** - 4:5, 56:13,
71:21, 72:2, 72:23,
76:23, 77:7, 77:14,
87:10, 90:16, 90:17,
90:22, 109:18,
140:23, 165:4, 165:6,
165:18, 166:3,
166:20, 167:12,
167:15, 168:2,
172:13, 180:21
**Fj-** 219:14
**flagged** - 192:20
**flatly** - 5:12
**float** - 157:9
**flock** - 160:5
**flowing** - 137:22,
137:23
**focus** - 3:18
**folks** - 125:17,
187:22
**Follow-** 160:14,
160:15
**follow** - 17:10,
19:15, 158:19,
158:23, 159:7,
181:17, 193:12, 253:8
**follow-up** - 19:15
**followed** - 113:9,
192:21
**following** - 43:14,
44:25, 47:23, 112:17,
113:20, 219:4,
221:15, 231:5, 234:1,
240:11, 243:12
**follows** - 8:1, 10:9,
18:2, 20:10, 44:1,
218:2, 232:18,
236:19, 242:21, 254:7
**food** - 83:9

**foot** - 145:15
**football** - 144:17
**forced** - 68:3,
118:14, 118:17
**foregoing** - 262:8
**foreign** - 243:21,
246:17
**Forelady-** 251:8
**foremost** - 69:8
**Forensics-** 95:17
**foreperson** - 56:17,
56:24, 248:21,
249:15, 251:3
**foreseeable** - 42:4,
42:8, 45:10, 45:16,
48:13, 48:19, 231:15,
231:22
**forethought** -
116:20, 117:6
**forget** - 125:6,
137:7, 137:22, 145:4,
145:5
**forgot** - 170:6,
170:12, 170:23, 171:7
**Forgot-** 170:15
**form** - 17:11, 43:11,
43:15, 45:21, 46:10,
46:20, 46:22, 48:25,
58:1, 59:10, 68:10,
69:16, 231:25, 249:1,
250:7
**formal** - 15:13, 16:8,
209:4, 222:15
**formalized** - 67:16
**forms** - 61:14
**forth** - 239:25,
244:22
**forthright** - 204:9
**Fortunately-** 97:16
**forward** - 66:15,
171:15, 242:3
**foundation** -
130:24, 131:4, 131:5,
131:7, 131:10, 148:8
**Founding-** 125:19,
125:22
**four** - 3:20, 3:22,
4:6, 4:25, 11:23,
65:13, 66:25, 71:8,
71:21, 72:23, 75:24,
80:11, 83:18, 84:3,
91:5, 91:9, 97:2, 99:7,
110:4, 112:20,
112:23, 115:5, 116:1,
126:13, 135:2,
153:17, 169:25,
175:22, 195:23,
196:4, 196:5, 196:8
**Four-** 75:20, 168:16,
168:17
**four-point** - 3:20
**Fourth-** 5:15, 5:16,
5:20, 5:24, 6:4, 36:17,
36:19, 37:7, 37:10,
37:20, 37:21, 37:22,
38:2, 38:6, 38:20,
45:12, 48:15
**fourth** - 42:5, 121:4,
231:18
**fragments** - 129:24,
158:4
**frank** - 204:9
**frankly** - 128:20,
162:8
**freaked** - 172:6,
175:12, 175:13
**Freddy-** 94:14,
94:15, 94:19, 155:5,
155:8, 155:11
**free** - 137:8, 137:12,

137:16, 139:21,
184:4, 238:21
**freedom** - 190:24,
190:25, 209:22
**Friday-** 78:3, 80:7
**Frieda-** 150:25
**Friend-** 97:24
**friend** - 65:4, 71:24,
82:11, 94:15, 98:11,
102:16, 108:3,
156:22, 170:19,
171:20, 174:19
**friend's** - 64:20
**friendly** - 226:11
**friends** - 72:11,
78:14, 81:6, 92:9,
92:22, 121:9, 172:1,
172:2, 172:4, 172:5
**Friends-** 97:25
**front** - 42:16, 47:1,
65:16, 103:18,
104:15, 110:21,
119:21, 122:4, 142:9,
143:4, 164:23, 167:3,
176:14, 176:25,
179:6, 260:20, 260:25
**fronted** - 82:4
**Fuchs-** 1:15, 2:3,
60:18, 63:4, 64:15,
64:16, 122:18,
126:17, 126:24,
127:20, 128:5,
131:21, 131:25,
136:8, 140:16,
145:24, 148:25,
149:14, 149:20,
151:6, 152:1
**fuck** - 87:25,
113:12, 113:23
**fucked** - 85:25,
87:22
**full** - 181:7
**fully** - 16:4, 64:6,
64:7, 208:25, 225:10,
238:10
**fun** - 99:1, 191:15
**function** - 192:16,
247:4, 248:10
**funnel** - 86:8
**funneling** - 85:19
**furtherance** - 92:14,
93:3, 100:11, 117:8,
155:3, 155:5, 155:8,
219:1, 219:5, 221:20,
228:17, 241:12,
242:20, 242:1,
251:24, 253:1,
254:13, 259:2
**furthering** - 224:4,
227:6, 242:7
**Furthermore-**
225:13
**future** - 137:12,
139:12

## G

**Gabe-** 75:13
**gain** - 207:25
**gangs** - 156:10,
156:11
**Gary-** 1:17
**gas** - 145:15
**general** - 207:11
**generally** - 31:15,
199:6
**Generally-** 35:20
**generated** - 24:14,
35:7, 53:3
**gentleman** - 86:23,

124:3
**gentlemen** - 64:16,
71:17, 112:9, 122:22,
123:12, 135:4,
139:15, 141:2,
147:17, 149:12,
152:12, 154:15,
156:5, 158:7, 160:23,
164:2, 191:16, 258:9,
260:8
**Gerald-** 106:1,
112:17
**Gerard-** 84:25, 85:3
**getaway-** 52:20
**giant-** 151:11
**Gilman-** 152:18
**girl** - 143:3
**girlfriend** - 71:25,
81:15, 84:2, 102:14
**girls** - 107:22,
121:20, 175:4
**gist-** 222:3
**given** - 5:18, 11:21,
37:17, 43:14, 46:25,
82:5, 100:23, 165:5,
191:19, 199:14,
205:15, 207:11,
209:9, 211:15,
213:14, 238:17,
251:11
**Given-** 104:4
**glad** - 34:2, 160:13,
163:24
**God-** 86:1, 179:18
**goods** - 35:4
**govern** - 217:8
**Government-**
61:18, 122:23, 123:7
**government** - 3:2,
3:8, 4:1, 5:3, 6:20,
7:4, 7:16, 8:3, 8:12,
9:11, 9:24, 10:11,
11:7, 11:13, 12:25,
13:6, 13:11, 14:9,
14:15, 14:19, 15:15,
15:22, 16:10, 16:11,
18:3, 18:24, 20:12,
20:21, 20:23, 22:4,
23:3, 24:9, 26:11,
28:5, 28:14, 28:19,
28:25, 30:3, 30:9,
30:13, 31:3, 31:12,
33:1, 33:10, 35:9,
36:15, 37:5, 37:19,
41:2, 41:8, 44:3, 47:4,
50:4, 50:13, 50:20,
50:24, 53:10, 54:5,
54:17, 55:1, 56:19,
57:1, 61:22, 62:5,
63:3, 63:24, 64:15,
67:8, 67:10, 68:12,
69:7, 70:14, 79:6,
80:24, 83:7, 84:17,
93:1, 93:7, 98:20,
99:11, 103:16, 109:1,
114:20, 118:14,
118:16, 119:10,
119:23, 119:25,
121:15, 123:4,
123:23, 124:2, 124:9,
124:13, 125:20,
127:10, 127:24,
128:2, 128:7, 129:12,
129:16, 130:19,
130:25, 131:13,
131:25, 132:18,
132:25, 133:25,
134:2, 134:13,
136:18, 136:10,
136:11, 136:15,

11

137:12, 137:16,
137:19, 139:13,
139:17, 139:19,
140:20, 141:14,
141:20, 142:21,
142:25, 143:13,
144:11, 144:13,
145:2, 145:6, 146:21,
147:11, 147:14,
148:19, 150:22,
151:24, 152:7, 153:1,
155:4, 158:14, 159:2,
162:10, 162:20,
163:12, 163:25,
166:13, 167:7, 168:6,
169:20, 184:24,
185:9, 185:10, 190:6,
194:13, 194:20,
194:23, 195:4, 195:8,
195:20, 196:25,
197:8, 198:10,
198:15, 198:17,
198:22, 201:8,
203:22, 204:21,
206:21, 208:8, 209:6,
209:7, 210:3, 210:22,
211:23, 214:2,
215:18, 217:1,
221:14, 222:8,
222:12, 222:21,
223:15, 230:21,
233:25, 234:23,
234:25, 235:3, 235:9,
235:12, 236:1,
236:25, 237:7,
237:15, 237:17,
237:19, 237:25,
238:4, 240:10,
240:20, 241:6, 241:9,
241:18, 242:14,
243:12, 243:22,
244:10, 244:20,
245:15, 245:20,
245:23, 246:2, 246:5,
246:9, 246:11,
246:13, 246:23,
246:25, 247:1,
254:10, 254:20,
257:17, 258:4,
258:24, 259:11
   **government's** -
3:25, 38:17, 39:18,
118:11, 124:13,
125:3, 128:11,
134:13, 135:14,
137:9, 138:16,
140:12, 147:5, 148:6,
148:9, 153:11, 158:8,
159:5, 160:10,
160:16, 164:24
   **grab** - 160:3
   **grabbed** - 159:23
   **gram** - 76:23
   **grams** - 39:9, 46:6,
57:13, 57:14, 57:15,
57:17, 57:25, 58:4,
58:5, 58:6, 58:17,
67:4, 68:16, 68:17,
68:18, 91:8, 91:9,
91:10, 91:12, 91:13,
91:17, 91:19, 91:21,
91:24, 120:20,
140:19, 144:23,
144:24, 149:9,
149:13, 149:16,
150:17, 150:19,
188:11, 188:12,
188:13, 189:2,
218:11, 232:8, 232:9,
232:10

   **grams'** - 90:11
   **grand** - 21:9, 51:16,
51:17, 73:12, 103:19,
107:15, 107:19,
108:18, 108:20,
110:12, 110:21,
112:25, 135:25,
146:18, 146:19,
151:8, 165:8, 165:20,
166:3, 167:16, 173:1,
173:2, 173:4, 175:2,
175:24, 176:11,
176:13, 179:3, 181:8,
181:13, 190:16,
218:2, 218:9, 219:12,
232:18, 239:9, 242:21
   **Grandma** - 150:25
   **grant** - 17:7
   **granted** - 14:13
   **grants** - 16:7,
146:16, 209:3
   **grass** - 102:20,
105:7, 108:6, 128:18,
136:25
   **gratuitous** - 185:22
   **gray** - 152:8
   **great** - 8:6, 10:2,
10:13, 106:10,
189:12, 201:10,
206:9, 206:18, 207:9,
208:14, 213:21
   **greater** - 19:24,
194:20, 199:15,
209:16, 210:10, 214:4
   **Greek** - 130:8
   **green** - 145:15
   **Green** - 73:14, 73:21
   **grossly** - 237:11
   **ground** - 65:11,
97:9, 103:7, 105:7,
105:11, 107:5, 108:6,
108:10, 186:12
   **grounds** - 214:8
   **group** - 76:5, 79:24
   **groups** - 34:15
   **grove** - 105:21
   **grows** - 176:10
   **guards** - 179:1,
179:2, 179:4, 179:5
   **Guerilla** - 156:9
   **guess** - 33:16, 52:5,
81:3, 125:1, 126:21,
129:11, 131:25,
144:19, 148:6,
148:25, 149:4, 150:2,
154:5, 156:1, 158:16,
178:15, 202:12
   **guessing** - 149:16
   **Guest** - 18:15,
51:20, 59:4, 59:25,
64:17, 65:13, 65:17,
66:10, 66:14, 68:24,
69:2, 69:3, 69:9,
69:23, 70:4, 70:25,
71:1, 84:2, 92:23,
99:17, 100:16,
100:22, 100:24,
101:6, 101:9, 101:23,
102:7, 102:23,
103:23, 105:12,
105:20, 107:8, 107:9,
107:11, 108:12,
111:13, 115:22,
116:1, 116:4, 116:9,
116:15, 116:16,
116:18, 116:23,
117:3, 117:10,
117:11, 117:14,
118:5, 122:16,
123:17, 124:19,

129:18, 131:1,
131:17, 137:1,
146:25, 147:16,
147:19, 148:10,
158:2, 184:25,
185:25, 186:1, 186:2,
186:3, 186:4, 220:21,
220:22, 232:24,
232:25, 234:4, 234:6,
234:12, 236:13,
236:16, 238:1,
239:18, 239:19, 249:4
   **Guest's** - 70:12,
82:2, 101:6, 108:16,
133:24
   **Guests's** - 138:17
   **guide** - 221:11
   **guile** - 130:22
   **guilt** - 23:21, 26:7,
26:22, 27:13, 29:6,
29:12, 29:17, 30:12,
31:11, 32:3, 32:12,
32:17, 195:17,
196:25, 197:7, 199:3,
199:19, 207:6,
209:19, 210:25,
211:4, 212:15,
215:20, 216:2,
225:17, 250:21
   **Guilty** - 188:10,
191:8
   **guilty** - 20:22,
20:23, 21:1, 21:9,
21:13, 31:1, 43:2,
44:4, 46:2, 46:12,
47:5, 49:2, 49:11,
49:21, 52:6, 52:7,
57:11, 58:2, 58:12,
58:14, 58:15, 59:1,
59:3, 59:5, 59:6,
59:24, 60:1, 62:2,
122:15, 128:13,
141:13, 158:22,
191:8, 191:9, 195:20,
196:11, 196:14,
196:15, 197:9,
197:11, 198:20,
199:21, 201:19,
209:13, 210:22,
211:2, 211:3, 215:24,
230:22, 232:2, 232:6,
232:12, 233:22,
233:24, 239:7, 240:7,
240:12, 243:14,
247:1, 247:2, 247:6,
248:4, 248:12, 249:4,
249:5, 249:11,
249:13, 249:14
   **gun** - 65:7, 65:9,
66:2, 70:3, 94:5, 95:5,
96:1, 96:5, 100:13,
100:18, 105:3, 106:2,
106:24, 107:10,
112:16, 113:21,
114:10, 114:17,
116:12, 116:25,
117:1, 117:11,
117:12, 143:23,
147:18, 170:10,
171:13, 174:17,
174:18, 187:2, 255:10
   **gunpoint** - 142:5
   **guns** - 92:13, 93:17,
93:21, 93:25, 95:25,
153:1, 156:12,
168:16, 187:3
   **guts** - 180:2
   **guy** - 66:1, 94:14,
96:11, 97:1, 100:12,
101:10, 102:2, 104:7,

143:11, 168:13,
170:22, 173:23,
174:7, 174:16, 176:7,
180:3, 180:4, 182:8,
182:14, 182:25,
183:18, 184:4, 184:5,
184:6, 184:16, 186:3,
186:19, 187:9,
187:10, 187:24,
188:12, 189:18,
190:20, 191:11
   **guys** - 154:20,
178:21, 183:1,
188:23, 191:5, 253:8

# H

   **half** - 42:15, 83:2,
94:4, 100:1, 104:15,
140:14, 185:20,
188:25, 189:3, 189:4,
189:9
   **Hall** - 1:7, 2:13, 7:9,
8:19, 8:22, 10:22,
10:24, 11:25, 25:8,
25:16, 29:11, 31:19,
32:6, 34:19, 34:21,
46:16, 51:25, 57:22,
58:2, 58:11, 63:10,
63:11, 65:2, 65:3,
65:8, 65:12, 65:24,
66:2, 66:3, 66:24,
67:2, 68:5, 68:14,
69:1, 69:9, 69:17,
69:25, 70:11, 70:15,
71:1, 71:13, 71:20,
71:25, 72:12, 72:15,
73:3, 73:6, 73:12,
73:16, 73:18, 73:20,
73:25, 74:1, 74:8,
74:9, 74:11, 74:13,
74:19, 74:20, 75:3,
75:7, 75:8, 75:14,
75:18, 75:19, 75:20,
76:2, 76:6, 76:9,
76:17, 76:25, 77:2,
77:11, 78:6, 78:7,
78:21, 78:22, 79:4,
79:11, 79:12, 79:18,
80:4, 80:9, 80:18,
81:2, 81:9, 81:12,
81:13, 81:14, 81:22,
82:4, 82:5, 82:13,
82:17, 82:20, 83:21,
84:18, 84:24, 85:19,
86:9, 86:10, 86:13,
86:16, 86:22, 86:25,
87:3, 87:6, 87:15,
87:18, 87:21, 88:2,
88:5, 88:11, 88:14,
88:18, 88:24, 89:2,
90:4, 90:6, 90:9,
90:15, 90:18, 91:5,
91:15, 91:20, 92:11,
93:17, 93:19, 93:20,
93:23, 94:8, 94:24,
95:4, 96:25, 98:25,
99:12, 99:13, 100:5,
100:10, 100:11,
101:21, 102:1, 102:4,
102:22, 104:19,
105:10, 106:8,
106:22, 107:1,
107:25, 108:24,
109:5, 110:5, 110:7,
112:5, 112:22, 113:9,
113:18, 113:20,
113:25, 114:3,
114:12, 114:18,
114:24, 115:1, 115:6,

115:11, 116:4, 116:8,
116:16, 116:22,
117:18, 117:23,
118:4, 119:15, 120:2,
120:15, 121:5, 121:8,
121:11, 121:22,
123:19, 124:3, 126:4,
129:9, 129:17, 131:1,
132:4, 134:15,
135:22, 140:14,
140:18, 141:21,
143:13, 144:1,
144:14, 144:21,
145:2, 145:12, 146:6,
146:23, 147:2, 147:3,
147:7, 147:19, 148:8,
149:21, 150:2, 150:7,
150:8, 150:13,
150:15, 151:3, 151:9,
151:11, 151:15,
151:20, 151:21,
152:14, 152:18,
152:22, 153:4, 154:1,
154:2, 154:5, 154:12,
154:16, 155:21,
155:22, 157:1,
157:23, 158:9,
158:20, 160:12,
160:19, 186:17,
188:21, 218:5,
232:21, 239:12,
242:24, 249:5
   **Hall's** - 71:22,
72:18, 72:22, 73:19,
78:2, 78:14, 79:14,
79:25, 81:15, 82:11,
92:21, 94:15, 95:24,
96:4, 102:14, 128:13,
132:2, 141:11,
141:15, 146:5,
150:25, 153:1
   **Hamlet** - 18:12,
35:2, 80:6, 80:20,
80:22, 83:17, 84:9,
91:4, 120:20, 149:21,
150:3, 150:4, 150:6,
150:12, 179:24
   **Hamlet's** - 82:22,
83:20, 84:10, 89:9
   **hand** - 19:23, 74:10,
74:24, 76:6, 76:10,
83:23, 105:3, 174:17,
210:9, 228:11,
228:13, 229:2, 229:3,
230:9, 250:12, 251:6
   **hand-to-hand** -
74:10, 74:24, 83:23
   **handed** - 228:12,
229:3
   **handgun** - 220:11,
220:21
   **handled** - 143:16,
185:17
   **handles** - 41:14
   **hands** - 73:19,
153:1, 185:16, 185:17
   **hanging** - 74:3,
148:22
   **happy** - 27:3, 63:15,
127:21, 158:25,
175:15
   **hard** - 83:2, 92:6,
121:2, 150:5, 158:6,
165:17
   **hatred** - 237:18
   **head** - 65:14, 97:2,
99:8, 103:9, 168:15,
168:18, 171:14, 192:6
   **heading** - 187:16
   **heads** - 175:21

12

headset - 258:18
hear - 4:3, 11:19,
34:2, 39:18, 61:6,
64:14, 68:8, 68:9,
72:4, 89:19, 90:8,
103:16, 103:24,
104:9, 118:15, 126:7,
127:11, 127:17,
138:19, 152:22,
162:20, 162:21,
163:24, 173:15,
177:12, 181:10,
184:9, 186:22
heard - 16:2, 20:22,
22:22, 30:7, 34:19,
35:2, 64:18, 65:20,
66:13, 71:5, 71:19,
71:21, 71:24, 72:9,
72:22, 73:10, 73:14,
77:7, 77:22, 78:1,
78:2, 79:10, 79:22,
79:24, 80:6, 81:7,
82:9, 83:4, 83:25,
84:13, 84:19, 89:16,
89:18, 92:1, 92:18,
92:20, 92:22, 93:16,
94:24, 97:23, 99:25,
100:2, 101:7, 101:11,
102:10, 103:7,
105:14, 106:10,
107:12, 108:13,
108:16, 110:25,
111:9, 112:3, 115:3,
116:22, 117:22,
117:25, 119:10,
120:1, 138:18,
158:16, 159:13,
164:3, 167:19,
167:20, 168:23,
169:6, 173:16,
173:18, 174:20,
178:10, 180:9,
181:14, 181:24,
186:7, 191:1, 192:9,
192:24, 198:13,
200:22, 202:5,
206:15, 208:23,
210:21, 211:7,
211:16, 212:17,
213:24, 215:16, 216:6
hearing - 186:10
hears - 143:5
heart - 159:6
hearts - 145:19
held - 124:4, 188:17
Hell - 113:25
hell - 185:21
help - 23:6, 24:16,
27:22, 85:21, 139:13,
141:21, 141:22,
142:4, 189:13, 204:5,
211:25, 221:11
helped - 80:25,
84:25, 139:23,
179:25, 242:2
helpful - 62:21
helping - 23:25,
25:21, 209:22, 212:22
helps - 184:16
Henry - 97:23
herein - 218:6,
218:18, 232:22,
239:13, 240:1, 242:25
heroin - 150:24
herring - 151:12
herself - 111:1,
204:16, 205:9
Hershel - 136:10,
169:9
hesitate - 247:20

hiding - 204:10
high - 88:1, 88:3,
137:5, 143:9, 182:14
highest - 132:9
highlight - 47:2,
255:16
highlighted - 84:24
highlighting -
255:20, 256:2
highlights - 130:18
highly - 230:4
himself - 34:19,
84:14, 86:20, 88:21,
89:11, 92:16, 95:12,
107:19, 112:3,
135:15, 136:24,
171:9, 184:12,
204:16, 205:9,
226:12, 246:9
hire - 132:11
hit - 86:14, 95:6,
96:6
hitters - 180:8
Hold - 55:14, 260:13
hold - 17:1, 31:7,
122:14, 245:7
holding - 107:10
holes - 134:12
Hollins - 95:1,
186:16
Holmes' - 134:6
home - 102:7,
114:4, 122:13, 163:5,
166:1, 170:11,
216:22, 261:16
Homicide - 189:23
homicide - 97:13,
97:15, 97:22, 155:6,
174:14
honest - 177:23
Honor - 2:5, 2:14,
4:9, 4:21, 5:4, 7:5,
7:6, 7:17, 11:8, 11:14,
12:7, 13:1, 13:7,
13:12, 14:11, 15:5,
15:13, 16:13, 17:23,
20:13, 21:4, 21:15,
22:5, 22:18, 24:11,
25:24, 28:15, 28:20,
29:1, 29:19, 30:22,
31:4, 31:13, 33:2,
33:11, 34:8, 39:11,
39:22, 41:9, 41:17,
42:24, 44:12, 44:15,
47:14, 49:14, 50:5,
50:14, 50:21, 50:25,
51:6, 51:12, 53:11,
53:25, 55:2, 55:9,
56:20, 57:4, 59:9,
60:3, 62:6, 63:9,
63:11, 122:20,
122:21, 164:1,
251:21, 252:24,
254:5, 256:16, 258:5,
258:6
Honorable - 1:12
hook - 147:20
hope - 127:25,
190:6
hoped - 166:22,
166:23, 207:20
hopefully - 179:18
hopes - 207:25
hoping - 24:21
hopped - 181:8
hornbook - 255:22
horrific - 138:13
Horton - 106:2,
112:18
hostile - 176:24

hostility - 205:1
hour - 161:3,
185:20, 220:25
hours - 170:18
house - 35:4, 64:19,
64:20, 67:22, 80:9,
80:19, 81:16, 82:22,
83:17, 83:20, 84:10,
88:9, 89:9, 91:5,
95:24, 96:4, 96:20,
97:5, 97:8, 102:8,
118:12, 131:4, 131:5,
131:7, 150:2, 150:7,
178:17, 180:5, 183:4,
187:4
houses - 178:16
housing - 83:8,
137:8, 137:9, 137:12,
137:16, 146:2,
179:24, 179:25
Howard - 65:7, 82:1,
89:14, 102:21, 105:3,
106:21, 107:6,
107:14, 107:19,
108:8, 108:23,
116:24, 121:19,
143:10, 165:8
human - 234:11,
236:16, 236:20
hunches - 125:2,
126:22
hundred - 87:9
hundreds - 71:6,
79:13, 94:9
hungry - 61:11
Huron - 95:1, 96:9,
186:15, 187:7, 219:8
husband - 177:2
hustling - 34:18,
146:5, 146:6
hydrant - 102:19,
102:24, 105:8
hypothetical -
235:15


I

Id - 95:15
idea - 72:24, 73:1,
185:21
identification -
27:18, 200:16
identified - 95:15,
100:9, 104:6, 110:15,
110:16, 110:17,
157:1, 219:14
identity - 24:16,
94:1, 104:8, 106:19
identities - 225:8
identity - 23:5,
24:11, 24:17, 27:21,
219:11
idiot - 171:19,
171:20, 180:12
Ii - 218:14
ill - 237:18
illegal - 227:6
illustrations - 93:9
illustrative - 93:10
imagination - 125:7
imagine - 68:9,
72:1, 118:15
immunity - 13:15,
14:16, 14:19, 14:21,
15:1, 15:4, 15:14,
15:20, 15:21, 16:7,
16:8, 133:24, 139:16,
142:16, 142:18,
142:20, 144:10,
146:13, 182:22,

182:24, 183:21,
184:22, 185:4, 185:7,
209:4
immunized - 185:12
impartial - 197:5,
205:5
impartiality -
194:12
impeached - 197:21
impeachment -
22:2, 22:11, 27:7,
28:1, 28:12
implicate - 73:12,
171:17
importance -
203:16, 204:5
important - 3:18,
39:23, 58:19, 72:6,
72:21, 78:20, 82:1,
82:10, 84:1, 105:24,
108:2, 112:10,
121:12, 130:16,
133:5, 148:1, 153:7,
176:20, 192:4,
194:13, 194:16,
203:23, 205:17,
213:6, 216:21, 224:23
Importantly -
103:24
importantly - 65:2,
84:13, 102:21
imposed - 248:17
imposes - 197:12
imposing - 248:9
impressed - 204:8
impressions -
128:25
imprisonment -
54:9, 60:6, 60:8,
243:1, 243:9, 243:17,
244:2, 244:5
improper - 3:2,
11:6, 19:17, 19:20,
195:2, 195:10, 210:7
inarticulate -
173:25
incarcerated -
137:15
incentive - 119:22,
204:23
included - 61:22,
61:24, 62:8, 62:9
includes - 244:25
including - 219:4,
261:4, 261:7
inconsistencies -
127:4, 128:23
inconsistency -
213:6, 213:8
inconsistent -
22:11, 27:8, 28:2,
28:13, 212:19,
212:20, 213:13
incorporated -
199:24, 240:1
incredible - 186:14
incredibly - 138:13
incriminating -
181:18
indeed - 5:25
Indeed - 163:8,
207:2, 216:6, 222:20,
225:19
independent -
34:15, 215:1, 224:25
indicate - 18:17,
38:7, 53:16, 57:12,
194:7, 251:3

indicated - 17:14,
38:21, 162:4, 191:17,
200:24, 208:18,
244:12
indicates - 36:1,
36:12, 196:19
indicating - 199:11
indication - 37:2,
51:24
Indicted - 169:11
indicted - 134:24,
151:8, 253:2, 253:13
indictment - 3:3,
3:21, 8:4, 9:12, 9:25,
10:13, 14:4, 18:12,
35:23, 39:8, 50:9,
51:5, 52:23, 54:16,
57:23, 58:17, 58:18,
93:4, 99:19, 100:21,
126:13, 134:25,
135:1, 135:5, 141:24,
151:15, 155:13,
195:14, 195:23,
196:4, 196:17,
196:22, 201:9,
203:20, 206:17,
217:6, 217:11,
217:12, 217:18,
218:1, 218:25,
220:23, 222:11,
223:21, 224:15,
233:25, 239:1,
239:25, 240:25,
244:9, 244:22, 246:7
indigenous -
132:13
individual - 90:13,
219:14, 227:23,
247:13, 247:16
individuals -
167:12, 194:23
infer - 30:25, 202:7,
215:23, 223:4, 246:20
inference - 11:11,
193:19, 202:1, 202:6,
202:11, 225:5, 225:12
inferences - 201:5,
203:11, 210:25,
225:2, 229:12, 229:14
inferred - 202:25
influence - 248:8,
248:18
influenced -
204:20, 216:11
informant - 49:24,
99:2, 232:15, 238:24,
238:25
information - 69:3,
100:7, 100:16, 112:6,
112:12, 116:6,
127:16, 181:18,
216:18, 219:13,
233:1, 233:21, 234:7,
234:20, 235:2, 235:4,
235:7, 235:11,
235:13, 236:9,
238:17, 238:20,
239:19, 241:1
informed - 92:21,
225:11
initials - 219:11
initiated - 236:6
innocence - 5:9,
6:10, 126:10, 132:2,
141:16, 195:7, 197:3,
250:21
innocent - 126:5,
126:7, 126:9, 198:12,
201:23, 213:5
insert - 13:20,

30:21, 252:21
**inserted** - 14:14, 51:12
  **inside** - 183:3
  **insistent** - 213:15
  **instances** - 40:1
  **instead** - 148:15, 184:4
  **instincts** - 144:2
  **instruct** - 8:9, 10:5, 10:16, 19:16, 19:19, 37:23, 53:18, 53:24, 54:18, 54:23, 66:24, 67:5, 92:25, 93:6, 125:13, 147:22, 147:23, 151:14, 191:17, 192:12, 192:23, 193:2, 201:12, 210:6, 225:6, 235:16, 241:4, 244:13, 244:17
  **instructed** - 5:16, 23:11, 198:21, 209:10, 210:24, 212:5, 224:9, 227:10
  **instructing** - 11:1, 163:1
  **instruction** - 2:22, 5:13, 5:18, 5:22, 6:8, 6:21, 7:24, 12:23, 13:25, 14:8, 14:18, 14:23, 15:1, 15:19, 16:18, 17:1, 17:3, 17:8, 17:9, 17:12, 21:11, 21:18, 22:8, 22:11, 22:15, 22:18, 24:21, 30:5, 32:25, 33:17, 33:21, 34:2, 34:6, 34:7, 34:13, 35:8, 35:21, 36:21, 37:16, 37:25, 38:16, 38:18, 38:19, 38:23, 39:3, 39:16, 39:17, 39:24, 40:4, 40:7, 40:12, 41:15, 42:12, 42:14, 43:14, 43:19, 46:24, 52:10, 52:13, 55:12, 59:16, 59:20, 142:10, 230:19, 251:23, 252:6, 253:19
  **Instruction** - 2:24, 3:8, 3:21, 6:9, 6:18, 7:21, 13:24, 14:22, 15:7, 33:9, 41:1, 53:4, 53:8, 251:20, 252:20, 252:22, 254:7, 256:21, 256:24, 258:10, 260:4
  **instructions** - 2:17, 3:4, 3:17, 3:20, 7:7, 13:19, 33:9, 54:24, 60:15, 61:7, 61:9, 99:18, 130:11, 130:12, 130:13, 130:15, 162:21, 162:23, 163:13, 163:14, 191:18, 191:19, 193:3, 193:11, 196:13, 217:13, 221:1, 244:18, 252:23, 256:23, 257:7, 257:11, 262:2
  **instructs** - 67:7
  **instrument** - 202:22
  **insufficient** - 129:16, 129:22, 158:1
  **insulates** - 136:5
  **integrity** - 238:19
  **intellectual** - 129:5

**intend** - 32:4, 185:24
  **intended** - 30:21, 30:24, 32:1, 140:11, 215:22, 228:25, 229:15, 229:17, 229:18, 229:20, 229:21, 230:8, 230:10, 230:16, 238:11
  **intent** - 11:21, 12:3, 12:10, 12:11, 31:22, 32:8, 39:9, 41:6, 41:7, 41:14, 41:25, 42:3, 42:7, 42:23, 43:16, 43:23, 45:2, 45:5, 45:8, 45:15, 48:4, 48:7, 48:11, 48:18, 49:7, 50:1, 57:10, 57:25, 58:3, 67:3, 69:10, 116:4, 149:8, 188:10, 202:15, 203:3, 203:8, 217:24, 218:11, 218:21, 229:4, 230:14, 231:8, 231:11, 231:14, 231:21, 232:24, 233:19, 234:5, 234:17, 234:19, 237:5, 237:8, 239:18
  **intention** - 224:4, 226:25, 229:5, 229:10, 241:25, 245:13
  **intentionally** - 44:7, 47:8, 149:7, 218:7, 218:10, 227:5, 230:24
  **interaction** - 139:6
  **interactions** - 147:9
  **interest** - 13:5, 23:16, 23:17, 192:20, 206:1, 206:6, 206:11, 206:13, 208:15, 212:10, 212:11, 214:10, 224:10, 224:12
  **interesting** - 129:2, 138:8, 143:11
  **interestingly** - 105:24
  **interests** - 206:4, 207:23, 209:20, 226:14
  **interfere** - 195:12
  **interference** - 153:13
  **international** - 246:8, 246:10
  **intersection** - 81:12
  **interstate** - 70:19, 117:21, 118:3, 243:20, 246:1, 246:4, 246:15, 246:21
  **interview** - 65:21, 100:7, 100:23, 100:25, 101:6
  **interviewed** - 30:9, 31:20, 100:6, 166:23, 176:15, 183:2, 215:18
  **interviews** - 16:6, 176:10, 176:16, 189:24, 209:3
  **intimidate** - 30:24, 31:22, 32:1, 32:20, 215:22
  **intimidated** - 32:6, 32:10
  **intimidating** - 32:2
  **intimidation** - 29:17, 30:4, 32:17

**introduced** - 18:2, 18:23, 160:18, 195:22, 197:16, 200:18, 210:2
  **introduction** - 2:25, 33:5
  **invading** - 170:11
  **invert** - 41:5
  **inverted** - 49:9
  **investigated** - 97:7, 166:24
  **investigating** - 100:3
  **investigation** - 21:16, 49:25, 77:16, 106:9, 107:14, 109:4, 185:9, 185:16, 219:15, 236:10, 236:11
  **Investigation** - 233:2, 239:21
  **investigative** - 6:12, 6:15, 6:24, 128:9, 198:16, 198:23
  **inviting** - 146:21
  **involve** - 202:16, 203:24
  **involved** - 12:2, 36:22, 37:13, 38:10, 45:11, 46:3, 46:13, 48:14, 49:4, 57:13, 77:16, 144:19, 157:13, 206:16, 223:6, 229:5, 231:17, 232:4, 236:9
  **involvement** - 38:5, 38:8, 228:15, 228:21
  **involving** - 123:19
  **Irene** - 151:1
  **irksome** - 134:4, 141:10
  **ironically** - 125:2
  **irresponsible** - 125:9
  **Isaac** - 105:19, 109:13, 110:5, 111:2, 111:6, 112:22, 112:25, 113:6, 113:14, 114:9, 115:6, 121:25, 142:24, 143:3, 165:7, 166:9, 166:11, 171:6, 172:23, 177:5, 179:4
  **issue** - 2:20, 12:1, 12:11, 41:15, 146:16, 167:9, 214:18, 225:17, 260:21
  **issues** - 17:15, 192:11, 193:14, 203:20, 248:3
  **item** - 228:1
  **items** - 200:19, 228:3, 228:5
  **itself** - 81:1, 195:14, 203:5, 207:4, 226:7

**J**

**Jackson** - 94:14
  **jail** - 84:5, 103:17, 104:10, 136:10, 137:20, 150:9, 165:17, 178:20, 180:18, 211:9
  **Jamal** - 143:10
  **Jamar** - 65:7, 82:1, 100:19, 102:20, 105:3, 106:20, 108:23, 116:24, 121:19, 165:8

**Janu** - 75:5, 75:8
  **January** - 65:20, 74:8, 100:4, 149:5, 151:7, 151:11, 167:10, 218:3, 219:20
  **january** - 151:16
  **jeans** - 144:12
  **jell** - 151:19, 153:17, 153:18
  **jeopardized** - 23:2, 211:22
  **jersey** - 144:24
  **Jim** - 260:14
  **job** - 23:6, 24:11, 24:16, 27:22, 72:14, 124:25, 129:3, 133:5, 133:9, 139:11, 152:2, 152:8, 158:6, 158:11, 158:17, 158:18, 159:6, 190:4, 190:23, 203:13
  **jobs** - 24:18, 189:21
  **Jocelyn** - 18:12, 80:6, 82:22, 120:20
  **John** - 1:15
  **Johnson** - 101:6
  **join** - 221:25
  **joined** - 45:12, 48:15, 68:2, 224:1, 224:18, 224:20, 225:14, 231:17
  **joint** - 55:12, 55:19, 115:17
  **Jon** - 164:17
  **Jones** - 17:14, 61:24, 61:25, 111:10, 111:25, 146:20
  **Jr** - 1:15
  **judge** - 26:20, 77:24, 92:25, 93:6, 98:18, 123:25, 125:13, 126:18, 130:15, 142:10, 146:16, 147:21, 147:23, 151:14, 163:1, 250:19
  **Judge** - 1:13, 5:11, 6:14, 12:18, 13:18, 14:17, 16:25, 28:9, 42:17, 56:6, 59:13, 66:23, 67:5, 67:7, 67:12, 123:15, 126:15, 130:11, 136:7, 137:13, 137:14, 148:20, 157:22, 252:5, 257:9
  **judgement** - 125:24
  **judges** - 193:15, 194:7, 203:15
  **judgment** - 118:18, 205:22, 206:14, 213:12, 215:13, 247:16
  **judgments** - 203:24, 204:1
  **July** - 66:13, 73:15, 121:15, 121:18, 167:11, 169:14, 172:15, 219:16
  **jump** - 93:25, 103:10, 109:22, 131:20
  **jumped** - 95:4, 103:11, 103:12, 105:16, 105:18, 105:25, 112:16
  **June** - 167:11
  **Junior** - 77:18
  **juries** - 202:17
  **juror** - 141:19,

178:11, 247:8
  **Juror** - 56:8, 56:9, 56:14, 63:1, 248:20
  **jurors** - 56:14, 56:15, 160:14, 179:9, 192:3, 216:10, 247:10, 247:13, 247:18, 247:21, 247:24, 248:14, 258:1, 258:3, 260:11, 260:21
  **Jury** - 1:13, 2:2, 62:24, 162:2, 162:18, 221:7
  **jury** - 2:25, 3:1, 3:4, 3:18, 5:22, 5:23, 6:6, 11:1, 11:2, 11:20, 11:25, 12:12, 21:9, 25:12, 26:20, 31:11, 32:24, 35:16, 37:18, 38:16, 43:8, 49:20, 51:10, 51:16, 51:17, 51:23, 52:5, 56:12, 58:19, 62:19, 62:20, 84:20, 99:18, 103:19, 107:15, 107:19, 108:18, 108:20, 110:13, 110:22, 112:25, 122:22, 123:14, 126:9, 130:11, 135:24, 135:25, 139:16, 146:18, 146:19, 151:8, 161:3, 162:4, 162:6, 162:24, 163:1, 163:13, 165:9, 165:20, 166:3, 167:16, 173:1, 173:2, 173:4, 175:2, 175:24, 176:11, 176:14, 179:3, 181:8, 181:13, 188:7, 190:16, 191:3, 191:18, 191:19, 191:25, 193:15, 200:20, 202:4, 207:5, 208:20, 216:2, 218:2, 218:9, 219:12, 221:11, 232:18, 239:9, 242:22, 247:11, 248:7, 248:20, 249:20, 249:23, 250:4, 250:19, 251:4, 253:25, 256:23
  **jury's** - 35:5
  **justice** - 166:16, 177:14, 177:16, 179:8, 181:2, 194:24, 238:19
  **justify** - 225:12

**K**

**Kareem** - 51:20, 59:4, 59:25, 64:17, 65:3, 65:5, 65:8, 65:9, 65:10, 65:12, 65:17, 66:4, 66:6, 66:17, 66:20, 68:24, 69:2, 69:9, 69:23, 70:4, 70:12, 70:25, 71:1, 82:2, 84:2, 92:23, 99:17, 100:22, 101:6, 101:23, 102:1, 102:23, 103:6, 103:7, 103:8, 103:23, 104:22, 104:23, 105:12, 105:14, 105:20, 106:22, 107:8, 107:9, 107:11,

107:12, 108:12,
108:16, 111:13,
115:22, 116:1, 116:4,
116:8, 117:10,
117:11, 118:5,
122:16, 129:18,
131:1, 131:17,
138:10, 138:16,
158:2, 166:18, 167:4,
168:17, 172:2,
173:17, 185:25,
186:1, 186:2, 186:3,
220:21, 232:24,
232:25, 234:3, 234:5,
234:12, 236:13,
236:16, 238:1,
239:17, 239:18, 249:4
  **Kareem's** - 66:2,
116:10, 177:15
  **Keep** - 89:16, 98:18,
100:15, 105:8, 106:5,
106:15
  **keep** - 3:6, 4:7,
11:19, 18:20, 22:1,
41:21, 68:18, 75:21,
76:13, 80:2, 83:9,
85:24, 100:24,
105:20, 107:23,
109:2, 180:1, 198:9
  **keeping** - 40:2
  **keeps** - 228:3
  **Kelly** - 59:4, 59:25,
232:24, 232:25,
234:12, 236:16,
239:18, 239:19, 249:4
  **Kent** - 220:15
  **kept** - 84:4, 106:13,
172:14
  **kernels** - 130:16
  **Kev** - 82:19, 83:17,
83:22, 84:11, 96:24,
97:14, 97:21, 102:5,
103:11, 104:23,
105:18, 106:16,
106:17, 108:19,
108:22, 114:13
  **Kevin** - 14:2, 65:1,
65:3, 80:12, 80:15,
82:9, 82:10, 84:8,
84:15, 85:1, 96:7,
96:19, 96:21, 101:20,
102:2, 102:20, 104:8,
104:20, 105:12,
105:16, 110:5, 110:6,
112:22, 113:17,
116:23, 120:18,
121:19, 128:17,
139:15, 139:16,
140:13, 142:22,
142:23, 148:2,
156:16, 167:19,
170:21, 174:19,
179:20, 182:22,
190:13
  **key** - 164:22, 224:19
  **Keyburn** - 102:21
  **kid** - 128:4
  **kids** - 80:13,
103:17, 130:4, 136:4,
137:6, 137:20,
144:16, 180:7,
189:11, 189:12
  **kill** - 65:6, 69:9,
69:23, 70:3, 96:18,
104:23, 116:24,
117:11, 120:25,
175:14, 175:19,
179:6, 185:24,
185:25, 186:1, 186:2,
186:5, 232:24,

233:18, 234:3, 237:6,
237:8
  **killed** - 66:14,
66:18, 66:20, 69:9,
70:25, 71:1, 95:8,
96:13, 96:15, 97:12,
98:9, 102:1, 102:9,
102:11, 116:4,
116:16, 117:14,
124:19, 136:13,
136:18, 136:19,
147:19, 154:17,
156:24, 167:5, 172:1,
185:24, 186:3, 186:4,
234:3, 234:11,
234:23, 234:24
  **killer** - 109:8,
110:17
  **killing** - 12:10,
12:11, 18:14, 49:23,
50:1, 93:5, 98:13,
112:6, 175:20,
232:15, 234:9,
236:13, 236:20,
236:23, 238:7,
239:17, 240:25
  **kills** - 174:19,
233:18
  **kilo** - 188:24, 189:1
  **kilogram** - 91:19,
188:12
  **kilograms** - 91:20
  **kilos** - 120:18,
140:14, 149:19,
188:16, 188:19,
188:25, 189:1
  **kind** - 66:1, 79:7,
100:12, 107:17,
116:20, 129:2,
131:20, 132:6,
134:19, 143:23,
144:2, 150:10, 152:5,
154:2, 154:8, 181:3,
210:25, 222:1, 236:21
  **kinds** - 209:7
  **King's** - 152:22
  **kingpin** - 89:4, 92:4
  **knock** - 155:15
  **knocked** - 48:8,
49:1, 253:21
  **Knowing** - 179:19
  **knowing** - 126:4,
227:7, 254:8, 258:20
  **knowingly** - 44:6,
47:7, 68:1, 68:4,
149:7, 218:6, 218:9,
221:18, 223:18,
224:1, 224:18,
228:23, 230:24,
234:4, 234:14,
234:18, 239:13,
240:17, 241:11,
242:10, 243:2,
243:18, 244:23,
245:17, 254:12, 259:1
  **Knowledge** - 202:15
  **knowledge** - 11:20,
19:18, 19:22, 199:9,
203:7, 204:18,
206:24, 210:8,
214:22, 224:2, 225:4,
225:13, 226:16,
226:19, 226:24
  **knowledgeable** -
214:24
  **known** - 14:4,
124:4, 218:5, 218:8,
219:11, 225:7, 228:6,
232:21, 239:12,
242:24

**knows** - 109:25,
140:21, 146:24,
152:25, 177:6, 187:1
  **Knox** - 135:8,
135:10
  **Krakauer** - 164:17
  **Kwana** - 114:22,
114:23

---

## L

  **label** - 30:3
  **labelled** - 17:10
  **laborious** - 192:4
  **lack** - 195:1, 195:22,
198:19, 199:2
  **ladies** - 71:17,
109:14, 123:12,
135:3, 141:1, 147:17,
149:12, 154:14,
156:5, 158:7, 164:2
  **Ladies** - 64:16,
122:22, 139:15,
152:12, 160:23,
191:16, 258:8, 260:8
  **lady** - 112:8
  **language** - 18:21,
32:16, 36:13, 85:22,
113:11
  **large** - 40:1, 190:24,
230:7, 230:11
  **larger** - 119:13
  **Larry** - 74:7, 94:24,
101:10
  **last** - 26:4, 26:14,
27:9, 27:12, 27:15,
36:18, 37:20, 55:22,
67:17, 71:5, 71:18,
76:1, 78:3, 80:7,
90:18, 108:16, 111:9,
112:2, 117:16,
128:15, 133:18,
138:17, 173:15,
173:16, 175:8, 186:6,
190:11, 194:2, 199:6,
242:19, 252:4,
252:18, 255:12,
255:14, 256:9
  **Last** - 55:17, 121:12,
127:6
  **late** - 63:1, 163:8
  **latest** - 163:20
  **laugh** - 171:23
  **laughed** - 150:10,
180:3
  **law** - 5:15, 11:2,
32:11, 36:1, 38:20,
40:8, 65:18, 66:3,
66:5, 67:7, 69:3, 71:4,
116:5, 116:10,
123:11, 124:15,
136:6, 158:19, 159:7,
162:21, 162:25,
163:2, 169:15,
182:23, 189:22,
191:17, 192:6,
192:13, 192:23,
193:2, 193:3, 193:6,
193:9, 196:20,
197:12, 199:13,
207:1, 207:3, 213:24,
214:2, 214:8, 214:13,
217:8, 222:6, 223:2,
225:23, 226:22,
233:1, 233:20, 234:6,
234:20, 234:21,
234:25, 235:1, 235:2,
235:5, 235:8, 236:4,
236:7, 237:17,
238:17, 239:19,

241:1, 242:16,
245:22, 255:22
  **Law**- 28:18, 198:24
  **laws** - 6:4, 100:18,
136:3, 158:18, 194:14
  **lawyer** - 40:23,
101:7, 199:23
  **lawyer's** - 199:22,
200:6
  **lawyers** - 125:24,
178:2, 193:1, 194:1,
196:2, 250:3, 258:9
  **layers** - 190:14,
190:17
  **Layers**- 190:14,
190:17
  **led** - 145:7, 145:9
  **leader** - 144:20
  **leading** - 29:22
  **leads** - 158:24
  **learned** - 121:15,
169:1, 173:7, 175:9
  **least** - 35:15, 75:2,
82:4, 82:8, 83:15,
115:3, 130:19,
187:24, 224:21,
226:24
  **leave** - 6:5, 12:13,
12:14, 26:8, 26:20,
45:23, 58:4, 81:1,
81:20, 109:7, 121:9,
121:24, 142:13
  **leaving** - 111:4,
182:25
  **led** - 144:20
  **left** - 95:18, 105:2,
105:17, 107:6, 110:3,
110:9, 110:18,
111:17, 111:23,
112:13, 121:21,
123:5, 147:4, 147:5,
155:23, 156:16,
170:17, 183:4, 254:2
  **leg** - 95:7, 156:4
  **legal** - 59:22, 193:8,
193:10, 198:22,
227:12, 227:22
  **legitimate** - 38:15,
214:6
  **length** - 68:19
  **less** - 20:3, 58:6,
68:18, 174:18,
194:22, 210:14,
214:4, 232:10
  **Less**- 57:17
  **lessened** - 32:15
  **lessons** - 32:4
  **lesser** - 214:4
  **letter** - 13:16, 14:16,
15:20, 16:10, 144:10,
163:18, 185:6,
185:11, 209:6
  **letting** - 87:2, 175:1
  **level** - 77:13, 92:5
  **liability** - 39:25,
225:18
  **liar** - 103:14,
159:11, 160:8, 160:9
  **liars** - 118:14,
125:8, 130:6, 130:9,
165:3, 165:5, 175:25,
176:1, 176:3, 177:19,
190:8
  **lie** - 73:12, 77:18,
79:3, 81:24, 89:24,
89:25, 103:18,
119:22, 120:5, 120:6,
120:12, 120:14,
130:3, 130:4, 130:5,
134:18, 144:10,

159:9, 165:9, 165:15,
166:3, 169:21, 170:4,
176:23, 208:1
  **lied** - 103:14, 130:4,
165:8, 165:19,
172:25, 176:3,
177:19, 179:7,
180:10, 190:15,
213:18
  **lies** - 120:13, 121:1,
121:3, 127:7, 127:8,
128:23, 129:4, 129:7,
129:8, 130:1, 134:21,
160:15, 165:15,
165:18, 168:8, 185:9,
185:10, 203:23
  **life** - 60:5, 60:8,
65:13, 118:20, 126:1,
148:1, 165:14,
179:16, 179:21,
182:2, 182:13, 184:8,
237:4
  **light** - 8:10, 10:7,
10:17, 12:9, 20:7,
38:15, 38:20, 101:15,
105:25, 112:15,
145:14, 201:3,
201:14, 205:11,
205:15, 205:16,
210:18, 215:9
  **likelihood** - 235:10,
235:13
  **likely** - 23:17, 119:9,
119:19, 212:11
  **limit** - 19:10, 19:12,
216:18
  **limited** - 164:11,
212:21
  **line** - 147:16,
147:20, 246:7,
246:10, 255:18, 257:2
  **lines** - 254:2
  **linked** - 69:24,
117:7
  **Linnard** - 97:10
  **list** - 128:11
  **listed** - 219:25,
233:23
  **listen** - 84:21,
125:16, 130:11,
136:9, 152:21,
181:22, 182:8,
191:22, 192:17,
216:24, 247:12,
256:14, 258:16,
258:17
  **listened** - 79:1,
164:8, 203:25
  **listening** - 15:6,
63:10, 136:15,
170:16, 188:2, 216:16
  **lists** - 218:25
  **lit** - 65:15
  **litany** - 168:11
  **literature** - 130:9
  **litigation** - 194:21
  **live** - 23:5, 132:13,
179:5, 179:15,
179:18, 211:24
  **lived** - 64:21, 80:8,
101:17, 122:24
  **lives** - 179:15,
179:17, 179:19
  **living** - 102:7, 140:2
  **loaned** - 94:13,
94:18
  **loaning** - 94:12
  **lobby** - 260:19,
260:24, 260:25
  **local** - 101:16,

214:1
**located** - 241:24
**location** - 23:6,
27:22, 78:18
**logical** - 202:12
**look** - 24:23, 25:12,
39:21, 42:18, 87:20,
101:21, 130:10,
134:7, 134:9, 138:13,
140:23, 145:15,
145:17, 145:22,
147:1, 155:18, 185:1,
185:5, 192:1, 197:25,
198:18, 208:4, 251:5,
251:6, 251:20,
255:17, 255:19,
255:23, 256:1, 256:14
**Look**- 140:16,
145:25, 149:20
**looked** - 2:18, 74:5,
74:23, 77:12, 90:24,
95:14, 95:25, 96:1,
108:6, 133:13, 180:2
**looking** - 43:18,
51:11, 61:5, 105:11,
107:5, 108:7, 108:10,
139:11, 147:4, 174:8
**looks** - 15:7
**lost** - 3:19, 53:25,
142:18
**louder** - 223:8
**love** - 24:25, 129:4,
129:6, 133:18, 178:14
**loved** - 135:22
**loves** - 258:17
**lower** - 63:23
**loyalty** - 98:3,
204:24
**Loyola**- 152:19
**lucky** - 167:1,
168:23, 186:25
**Luger**- 243:3
**lunch** - 61:6, 61:7,
64:12, 124:23, 158:6,
160:24, 160:25,
161:2, 161:4
**Lunch**- 64:12, 161:5
**lying** - 79:20, 80:22,
81:24, 83:12, 119:11,
119:20, 134:19,
135:18, 144:7, 144:9,
153:20, 165:10,
166:6, 177:20, 207:18

# M

**Mack** - 65:24,
65:25, 66:1, 83:17,
84:10, 94:20, 95:10,
95:13, 95:16, 96:8,
96:10, 96:15, 96:16,
96:17, 97:3, 97:4,
97:14, 97:21, 98:2,
98:10, 98:11, 100:10,
102:25, 103:1, 103:7,
103:8, 103:11, 104:1,
104:3, 104:6, 104:11,
104:21, 104:22,
104:24, 104:25,
105:3, 105:4, 105:6,
105:13, 105:15,
105:16, 105:18,
105:23, 105:25,
106:3, 106:10,
106:11, 106:19,
107:2, 107:9, 107:13,
107:16, 108:5, 108:9,
108:15, 108:18,
109:2, 109:8, 109:9,
110:10, 110:14,

110:17, 110:23,
111:1, 111:3, 111:4,
111:7, 111:12,
111:14, 111:15,
111:20, 111:23,
112:13, 112:15,
113:2, 114:9, 120:22,
120:23, 121:14,
121:16, 121:17,
121:24, 122:5,
122:13, 123:6, 124:4,
127:15, 138:5,
142:15, 142:21,
143:1, 144:11,
144:16, 166:1, 167:1,
167:17, 168:10,
170:17, 170:21,
172:1, 173:18,
173:20, 173:21,
175:18, 176:4, 177:1,
180:3, 182:8, 218:6,
232:22, 239:12,
242:25
**Mack's** - 84:2, 98:5,
98:7, 99:7
**maad** - 34:22
**Madam** - 251:8
**maestro** - 154:9
**magazine** - 97:5,
97:9
**maid** - 92:8
**mail** - 27:3, 27:5,
28:9, 36:15
**mailing** - 27:10
**main** - 2:20, 21:7,
164:24, 200:11,
260:19
**Maisel** - 64:22,
64:24, 102:17,
102:23, 105:13,
106:22, 108:5,
116:23, 220:9, 220:20
**major** - 179:15,
225:22
**malevolence** -
237:18
**malice** - 50:2,
69:14, 116:6, 234:11,
236:15, 236:20, 237:1
**Malice** - 237:2
**malicious** - 236:22
**maliciously** -
232:23, 234:13,
238:14, 239:6
**Mama** - 35:2,
149:21, 149:22
**Mama's** - 80:19,
178:17, 189:13
**man** - 74:9, 74:11,
79:11, 86:7, 90:2,
94:3, 97:11, 111:13,
127:22, 131:4, 131:5,
147:10, 154:17,
154:18, 156:7, 182:1
**Man** - 84:25
**man's** - 156:21
**managed** - 12:23
**mandatory** - 60:5
**manner** - 216:11
**mans** - 245:18
**manufacture** -
217:23, 217:24
**manufactured** -
246:17
**map** - 138:12
**March** - 75:5, 76:2,
96:13, 167:11,
219:25, 220:8, 220:14
**marijuana** - 17:24,
18:16, 139:4, 143:4,

143:8
**mark** - 188:8
**marked** - 33:9,
50:12, 200:15, 255:23
**markings** - 96:3
**marshal** - 249:19,
250:10, 250:11,
250:12, 250:14
**Marshalls** - 86:18
**Martie** - 92:18,
92:20, 96:12, 96:15,
96:16, 96:18, 96:20,
96:22, 96:23, 97:2,
97:7, 97:12, 97:25,
98:1, 98:2, 98:4, 98:8,
98:13, 98:24, 99:5,
139:18, 141:8, 141:9,
141:16, 154:24,
156:6, 168:14,
173:23, 186:4, 220:12
**Martie's** - 96:19,
98:10
**Maryland** - 1:1,
70:21, 118:2, 125:25,
218:3, 218:5, 219:6,
219:9, 232:19,
232:21, 239:10,
239:11, 242:22,
242:24, 246:18
**mask** - 65:8, 93:25,
95:5, 95:10, 97:19,
103:1, 103:2, 103:3,
107:10, 108:14,
111:14, 120:22,
186:19
**Mason** - 100:2,
101:2
**Master** - 128:20
**matches** - 187:2
**material** - 218:18
**math** - 91:9
**matter** - 19:11, 32:9,
35:19, 36:14, 39:5,
49:19, 53:7, 54:18,
58:19, 61:18, 124:6,
132:16, 194:14,
196:17, 204:4,
205:17, 214:17,
225:4, 238:2, 244:11,
249:2, 256:17,
256:19, 261:13,
262:10
**matters** - 193:8,
214:21
**Mcclinton** - 81:7,
81:8, 81:17, 81:23,
10:120, 116:13,
127:20, 143:17,
151:18, 151:22
**Mcneill** - 36:18
**mean** - 6:3, 11:23,
34:22, 46:21, 51:9,
61:8, 87:6, 148:17,
148:18, 148:19,
193:23, 194:7,
197:17, 214:2,
228:11, 229:18,
230:8, 234:17, 245:6,
254:23, 259:15,
261:23
**Meaning** - 97:5
**meaning** - 114:19
**means** - 69:19,
70:3, 70:19, 85:1,
87:12, 125:14,
140:22, 179:9, 189:4,
222:19, 229:1,
241:21, 242:2,
242:11, 242:12,
242:16, 244:24,

245:5, 246:1, 249:21
**meant** - 83:9,
106:24, 143:25
**measured** - 225:18
**mechanical** - 1:24
**Medical** - 202:21
**medical** - 117:13
**meet** - 73:9, 94:23,
102:15
**meeting** - 78:13,
113:5, 137:24,
137:25, 248:24
**meetings** - 173:3,
174:22
**Meka** - 113:18
**melt** - 131:10
**member** - 42:1,
42:6, 44:7, 45:7,
45:14, 47:8, 48:10,
48:17, 217:17,
220:10, 220:11,
221:19, 222:2, 222:3,
223:19, 223:24,
224:14, 225:6, 225:8,
225:20, 226:7,
226:10, 226:21,
230:25, 231:13,
231:19, 249:20,
249:23
**members** - 34:16,
150:15, 193:14,
218:19, 219:3,
222:14, 223:22, 226:9
**membership** -
226:2
**memo** - 111:18
**men** - 96:25, 156:23
**mendacity** - 130:23
**mentioned** - 3:16,
199:6, 224:16
**menus** - 64:12
**mere** - 226:6, 226:8,
226:16, 242:4, 255:4,
259:22
**Mere** - 226:12
**merely** - 195:15,
215:11, 226:19
**merits** - 249:24
**message** - 66:7,
187:23, 188:1, 188:2
**messing** - 178:21
**met** - 37:6, 72:24,
78:5, 79:16, 89:1,
148:19, 172:1,
198:17, 222:14
**metal** - 123:23
**Michael** - 101:8,
144:24, 148:3
**middle** - 162:23
**midway** - 163:14,
192:5
**might** - 12:12, 17:1,
61:4, 92:12, 163:14,
164:18, 172:21,
180:1, 187:19, 192:5,
195:11, 204:24,
230:14, 240:15,
240:23
**Might** - 162:22
**Mike** - 107:3
**millimeter** - 70:13,
70:18, 95:21, 95:23,
96:5, 118:5, 186:11,
220:21, 243:3
**Milis** - 38:2
**Mimi** - 85:3
**mind** - 2:7, 68:18,
75:21, 80:2, 89:16,
98:18, 100:16, 105:9,

105:20, 106:5,
106:15, 107:24,
198:9, 202:16,
202:17, 202:22,
202:24, 206:7,
229:12, 237:3
**mindful** - 216:13
**minds** - 145:19
**ministerial** - 61:17
**minor** - 225:22
**minute** - 27:11,
55:16, 62:22, 141:7,
221:2, 260:15
**minutes** - 60:20,
60:21, 60:23, 61:3,
61:10, 105:2, 107:6,
143:19, 148:12,
156:16, 163:12,
182:2, 182:3, 182:6,
185:1, 221:1
**misread** - 251:18
**misrepresentations**
- 130:22
**Miss** - 21:4, 34:20,
35:2, 62:15, 78:25,
79:2, 79:15, 80:20,
80:22, 83:16, 83:19,
83:20, 84:9, 103:14,
104:13, 109:24,
110:1, 110:4, 110:5,
110:6, 110:12, 113:6,
141:3, 149:20, 150:3,
150:4, 150:6, 150:12,
150:23, 162:4,
165:17, 171:6, 173:3,
177:5, 179:24,
250:25, 251:11
**mistake** - 213:5,
234:16, 242:12,
245:20
**mixture** - 57:25,
149:9, 218:12
**mock** - 171:23
**modified** - 22:22,
24:4, 26:16, 31:17,
31:18, 32:20
**modify** - 22:17,
29:20
**modifying** - 30:18
**mollified** - 31:18
**mom's** - 64:19,
102:8
**moment** - 2:22, 4:3,
40:21, 45:22, 46:11,
49:1, 64:3, 69:21,
135:22, 195:9, 198:7,
198:8, 224:16, 232:17
**moments** - 156:19,
192:7
**money** - 23:7,
67:19, 67:23, 73:19,
74:11, 76:6, 82:6,
82:19, 83:6, 83:7,
83:10, 83:12, 86:8,
87:13, 87:15, 87:23,
89:8, 91:15, 91:18,
92:8, 127:19, 132:16,
154:11, 154:12,
170:11, 188:20,
188:22, 211:25,
218:24
**month** - 95:22
**months** - 134:24,
135:5, 172:15,
178:20, 180:1
**monumental** -
153:15
**Moody** - 100:2,
115:4, 123:9, 136:12,
137:25, 139:2, 139:6,

139:10, 147:9,
167:23, 175:1, 185:25
**Moreover** - 225:10,
226:18
**Morning** - 74:6
**morning** - 2:12,
2:13, 2:14, 62:25,
64:10, 163:6, 163:17,
186:24, 221:4,
261:21, 262:4
**most** - 40:20, 84:13,
90:2, 102:21, 120:1,
120:5, 121:12,
176:20, 197:18,
198:3, 227:16
**Most** - 65:1, 77:15,
89:23, 119:21, 120:6,
175:21
**mother** - 95:24,
169:16, 187:25
**mother's** - 96:4,
187:4
**motion** - 133:22,
133:23, 139:19
**motioning** - 149:2
**motivate** - 98:17
**motivated** - 207:25
**motivation** - 208:1,
208:3
**motivator** - 137:18
**motive** - 23:13,
25:25, 155:10,
184:25, 204:24,
206:2, 208:16,
209:23, 212:7
**mountain** - 131:22,
131:23, 132:9,
132:20, 139:13,
142:4, 145:5, 158:21,
159:18, 160:17
**mountains** - 71:7,
132:14
**mouth** - 74:12,
76:10, 76:14
**Mouzon** - 102:16,
105:9, 107:3, 108:1,
142:7, 165:7, 179:4,
180:15
**move** - 20:20, 23:4,
83:7, 90:4, 211:23,
232:11, 232:13
**moved** - 23:8,
70:19, 83:5, 83:13,
104:17, 104:19,
120:2, 121:8, 172:22,
181:21, 212:1
**moving** - 120:9,
153:11
**Mt** - 132:8, 145:4,
145:10
**multiple** - 2:21,
33:17, 33:21, 34:1,
34:4, 34:10, 34:22,
35:19, 35:25, 36:20,
37:11, 37:23, 37:24,
38:17, 38:22, 110:13,
121:21, 126:1
**multiply** - 150:18
**Multiply** - 182:13
**Murder** - 236:19
**murder** - 51:20,
59:4, 59:8, 59:16,
59:25, 60:1, 65:15,
68:24, 69:2, 70:12,
82:3, 84:2, 92:22,
94:16, 94:17, 98:1,
99:17, 99:18, 99:24,
115:21, 115:25,
117:10, 119:13,
120:22, 131:1,

131:17, 133:24,
139:17, 141:9,
141:16, 147:16,
148:9, 154:25, 156:7,
158:2, 165:1, 166:24,
170:5, 170:9, 173:23,
182:25, 183:19,
184:6, 234:9, 236:13,
236:19, 236:21,
236:23, 236:24,
237:21, 249:3, 249:6
**murdered** - 116:8,
122:4, 147:1
**murderer** - 140:5,
178:23, 184:11,
184:12, 187:19
**murdering** - 122:16
**murders** - 172:4
**must** - 19:24, 44:8,
44:16, 47:9, 54:5,
166:18, 176:8,
182:14, 189:21,
192:13, 193:8,
193:12, 193:22,
194:25, 196:9,
197:10, 197:25,
199:20, 200:24,
203:18, 205:13,
206:22, 207:8,
210:10, 213:19,
216:4, 216:13,
216:17, 221:14,
222:8, 223:16,
223:21, 224:8,
224:18, 224:24,
226:23, 227:4,
228:24, 229:12,
229:16, 229:18,
230:25, 233:25,
234:18, 235:9,
235:12, 236:8,
236:25, 237:5,
237:15, 237:19,
237:25, 240:10,
240:21, 241:10,
241:18, 242:6, 242:9,
243:12, 243:22,
244:21, 245:16,
245:23, 246:2,
246:11, 246:23,
247:2, 247:17, 248:2,
248:4, 254:10,
254:20, 258:24,
259:11, 259:15
**mutual** - 222:4,
222:21
**mythology** - 130:8

## N

**name** - 102:5,
105:1, 116:17, 194:19
**named** - 65:23,
94:14, 97:1, 101:23,
121:18, 144:24,
208:9, 220:12
**names** - 65:23,
65:24, 149:4
**narcotic** - 218:14
**narcotics** - 221:14,
228:9, 228:14,
228:24, 229:4, 230:8
**national** - 195:6
**nature** - 136:4,
169:15, 195:11,
207:8, 223:3
**near** - 255:5, 259:23
**nearby** - 102:20
**necessarily** -
131:15, 197:17,

214:3, 226:14, 245:6
**necessary** - 11:18,
11:23, 98:24, 226:22,
234:23, 235:25,
246:8, 246:13, 249:17
**neck** - 104:21,
168:16
**need** - 4:19, 4:23,
26:25, 27:1, 37:22,
39:6, 40:18, 43:2,
49:25, 56:3, 58:15,
59:21, 62:15, 62:20,
67:15, 67:16, 67:17,
68:6, 72:15, 81:1,
81:2, 81:20, 86:17,
91:23, 93:7, 104:16,
115:24, 127:18,
137:20, 145:25,
150:12, 151:13,
163:9, 178:5, 178:6,
179:8, 185:7, 186:9,
222:13, 222:16,
225:7, 225:8, 225:10,
225:13, 227:21,
234:25, 235:3, 237:7,
237:17, 251:25,
256:20, 256:22
**Needed** - 157:6
**needed** - 85:4, 85:8,
92:16, 125:19,
135:16, 174:2, 185:8,
238:6, 255:3, 259:20
**needs** - 152:25,
251:21, 255:13, 256:7
**negotiating** -
228:18
**neighborhood** -
73:18, 74:2
**neighbors** - 121:10
**Nepal** - 132:10
**nervous** - 115:5
**never** - 63:25, 64:1,
64:23, 72:24, 72:25,
73:9, 73:10, 79:16,
88:25, 89:17, 89:18,
92:1, 113:3, 135:9,
135:12, 140:8,
141:25, 143:7,
146:18, 155:23,
169:22, 169:23,
169:24, 172:1,
174:12, 176:24,
180:9, 188:24,
189:25, 192:20,
197:11, 197:12,
201:21, 201:22,
249:23, 250:18
**Nevertheless** -
247:22
**new** - 23:4, 23:5,
23:6, 24:11, 24:16,
24:17, 27:21, 27:22,
179:8, 211:24, 252:22
**news** - 216:15,
216:24
**newspapers** -
216:15
**next** - 11:5, 11:17,
20:20, 22:8, 22:10,
22:15, 30:17, 31:8,
39:2, 40:25, 48:22,
53:17, 65:4, 95:20,
102:19, 117:12,
156:22, 159:25,
174:7, 186:24, 217:4,
223:21, 253:21,
254:18
**Next** - 32:25, 114:18
**nexus** - 118:1
**Nice** - 40:16

**nice** - 40:19
**nickels** - 87:10
**night** - 64:22, 66:10,
66:16, 70:12, 70:15,
71:2, 71:3, 74:6,
102:1, 102:11,
102:14, 104:6,
104:21, 108:4,
109:15, 118:6,
123:17, 123:21,
127:6, 128:15, 137:6,
146:25, 155:7,
175:15, 180:19
**nine** - 70:13, 70:18,
95:21, 95:23, 96:5,
118:5, 186:11,
220:20, 243:3
**Ninth** - 36:6
**No.28** - 28:24
**Nobody** - 190:1
**nobody** - 138:8,
165:15, 165:18,
168:8, 170:23
**Nobody's** - 188:2
**non** - 219:10
**non-fatal** - 219:10
**None** - 3:10
**none** - 107:24
**noon** - 74:6
**normal** - 3:15
**Northern** - 125:25
**notable** - 109:3
**note** - 36:11, 56:8,
78:21, 224:23, 236:3,
249:19, 250:10,
250:14, 250:16,
252:13
**noted** - 26:1, 26:13,
32:13, 32:22, 35:20,
36:20, 37:10, 37:19,
45:21, 46:10, 48:25,
231:25
**notes** - 38:18,
127:2, 129:1, 164:11,
166:7, 191:24
**Nothing** - 154:21,
190:3
**nothing** - 19:16,
19:20, 26:18, 43:11,
49:17, 71:20, 83:11,
87:5, 87:16, 154:19,
155:12, 183:11, 210:6
**notwithstanding** -
63:24
**November** - 84:22,
167:10, 174:21
**nuances** - 63:16
**number** - 5:10,
6:10, 35:22, 127:3,
144:24, 154:6, 154:12
**numbered** - 4:7,
40:11
**numerically** -
250:20
**numerous** - 5:17
**nurse** - 18:13

## O

**o'clock** - 61:5,
62:13, 62:14, 163:20
**oath** - 135:24,
146:24, 157:4,
165:16, 213:18,
216:10, 248:14
**object** - 8:16, 25:23,
33:25, 57:22, 218:17,
218:19, 222:18,
222:19, 227:18,
227:22, 227:24

**objection** - 3:7,
3:11, 5:2, 6:19, 7:6,
7:15, 8:12, 10:19,
10:23, 11:7, 11:13,
12:16, 12:25, 13:5,
13:11, 13:16, 14:9,
20:12, 21:20, 22:4,
24:8, 26:13, 28:4,
28:14, 28:19, 28:24,
30:13, 31:3, 31:12,
31:14, 31:25, 32:13,
32:21, 33:1, 33:6,
33:10, 33:23, 41:1,
41:7, 44:20, 46:15,
46:16, 46:17, 50:12,
50:19, 50:24, 55:7,
56:18, 57:18, 57:21,
58:22, 62:1, 62:4,
63:13, 256:4
**objections** - 7:3,
50:4, 56:5, 194:3,
257:22, 257:24
**objective** - 224:4
**objectives** - 225:15,
226:20, 226:25
**objects** - 219:2
**obligation** - 158:23,
201:16
**observations** -
118:21
**observe** - 192:17,
203:12, 205:7
**observed** - 18:9,
74:9, 153:25, 204:1,
210:5
**observing** - 18:20,
19:11
**Observing** - 19:11
**obtain** - 218:20
**obvious** - 173:10,
192:18
**obviously** - 22:20,
52:16, 59:14, 81:17,
84:3, 124:18, 146:5,
254:25, 259:16
**Obviously** - 5:14
**occasion** - 212:18
**Occasionally** -
250:5
**occasions** - 5:17
**occurred** - 4:17,
12:4, 54:14, 127:5,
153:22, 166:14,
196:18, 203:10, 244:7
**occurrence** - 203:2,
203:7
**October** - 167:10,
175:9
**offender** - 127:22
**offenders** - 171:25
**offense** - 21:8, 43:3,
49:12, 49:19, 49:22,
50:10, 50:24, 53:8,
155:9, 196:15,
196:16, 217:21,
221:10, 222:4, 222:9,
223:17, 233:4,
233:22, 234:8,
239:23, 240:9, 243:11
**offenses** - 69:5,
69:6, 69:12, 116:6,
141:25, 221:3,
235:25, 236:2
**offer** - 64:2, 168:1,
171:19, 198:11
**offered** - 63:25,
74:11, 74:12, 77:1,
183:22
**offering** - 197:18
**Office** - 123:1,

17

**185**:18
**office** - 174:14
**office's** - 185:17
**officer** - 73:20,
176:9, 233:20, 234:6,
234:20, 235:1, 235:3,
235:5, 235:8, 235:12,
235:14
**Officer** - 76:16
**officers** - 69:4,
73:13, 77:4, 77:8,
77:15, 77:18, 78:11,
78:18, 79:17, 82:12,
83:21, 84:9, 89:1,
89:12, 89:24, 93:16,
152:4, 174:21, 233:1,
238:18, 239:20,
260:10, 260:24
**Officers** - 35:13
**offices** - 169:3,
169:5
**official** - 214:2
**officials** - 30:9,
213:25, 215:18
**often** - 11:21, 76:15,
78:6, 82:12, 83:22,
103:1, 202:16, 203:4,
223:8
**Often** - 230:1
**older** - 80:7
**omission** - 144:8,
168:5
**omit** - 7:7, 173:9
**omitted** - 167:16,
173:10, 190:16
**Once** - 112:2
**once** - 82:4, 82:8,
91:21, 162:5, 258:2
**one** - 2:20, 11:5,
11:17, 15:1, 15:11,
15:18, 20:20, 21:3,
22:8, 26:21, 28:8,
29:4, 33:13, 42:14,
54:9, 54:12, 56:14,
61:17, 65:23, 66:11,
66:25, 74:16, 82:2,
90:17, 91:17, 92:1,
92:6, 92:21, 94:13,
96:7, 101:7, 101:9,
103:4, 106:18,
107:24, 108:23,
109:11, 112:13,
112:19, 112:20,
121:20, 126:11,
127:19, 134:24,
135:4, 136:23,
138:20, 143:15,
147:1, 153:16,
155:23, 160:8,
160:10, 162:25,
164:23, 165:5,
165:19, 166:6, 166:7,
167:16, 168:13,
173:19, 174:16,
176:7, 176:14,
176:18, 177:21,
178:4, 178:7, 178:12,
179:24, 182:19,
183:11, 184:13,
184:22, 186:11,
187:2, 188:17,
189:20, 190:12,
196:15, 197:15,
200:11, 202:8, 208:1,
208:2, 211:9, 219:10,
226:8, 230:19, 243:2,
243:9, 243:17, 244:2,
244:6, 247:14,
251:15, 252:9,
253:25, 256:6,

**256**:17, 256:19,
260:13
**One** - 7:22, 22:19,
77:9, 95:19, 101:4,
106:7, 107:23,
173:17, 182:11,
189:1, 189:22
**one's** - 24:6,
156:25, 202:17,
202:18, 202:22,
202:24
**ones** - 97:22, 145:1
**ongoing** - 236:10
**open** - 65:15, 146:1,
249:25
**opened** - 95:5
**opening** - 2:6,
118:23, 122:9,
122:12, 125:18,
136:2, 167:20, 170:3,
194:2
**operate** - 123:3
**operation** - 92:15,
144:20
**operations** - 75:16
**opinion** - 5:20,
36:7, 36:8, 36:10,
36:19, 37:10, 37:19,
37:21, 194:8, 214:17,
214:19, 214:21,
215:2, 215:7, 215:10,
215:12, 247:9, 247:20
**opinions** - 215:4
**opportunity** -
141:13, 203:12,
205:7, 216:8
**options** - 64:7,
68:11
**orally** - 249:25
**orchestra** - 154:9
**orchestrated** -
136:11
**order** - 15:14, 16:8,
67:7, 147:6, 209:4,
209:19, 222:9,
222:12, 224:7,
225:12, 227:22,
233:24, 234:22,
237:14, 237:24,
238:5, 241:17, 242:7,
243:13, 252:18,
253:20, 254:19,
259:10
**Ordinarily** - 62:8
**ordinarily** - 215:5
**ordinary** - 209:16,
214:5
**Oriakhi** - 5:19
**origin** - 195:6
**original** - 173:1
**originally** - 4:5,
103:19, 111:12,
111:19
**ostensibly** - 21:5,
21:6
**otherwise** - 57:14,
57:16, 59:5, 138:14,
190:22, 216:9,
249:25, 250:20,
260:23
**ought** - 104:10
**ounce** - 91:8, 91:16
**ounces** - 89:5,
91:17, 120:18,
120:19, 149:20
**ourselves** - 130:4,
145:25
**out'** - 85:9
**outcome** - 13:5,
206:1, 206:2, 206:6,

**206**:11, 208:17,
214:10, 224:9, 224:10
**outlandish** - 235:14
**outnumbered** -
248:1
**outside** - 70:20,
97:5, 97:8, 200:23,
249:19
**overall** - 35:24,
36:23, 37:14
**overcome** - 177:13
**overt** - 49:17, 93:1,
93:7, 93:8, 99:10,
141:18, 154:23,
219:1, 219:4, 219:24,
220:18, 221:20
**Overt** - 93:2
**overwhelmed** -
162:24
**overwhelming** -
71:19, 128:24
**overzealous** -
118:17
**owe** - 85:23

**own** - 128:25,
147:11, 148:22,
157:13, 193:23,
197:25, 201:3, 206:4,
209:20, 209:22,
211:4, 213:12,
215:13, 224:25,
247:16

**P**

**pack** - 95:15
**package** - 35:4,
67:22, 80:9, 80:18,
82:23, 87:25, 89:10,
91:6, 189:13
**packaged** - 73:6,
73:7, 80:16
**packaging** - 78:19,
80:12, 91:12, 150:7,
230:13
**Page** - 15:7, 45:25,
84:22, 85:20, 86:9,
86:21, 86:24, 112:6,
256:20, 256:24, 257:6
**page** - 17:4, 114:18,
166:10
**pages** - 42:15
**paid** - 80:10, 98:19
**paint** - 120:15
**painted** - 203:21
**Panicked** - 176:22
**pants** - 73:20
**papers** - 101:12,
101:14, 101:15,
101:16, 101:19,
101:22, 102:5, 105:1,
116:14, 116:17
**Paragraph** - 45:25,
219:1, 219:24
**paragraph** - 8:18,
9:1, 30:17, 31:8,
34:12, 42:14, 45:25,
48:21, 48:22, 53:16,
55:17, 55:19, 55:22,
218:17, 252:4,
252:15, 252:18,
252:25, 253:3, 253:5,
253:7, 253:17,
253:21, 254:2, 254:18
**paragraphs** - 53:9
**paraphernalia** -
230:12
**paraphrasing** -
34:14
**parcel** - 92:16

**parent** - 169:16
**parked** - 155:25
**Parson's** - 94:16
**Parsons** - 79:10,
79:20, 92:21, 93:5,
94:7, 94:10, 94:17,
94:18, 94:20, 95:2,
95:6, 95:9, 95:19,
96:6, 96:8, 96:9,
98:23, 99:2, 141:8,
141:10, 141:17,
151:5, 151:8, 151:10,
151:15, 154:25,
155:2, 155:5, 155:6,
155:11, 155:15,
155:3, 186:5, 186:7,
186:10, 186:21
**Parsons'** - 95:18,
151:6
**part** - 18:19, 21:5,
21:10, 24:10, 24:12,
24:20, 25:1, 32:12,
41:19, 43:20, 45:9,
48:12, 49:18, 90:2,
92:16, 98:25, 99:20,
119:13, 120:1,
153:17, 164:9, 176:2,
190:24, 191:15,
203:23, 206:24,
213:16, 223:12,
225:13, 231:14,
237:8, 237:11, 242:6,
243:7, 252:24
**participant** -
223:19, 224:7, 227:7
**participants** -
223:11
**participate** - 224:2
**participated** -
226:23
**participating** -
139:17
**participation** - 25:5,
25:13, 26:18, 35:23,
224:24, 225:16,
225:19, 226:17
**particular** - 8:20,
130:12, 185:15,
207:10, 234:24, 238:5
**Particularly** -
166:12
**particularly** - 18:5,
133:12, 134:4,
141:10, 165:16,
169:16, 169:17
**parties** - 4:10, 4:13,
4:18, 54:10, 193:1,
194:23, 195:24,
200:12, 216:8,
238:16, 244:3
**partnership** - 35:1,
222:2
**parts** - 108:2,
188:25, 225:22
**party** - 3:2, 194:10,
194:21, 197:15, 198:3
**pass** - 139:21,
184:18, 193:13,
193:16, 228:11,
228:13, 229:1, 229:3
**passed** - 64:24,
65:1, 65:2, 107:8,
107:9, 228:12, 229:2
**passenger** - 75:7,
105:19, 109:24, 110:8
**past** - 102:24,
107:11, 175:6, 175:7,
188:1, 202:23
**Patapsco** - 157:10
**patently** - 135:18

**pattern** - 3:4, 38:19
**Patterson** - 5:24
**Paul** - 76:1
**pause** - 138:21
**paused** - 114:13
**pay** - 83:8, 85:9,
130:12, 192:13
**paying** - 137:9
**peacefully** - 179:19
**pedal** - 145:15
**penalties** - 63:18
**penalty** - 60:8,
165:16
**pending** - 50:1,
236:5
**pens** - 176:16
**People** - 79:25,
138:11, 172:7,
190:18, 191:2, 261:16
**people** - 18:8,
25:25, 34:18, 35:3,
35:14, 37:3, 38:12,
64:25, 65:16, 66:18,
67:14, 67:19, 71:23,
72:11, 73:2, 74:5,
74:22, 75:20, 75:22,
75:23, 76:5, 78:1,
78:13, 79:24, 80:3,
89:14, 90:3, 90:24,
92:1, 94:13, 97:25,
98:16, 99:1, 101:23,
102:3, 102:10, 104:5,
104:24, 109:22,
110:2, 110:4, 111:20,
111:22, 112:20,
112:23, 113:12,
115:5, 118:17, 119:2,
119:14, 119:15,
119:17, 119:18,
120:5, 121:8, 122:5,
124:9, 124:10,
124:18, 124:23,
125:23, 127:7,
127:17, 128:12,
128:25, 131:6,
132:11, 132:15,
133:1, 133:13,
134:18, 142:12,
145:1, 145:7, 145:20,
146:8, 146:15,
147:21, 148:21,
149:1, 149:2, 149:3,
149:25, 150:13,
150:21, 153:21,
154:3, 160:2, 165:19,
166:3, 167:3, 167:15,
168:2, 168:22, 169:4,
170:24, 172:3,
172:13, 172:24,
175:21, 175:23,
176:11, 176:13,
178:17, 179:6,
179:13, 179:14,
180:10, 180:17,
181:6, 182:23, 183:3,
183:9, 190:23,
206:23, 208:9, 209:8,
222:23, 260:19,
260:25
**people's** - 108:3,
137:23
**perceive** - 20:5,
210:16
**percent** - 150:18
**perception** - 143:24
**perceptions** -
130:19
**Percocet** - 142:8
**perfect** - 153:24
**perfectly** - 37:4,

18

38:15, 261:16
**perform** - 194:9, 194:11, 225:20, 225:21
**perhaps** - 153:15, 164:20
**Period** - 17:6
**period** - 19:8, 19:22, 20:6, 30:9, 31:3, 45:17, 46:14, 48:20, 89:10, 143:19, 150:6, 238:5, 238:10
**periods** - 150:9
**perjurer** - 135:23
**perjury** - 21:8, 21:15, 28:13, 77:19, 79:21, 80:23, 81:5, 103:15, 120:10, 122:1, 130:21, 167:13, 169:13
**permitted** - 206:21, 209:7, 214:16, 214:19, 214:20, 246:20
**perpetrated** - 12:1, 236:21
**person** - 11:25, 12:5, 18:4, 21:7, 32:5, 32:10, 60:12, 71:3, 76:2, 78:15, 80:4, 97:18, 103:25, 104:1, 104:6, 106:7, 106:18, 107:23, 107:24, 108:23, 109:11, 110:18, 111:5, 111:9, 111:13, 117:24, 121:6, 121:20, 121:21, 123:20, 128:2, 129:23, 135:13, 137:11, 140:9, 141:22, 148:3, 148:4, 148:5, 151:22, 155:22, 155:25, 156:25, 157:21, 157:24, 159:9, 170:5, 172:14, 178:13, 184:2, 186:15, 199:8, 205:14, 205:18, 210:4, 217:20, 226:10, 227:19, 227:21, 228:4, 230:5, 233:19, 233:20, 236:9, 237:3, 237:6, 238:7, 240:4, 240:5, 241:23, 243:7, 248:21, 249:13, 250:18
**person's** - 141:23, 202:16, 228:2, 245:6
**personal** - 19:18, 19:21, 195:4, 198:1, 207:25, 210:8, 211:3, 214:9, 229:25, 230:6
**personally** - 41:23, 45:2, 48:4, 229:19, 231:7
**persons** - 129:11, 148:24, 149:7, 195:6, 218:8, 221:25, 222:5, 222:10, 223:6, 223:12, 238:14, 238:20
**persuaded** - 198:3
**phone** - 86:6, 86:17, 94:23, 96:21, 115:16, 119:1, 135:10, 136:9
**phones** - 251:10
**photo** - 95:15
**photographs** - 155:19

**phrase** - 10:8
**physical** - 227:17, 227:21, 227:25, 228:4, 230:12, 241:22, 245:14
**physically** - 18:15, 245:8
**pick** - 125:23, 164:18, 178:13, 178:18
**picked** - 81:14, 97:14, 97:22
**picks** - 64:20
**picture** - 90:15
**pictures** - 71:7, 96:13, 97:9, 124:19, 155:18, 155:20, 203:21
**piece** - 88:19, 112:2, 151:10, 182:12
**pieces** - 89:21, 119:19, 123:22
**Pierpont** - 220:1
**pin** - 128:15
**pink** - 153:17, 153:18
**Pinkerton** - 53:1
**pistol** - 95:23, 96:3, 97:6, 97:8, 107:2
**place** - 13:20, 18:9, 19:4, 23:4, 76:9, 140:2, 175:17, 179:1, 203:10, 209:19, 210:5, 211:24, 241:24
**placed** - 211:10, 212:21
**Plaintiff** - 1:4, 1:15
**plan** - 69:20, 69:22, 96:17, 183:25, 224:19, 226:18, 230:14
**planned** - 41:24, 42:7, 45:5, 45:14, 48:17, 136:11, 150:14, 231:10, 231:20
**planner** - 135:16, 135:17
**Planning** - 117:6
**planning** - 206:16, 237:24
**play** - 129:6, 225:22
**played** - 156:20, 182:24, 184:13, 242:6
**playing** - 182:10, 182:16
**plays** - 61:12
**plea** - 13:16, 14:16, 15:20, 61:19, 61:25, 62:3, 62:9, 63:23
**plead** - 211:3
**pleaded** - 65:13
**pleas** - 20:22
**please'** - 108:17
**pleasure** - 40:17
**pled** - 20:23, 21:1, 21:9, 21:13, 21:14, 169:12, 210:22, 211:2
**Pm** - 64:22
**pocket** - 154:13
**podium** - 62:15
**point** - 3:7, 3:20, 4:1, 7:16, 33:25, 52:5, 55:18, 56:18, 56:25, 57:18, 59:23, 70:21, 78:5, 80:14, 91:17, 94:11, 94:15, 96:7, 96:14, 101:18, 107:16, 126:10, 162:9, 166:19,

167:12, 167:25, 169:12, 169:21, 176:7, 189:20, 193:1, 246:2, 259:9, 261:4
**pointing** - 252:25
**points** - 164:12
**pole** - 101:15
**police** - 65:19, 65:24, 71:22, 72:10, 73:13, 76:14, 78:18, 79:17, 82:11, 83:20, 84:9, 89:1, 89:12, 89:24, 90:21, 93:16, 94:2, 94:17, 97:16, 103:2, 119:14, 149:4, 152:2, 152:3, 155:8, 157:7, 157:12, 176:9, 183:2, 187:15, 187:17, 219:13, 219:15
**Police** - 65:21, 77:10, 95:25, 132:17, 233:3, 239:21
**pool** - 35:11, 67:19, 140:3, 175:18, 179:21, 188:22
**pooled** - 82:18, 89:8, 91:15, 91:18
**pooling** - 179:12
**poor** - 143:3, 149:23, 150:3
**popped** - 105:6, 107:4, 108:10, 117:2
**popular** - 130:9
**population** - 132:13
**position** - 57:23
**possess** - 39:8, 42:7, 57:24, 67:3, 117:19, 118:4, 149:8, 150:14, 157:24, 217:24, 218:10, 227:12, 230:11, 231:10, 231:21, 242:1, 243:2, 243:10, 245:5, 257:3
**possessed** - 42:2, 45:2, 45:5, 45:8, 45:15, 48:4, 48:7, 48:11, 48:18, 54:15, 70:15, 71:2, 118:6, 123:19, 123:20, 129:23, 139:5, 150:14, 220:2, 228:24, 229:9, 231:7, 231:13, 242:10, 242:11, 243:18, 244:8, 244:23, 245:17, 245:18
**possesses** - 230:6, 245:10
**possessing** - 54:7, 58:3, 70:13, 70:24, 158:3, 243:25, 246:19
**Possession** - 188:10, 230:7, 241:21
**possession** - 50:19, 55:12, 55:19, 57:10, 60:11, 70:11, 117:17, 154:7, 157:21, 227:13, 227:16, 227:17, 227:20, 227:23, 228:1, 228:2, 228:7, 229:24, 230:3, 230:17, 233:10, 235:22, 241:19, 241:22, 242:4, 242:20, 243:20, 245:8, 245:11, 245:14, 245:15, 245:25, 246:3,

249:12, 251:24, 253:1, 255:4, 259:22
**possibility** - 137:15
**possible** - 51:13, 73:8, 77:17, 79:3, 90:8, 139:14, 179:19, 185:9, 192:14, 230:1, 233:4, 233:21, 234:7, 234:21, 239:22, 241:3, 248:6, 248:15
**possibly** - 173:12
**posted** - 101:15, 101:16
**poster** - 124:4, 145:25
**pound** - 189:2, 189:3, 189:4
**powder** - 189:4, 245:1, 256:21, 256:22, 256:23, 257:3
**powdered** - 227:12
**power** - 125:20, 241:24, 245:12
**powerful** - 137:18, 169:3
**practice** - 61:20
**pre** - 151:16
**pre-january** - 151:16
**precise** - 222:18
**precisely** - 125:13
**predicate** - 254:9, 258:21
**prejudice** - 194:10, 205:1
**premeditated** - 50:8, 60:1, 65:14, 236:22, 237:20, 249:7
**Premeditation** - 69:19
**premeditation** - 50:2, 69:15, 69:18, 116:7, 116:18, 117:6, 232:23, 234:13, 236:17, 237:22, 237:23, 238:6, 238:7, 239:17, 249:8
**preoccupation** - 179:16
**prepared** - 63:3, 249:1
**prerecorded** - 154:6, 154:12
**presence** - 226:6
**present** - 45:25, 128:12, 201:17, 247:13, 255:2, 259:19
**presentations** - 164:4, 164:5
**presented** - 38:9, 199:6, 214:23, 230:18
**preserved** - 6:6, 38:24, 257:23, 257:24
**preside** - 193:5, 248:22
**press** - 167:9, 216:5
**pressing** - 157:8
**pressure** - 104:2
**pressured** - 109:1
**presume** - 47:17
**presumed** - 126:4, 126:5, 126:7, 126:9, 198:12, 226:3
**presumption** - 5:9, 6:10, 126:10, 132:2, 141:15, 195:7, 197:3
**pretend** - 123:10
**pretty** - 61:11, 189:25
**prevail** - 246:23

**prevarication** - 130:23
**preview** - 67:6
**previous** - 257:22, 257:24
**previously** - 211:8, 228:25, 242:25, 246:14, 259:7
**price** - 81:22, 228:19
**prime** - 194:15
**primers** - 244:25
**principal** - 52:17, 192:16
**principle** - 193:10
**print** - 27:6
**prison** - 70:17, 111:11, 139:12
**Prisons** - 137:16
**problem** - 18:19, 86:3, 134:16, 162:9, 162:12, 167:18
**problems** - 153:22, 185:23
**proceed** - 2:15, 57:14, 57:16, 59:5, 62:12, 63:2, 64:11, 260:11
**proceeding** - 213:19, 236:5
**proceedings** - 238:16, 262:9
**Proceedings** - 1:11, 1:24
**proceeds** - 220:4
**process** - 10:25, 192:4, 195:13
**processing** - 230:13
**Proctor** - 1:17, 2:12, 2:14, 3:13, 4:15, 5:6, 5:11, 5:15, 6:14, 6:19, 7:2, 7:19, 8:25, 9:7, 9:14, 9:19, 10:23, 11:10, 11:16, 12:17, 13:3, 13:9, 13:14, 13:18, 13:23, 14:3, 14:13, 14:17, 15:2, 15:25, 16:16, 16:20, 16:22, 16:23, 16:25, 17:6, 17:16, 17:19, 18:1, 18:11, 18:25, 19:5, 19:9, 19:13, 20:15, 20:17, 20:18, 21:21, 22:7, 22:13, 22:15, 22:20, 24:6, 24:18, 24:19, 24:23, 25:2, 25:18, 26:4, 26:14, 26:24, 27:2, 27:9, 27:15, 27:19, 27:24, 27:25, 28:8, 28:11, 28:17, 28:22, 29:3, 29:25, 30:16, 31:6, 31:15, 31:16, 31:24, 32:8, 32:11, 33:4, 33:13, 33:16, 33:23, 34:3, 34:5, 34:12, 35:18, 36:15, 38:25, 39:1, 40:13, 40:20, 41:3, 41:11, 42:16, 43:5, 44:20, 44:21, 46:15, 46:16, 46:19, 46:23, 50:7, 50:16, 51:2, 52:19, 53:13, 55:4, 55:10, 55:11, 55:18, 55:23, 55:25, 56:5, 56:22, 57:7, 57:19, 57:20, 57:22, 58:23, 58:24, 59:13, 63:16, 76:21,

122:12, 125:6,
126:24, 150:8, 158:8,
160:12, 162:13,
162:17, 252:4, 252:8,
252:12, 252:17,
253:13, 256:6, 257:9,
257:15, 257:21, 258:6
**Proctor's** - 124:12,
140:17
**produce** - 54:17,
244:11
**produced** - 1:24
**producing** - 197:14
**production** - 157:6
**professional** -
214:10
**proffer** - 183:11,
185:10
**proficient** - 152:15,
152:20, 153:2, 156:1
**program** - 25:14,
26:17
**prohibited** - 60:12,
71:3, 117:24, 123:20,
129:23, 157:21,
157:24, 249:13
**prohibits** - 217:20
**projectile** - 241:16,
245:3, 254:17, 259:6
**projects** - 144:4
**promise** - 15:12
**promised** - 16:3,
135:24, 208:24,
209:14
**promises** - 146:21,
209:8, 209:9
**promote** - 242:3
**promptly** - 163:17
**pronouncing** - 37:8
**proof** - 5:9, 30:11,
36:21, 37:12, 38:7,
39:14, 54:18, 99:14,
99:15, 141:14,
148:23, 195:4, 195:8,
198:9, 199:10,
202:23, 215:19,
223:2, 223:11, 224:9,
226:15, 244:11
  **Proof** - 221:19
**propellant** - 245:1
**proper** - 20:21,
122:25
**properly** - 224:12
**propose** - 3:23,
30:10
**proposed** - 6:18,
15:8
**prosecute** - 134:2
**prosecuted** - 16:5,
70:2, 70:6, 117:9,
166:25, 209:1,
209:15, 239:5,
239:15, 240:5,
240:15, 240:23
**prosecuting** -
139:19
**prosecution** - 16:7,
194:18, 196:24,
201:20, 208:9, 211:1
**prosecution's** -
201:18
**prosecutors** -
139:23, 167:1, 190:7,
209:3
**protect** - 23:9, 84:4,
84:5, 92:15, 103:20,
121:14, 123:6,
135:15, 168:3,
184:12, 212:2, 238:14
**protected** - 122:6,

124:10, 185:14
**protecting** - 111:7,
168:22, 169:22,
170:4, 173:9
**protection** - 22:21,
24:7, 24:12, 26:17
**proud** - 158:9,
158:10, 171:9
**proudly** - 170:13
**prove** - 54:5, 67:8,
67:9, 67:10, 69:7,
69:8, 70:14, 93:7,
93:8, 99:11, 124:14,
196:25, 198:24,
201:18, 201:22,
221:13, 222:8,
223:16, 233:24,
233:25, 234:23,
234:25, 235:3, 236:1,
236:25, 237:7,
237:15, 237:17,
237:19, 237:25,
238:4, 240:10,
240:21, 241:10,
241:18, 242:15,
243:12, 243:23,
244:21, 245:21,
245:24, 246:2, 246:9,
246:11, 246:13,
246:23, 253:20,
254:10, 254:19,
254:20, 258:25,
259:10, 259:11
**proved** - 195:20,
199:3, 225:5, 237:10
**proven** - 44:4, 47:5,
148:20, 217:9,
230:22, 241:6, 245:15
**proves** - 71:8,
209:12
**provide** - 27:21,
235:7
**provided** - 23:5,
112:12, 219:13,
235:2, 235:4, 235:11,
235:13, 236:9
**provides** - 233:18,
239:3, 240:3, 243:6
**providing** - 69:3,
116:5, 232:25,
233:20, 234:6,
234:19, 239:19, 241:1
**proving** - 197:9,
200:3, 240:12,
243:14, 246:5
**provision** - 14:16,
15:20
**public** - 179:24,
179:25
**publicity** - 32:25,
216:12
**publicly** - 66:6
**pull** - 102:25, 105:4
**pulled** - 65:8, 65:9,
107:4, 108:9
**pulls** - 113:10,
117:1
**pun** - 140:11
**punch** - 37:2,
134:12
**punched** - 141:3
**punishable** - 54:9,
54:12, 70:17, 211:9,
243:1, 243:8, 243:17,
244:1, 244:5
**punished** - 66:6
**punishment** -
78:24, 248:6, 248:15
**Purcell** - 1:15, 2:4,
2:5, 2:9, 3:8, 3:10,

4:9, 4:21, 5:4, 7:5,
7:17, 8:14, 11:8,
11:14, 12:7, 12:20,
13:1, 13:7, 13:12,
14:11, 15:5, 15:10,
15:23, 16:13, 16:19,
17:20, 17:21, 20:13,
21:3, 21:14, 21:19,
21:24, 22:5, 24:9,
24:10, 24:20, 24:25,
25:10, 25:23, 26:12,
27:17, 28:3, 28:6,
28:15, 28:20, 29:1,
29:7, 29:14, 29:19,
29:24, 30:14, 30:21,
31:4, 31:13, 33:2,
33:11, 39:4, 39:11,
39:20, 41:9, 41:17,
42:19, 42:20, 42:24,
43:5, 43:7, 43:18,
44:12, 44:15, 45:24,
47:13, 47:16, 49:13,
50:5, 50:14, 50:21,
50:25, 51:3, 51:6,
51:12, 52:2, 52:9,
52:12, 52:16, 52:25,
53:11, 53:25, 55:2,
55:9, 55:17, 56:20,
57:3, 59:2, 59:21,
60:3, 60:7, 60:20,
61:2, 61:3, 62:1, 62:6,
64:2, 118:23, 122:8,
136:2, 138:1, 142:16,
145:24, 162:11,
163:12, 163:25,
164:1, 182:11,
182:17, 191:14,
191:15, 251:19,
252:15, 252:19,
252:24, 253:7,
253:10, 253:15,
253:17, 253:23,
254:3, 255:11, 256:8,
256:12, 257:18, 258:5
**purchased** - 79:12
**purely** - 242:17
**purpose** - 19:13,
20:17, 50:3, 53:24,
54:22, 54:25, 212:22,
218:24, 222:1,
222:18, 222:19,
223:14, 224:3, 227:6,
229:25, 237:16,
244:24, 244:19,
247:10
**purposely** - 213:4,
234:15, 242:11,
245:19
**purposes** - 58:20,
222:2, 224:22,
226:20, 226:24
**Purpura** - 40:15,
40:16, 40:17
**purse** - 139:3
**push** - 168:21
**put** - 3:23, 31:2,
31:9, 63:14, 70:20,
76:10, 90:13, 93:24,
107:19, 145:15,
148:13, 148:14,
153:1, 155:17,
177:17, 188:7
**puts** - 136:23, 190:6
**putting** - 189:11
**puzzle** - 89:21,
119:19

215:3
  **quality** - 128:1,
228:18
  **qualms** - 152:3
  **quantities** - 48:14,
63:18, 72:3, 91:16,
146:7, 154:23, 218:20
  **Quantity** - 90:5
  **quantity** - 43:10,
43:19, 43:20, 44:9,
44:14, 44:17, 44:23,
45:1, 45:4, 45:7,
45:11, 45:13, 45:19,
47:10, 47:19, 47:21,
48:3, 48:6, 48:10,
48:16, 48:23, 57:12,
58:13, 58:16, 58:19,
151:4, 219:18,
219:22, 220:2, 220:7,
220:16, 230:2, 230:7,
231:1, 231:3, 231:6,
231:9, 231:12,
231:16, 231:19,
231:23, 232:12
  **quarter** - 61:11,
91:8, 149:19
  **questioned** - 97:15,
114:2, 114:4
  **questioning** -
113:13, 113:16
  **questions** - 7:13,
71:15, 97:13, 106:14,
107:17, 116:9,
117:17, 119:7, 119:8,
163:10, 165:25,
167:21, 167:24,
174:1, 174:24, 175:1,
177:21, 181:12,
194:4, 200:6
  **quick** - 67:6, 152:11
  **quickly** - 124:24,
125:5, 133:14
  **quite** - 23:3, 128:19,
162:7, 164:3, 211:23,
214:6
  **quote** - 139:6,
217:23

## R

  **race** - 195:5
  **racially** - 56:12
  **radio** - 216:6,
216:16
  **Rain**- 61:18, 62:2,
65:1, 80:17, 83:25,
102:13, 108:3,
121:16, 128:16,
135:21, 135:22,
136:24, 137:7,
137:12, 137:13,
138:22, 139:9, 148:4,
165:6, 165:17, 170:8,
171:6, 177:20,
177:22, 177:25,
179:1, 190:13
  **rains** - 131:9
  **raised** - 2:20,
169:18
  **ran** - 74:18, 96:25,
97:1, 103:12, 105:25,
117:4, 159:17,
159:18, 159:23, 175:5
  **range** - 159:18
  **raped** - 127:23
  **Rarely**- 202:23
  **ratchets** - 93:21
  **ratings** - 163:2
  **rational** - 124:18
  **ratting** - 155:5

  **Raymond**- 168:23
  **reach** - 126:1,
157:18, 158:25,
159:1, 247:14
  **reached** - 141:14,
249:16, 250:8,
250:17, 250:15,
250:22
  **reaching** - 21:10,
195:3, 195:19, 215:1
  **reaction** - 154:19
  **read** - 8:1, 10:9,
30:18, 33:19, 35:17,
44:1, 47:2, 50:9, 54:2,
61:10, 84:23, 134:6,
164:17, 191:18,
216:5, 216:25,
217:10, 217:13,
221:9, 229:11, 239:8,
252:13, 254:18,
255:17, 255:21,
255:25, 257:10,
258:13, 260:6
  **readily** - 241:15,
245:3, 254:16, 259:5
  **reading** - 12:7,
191:23, 192:5, 216:14
  **reads** - 7:24, 218:2,
242:21
  **ready** - 2:15, 20:20,
27:7, 28:1, 60:15,
62:12, 63:2, 64:11,
218:22
  **real** - 181:25,
182:14, 223:6
  **reality** - 39:23,
170:2, 180:24
  **realization** - 209:13
  **really** - 11:23,
36:13, 39:7, 40:4,
45:24, 98:3, 102:3,
109:25, 124:2, 130:2,
133:11, 138:23,
139:11, 141:6,
143:13, 146:21,
147:24, 152:11,
158:6, 158:7, 164:10,
165:2, 166:10,
173:13, 176:20,
179:10, 179:25,
189:25
  **reason** - 25:19,
25:24, 77:17, 89:24,
109:8, 109:11, 120:6,
136:14, 165:18,
168:8, 168:9, 175:25,
184:14, 190:18,
191:22, 196:6,
197:12, 202:8,
208:12, 215:13,
260:22
  **reasonable** - 5:12,
5:17, 5:21, 6:1, 6:5,
6:7, 35:6, 44:8, 44:17,
47:9, 54:5, 68:13,
124:15, 126:12,
126:15, 126:20,
128:14, 129:9,
129:17, 130:2, 132:1,
134:14, 141:15,
145:3, 145:11, 148:7,
153:12, 158:22,
193:19, 195:21,
197:1, 197:6, 197:10,
199:4, 199:20, 201:4,
201:19, 203:11,
207:6, 209:13,
221:15, 222:8,
223:16, 225:2,
229:14, 231:1, 234:1,

## Q

  **qualifications** -

235:10, 237:1,
237:12, 237:20,
240:11, 240:21,
241:6, 241:10,
243:13, 243:23,
244:21, 245:24,
246:24, 248:13,
254:11, 254:21,
258:25, 259:12
  **reasonably** - 42:3,
45:10, 45:16, 48:13,
48:19, 231:15, 231:22
  **reasoned** - 202:12
  **reasons** - 23:20,
26:6, 35:8, 38:21,
207:1, 212:14, 215:4
  **rebuttal** - 61:2,
162:6, 162:15,
162:20, 162:22,
163:11, 164:10,
164:11, 166:17
  **recantation** -
142:18
  **receive** - 23:7, 79:5,
207:21, 211:25
  **received** - 80:24,
81:3, 81:19, 135:10,
139:16, 162:3,
193:25, 200:10,
200:16, 200:17,
209:24, 250:15
  **receiving** - 228:19
  **recently** - 73:4
  **recess** - 62:22,
221:2, 221:4, 221:5
  **Recess**- 62:23,
161:5, 221:6
  **Recessed**- 262:6
  **recipient** - 235:6,
236:8
  **reckless** - 237:10
  **recognize** - 58:10
  **recollection** -
138:9, 153:22,
193:23, 205:10,
205:20
  **recommendation** -
164:16
  **recommended** -
36:1
  **Record**- 63:8,
251:16, 260:16
  **record** - 6:7, 38:22,
38:24, 56:11, 63:15,
200:3, 202:22,
260:18, 262:9
  **recorded** - 1:24,
84:14, 136:17,
191:20, 191:21
  **recovering** - 155:16
  **recross** - 144:15
  **red** - 112:15, 151:12
  **redacted** - 3:5
  **redirect** - 142:17
  **redo** - 256:2
  **reduce** - 41:18,
41:21, 42:9
  **reduced** - 39:21
  **refer** - 32:19, 62:18
  **reference** - 6:25,
14:2, 22:22, 24:11,
24:16, 27:18, 60:17,
167:17, 211:16,
240:1, 256:23
  **referenced** - 52:22
  **references** - 51:21,
164:15, 172:11
  **referred** - 165:13
  **referring** - 255:1,
259:18

  **refers** - 42:12, 60:7
  **reflect** - 56:11,
248:2
  **refreshing** - 164:13
  **refused** - 111:1
  **regard** - 15:6,
200:13, 223:9, 224:6,
237:3
  **regarded** - 23:15,
212:9
  **regards** - 131:16
  **regiven** - 251:21
  **regularly** - 91:1
  **reimbursed** - 98:20
  **relate** - 20:5, 68:23,
210:16
  **related** - 38:14,
100:5, 100:16
  **relates** - 92:24
  **relating** - 116:6,
233:3, 233:21, 234:7,
239:22, 241:2
  **relation** - 21:15,
60:10, 70:1, 233:8,
235:20, 239:4,
239:14, 240:4,
240:18, 249:10,
251:25, 252:1, 253:2,
253:15, 254:9,
254:22, 258:20,
259:13
  **relationship** -
94:22, 204:21
  **relax** - 64:13
  **relevant** - 193:6,
217:17, 233:16,
240:2, 243:5
  **religion** - 195:6
  **Relly**- 98:11
  **Relly's**- 98:12
  **relocate** - 80:25,
83:9
  **relocated** - 22:23,
23:13, 23:21, 25:9,
25:17, 26:1, 26:2,
26:7, 81:5, 90:4,
119:24, 121:7,
127:18, 211:17,
212:6, 212:15
  **relocation** - 23:15,
23:23, 25:14, 25:20,
25:24, 146:14, 212:9
  **reluctant** - 83:1
  **rely** - 151:3, 193:22
  **relying** - 186:21
  **remain** - 260:10
  **remaining** - 55:7,
232:14
  **remains** - 201:20
  **remarks** - 165:25
  **remember** - 77:6,
78:20, 81:9, 82:3,
83:14, 84:16, 93:15,
97:6, 97:23, 101:25,
103:1, 108:4, 108:8,
109:3, 114:22, 118:1,
134:16, 137:24,
137:25, 138:1, 138:4,
142:16, 144:7,
144:15, 144:18,
154:2, 156:25,
172:21, 177:7,
182:24, 205:21
  **Remember**- 61:23,
78:17, 108:7, 108:14,
134:1, 139:1, 171:11,
188:20
  **remembers** - 8:21,
75:2, 187:7
  **remind** - 195:14,

199:22, 216:21
  **reminder** - 33:1
  **remote** - 235:14
  **remove** - 4:10
  **repeat** - 207:12,
207:13
  **report** - 100:25,
154:19, 204:18,
216:4, 247:2, 261:14
  **reports** - 149:4,
216:7, 216:24
  **represent** - 158:9,
158:10
  **request** - 2:21, 5:11,
5:23, 13:25, 17:2,
22:9, 22:16, 34:10,
38:22, 58:1, 58:7,
120:2
  **requested** - 6:7,
37:24
  **require** - 54:17,
164:22, 228:16,
236:4, 236:7, 244:10
  **required** - 6:12,
6:25, 30:25, 36:21,
37:11, 38:6, 101:3,
128:9, 198:11,
199:16, 201:22,
206:24, 215:23,
221:21, 226:22,
242:15, 245:21,
246:22
  **requirement** -
198:22, 238:3
  **requires** - 166:17,
196:20, 225:24,
228:14, 228:21,
229:5, 260:1
  **reread** - 252:3,
252:20, 252:21,
253:3, 254:7, 257:13,
257:23
  **resolve** - 193:18,
203:19
  **resonated** - 127:19
  **resources** - 123:7
  **respect** - 2:16, 2:21,
6:17, 18:19, 35:19,
49:11, 59:6, 214:18,
236:3, 237:20, 258:19
  **respective** - 62:10
  **respectively** -
233:7, 235:19
  **respond** - 182:20,
250:6
  **responsibility** -
124:11, 124:12,
124:14, 191:10,
191:11
  **responsible** -
122:14
  **rest** - 16:18, 42:9,
48:8, 48:21, 49:1,
58:22, 58:25, 179:20,
184:7, 259:8
  **restated** - 255:13
  **restrict** - 5:25
  **rests** - 215:15,
248:9
  **result** - 197:1
  **resulting** - 220:13,
220:21
  **retaliate** - 12:10,
50:1, 69:10, 98:12,
116:5, 233:19, 234:5,
234:9, 238:22,
239:18
  **retaliation** - 49:23,
59:3, 59:24, 69:2,
70:7, 116:10, 129:18,

219:12, 232:15,
232:18, 232:25,
235:7, 236:6, 236:8,
238:15, 238:17,
238:21, 240:25, 249:3
  **retiring** - 248:20
  **retrieve** - 14:25,
40:7
  **retrieving** - 40:8
  **return** - 90:3,
196:10, 250:17
  **returned** - 51:16,
251:12
  **reveal** - 250:18
  **reviewing** -214:11
  **revised** - 2:17
  **revolver** - 219:9
  **rewriting** - 256:20
  **Richard**- 1:12
  **ride** - 86:11
  **ridicule** - 171:25
  **rights** - 23:3, 211:23
  **rise** - 38:17
  **risk** - 23:9, 212:3,
237:13
  **river** - 157:14
  **Road**- 76:4, 81:11,
95:1
  **rob** - 142:5
  **Robert**- 17:14,
79:10, 94:7, 111:10,
141:8, 141:10, 141:17
  **rock** - 131:4, 131:8,
132:19, 140:11
  **rocket** - 115:7
  **rocks** - 75:7, 87:8
  **Roddy**- 102:21,
106:2, 112:17, 113:1,
113:7, 113:14,
113:16, 113:20,
114:1, 114:3, 114:10,
114:17, 114:23,
114:24, 115:15,
174:24, 175:2, 175:7,
175:9, 175:14,
181:12, 181:15,
181:20
  **Roddy's**- 113:2,
115:14
  **role** - 3:1, 193:13,
225:23, 251:1
  **roles** - 225:22
  **Rolland**- 258:17,
262:12, 262:13
  **rolling** - 18:15,
143:8
  **room** - 84:21, 97:11,
126:9, 161:3, 188:7,
191:3, 191:25,
200:20, 202:4,
221:11, 248:20,
249:20, 250:4
  **Ross**- 102:18,
109:13, 109:24,
110:1, 110:5, 110:6,
110:12, 112:21,
112:24, 113:6,
113:13, 113:18,
114:8, 115:6, 121:24,
142:22, 165:7, 166:8,
166:11, 166:12,
171:5, 172:23, 173:4,
176:20, 180:15
  **Ross**- 103:11,
105:17, 112:14
  **round** - 105:5,
107:4, 108:9, 149:17
  **rounds** - 70:13,
70:18, 243:3
  **Rp**- 219:11, 219:12

  **rule** - 158:17
  **rules** - 125:14,
136:6, 158:19, 159:7,
177:6, 177:10,
216:19, 217:8
  **run** - 29:24, 42:10,
103:5, 107:10,
180:23, 189:23
  **running** - 73:21,
74:4, 74:22, 90:24,
105:13, 181:11
  **runs** - 170:22,
174:8, 248:23
  **rushed** - 118:18

**S**

  **sacrificed** - 190:24
  **safe** - 83:10, 228:3
  **safety** - 23:2, 83:5,
190:25, 211:21
  **sake** - 153:16
  **sale** - 85:15, 86:5,
86:14, 86:19, 228:16,
228:17
  **Sale** - 27:5, 27:10
  **sales** - 85:13, 85:18,
85:19, 86:4, 86:8,
88:5, 88:6, 88:8,
88:20, 182:5, 219:18,
219:22, 220:6, 220:16
  **sample** - 115:15
  **sand** - 131:6,
131:10
  **Sand** - 3:3, 12:24,
14:18, 14:25, 22:16,
22:17, 26:15, 28:24,
30:18, 34:6, 34:7,
34:10, 35:18, 35:20,
36:4, 36:11, 36:13,
38:19, 40:7, 40:12,
41:13, 42:11, 42:13,
42:25, 43:7
  **Sand's** - 13:25
  **Sarge** - 93:24
  **sat** - 133:13,
165:21, 169:5,
172:10, 173:24
  **Satisfactory** - 55:1
  **satisfactory** -
15:22, 53:10
  **satisfied** - 64:6,
117:4, 223:20, 242:8
  **satisfies** - 20:16
  **satisfy** - 222:12,
234:22, 237:4, 237:9,
237:25, 238:8,
241:17, 245:16, 246:5
  **save** - 159:19
  **saw** - 65:3, 73:17,
73:18, 73:19, 73:20,
73:23, 74:1, 74:2,
74:17, 75:17, 76:5,
76:6, 76:17, 77:22,
78:10, 79:1, 80:19,
81:17, 82:12, 82:25,
83:1, 84:6, 84:10,
84:11, 90:23, 91:20,
95:3, 96:13, 96:24,
97:9, 98:2, 98:17,
100:20, 101:14,
101:15, 101:16,
101:19, 101:21,
101:22, 102:17,
102:18, 102:20,
102:22, 102:23,
102:24, 102:25,
103:5, 103:6, 103:8,
104:13, 104:22,
105:3, 105:4, 105:12,

106:22, 107:9, 108:5,
116:14, 116:22,
117:19, 119:3,
120:16, 120:21,
120:23, 122:3, 122:5,
128:6, 168:13,
168:14, 169:9, 171:2,
172:19, 174:1,
176:21, 176:23,
176:24, 182:25, 190:1
**Scale** - 96:22
**scale** - 92:3, 96:22
**scare** - 121:5,
123:10, 178:25
**scared** - 66:21,
104:13, 104:16,
104:17, 121:11,
122:7, 174:5, 175:23,
181:16, 181:18
**Scarface** - 144:19
**scary** - 174:15,
178:25
**scenarios** - 52:25
**scene** - 95:19,
105:17, 106:7,
106:17, 106:19,
107:20, 109:7,
109:15, 110:4,
111:10, 111:24,
112:14, 121:18,
155:19, 157:11,
186:11, 186:24,
226:6, 242:5, 255:5
**schedule** - 61:1
**Schedule** - 218:14
**scheme** - 63:12,
222:17, 222:19,
224:10, 225:23
**schemes** - 63:17
**science** - 202:21
**scientist** - 115:7
**scope** - 225:11
**scream** - 133:20
**screen** - 106:18,
232:5
**screens** - 112:8
**scrutinize** - 204:2,
208:13, 209:17
**scrutinized** - 207:9
**scrutiny** - 19:24,
210:10
**seat** - 56:10, 75:7,
109:25, 110:3, 110:8,
135:24, 143:4
**Seattle** - 102:18,
107:21, 111:10,
111:16, 121:20,
146:12, 146:18,
146:20, 167:18,
169:22, 170:6, 171:8,
186:2
**second** - 8:17,
10:21, 22:19, 28:8,
33:13, 34:6, 34:9,
54:1, 55:6, 55:14,
59:15, 59:16, 67:25,
70:8, 78:1, 80:4, 90:5,
93:24, 97:11, 117:20,
117:25, 120:4,
123:13, 126:6,
127:12, 127:13,
144:5, 145:24, 146:9,
152:4, 218:17,
221:17, 223:15,
231:8, 234:4, 236:24,
240:16, 241:9,
244:20, 251:15,
251:21, 253:17,
254:7, 254:10,

258:19, 258:22,
258:23, 258:24,
260:13
**Second** - 36:10,
45:3, 48:5, 69:9,
243:18, 257:2
**seconds** - 182:13
**secrecy** - 223:4
**secret** - 171:18
**section** - 233:9,
238:14, 239:2,
239:24, 240:3
**Section** - 51:18,
217:19, 217:22,
218:15, 221:23,
233:6, 233:12,
233:17, 234:10,
235:18, 235:21,
235:24, 236:14,
236:18, 243:5
**sections** - 154:11,
233:14
**secure** - 23:6,
24:16, 27:22
**security** - 260:23
**See** - 112:8, 257:5
**see** - 14:24, 40:15,
40:16, 40:19, 51:9,
52:24, 55:11, 55:16,
61:8, 61:12, 62:13,
62:20, 64:23, 66:19,
67:25, 68:10, 69:1,
83:12, 93:4, 96:20,
99:18, 105:4, 106:4,
109:17, 109:20,
113:2, 114:9, 117:1,
142:20, 143:6,
149:16, 162:25,
171:2, 173:13, 174:3,
177:9, 177:11, 178:4,
180:11, 184:14,
186:8, 255:12, 262:4
**seed** - 145:18
**seeing** - 35:13, 75:3
**seem** - 204:10
**seized** - 76:21
**select** - 125:16
**self** - 242:18, 260:2
**self-explanatory** -
242:18, 260:2
**sell** - 67:20, 82:6,
82:24, 87:12, 89:3,
91:24
**selling** - 34:19,
35:10, 35:11, 37:3,
38:13, 72:14, 79:19,
82:17, 83:22, 89:4,
89:7, 90:6, 90:16,
98:5, 99:6, 146:7
**Selling** - 17:23
**sells** - 72:12, 90:10
**semiautomatic** -
107:1
**semicolon** - 41:24,
42:1
**send** - 52:23, 66:7,
122:12, 188:2,
190:22, 249:19,
250:23
**send-a-message** -
188:2
**sending** - 250:10
**sense** - 32:4, 90:20,
118:20, 126:2,
143:23, 198:1, 201:4,
202:8, 205:22,
213:10, 215:14,
223:7, 248:8, 248:19
**senseless** - 156:7
**sent** - 65:7, 96:19,

116:24, 180:7,
181:17, 188:1, 261:25
**sentence** - 15:12,
26:5, 26:14, 27:10,
27:12, 166:9, 169:11,
248:9, 255:12,
255:15, 256:8, 256:9
**sentenced** - 137:8
**sentencing** - 58:20,
63:17, 137:14
**separate** - 14:18,
14:23, 34:14, 36:23,
37:13, 38:5, 38:8,
38:10, 66:25, 89:17,
196:10, 225:20
**separated** - 137:17
**separately** - 196:10
**September** - 18:6,
19:12, 64:17, 68:24,
70:12, 70:25, 102:8,
102:15, 135:6,
139:22, 166:14,
166:19, 167:10,
220:19, 232:20,
234:3, 239:10,
242:23, 243:15
**Sergeant** - 8:19,
74:7, 74:18, 74:19,
74:25, 93:18, 93:19,
93:23, 152:11,
152:13, 152:23,
153:5, 154:16, 154:18
**serial** - 154:6,
154:12
**series** - 203:5,
218:25
**serious** - 181:3,
187:22, 194:17,
237:13
**serve** - 180:8
**served** - 207:23
**serving** - 160:14
**Session** - 162:1
**sessions** - 185:10
**set** - 39:24, 63:17,
78:1, 133:22, 139:18,
172:3, 183:9, 183:13,
183:18, 183:19,
184:2, 189:17,
239:24, 244:22
**sets** - 71:21, 72:23,
73:3, 89:17, 91:25
**Seven** - 168:17
**seven** - 56:13,
56:14, 68:19, 77:3,
89:6, 90:18, 91:8,
91:9, 91:24, 92:6,
95:6, 99:4, 102:10,
117:14, 131:16,
133:1, 133:13,
144:23, 145:6, 145:7,
147:14, 147:21,
164:24, 165:1,
168:13, 180:22,
182:7, 182:13, 187:1
**seven-year** - 68:19
**several** - 34:14,
35:9, 120:20
**severed** - 95:7
**severity** - 32:15
**sewer** - 127:22
**sex** - 127:22,
171:24, 195:6
**shade** - 204:25
**shall** - 233:22,
240:7, 243:7, 251:3,
251:4
**shallow** - 129:8
**Shameka** - 102:18,
103:11, 105:17,

108:22, 109:13,
112:14, 112:21,
112:24, 113:13,
113:18, 114:8, 115:6,
121:23, 142:22,
165:7, 166:8, 166:11,
166:12, 171:5,
172:23, 175:5, 176:20
**Shaquanda** -
105:19, 109:13,
111:2, 111:6, 112:21,
112:25, 113:14,
114:9, 115:6, 121:25,
142:24, 143:3, 165:7,
166:8, 166:11,
172:23, 173:1, 173:8,
175:5, 179:4
**sheep** - 159:19
**sheet** - 46:25, 57:2,
57:8, 58:23, 61:14,
63:14, 135:2, 188:7,
188:9, 196:12,
250:13, 250:24,
250:25, 251:6, 262:1
**shell** - 95:18, 95:20,
117:19, 117:20
**Sherlock** - 134:6
**Sherod** - 89:14
**Sherpa** - 142:4
**Sherpas** - 132:12,
132:21, 133:1,
135:14, 145:7,
147:14, 158:21
**shifts** - 197:11,
201:21
**shit** - 85:22, 88:4,
113:21
**shoes** - 177:17,
177:18
**shoot** - 96:5, 99:1,
147:6, 183:1, 220:11,
220:21
**shooter** - 95:16,
104:3, 108:13,
108:15, 110:16,
121:16, 146:23,
147:1, 178:14,
183:17, 183:19
**shooters** - 156:16
**shooting** - 92:18,
92:20, 93:4, 94:3,
95:14, 95:19, 96:8,
97:3, 97:7, 98:23,
103:3, 103:6, 103:8,
103:10, 105:14,
107:11, 109:21,
141:9, 141:17,
142:23, 154:24,
154:25, 155:3,
155:11, 155:14,
157:18, 178:1,
186:11, 219:10,
219:15
**shoots** - 182:15
**short** - 21:17, 96:25,
108:12, 113:5, 200:6,
216:10, 228:14,
228:20, 229:4
**shorten** - 39:6
**shorter** - 3:15,
12:23, 39:16, 42:21,
259:8
**shortfalls** - 159:5
**shortly** - 98:1, 118:7
**shot** - 65:10, 65:13,
66:10, 79:11, 94:3,
94:8, 96:9, 96:10,
97:1, 99:4, 99:7,
111:13, 117:3, 117:4,
118:4, 129:18, 137:1,

143:5, 154:18, 155:6,
168:13, 168:14,
174:8, 180:22,
186:15, 186:17,
187:9, 187:12, 187:13
**shots** - 108:13,
117:14
**shoulder** - 24:24,
42:18
**show** - 32:3, 70:15,
75:21, 152:5, 176:14,
188:8, 206:25,
222:21, 230:13,
235:10, 235:12, 238:5
**showed** - 117:14,
135:1
**shown** - 68:13,
203:4
**shows** - 31:10,
88:23, 216:1
**sic** - 100:5, 150:17,
174:22
**sick** - 180:10
**side** - 49:9, 76:3,
76:4, 105:19, 105:20,
109:24, 155:23,
197:18, 198:6, 255:19
**sides** - 11:19,
207:14
**sidetracked** - 28:9
**sidewalk** - 107:7
**Siffert** - 3:4, 12:24,
14:25, 26:15, 28:24,
30:18, 34:10, 35:18,
35:20, 36:5, 36:11,
36:13, 38:19, 40:7,
40:12, 41:13, 42:12,
42:14, 42:25, 43:8
**sign** - 40:23, 249:15
**signed** - 249:22
**significance** - 58:9,
59:23, 201:24
**significant** - 118:16
**similar** - 74:8,
125:3, 135:24, 211:2
**similarity** - 196:21,
226:12
**Similarly** - 201:1,
222:15, 226:8
**simple** - 45:24,
46:1, 122:3, 159:12,
165:14, 168:7,
172:23, 197:12
**Simple** - 117:10
**simplest** - 144:22
**Simply** - 228:10
**simply** - 26:19,
43:13, 67:14, 69:25,
70:11, 133:2, 184:24,
200:5, 235:15, 248:1
**single** - 35:23, 36:2,
46:7, 91:21, 121:21,
151:10, 165:19,
172:16, 225:24
**sinister** - 153:21
**sinker** - 147:20
**Sit** - 54:13
**sit** - 125:23
**site** - 259:23
**sitting** - 39:22, 56:9,
85:15, 109:19, 110:6,
110:8, 133:6, 136:23,
139:2, 143:4, 156:21,
170:16, 174:7,
178:11, 178:20
**six** - 95:15, 117:14,
165:1, 168:17,
178:20, 254:2
**six-pack** - 95:15
**size** - 205:14

**skewer** - 190:5
**skill** - 214:22
**slash** - 49:24
**slate** - 197:2
**slept** - 18:15
**slide** - 105:4, 107:4, 108:9, 117:1
**slithering** - 151:12
**slowly** - 192:14
**Small** - 78:8
**small** - 72:6, 78:9, 90:10, 90:16, 146:7, 213:7
**smash** - 65:5, 102:2, 104:22
**smashed** - 123:22
**Smith** - 86:23, 86:25, 87:14, 87:19, 87:24, 88:3, 88:8, 88:12, 88:16
**snapshot** - 128:6, 129:12
**snapshots** - 77:2
**snitch** - 66:9, 177:2, 177:4, 180:22
**snitched** - 65:19, 99:3
**snitching** - 124:8, 187:12, 187:13
**so-called** - 206:19, 207:18
**socializing** - 137:4
**society** - 133:7
**sold** - 35:12, 73:7, 84:11, 89:11, 89:12, 89:13, 172:3
**sole** - 55:19, 193:15, 194:6, 203:15
**solely** - 194:25, 215:15, 247:6, 247:15, 248:13
**someone** - 18:15, 32:2, 34:21, 66:15, 67:21, 72:8, 78:23, 81:4, 98:5, 98:6, 99:6, 120:10, 130:14, 146:2, 147:25, 189:20, 204:17, 214:24, 238:23
**sometime** - 151:25, 154:5
**Sometimes** - 183:19
**sometimes** - 162:24, 182:23, 183:18, 184:21
**Somewhat** - 117:17
**somewhere** - 34:25, 51:25, 68:17, 70:20, 137:6, 140:2, 149:5
**Soon** - 98:8
**soon** - 94:21, 112:23, 151:25, 163:19
**Sorry** - 167:23, 175:10, 189:3
**sorry** - 6:14, 13:17, 46:18, 52:11, 113:10, 119:18, 252:5
**sort** - 2:7, 24:21, 29:21, 30:18, 39:24, 118:9
**sounds** - 2:5, 181:23
**Source** - 85:1, 85:25
**source** - 81:9, 188:19, 188:21
**Southern** - 75:1
**speaking** - 35:20, 164:4
**Special** - 75:13,

75:19, 75:23
**special** - 43:11, 43:15, 59:11, 69:16, 214:22
**Specific** - 6:24
**specific** - 5:22, 6:11, 6:15, 54:23, 69:10, 93:15, 94:6, 116:4, 128:9, 196:18, 198:15, 198:23, 224:3, 234:5, 234:17, 244:18
**Specifically** - 100:14
**specifically** - 5:16, 14:5, 25:15, 31:24, 32:19, 37:10, 53:34, 54:23, 68:23, 100:9, 244:17
**specified** - 218:20
**speculate** - 125:1
**spelled** - 9:19
**spend** - 124:20
**spends** - 179:20
**spent** - 64:19, 83:6, 83:10, 92:8, 185:20
**spite** - 237:17
**splitting** - 140:13
**spoken** - 72:25, 76:24, 120:7, 222:22
**spokesperson** - 248:23
**spontaneous** - 116:21
**spur** - 69:21
**Squillacote** - 37:7, 37:9
**stack** - 85:4, 85:5, 85:8
**stacks** - 182:3
**stage** - 188:2
**stake** - 208:17, 224:8
**stand** - 124:23, 125:19, 131:11, 133:17, 143:15, 143:18, 153:8, 164:23, 170:12, 174:1, 174:6, 177:8, 178:10, 194:23, 202:2, 205:10
**standard** - 190:9, 237:12
**standing** - 65:4, 76:5, 102:19, 103:8, 104:5, 104:21, 115:9, 133:6, 141:11, 153:12, 154:9, 168:24, 170:21, 170:22, 180:21
**Standing** - 74:21
**stands** - 250:20
**start** - 2:11, 71:9, 73:13, 93:14, 101:1, 133:14, 149:15, 160:24, 163:16, 174:25, 177:25, 192:15, 216:23, 261:5, 261:9, 261:11, 261:21
**started** - 23:7, 64:17, 68:8, 76:9, 94:12, 103:6, 105:13, 125:10, 151:7, 174:23, 177:24, 212:1
**starting** - 84:24, 161:4
**starts** - 143:3
**State** - 70:21, 232:20, 242:23

**state** - 41:21, 54:11, 139:24, 193:10, 202:16, 202:17, 202:18, 202:24, 214:1, 218:4, 237:2, 239:11, 244:4, 246:7, 246:10, 246:18
**statement** - 8:7, 9:15, 9:16, 10:3, 10:14, 22:12, 25:11, 27:8, 28:2, 28:13, 29:11, 61:24, 62:2, 62:8, 118:24, 199:25, 200:1, 200:2, 201:10, 212:18, 212:21, 212:24, 213:5, 213:13, 213:15
**statements** - 8:3, 8:6, 8:9, 8:19, 8:20, 8:22, 9:3, 9:6, 9:11, 9:24, 10:6, 10:11, 10:16, 29:6, 93:17, 101:3, 101:4, 101:9, 122:9, 122:12, 194:2, 201:7, 201:13, 223:10, 225:1
**States** - 1:1, 1:3, 1:13, 5:19, 5:24, 36:5, 36:9, 36:18, 37:8, 37:18, 38:1, 100:1, 123:1, 123:7, 158:11, 194:19, 217:19, 217:22, 218:15, 221:23, 233:6, 233:9, 233:11, 233:14, 233:17, 234:9, 235:18, 235:21, 235:23, 236:14, 236:18, 238:13, 239:3, 239:6, 239:16, 239:24, 240:2, 240:6, 240:16, 240:23, 243:6
**statute** - 50:9, 217:18, 233:16, 238:13, 238:21, 240:2, 243:5
**statutory** - 14:19, 14:20, 50:2, 51:21, 58:9, 63:12, 63:16
**stay** - 12:20, 12:21, 16:18, 22:3, 55:22, 137:19, 139:12, 168:9
**stays** - 158:16
**steal** - 142:6
**stenography** - 1:24
**step** - 110:24, 177:18
**Stewart** - 100:20, 134:25
**sticking** - 170:10
**Still** - 150:19
**still** - 60:1, 66:18, 88:17, 93:12, 150:18, 166:15, 168:4, 169:2, 169:6, 173:11, 174:10, 174:12, 177:1, 189:6
**stipulated** - 54:10, 54:13, 244:3, 244:6
**stipulation** - 61:21, 117:22, 200:11
**stipulations** - 7:14, 200:10
**stitches** - 168:18
**stones** - 87:7, 87:8
**stood** - 65:12
**stop** - 6:16, 105:25, 113:1, 114:9, 138:23, 139:2
**stopped** - 74:15,

75:6, 78:21, 79:13, 105:25, 112:15
**store** - 189:5
**stories** - 142:14, 157:3
**story** - 77:21, 108:3, 110:11, 111:18, 111:19, 120:8, 140:9, 142:25, 155:19, 159:15, 160:7, 170:15, 170:20, 184:12
**story's** - 112:1, 170:13
**straight** - 51:17, 87:13, 143:12
**straightforward** - 205:19
**stream** - 137:23, 157:9, 157:14
**Street** - 96:9, 187:8, 220:9, 220:15
**street** - 34:21, 37:3, 38:13, 65:18, 66:5, 73:7, 74:3, 74:21, 76:7, 77:13, 89:11, 92:5, 94:25, 95:6, 124:16, 136:3, 144:22, 155:24, 156:1, 158:18, 177:14, 181:23, 182:1, 184:17, 185:3, 185:14, 186:15, 187:1, 190:20, 219:18, 219:22, 220:6, 220:16
**street-level** - 77:13, 92:5
**streets** - 78:12, 79:18, 82:24, 83:22, 84:11, 89:7, 123:10, 123:11, 189:11, 218:23
**stretch** - 125:7, 125:11, 163:15
**stricken** - 25:11, 29:8
**strike** - 49:13, 49:21, 51:7, 51:14, 204:17
**strong** - 12:17, 21:21, 131:8
**strung** - 182:14
**stuck** - 171:13
**stuff** - 134:6, 178:16, 185:14
**stupid** - 134:17, 134:19
**subject** - 21:8, 207:16, 233:16, 249:24
**subjective** - 237:8
**submission** - 37:16
**submitted** - 36:15, 196:7
**suborn** - 122:1
**subpoena** - 146:16
**substance** - 39:3, 39:6, 44:1, 46:9, 149:10, 217:25, 218:12, 218:14, 219:18, 219:22, 220:2, 220:7, 220:16, 229:21, 231:4
**substances** - 44:9, 44:18, 44:23, 45:20, 47:10, 47:20, 47:22, 48:24, 218:21, 229:9, 230:10, 230:17, 231:2, 231:24

**substantial** - 196:21, 227:24, 228:5
**substantive** - 43:3, 49:12, 49:19, 49:21, 68:23, 99:16, 99:21, 100:15, 115:24, 141:12
**substitute** - 30:11, 215:13, 215:19
**succeeds** - 246:25
**suffices** - 12:24
**sufficient** - 132:1, 157:25, 197:3, 222:20, 225:25, 226:18, 229:19, 237:9, 238:8, 242:5, 246:4, 255:7, 259:25
**sufficiently** - 32:21
**sugar** - 189:5, 189:6
**suggest** - 126:4, 127:4, 127:9, 129:7, 129:15, 129:19, 132:5, 133:2, 137:4, 139:9, 141:1, 142:2, 142:9, 143:19, 145:4, 145:14, 147:12, 151:1, 151:22, 152:16, 153:8, 155:1, 155:10, 157:17, 160:18, 162:8, 206:10
**suggested** - 163:4, 165:3
**suggesting** - 41:20, 137:10, 138:14, 138:15, 153:19, 153:20
**suggestion** - 12:8, 39:18, 163:7
**suggests** - 36:1
**Sullivan** - 1:18, 2:13, 8:16, 60:22, 60:23, 61:16, 61:17, 63:5, 63:9, 64:4, 90:7, 118:8, 122:19, 122:20, 160:22, 253:16, 254:5, 256:16, 256:19, 257:2
**sum** - 76:25, 208:4, 227:3
**summarize** - 49:24, 52:24
**summarizing** - 33:7, 217:12
**summations** - 206:19
**summer** - 93:20, 102:6
**summit** - 132:3, 132:11
**Sun** - 216:25, 261:15
**Sunday** - 137:5
**superseding** - 217:6, 217:18, 218:1, 220:23, 239:25
**supplier** - 82:20
**supply** - 81:9, 188:20, 188:21
**supplying** - 228:19
**support** - 36:14
**supported** - 32:22, 38:1
**supposed** - 76:25, 85:9, 101:1, 123:13
**supposedly** - 143:15, 154:16
**Supreme** - 36:7
**surprised** - 72:4
**surrounding** - 203:8

| | | | | |
|---|---|---|---|---|
| survive - 92:17 | testified - 19:4, | 167:22, 206:23 | 250:16 | 117:25, 126:6, 129:5, |
| suspect - 204:11 | 20:2, 25:16, 74:7, | theorist - 145:23 | token - 194:22, | 148:15, 148:16, |
| suspicion - 202:11, | 75:5, 75:14, 78:3, | theory - 52:13, | 197:19 | 164:9, 164:14, 188:5, |
| 209:24 | 80:7, 82:16, 94:7, | 52:16, 53:1, 63:21, | tomorrow - 162:7, | 189:21, 192:15, |
| sustain - 197:8, | 94:21, 94:22, 95:2, | 214:23 | 163:6, 163:17, | 193:5, 195:1, 197:2, |
| 221:21, 240:12, | 97:10, 97:20, 98:9, | thereafter - 50:10 | 216:23, 221:4, | 198:13, 199:7, |
| 243:13 | 98:21, 101:21, | thereby - 227:7 | 251:11, 256:3, 257:7, | 201:21, 202:5, 206:7, |
| sustained - 195:4 | 101:25, 104:18, | therefore - 224:20 | 258:2, 258:11, 261:3, | 208:18, 210:3, 211:1, |
| swallow - 76:14 | 116:16, 121:6, | Therefore - 118:2, | 261:11, 261:20, 262:4 | 211:6, 211:16, |
| swallowed - 76:11 | 121:10, 125:8, | 206:4 | tonight - 163:9, | 212:16, 212:19, |
| sway - 206:3 | 133:14, 142:9, | thereof - 219:2 | 216:22, 257:8 | 212:23, 212:25, |
| swig - 76:11 | 142:22, 146:25, | They've - 72:25 | tons - 130:7 | 213:1, 213:18, 260:7 |
| swimming - 144:17, | 147:3, 147:11, 150:5, | they've - 67:20, | Took- 189:12 | Trial - 1:11, 262:6 |
| 175:17, 179:21 | 150:6, 150:22, | 190:8 | took - 18:9, 19:4, | tried - 78:23, |
| sworn - 193:24, | 151:19, 153:16, | Thin- 132:7 | 22:16, 73:20, 74:12, | 103:10, 109:22, |
| 200:9, 261:24 | 153:25, 155:17, | thinking - 15:17, | 76:9, 76:10, 89:9, | 134:11, 186:4 |
| system - 179:8, | 173:24, 173:25, | 127:6, 238:1 | 110:24, 129:1, 157:4, | triggerman - 183:25 |
| 181:2, 187:20, 238:19 | 192:18, 204:4, | thinks - 156:24 | 170:12, 177:8, | triggers - 60:5, 60:7 |
| systems - 187:21 | 204:12, 204:14, | third - 53:16, 68:7, | 203:10, 210:5 | troubling - 124:1 |
| | 205:4, 205:7, 205:25, | 69:13, 79:24, 127:14, | top - 87:20, 132:11, | truck - 73:17, |
| **T** | 206:15, 211:13, | 127:15, 170:22, | 132:20, 132:24, | 102:19, 102:24, |
| | 213:18 | 231:11, 234:8, | 132:25, 160:16, | 103:11, 105:17, |
| table - 64:1 | testifies - 204:23 | 236:12, 243:19, | 168:18 | 106:6, 109:14, |
| tackled - 73:21 | testify - 11:7, 17:17, | 245:23 | torch - 190:5 | 109:22, 112:14, |
| talks - 90:8, 128:5, | 19:17, 19:21, 20:25, | Third- 36:9, 45:6, | total - 3:22, 76:25, | 112:21, 136:23, |
| 131:3, 131:7, 134:7, | 21:1, 23:3, 23:13, | 48:9, 120:11 | 90:14, 195:23, 196:4 | 136:24, 142:23, 143:5 |
| 153:4, 253:1 | 35:13, 81:18, 82:25, | Thompson- 76:1, | totality - 76:24, | truckloads - 120:17 |
| taller - 147:2 | 83:2, 84:7, 90:3, | 76:12, 76:15 | 90:14, 99:12 | true - 32:7, 76:22, |
| Tamica - 102:16, | 104:15, 131:17, | thoughts - 158:5 | totally - 53:5 | 130:1, 134:5, 152:20, |
| 105:9, 107:3, 108:1, | 136:16, 150:16, | thousand - 85:6, | touch - 133:11, | 153:9, 165:15, |
| 142:7, 165:7, 177:7, | 150:23, 152:25, | 86:2, 91:19, 91:21, | 166:5 | 184:15, 197:24, |
| 177:24, 179:3 | 201:15, 201:17, | 188:13 | touching - 249:24 | 200:1, 200:4, 200:5, |
| Tamika - 177:7 | 201:25, 206:2, 206:3, | thousands - 188:12 | tough - 186:20 | 200:13, 200:14, |
| tape - 84:20, | 206:12, 208:16, | threat - 99:3 | toward - 237:18 | 208:19 |
| 152:21, 168:24, | 210:7, 211:22, 212:7, | three - 11:23, 42:12, | town - 81:20, 83:5, | trust - 124:22, |
| 169:6, 174:20, | 214:20, 215:12 | 68:11, 69:8, 80:11, | 83:13, 120:9, 159:17, | 140:10, 145:2, |
| 181:14, 182:2, | testifying - 16:3, | 83:18, 91:5, 148:15, | 159:23, 160:2, 160:6 | 147:25, 148:3, 148:4, |
| 182:24, 191:20, | 90:1, 146:25, 207:22, | 152:3, 181:8 | tracks - 138:24 | 148:5 |
| 191:21, 191:22, | 207:23, 208:25, | three-week - 148:15 | Tracy- 18:13, 78:3 | truth - 77:25, 79:8, |
| 258:15 | 210:13, 215:4 | threw - 34:24, | traffic - 139:1, 154:3 | 79:23, 118:22, 119:7, |
| tapes - 152:23 | testimony - 6:11, | 78:22, 157:9, 157:14 | trafficker - 93:8, | 125:11, 129:4, 129:7, |
| task - 126:3 | 7:13, 16:2, 19:24, | thrilling - 40:21, | 93:13, 120:16 | 130:5, 130:16, |
| Tatum - 86:16, 94:3, | 19:25, 20:3, 20:7, | 40:23 | trafficking - 69:5, | 135:25, 136:5, |
| 108:19 | 20:9, 20:22, 24:2, | throughout - 84:5, | 69:12, 76:18, 92:4, | 143:18, 145:21, |
| taught - 159:13 | 25:7, 29:20, 30:1, | 140:18, 201:20 | 92:14, 100:17, | 152:9, 160:8, 160:9, |
| teachings - 165:14 | 30:7, 32:23, 34:16, | throw - 135:11, | 116:11, 122:15, | 160:15, 171:2, |
| teams - 154:4 | 34:19, 35:1, 39:15, | 141:20 | 155:9, 155:12, 180:6, | 178:22, 180:16, |
| technical - 118:25 | 73:11, 80:15, 82:3, | thrown - 93:21, | 181:22, 220:4, 233:5, | 181:7, 184:19, |
| technique - 78:19 | 89:19, 133:12, | 190:9 | 233:8, 235:17, | 187:17, 200:2, |
| techniques - 6:12, | 137:24, 139:1, 145:8, | thrust - 38:3, 41:22 | 235:20, 239:5 | 203:23, 204:5, |
| 6:15, 6:24, 128:9, | 147:13, 147:20, | tick - 59:14 | trails - 132:21 | 204:25, 207:19, 208:2 |
| 198:16, 198:23, | 151:6, 151:20, 154:2, | ticket - 81:19, | training - 214:22 | truthful - 130:14, |
| 198:24 | 185:5, 185:7, 192:17, | 81:23, 127:21, 127:23 | transaction - 74:10, | 134:10, 135:7, |
| teeny - 123:22 | 192:21, 193:6, | tickets - 146:15 | 76:8, 91:22 | 173:12, 174:4, |
| teeny-teeny - | 193:19, 193:24, | Timothy- 1:18 | transactions - | 190:19, 205:18, |
| 123:22 | 196:22, 197:20, | Title- 92:19, | 74:24, 77:13, 188:15 | 238:20 |
| television - 163:1, | 198:13, 199:8, 200:9, | 97:24, 98:9, 98:17, | Transcript- 1:11 | truthfully - 16:4, |
| 216:5, 216:16, | 203:14, 203:17, | 98:19, 101:20, | transcript - 1:24, | 187:15, 207:24, |
| 216:24, 261:14 | 203:25, 204:2, 204:6, | 116:13, 157:2, 157:4 | 84:23, 262:9 | 208:25 |
| temper - 141:3 | 204:15, 206:5, 206:9, | tiny - 72:3, 76:22 | transcription - 1:25 | try - 30:4, 40:9, |
| ten - 91:11, 109:18, | 207:2, 207:3, 207:5, | Title- 217:19, | transcripts - 190:16 | 105:8, 121:24, 122:1, |
| 168:14, 183:1, 221:2 | 207:8, 207:11, | 218:15, 233:14, | transfer - 228:9, | 163:19, 178:4, |
| Ten- 168:15 | 207:19, 208:3, | 233:17, 236:18, | 228:15, 228:22, 229:6 | 205:13, 214:7, 261:9 |
| ten-minute - 221:2 | 208:13, 208:18, | 239:2, 243:6 | transported - | trying - 3:5, 3:16, |
| term - 5:21, 54:9, | 208:20, 208:23, | title - 29:21 | 246:12 | 11:19, 84:4, 112:6, |
| 54:12, 202:6, 227:14, | 209:11, 209:12, | titled - 30:19 | trash - 34:24, 93:22, | 127:6, 128:15, |
| 242:16, 243:2, 243:9, | 209:14, 209:16, | to-wit - 233:4, | 95:23, 96:4, 187:3 | 134:12, 135:14, |
| 243:17, 244:2, 244:6, | 209:23, 209:24, | 239:16 | travel - 117:21 | 136:17, 171:12, |
| 260:1 | 210:9, 210:11, | today - 66:21, | traveled - 70:21, | 176:12, 180:13, |
| terms - 9:20, 11:20, | 210:14, 210:17, | 66:24, 68:9, 109:20, | 118:2, 246:4, 246:15, | 204:17, 205:18 |
| 18:5, 30:5, 36:16, | 210:21, 211:7, | 126:18, 163:5, | 246:21 | turn - 67:1, 67:20, |
| 37:5, 39:5, 39:7, | 211:14, 212:20, | 166:16, 194:3, 261:17 | treat - 32:24 | 71:15, 87:12, 99:16, |
| 39:13, 42:23, 54:3, | 212:23, 212:25, | Todd- 100:2, 123:9 | treatment - 207:21 | 240:8 |
| 144:22, 165:1, | 213:2, 213:16, | together - 15:18, | trial - 18:3, 18:24, | turned - 101:2, |
| 183:23, 218:17, | 213:20, 213:22, | 42:10, 70:20, 77:8, | 22:23, 23:22, 23:24, | 101:4, 116:23, 166:10 |
| 255:22 | 213:24, 214:3, 214:9, | 82:12, 82:23, 86:1, | 25:15, 26:8, 26:19, | turning - 110:2, |
| terrible - 155:16 | 214:12, 214:14, | 88:23, 89:22, 108:4, | 26:23, 27:14, 27:15, | 189:10 |
| terrified - 103:21, | 214:23, 215:2, 215:7, | 128:16, 142:25, | 36:2, 36:21, 37:12, | Tv- 163:2 |
| 168:12 | 215:8, 215:11, 215:16 | 221:25, 222:14, | 38:7, 40:21, 100:22, | twenty - 221:1 |
| territory - 98:7, 99:7 | themselves - 77:20, | 223:13, 226:13, | 101:1, 101:6, 117:20, | twice - 65:10, 82:4, |

24

82:8, 173:2
**two** - 15:18, 42:15,
53:9, 66:17, 67:9,
67:14, 70:13, 70:18,
71:5, 71:13, 71:19,
73:22, 75:20, 75:23,
82:12, 93:3, 93:20,
93:21, 93:25, 95:25,
96:25, 109:14, 114:6,
117:4, 123:22,
129:11, 130:23,
134:24, 135:4,
143:16, 144:7,
148:16, 148:24,
152:3, 153:18,
155:25, 156:23,
158:3, 170:17,
172:20, 172:22,
172:23, 172:24,
173:4, 173:11,
174:22, 175:4, 181:6,
182:2, 182:6, 183:1,
187:3, 187:21,
189:21, 199:5,
221:24, 222:5,
222:10, 222:22,
243:2, 261:4, 261:7
**Two** - 67:19, 70:5,
91:17, 168:16,
172:20, 182:3
**two-faced** - 130:23
**two-week** - 148:16
**twofold** - 71:11
**type** - 44:9, 44:11,
44:16, 148:2, 148:4,
148:5
**types** - 59:16,
63:18, 144:7, 156:12,
199:5
**typical** - 135:13
**typo** - 53:22

## U

**ultimate** - 125:20,
129:3, 137:11,
159:15, 160:7, 228:17
**ultimately** - 137:13,
143:1
**unanimity** - 56:4
**unanimous** - 247:3,
248:5, 250:8, 250:22
**unanimously** -
197:6
**unbelievable** -
152:13, 154:14
**unconscious** -
69:21, 116:20
**uncontradicted** -
6:11
**Under** - 131:24,
201:16, 221:23,
248:14
**under** - 5:15, 6:3,
32:11, 38:18, 41:16,
52:13, 60:8, 63:12,
63:17, 129:12,
150:18, 150:19,
165:16, 183:14,
185:8, 193:6, 203:20,
204:3, 213:18,
219:15, 226:22, 242:5
**undercover** - 75:15,
174:22
**understandable** -
261:16
**understandingly** -
8:8, 9:18, 10:4, 10:15,
201:12
**undertaking** - 227:6

**unexplained** -
167:14
**unfair** - 217:1, 217:2
**unfavorable** - 211:6
**unhappy** - 175:16
**unindicted** - 13:25,
14:8, 208:21
**Unindicted** - 14:14
**United** - 1:1, 1:3,
1:13, 5:19, 5:24, 36:5,
36:9, 36:18, 37:8,
37:18, 38:1, 100:1,
123:1, 123:7, 158:10,
194:19, 217:19,
217:21, 218:15,
221:23, 233:6, 233:9,
233:11, 233:14,
233:17, 234:9,
235:18, 235:21,
235:23, 236:14,
236:18, 238:13,
239:3, 239:6, 239:16,
239:24, 240:2, 240:6,
240:16, 240:23, 243:6
**unknown** - 14:4,
218:9
**unlawful** - 50:19,
67:11, 67:15, 67:18,
217:22, 221:16,
222:1, 222:10,
222:24, 223:14,
224:3, 224:19,
224:22, 225:14,
226:17, 227:1, 227:4,
227:8, 234:19,
236:20, 238:22,
242:20, 243:7
**unlawfully** - 57:24,
58:3, 149:8, 218:7,
218:10, 234:11,
236:15
**unless** - 36:21,
132:20, 197:4, 229:13
**unlikely** - 230:4
**unnamed** - 129:12
**unrelated** - 36:23,
37:13
**unspoken** - 222:22
**untruthfulness** -
130:24
**Up** - 86:5
**up** - 19:15, 26:9,
26:19, 31:21, 33:8,
33:9, 34:17, 34:21,
50:12, 50:17, 53:7,
60:25, 61:1, 61:5,
64:18, 64:20, 73:16,
74:4, 74:11, 74:22,
75:17, 76:21, 77:23,
78:12, 81:15, 81:22,
82:23, 83:18, 83:20,
87:22, 87:25, 89:6,
89:11, 90:7, 90:24,
91:6, 91:12, 93:23,
95:3, 96:17, 97:14,
97:22, 105:10,
106:13, 107:7,
107:16, 112:4,
113:10, 116:23,
118:16, 123:22,
127:8, 127:25,
128:19, 133:17,
133:20, 133:23,
136:10, 138:5,
139:13, 139:18,
140:25, 141:21,
142:4, 145:10, 153:5,
153:6, 154:9, 154:16,
155:17, 157:11,
158:21, 159:17,

159:18, 159:23,
164:14, 164:18,
167:11, 167:24,
169:12, 169:21,
176:14, 176:10,
176:14, 181:13,
181:16, 181:17,
183:9, 183:14,
183:19, 184:2,
184:16, 187:7, 188:7,
188:17, 189:13,
189:14, 190:6,
205:11, 205:14,
207:19, 208:20,
216:6, 260:14
**upset** - 84:6, 104:14
**usage** - 227:14
**Usc** - 51:17
**uses** - 239:6, 240:6
**utilize** - 198:15
**uttered** - 203:6

## V

**value** - 199:14
**van** - 75:6
**variance** - 5:8, 6:10
**various** - 34:15,
203:19, 221:3
**varying** - 91:16
**venture** - 224:8
**verbalize** - 46:18
**verbatim** - 24:4,
147:22
**verbiage** - 3:19
**verdict** - 43:11,
43:15, 45:21, 46:10,
46:20, 46:21, 48:25,
57:2, 57:8, 58:1,
58:23, 61:14, 63:14,
68:10, 69:16, 157:18,
188:7, 188:9, 191:8,
194:8, 194:25,
196:10, 196:12,
196:16, 231:25,
247:1, 247:2, 248:4,
248:18, 249:1, 250:9,
250:11, 250:12,
250:13, 250:15,
250:17, 250:22,
250:23, 250:24,
250:25, 251:2, 251:5,
251:6, 251:9, 262:1
**verdicts** - 192:3,
249:16
**verifying** - 51:16
**version** - 26:25,
27:2, 140:6, 165:5,
170:25, 171:1, 258:12
**versus** - 131:5,
136:3, 147:13
**vicarious** - 39:24
**Vick** - 144:23
**Vick's** - 144:24
**victim** - 235:6,
237:18, 238:23,
238:25, 240:25, 241:1
**video** - 96:25,
156:18, 156:19,
184:16
**videotape** - 184:13
**view** - 3:8, 3:16, 4:1,
7:16, 56:19, 57:1,
57:19, 192:9, 247:25
**viewed** - 207:9,
213:20
**views** - 247:9,
247:13
**violation** - 216:10,
218:15, 233:6, 233:9,

233:11, 233:13,
234:21, 235:18,
235:21, 235:23,
239:2, 239:23
**violations** - 51:21,
100:17
**violence** - 60:11,
70:2, 70:6, 92:14,
92:24, 93:15, 93:18,
94:7, 98:24, 117:8,
156:10, 239:4,
239:14, 240:5,
240:15, 240:19,
240:22, 241:5,
241:12, 241:20,
242:2, 247:16,
249:10, 254:13,
254:23, 259:2, 259:14
**violent** - 90:2,
140:5, 141:23
**vis** - 63:13
**vis-a-vis** - 63:13
**vision** - 62:19
**visits** - 181:8
**voice** - 114:23,
115:14, 115:15,
258:17, 258:18
**volition** - 147:12
**volume** - 128:22,
128:23
**voluntarily** - 9:17,
10:4, 10:15, 68:2,
68:4, 201:11, 221:18,
223:18, 234:15,
242:11, 245:19
**voluntary** - 8:8
**vote** - 141:13,
141:19, 142:1, 248:2
**vouching** - 228:18
**vs** - 1:6

## W

**wait** - 46:19, 61:8,
61:12, 161:3
**Wait** - 55:16
**waited** - 172:10,
172:11, 172:12
**waiting** - 40:10,
95:2, 160:25, 164:20,
164:21, 165:21,
166:15, 178:9,
186:10, 186:22, 191:5
**walk** - 30:4, 44:2,
76:6, 102:23, 102:24,
105:12, 116:23,
147:2, 184:1
**walked** - 64:24,
65:8, 66:4, 74:11,
74:13, 93:23, 95:12,
96:24, 102:16,
102:25, 105:10,
107:7, 108:13
**Walking** - 184:16
**walking** - 64:22,
78:12, 96:8, 106:22,
184:5, 184:6, 187:7
**wanton** - 237:10
**wants** - 40:23,
103:16, 124:2,
130:25, 137:19,
140:20, 145:2,
147:15, 148:25,
152:7, 158:14,
169:17, 176:9
**warn** - 213:19
**warrant** - 37:16
**warranted** - 191:8
**Watch** - 156:18
**watch** - 40:24

**watched** - 127:1,
128:20, 165:22
**watching** - 83:3,
156:22, 164:3, 216:15
**water** - 76:11
**waved** - 75:18
**weapon** - 241:14,
242:13, 245:2,
254:15, 254:24,
254:25, 255:2, 259:4,
259:16, 259:17,
259:18
**weaponry** - 152:15,
152:20, 153:2, 156:2
**wear** - 103:3
**wearing** - 95:9,
97:19, 107:10,
108:14, 111:14,
120:22, 136:20,
142:15, 144:12
**weather** - 131:9
**week** - 66:19, 80:12,
83:18, 83:19, 89:6,
91:6, 91:10, 91:11,
91:12, 91:15, 99:25,
114:6, 148:15,
148:16, 194:2, 199:6
**weeks** - 71:5, 71:19,
91:11, 114:6, 175:6,
175:7, 175:8, 188:14
**weigh** - 77:6,
199:17, 247:4, 248:11
**weighed** - 213:21
**weighing** - 199:18,
215:2
**weight** - 8:5, 8:10,
8:23, 9:13, 9:15, 10:6,
10:9, 10:17, 20:9,
24:1, 25:22, 90:6,
140:15, 193:16,
199:14, 201:13,
208:5, 208:20,
209:25, 210:19,
211:15, 213:14,
214:4, 214:14, 215:8
**weird** - 154:8
**Weiss** - 75:6
**Weiss'** - 75:8
**welcome** - 191:24
**West** - 62:15, 162:4,
250:25, 251:11
**Westport** - 34:17,
38:13, 64:19, 65:23,
65:25, 66:3, 66:8,
71:22, 72:13, 72:15,
74:19, 75:1, 76:3,
76:16, 78:5, 79:19,
80:8, 81:1, 82:24,
83:2, 84:12, 89:3,
89:7, 94:25, 95:22,
97:24, 98:6, 99:6,
100:4, 100:8, 101:13,
101:18, 102:7,
102:15, 104:15,
104:18, 104:20,
106:4, 108:4, 110:10,
122:13, 123:2,
123:17, 124:5,
127:18, 133:9, 144:4,
144:20, 146:1,
148:23, 158:15,
158:16, 166:1, 186:2,
190:22, 218:24,
219:8, 219:14,
219:17, 219:21,
220:6, 220:9, 220:15,
220:20
**wheel** - 133:22,
133:23
**white** - 56:13,

25

96:10, 149:1, 152:6,
158:14, 187:9, 189:4
**Whoa** - 187:5
**whole** - 48:22, 54:2,
87:21, 134:16,
135:15, 140:19,
143:22, 150:6,
159:17, 186:18,
252:17
**wholly** - 247:15
**Wilgrey** - 64:21,
106:25
**willful** - 236:22
**willfully** - 68:1,
221:18, 223:18,
224:1, 232:22,
234:12, 236:16,
237:16, 237:21
**Willfully** - 239:16
**willfulness** - 11:21,
202:15, 203:7
**Williams** - 74:7,
74:18, 74:20, 74:25,
76:16, 92:19, 92:20,
93:5, 93:18, 93:19,
93:23, 96:12, 97:7,
97:12, 97:25, 98:2,
98:4, 98:8, 98:13,
98:24, 99:5, 139:18,
141:8, 141:9, 141:16,
152:12, 152:13,
152:23, 153:5,
154:16, 154:24,
156:6, 157:17,
157:18, 182:25,
183:1, 186:4, 220:12,
220:13
**Williams'** - 8:20,
154:18, 168:14,
173:23
**willing** - 23:10,
52:7, 106:16, 110:18,
110:22, 179:18,
212:3, 227:7
**willingness** - 23:2,
211:22
**win** - 209:22
**window** - 34:24,
73:18, 78:22
**windshield** - 109:19
**wire** - 84:18, 153:4
**wired** - 112:4
**wires** - 123:8
**wiretap** - 119:1
**wish** - 7:7, 29:20,
122:24, 159:2, 159:5,
180:13, 213:23
**wit** - 233:4, 239:16
**withdraw** - 226:4
**withdrawing** - 52:2
**withdrawn** - 52:4
**withhold** - 131:8
**withholding** -
145:21
**withstanding** -
139:10
**Witness** - 59:9,
88:25
**witness** - 12:22,
14:19, 15:15, 16:9,
17:2, 17:10, 18:3,
19:25, 20:21, 20:23,
22:21, 22:25, 23:4,
23:5, 23:6, 23:9,
23:10, 23:12, 23:13,
23:15, 23:20, 24:1,
24:7, 24:12, 25:21,
26:7, 26:16, 27:21,
28:18, 28:23, 29:18,
30:25, 32:18, 49:24,

70:7, 82:1, 82:10,
84:1, 88:25, 98:15,
100:22, 104:18,
106:12, 106:16,
107:16, 122:4,
127:24, 143:14,
143:18, 147:24,
149:24, 164:4,
168:12, 171:4, 171:5,
173:16, 176:21,
183:23, 184:4, 184:7,
184:14, 184:22,
186:18, 187:24,
190:5, 190:12,
192:18, 197:14,
197:20, 197:21,
199:23, 200:1, 200:2,
202:2, 203:14,
203:16, 204:3, 204:8,
204:9, 204:10,
204:12, 204:13,
204:14, 204:16,
204:17, 204:19,
204:21, 204:23,
204:25, 205:2, 205:5,
205:6, 205:25, 206:3,
206:5, 206:10,
207:24, 209:5,
209:14, 209:17,
209:21, 210:3, 210:7,
210:11, 210:12,
210:22, 211:2,
211:13, 211:19,
211:24, 211:25,
212:2, 212:3, 212:6,
212:7, 212:9, 212:14,
212:17, 212:23,
212:24, 213:4, 213:8,
213:17, 213:20,
214:5, 214:8, 214:13,
214:20, 215:11,
215:22, 232:16,
232:18, 238:23,
238:25
**witness'** - 23:1,
23:22, 204:6, 204:20,
205:8, 205:10,
206:13, 209:11,
209:20, 211:3,
211:11, 211:21,
212:19, 213:16,
213:22, 215:3, 215:7
**witnesses** - 5:10,
6:11, 16:2, 19:1, 19:2,
19:17, 19:20, 20:1,
22:23, 25:7, 30:2,
30:8, 31:19, 32:23,
35:9, 51:10, 51:24,
62:10, 71:6, 71:21,
72:9, 72:20, 72:21,
72:23, 73:9, 77:23,
82:13, 88:25, 89:17,
89:23, 92:1, 101:3,
101:13, 106:12,
111:11, 118:13,
118:21, 119:9,
119:10, 119:12,
119:21, 120:12,
120:15, 120:21,
122:10, 125:3, 125:8,
128:11, 130:19,
130:25, 131:14,
133:20, 148:13,
159:3, 160:17,
164:25, 165:2, 166:7,
166:20, 167:21,
167:22, 171:21,
171:23, 172:20,
172:21, 175:2,
177:17, 179:14,

179:16, 180:14,
181:11, 190:1, 190:2,
190:8, 190:9, 193:17,
193:25, 194:4,
197:16, 197:19,
197:23, 198:3, 198:4,
198:5, 198:11,
198:14, 200:9,
203:13, 203:25,
205:24, 206:15,
206:19, 206:22,
208:7, 208:8, 208:24,
209:8, 211:8, 211:17,
213:25, 214:17,
214:18, 214:19,
215:17, 238:15
**Witnesses** - 25:15,
138:6
**witnesses'** - 200:25
**woke** - 64:18
**wolf** - 159:14,
159:16, 159:17,
159:19, 159:20,
172:12
**wolves** - 159:21,
159:22, 159:24,
160:1, 160:2, 160:4
**woman** - 56:9, 80:7,
149:23
**woman's** - 170:10
**women** - 140:6
**wonder** - 98:16
**wondering** -
145:19, 186:13
**wood** - 155:15
**word** - 18:1, 18:18,
18:21, 27:1, 27:15,
32:14, 95:18, 108:16,
126:16, 126:18,
126:19, 131:22,
145:9, 162:3, 163:4,
173:20, 180:9,
187:14, 229:1, 256:6,
256:21
**worded** - 4:3, 54:3
**words** - 21:12,
25:19, 41:18, 41:21,
66:2, 84:14, 88:20,
115:19, 129:6,
138:17, 173:15,
173:17, 173:18,
202:25, 203:5,
205:13, 208:16,
222:17, 223:8, 228:10
**wordy** - 3:6
**wore** - 103:2
**workable** - 11:20
**worker** - 224:5
**Works** - 7:2
**works** - 183:15
**world** - 122:24,
123:2, 132:9, 132:19,
152:5, 158:12,
178:18, 179:10,
182:23, 184:2, 242:14
**worth** - 87:10, 90:11
**worthy** - 130:9,
133:2, 142:3, 143:20,
143:21, 151:23,
153:9, 153:10
**write** - 250:13
**writing** - 222:17,
249:22, 249:25, 250:6
**written** - 26:24,
27:2, 67:15, 100:23,
257:11, 262:1
**wrote** - 76:21

**Y**

**yard** - 65:16
**year** - 8:21, 36:18,
37:20, 54:10, 54:12,
66:14, 68:19, 70:17,
89:1, 91:11, 106:19,
211:9, 243:2, 243:9,
243:18, 244:2, 244:6
**years** - 66:17, 77:3,
79:4, 80:11, 84:3,
89:7, 90:18, 91:24,
92:7, 119:17, 140:19,
182:7, 182:13,
188:15, 191:5
**yelled** - 159:25
**yelling** - 174:25,
180:10
**yellow** - 255:17,
255:20, 255:23, 256:2
**yells** - 181:20
**yesterday** - 3:16,
61:23, 73:14, 93:16,
97:20, 170:13, 171:5
**yield** - 247:25
**yo** - 85:12, 85:13,
86:4, 86:11, 87:4,
87:18, 87:22, 114:21
**Yo** - 87:4, 88:3, 88:8
**young** - 156:7
**yourself** - 4:16,
4:20, 4:24, 23:14,
77:17, 79:2, 79:22,
104:4, 104:15, 128:4,
128:7, 177:17, 196:6,
205:9, 247:18
**yourselves** - 174:3,
207:17, 208:17,
212:8, 216:11, 223:22

**Z**

**ziplock** - 73:22,
74:16, 75:25, 78:9,
83:23