## STATEMENT OF GARY E. PROCTOR

I am an attorney. I was first barred in Louisiana in 2002. I became a member of this Court in 2005, and remain in good standing. I am a member of the Criminal Justice Act panel, and have been appointed to well over 100 criminal felony cases in this Court.

An indictment against Antonio Hall was returned in December 2010. Timothy Sullivan was appointed later that same month. As Mr. Hall was charged with crimes that carried a potential death sentence, he was also eligible for the appointment of second chair. I was appointed in that capacity and entered my appearance on the docket on December 10, 2010.

I have reviewed Mr. Hall's 2255 filings, the Government's response, and Judge Bennett's Order that I be permitted to respond. This statement concerns primarily Mr. Hall's allegations of ineffectiveness numbers (7) and (8) in his 2255 Petition. See ECF 125 at 5. In number 7 Mr. Hall states that Mr. Sullivan and I failed to object to the trial judge becoming involved in a plea offer.[1] I have reviewed the relevant portions of the transcript in this regard. See ECF 116 at 6. The Court stated that it does "not participate in any kind of plea discussions between the Government and the defendant." Id. What the Court did explain, however was the concept of a Fed. R. Crim. P. 11(c)(1)(C) plea, especially the binding nature of it. Judge Bennett again reiterated that "nor am I in any way urging a plea of guilty." Id. At 9.

In my opinion, the trial court was attempting to ensure that Mr. Hall understood the pros and cons of a trial versus a plea. In no way did the Court get involved in the plea discussions themselves. The discussions did not take place within earshot of the Court. Judge Bennett was solely aware that a brief recess was requested so that there could be a discussion. Neither side sought the Court's counsel as to what an appropriate sentence should be. The totality of the Court's involvement is included in the transcript.

---

1  Mr. Sullivan is, of course, now United States Magistrate Judge Sullivan. As he was Mr. Sullivan at the time of trial, the undersigned will refer to him as such herein, in the interests of clarity.

With regard to point (8) of Mr. Hall's 2255 he alleges that Mr. Sullivan and I failed to explain to him the plea offer of a number of years, versus the mandatory nature of the sentence he would face upon conviction. I disagree with this allegation. Mr. Sullivan and I were never under any misconceptions as to the likelihood of success at trial. The murder of Kareem Guest took place in the middle of a housing project. There were approximately six (6) eye witnesses that testified. While all prevaricated initially, by the time of trial all were prepared to, and ultimately did, testify that Mr. Hall was the shooter. Moreover all of the witnesses indicated that their initial reluctance to tell the truth was based on Mr. Hall's reputation in the community as someone who will silence cooperators.

Even if we were successful on that charge, we faced a mandatory life sentence under 851 for the drug charges, for which the evidence was also overwhelming.

All of this was conveyed to Mr. Hall on numerous occasions in the months leading up to trial. Moreover, the transcript also shows that the Court explained this to Mr. Hall. I specifically recall personally urging Mr. Hall to take the plea. I specifically recall being present when Mr. Sullivan urged him to take the plea. I specifically recall explaining to him the mandatory minimums at play. I specifically recall talking to his girlfriend and sister about how it was in Mr. Hall's best interests to plead, and that he would almost certainly receive a mandatory life sentence after trial. Mr. Hall did not follow our advice, but it was given in great detail, and repeatedly.

I hereby declare under penalty of perjury that the foregoing is true to the best of my knowledge and belief.

_____
GARY E. PROCTOR

Date  2-17-15